IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In the Matter of:<br><br>JEFFREY B. CLARK,<br>Respondent.<br><br>(A Member of the Bar of the<br>District of Columbia Court of Appeals<br>(Bar Registration No. 455315))<br><br><br>D.C. Board of Professional Responsibility<br>    Docket Nos. 22-BG-059 & 22-BD-039<br>Disciplinary Docket No. 2021-D193 | Case. No. _____<br><br>Judge _____<br><br>On removal from the D.C. Court of Appeals' Board of Professional Responsibility and Hearing Committee Number Twelve |

RESPONDENT JEFFREY B. CLARK'S NOTICE OF REMOVAL TO THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

PLEASE TAKE NOTICE:

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, 1446, and 1455, Jeffrey B. Clark ("Respondent") hereby gives notice and removes this quasi-prosecution case from the District of Columbia Court of Appeals ("DCCA") and its adjunct bodies, the District of Columbia Board of Professional Responsibility ("Board") and the Board's assigned Hearing Committee, to the United States District Court for the District of Columbia.

Respondent's counsel signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure and Respondent pleads the following in accordance

1

with the parallel requirements of 28 U.S.C. § 1446(a) and § 1455(a) for a "short and plain statement of the grounds for removal":

**<u>Introduction</u>**

1.  This is a paradigmatic case for removal under the federal officer removal statute, 28 U.S.C. § 1442—the statute that forms the principal, but not exclusive, basis for removal herein. Respondent is a former high-ranking federal officer at the United States Justice Department. Specifically, Respondent was a Senate-confirmed Assistant Attorney General for the Environment & Natural Resources Division from November 1, 2018 to January 14, 2021, as well as the former Acting Assistant Attorney General of the United States for the Civil Division from September 5, 2020 to January 14, 2021.

2.  Respondent faces charges brought by the D.C. Disciplinary Counsel, who heads up D.C.'s Office of Disciplinary Counsel ("ODC"). These charges have been brought before the Board and its subcomponents (sometimes called "adjuncts" herein). ODC—with the acquiescence of the Board thus far—is seeking to review the propriety of advice Respondent is alleged to have prepared and delivered, ***while a federal officer***, though that advice was never presented to any court or other body that could be characterized as a tribunal. Instead, the alleged advice was given exclusively within the confines of the Justice Department and/or inside the sanctum of the Oval Office of the White House, where it was put to the President of the United States

himself.

3.  No State possesses the power to supervise the internal operations and deliberations of any branch of the federal government. The Supremacy Clause and federal officer removal statutes, 28 U.S.C. §§ 1442 and 1445, ensure the preservation of the federal structure by vesting Article III courts with the jurisdiction and responsibility to adjudicate the federal statutory claims, constitutional claims, and other defenses of individuals entrusted with federal authority. In this case, it is the District of Columbia government, a creature of Congress created pursuant to its plenary powers under the Seat of Government Clause, U.S. Const. art. I, § 17, that claims the power to supervise the internal operations and deliberations of the Executive Branch. This case is, therefore, a direct attack on fundamental principle of separation of powers (instead of federalism, which would apply if a state bar were trying to regulate Respondent's conduct inside the federal Executive Branch). ODC is thus a federal office that traces its power to the Legislative Branch. As an Article I court, the DCCA has no, or at best only limited authority to supervise the conduct of attorneys who conduct the business of the federal government, 28 U.S.C. § 530B, and like Congress itself, the DCCA has no authority whatsoever to discipline a federal counselor to the President based on Disciplinary Counsel's own—or congressional—disagreement with the substance or development of advice and recommendations concerning Department of Justice law enforcement policy. In this case, the charges filed by ODC at the behest of a Senator,

seek both privileged documents and testimony that explore the legal, policy, factual, and political basis for advice that Respondent is alleged to have given to the Acting Attorney General of the United States, to the Principal Associate Deputy Attorney General (the "PADAG"), who at the time was performing the duties of the Deputy Attorney General, and, most importantly, to the President of the United States.

4.  Accordingly, ODC has no jurisdiction to intrude upon, politicize, or second-guess advice given to the President that, under any reading of the D.C. Rules of Professional Conduct, were consistent with Respondent's duties. Nor does it have the authority to use its subpoena power to advance the political agenda of a U.S. Senator who could not muster the votes from his colleagues on the U.S. Senate Judiciary Committee to wield the Committee's own subpoena power.

5.  Any attempt to remand this case should thus be denied. Instead, this case should be adjudicated in a more orderly fashion than has occurred up to this point in the DCCA and its adjuncts. Specifically, the *first test* should be whether the Board even has jurisdiction to entertain the charges against Respondent. Removal is especially necessary because the Board has turned this ordinary practice on its head and determined to hold a factual hearing calling witnesses against Respondent, *even before* the disputed issue of jurisdiction is addressed at the Hearing Committee level of the Board's disciplinary process. Nor has the full Board or the DCCA, an Article I court, addressed jurisdiction. As a result, this case also presents serious separation of

4

powers issues because it is functionally an attempt by Article I bodies to interfere in internal deliberations within the confines of the Article II Executive Branch.

6. Worse yet, the Board has refused to adhere to binding Supreme Court law or even to its own precedent as to the unavoidable need for jurisdictional challenges to be addressed *at the outset of any case*. Instead, the Board is, in essence, relying on an assumption of "hypothetical jurisdiction" to hold a factual hearing prior to establishing the existence of jurisdiction. *Contrast, e.g., Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574 (1999) (threshold jurisdictional questions must be resolved before the merits); *Steel Co.* v. *Citizens for Better Env't,* 523 U. S. 83, 94-95 (1998) (requirement to establish subject matter jurisdiction as a threshold matter is "inflexible and without exception" and, for that reason, the Supreme Court rejected the doctrine of "hypothetical jurisdiction"); *see also UMC Dev. LLC v. District of Columbia*, 120 A.2d. 37, 42 (D.C. 2015) (standing is a matter posing "a threshold jurisdictional question which must be addressed prior to and independently of the merits of a party's claim.").

7. Undersigned counsel have largely left unchanged the caption of the case as it appears in Board proceedings in this Notice of Removal (adding only a line break and a case number), but suggest to the Clerk's Office of this Court that this case would better be recaptioned as "Hamilton P. Fox, III, Disciplinary Counsel, Petitioner v. Jeffrey B. Clark, Respondent." On that basis, Mr. Clark as Respondent and Mr. Fox as Petitioner

are collectively referred to as the "Parties" below.

**Background and Procedural Requirements**

8.  Jeffrey B. Clark is Respondent in the matter currently styled "*In the Matter of Jeffrey B. Clark, Respondent,*" pending (prior to removal) in the DCCA's Board and its chosen Hearing Committee Number Twelve. The matter bears these case numbers: D.C. Board of Professional Responsibility Docket No. 22-BD-039 and No. 22-BG-059, and relates to Disciplinary Docket No. 2021-D193 (collectively, the "Deemed-State Court Action").[1]

9.  ODC filed its "Specification of Charges" ("Charges") on July 19, 2022, serving them on Respondent via a neutral process server on July 22, 2022, based on an agreement between ODC and undersigned counsel. However, at all times prior to September 15, 2022, the Board lacked jurisdiction over the matter because ODC had brought a

---

[1] The District of Columbia is not a "State." However, it **can sometimes be** deemed the equivalent of a "State" for certain purposes, *i.e.,* when Congress explicitly so provides. And Congress has so provided here as to the exercise of removal jurisdiction. *See* 28 U.S.C. § 1442(d)(5) (defining the District as a State for removal purposes); *see also* 28 U.S.C. § 1451(2) (same). We flag this point because it will become important, **by contrast**, that Congress's authorization for the substantive application of state ethics rules to members of state bars actually **does <u>not</u> define the District as a "State."** This means that D.C. court actions concerning attempted discipline of Justice Department attorneys are removable to this Court but—as we will show in a forthcoming motion to dismiss to be filed at the appropriate juncture after any disputes over removal jurisdiction are first resolved—local D.C. courts possess no delegated federal authority to discipline Justice Department attorneys. And that lack of authority is especially apparent as to attempts to exercise District disciplinary power over lawyers who have not even appeared in front of such a local court in the ordinary course of litigation, as is true of Respondent here.

pending motion to enforce an investigative subpoena in the DCCA against Respondent on February 3, 2022. *See* Exh. B-6. As a result, exclusive jurisdiction lay only in the DCCA prior to the time that appellate matter concluded and the investigative subpoena dispute was mooted (*i.e.*, during the whole period from February 3, 2022 to September 15, 2022). *See In re Confidential (J.B.C.)*, No. 22-BS-0059 (D.C.) (filed Feb. 3, 2022). Thus, the February 3 subpoena action neither (1) was a "case" or "criminal prosecution" within the meaning of 28 U.S.C. §§ 1441, 1442, 1446, or 1455 because it was at a ***pre-case/pre-prosecution*** investigative stage under Chapter 2 (Investigations), Board Rules 2.1 through 2.19; nor (2) was it a removable subpoena because the investigative-stage subpoena was never properly served, despite multiple fumbling attempts by ODC to try to do so.[2]

10. For these reasons, the Charges were removable no earlier than September 15, 2022, when the DCCA dismissed the pending subpoena enforcement action as moot, returning jurisdiction to the Board for the first time since February 3, 2022.

11. This Notice of Removal is therefore timely on multiple grounds, as described in the next several paragraphs. Recognize at the outset that the federal officer removal statute itself, 28 U.S.C. § 1442, does not specify a time limit for removal. As a result,

---

[2] Note, however, that a new ***post-investigation*** subpoena was served very recently—on October 6, 2022. As a result, this Notice of Removal is plainly timely for the reasons given below, even assuming the removal clock began to count down on October 6, 2022, since today is only October 17, 2022.

when federal officer cases are removable depends on whether the prosecution or case against the federal officer is a civil case, a criminal case, or a hybrid of the two.

12. First, this action (being in-part criminal) is timely removed pursuant to 42 U.S.C. § 1455(b)(1) (emphasis added), which provides as follows:

> A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, ***or at any time before trial***, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

13. There is no analogue to an "arraignment" in the District's disciplinary process, so that 30-day period referenced in Section 1455(b)(1) is wholly irrelevant here.[3] This removal is thus timely under Section 1455(b)(1) because no trial has yet occurred and thus this is indisputably a pretrial removal.

14. Additionally, even if this removal were somehow untimely under Section 1455(b)(1) (which it is not), Respondent hereby pleads that good cause can be shown to allow this removal at this time. This local law attempt to discipline internal Executive Branch legal advice, including that presented to the President of the United States, is

---

[3] Neither Section 1455 nor Section 1451 (containing generally applicable definitions to Title 89 of Title 28 of the United States Code, where the removal statutes are housed) defines the term "arraignment." BLACK'S LAW DICTIONARY defines "arraignment" as "The initial step in a criminal prosecution whereby the defendant is brought before the court to hear the charges and to enter a plea." Mr. Clark was ***not*** brought before the Hearing Committee or before any other DCCA body to enter a plea or hear the charges, ergo no arraignment exists.

historically unprecedented (as Mr. Fox himself concedes, *see infra* at ¶ 69). How Section 1455(b)(1) and Section 1442 fit together is also not a subject that has generated very much case law.[4] As other facts and procedural history pleaded herein demonstrate, Respondent, through his counsel, removed this case only after the local bodies subordinate to the DCCA refused to even address whether they possessed subject matter jurisdiction over this matter before insisting upon a factfinding trial (called a "hearing").[5] It is still very early in this case and with a January 9, 2023 start date currently being ordered for such a trial/hearing by the Hearing Committee, there is thus "good cause" to deem this removal as timely within the meaning of Section 1455(b)(1).

15. As to the removal of subpoenas from state court (or deemed equivalents), 42 U.S.C. §

---

[4] Undersigned counsel found only three cases in Westlaw where Section 1455(b)(1) could be found within 30 words of Section 1441! (Boolean search). And none of them were a valid Section 1442 removal since many non-federal officer defendants wrongly think (or attempt) to use Section 1442 as a basis to get out of state court. Counsel is thus unaware of any authority that explains how Section 1442 civil removals (triggering Section 1446's applicability) should interface with Section 1455(b)(1). This is likely because hybrid criminal-civil removals are rare.

[5] On information and belief, it rare for ODC to bring disciplinary actions first, in lieu of waiting for the completion of other substantive proceedings, especially ones currently underway. Yet here, ODC, the Hearing Committee, and the Board have rushed to set a hearing to commence on January 9, 2023, refusing to wait for resolution of any of the following: (1) proceedings in and a report from the House January 6 Select Committee, (2) a potential federal criminal investigation involving DOJ's Office of Inspector General, or (3) proceedings before a Fulton County, Georgia Special Grand Jury. *See* Exh. A-49 (denying Respondent's motion to defer the Charges pending resolution of at least some of those matters).

1446(g) addresses the issue of timeliness and provides that Section 1455(b)(1) "is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding." And, as noted above, this Notice of Removal was filed within 30 days of email service of the October 6, 2022 subpoena, thereby providing yet another basis for timeliness.

16. In the alternative, even if this case were exclusively considered a civil case, removal would still be timely because this Notice of Removal has been filed within 30 days after the concurrence of two events, both of which were joint prerequisites to removal: (a) the filing of the Charges at the Board level (standing alone, a legal nullity while the DCCA wielded exclusive jurisdiction over Respondent); and (b) the reacquisition of jurisdiction by the Board over the Charges against Respondent, which occurred only when the DCCA issued its mootness order on September 15, 2022 (thereby ending the Charges' status as a nullity prior to that point). Specifically, conceived of as a civil case, this removal is timely for these reasons under 28 U.S.C. § 1446(b)(3), based on the 30-day time period (computed pursuant to Fed. R. Civ. P. 6(a)(1)(C) and/or Fed. R. Cr. P. 45(a)(1)(C)) running from the September 15, 2022 date of the DCCA mootness order. For this judicial order constituted the "other paper from which it may first be

ascertained that the case is one which is or **has become** removable."[6] (Emphasis added.)

17. Also in the alternative, under 28 U.S.C. § 1446(b), removal is timely (as to the entire action, or at least as to a newly filed and served subpoena, which is removable pursuant to 28 U.S.C. § 1442(d)(1)), given the recent issuance and service of a new, Charges-stage subpoena, as explained in greater detail in the next paragraph.

18. On October 6, 2022, Respondent accepted service of a subpoena issued by Disciplinary Counsel, Hamilton P. ("Phil") Fox, III and signed by him that same day. Service by email on that day occurred pursuant to an oral agreement between Mr. Fox and Respondent's attorneys reached at a hearing before a Board Hearing Committee Chair held that same morning.[7]

19. Pursuant to 28 U.S.C. § 1446(a), Respondent's counsel hereby Attaches as Exhibit A hereto a copy of all process, pleadings, and orders served on him in the Deemed-State

---

[6] The 30th day after September 15, 2022 falls on October 15, 2022, a Saturday. Thus, pursuant to the "computing and extending time" rules (which are the same whether this matter is construed as civil, criminal, or a hybrid of the two in nature), the deadline for removal advances to October 17, 2022 (the first Monday after Saturday, October 15, 2022), which is today, the date of removal. *Cf. Hurt v. District of Columbia*, 869 F. Supp. 2d 84, 86 (D.D.C. 2012) ("A motion for remand must be made 'within thirty days after the filing of the notice of removal.' 28 U.S.C. § 1447(c). The deadline for such a filing extends to the earliest day that is neither a weekend nor a federal holiday. Fed. R. Civ. P. 6(a).").

[7] The thirtieth day after October 6, 2022 is November 5, 2022 (a Saturday), and thus removal of this action, or at the very least the October 6 subpoena, would be timely under the applicable time-computation rules until **November 7, 2022 (a Monday)**, leaving an ample 21 days still on the removal clock, given that today is only October 17, 2022.

Court Action. The Board does not maintain a docket sheet accessible through an electronic service like Pacer (though the Board kindly supplied us with its "rough" internal docket sheet, *see* Exh. A-1). Hence, if undersigned counsel has inadvertently missed making exhibits herein any filings in the Deemed-State Court Action, we remind the Court of 28 U.S.C. § 1447(b), which authorizes this Court to issue a writ of certiorari to the Board (which serves as an adjunct of the DCCA) to cause all records and proceedings before it in this matter to be "brought before" this Court.

**Brief Summary of Factual Allegations**

20. Disciplinary Counsel Fox has filed charges against Mr. Clark before the Board, which Mr. Fox has repeatedly emphasized operates as part of the DCCA. *See, e.g.,* Exhibit B-20 at 3 (characterizing the Board as "an agency of this Court," *i.e.,* the DCCA). Mr. Fox is seeking to investigate and penalize Respondent's discretionary actions as the Assistant Attorney General over two DOJ Divisions in the rough time frame of December 2020 to January 3, 2021, and to uncover the research and facts on which Mr. Clark relied on while in office to make legal policy recommendations to the Acting Attorney General of the United States, to the Principal Associate Deputy Attorney General (the "PADAG"), then performing the duties of the Deputy Attorney General, and, most importantly, to the President of the United States. Those recommendations are pleaded in the Charges to be housed in a document called the "Proof of Concept Letter" that is claimed to have been circulated by Respondent to the Acting Attorney

General and the PADAG. Its contents eventually became available to the White House Counsel and the President of the United States, and were later anonymously leaked to the *New York Times* in late January 2021 by persons unknown to the Respondent.  A copy of the Charges is attached as Exhibit A-2.

21. The new subpoena seeks production of United States Department of Justice records, including emails, documents, witness statements, notes concerning internal Justice Department investigations, and other information relating to Respondent's performance of his official duties as a double Assistant Attorney General. This subpoena, again dated October 6, 2022, is attached as Exhibit A-54.

22. The deeply federal nature of this action is palpable in many respects. For purposes of this Notice of Removal, consider just one point in this vein—that Disciplinary Counsel has indicated he will call the former Acting Attorney General Jeffrey Rosen and former PADAG Richard Donohue. This triggers the complex *Touhy* process, unresolved claims of executive, investigative, deliberative-process, and attorney-client privileges, as well as other significant constitutional matters, including the First, Fifth, and Sixth Amendment defenses raised by the Respondent. A copy of Disciplinary Counsel Fox's statement of his intent to call Mr. Rosen and Mr. Donohue is attached as a hearing transcript (Exh. A-53 at 16:21-22). And a copy of Respondent's Answer raising a host of defenses is attached as Exhibit A-21.

23. Moreover, in order to mount an effective defense **on the facts**, should that become

necessary, Respondent will likely call witnesses who are themselves entitled, pursuant to 28 U.S.C. § 1442(d)(1), to remove proceedings, relating to the validity of any subpoenas issued to them, to federal court. Their testimony will also trigger the *Touhy* process, similar potential privilege claims, and a need to adjudicate the constitutional and statutory rights of such subpoenaed witnesses.

24. The gravamen of the Charges filed by Mr. Fox is that Respondent "attempted to engage in conduct involving dishonesty" (in other words, 'attempted to lie') to his superiors (*see* Exhibit A-2 at 9) about the status of 2020 election investigations up to that point at the Justice Department—something that is inherently illogical because that is a topic they possessed more information about than Respondent did in late December 2020. *See also* Answer, Exh. A-21 (Twenty-Ninth Defense referencing that "Messrs. Rosen and Donoghue would not share any DOJ investigative information with Respondent").

25. Worse yet, Mr. Fox's allegations have been evolving. He has shifted from his original argument that the Proof of Concept Letter was an "attempt to lie" to the very different theory that the letter warrants discipline because Respondent unlawfully "persisted" in requesting permission to send the letter after his Justice Department superiors rejected that approach for the first time. *See* Disciplinary Counsel's Omnibus Response to Respondent's September 1, 2022 Pleadings, Exh. A-30 at 3. Indeed, Mr. Fox's argument has, even more recently, ***evolved a second time***, since in response to

14

questions from the Board's Hearing Committee Chair about where the legal line on unlawful persistence lay that Mr. Clark allegedly crossed, Mr. Fox pivoted to arguing for the first time on October 6, 2022 that the unethical nature of Mr. Clark's conduct was actually that he threatened Messrs. Rosen and Donoghue with replacement if they did not authorize the Proof of Concept Letter to be sent to the Georgia Legislature. *See* Transcript of Oct. 6, 2022 virtual hearing, attached as Exhibit A-53, at 40:7-21 & 41:4-11. The Charges do not give notice that the two new theories will be pursued.

26. Most recently, ODC issued the October 6, 2022 new subpoena referred to above and the Hearing Committee Chair issued a schedule to govern the lead up to a factual hearing (again, to be held without any ruling on Respondent's position that jurisdiction does not exist in the DCCA or its adjuncts). *See* Exh. A-53 at 10:10-11:13. That schedule is now mooted by removal because the schedule applies to actions before DCCA components that can no longer proceed to adjudicate this case and which have no or very uncertain analogues as applied to this District Court constituted here by one District Judge.

27. Other than attending to any disputes about removal jurisdiction, Respondent submits that the Court should call a status conference where the Parties can make proposals as to how to govern the removed case—including on the issue of a renewed motion to dismiss this action for lack of subject matter jurisdiction by the DCCA and its

adjuncts; as well as on the issues of whether to hold this matter in abeyance, quash the new subpoena, how to frame discovery, when and how privilege disputes are resolved, and the like.

**Brief Procedural History Summary**

28. Disciplinary Counsel Fox began the investigation leading to the Charges and the recent subpoena attached as Exhibits "A-2" and "A-54," respectively, at the behest of United States Senator Richard Durbin, Chair of the Senate Judiciary Committee. Senator Durbin alleged that the District of Columbia Bar should investigate whether Respondent's alleged policy recommendations and efforts to argue their merits with his superiors and persuade the President of the United States violated various provisions of the D.C. Rules of Professional Conduct. A copy of the complaint letter filed by Senator Durbin in his individual capacity with ODC is dated October 7, 2021 and is attached as Exhibit B-1.[8] Senator Durbin's letter was ***not*** filed on behalf of the Senate Judiciary Committee, or even all Senate Judiciary Committee Democrat members, but only on his own behalf. And, as noted above, the Senate Judiciary Committee never issued a subpoena to Respondent for his testimony.

29. Several complaints filed by other entities against Mr. Clark were rejected by the ODC

---

[8] Exhibit B consists of supplemental exhibits from the ODC investigative stage. We have included them as part of the Notice of Removal only out of an abundance of caution because investigation is itself neither a removable prosecution, nor a removable civil case.

Mr. Fox leads on the grounds that these complaints were not supported by personal

knowledge.[9] For instance, the pressure group calling itself Lawyers Defending

American Democracy ("LDAD") filed such a complaint. *See* DC-Ethics-Complaint-

Against-Jeffrey-Clark.pdf (ldad.org) (last visited Oct. 17, 2022). But that complaint

was not docketed. *See also, e.g.*, Letter, Angela Walker, Staff Attorney, ODC, to Roger

J. Bernstein, Esq., (Apr. 7, 2021) ("When there is insufficient evidence, we do not

docket a complaint. When the complainant has no personal knowledge of the matter,

which appears to be the case in this instance, we also decline to docket the complaint

…. We have determined not to docket your complaint."), *available at*

https://drive.google.com/file/d/1XzpSDIPAod46n1G-EqJeafMuShyMdT6O/view (last

visited Oct. 17, 2022).

30. However, on that very same basis, Senator Durbin, a member of the Legislative

Branch, similarly possessed no personal knowledge of Respondent's conduct inside

the separate Executive Branch. Mr. Clark rendered no advice to Senator Durbin and,

indeed, has never worked for Congress. Yet Mr. Fox inexplicably elected to docket

and proceed with the Durbin complaint anyway. Additionally, note that no complaint

---

[9] *See* Jacqueline Thomsen, *These Ethics Complaints Over Jeffrey Clark's Election Conduct Are Running Into Issues in DC*, NATIONAL LAW JOURNAL (Oct. 26, 2021), *available at* https://www.law.com/nationallawjournal/2021/10/26/these-ethics-complaints-over-jeffrey-clarks-election-conduct-are-running-into-issues-in-dc/?slreturn=20220914121428 (last visited Oct. 17, 2022).

was filed against Mr. Clark by the President of the United States, the former Acting

Attorney General, or the former PADAG.

31. Mr. Fox commenced an investigation under D.C. Bar Rule XI, seeking on November

22, 2021 to discover via subpoena directed at Mr. Clark the contents of Respondent's

DOJ deliberative files and correspondence. Strangely, Mr. Fox did not seek such

material from DOJ directly. Why Mr. Fox presumes that Mr. Clark has immediate

access to his DOJ files even though he is a former and not a current DOJ official is not

clear.

32. Under D.C. Bar rules, ODC investigations are to remain confidential.  Due to the fact

that Mr. Fox never attempted in December 2021-January 2022 to personally serve Mr.

Clark with physical subpoena papers, Mr. Fox's letter and subpoena (including all

attachments) to Mr. Clark (Exh. B-6 at Exh. A), though dated November 22, 2022, were

not received by him until January 6, 2022. The delay was caused by snafus involving

ODC emails winding up in spam folders because Mr. Fox or his subordinates used an

Internet dispatch service to act as the email sender, with file access set to expire if the

relevant website service was not visited quickly enough for purposes of downloading

the documents as stored there. In addition to computer problems, receipt of the papers

was also complicated by a serious case of COVID-19 that Mr. Clark had contracted in

December 2021, which required the administration of monoclonal antibodies at a

hospital near his house. This meant there were periods were Mr. Clark was not

regularly checking email or, after the spam problem first came to light, looking for emails from the Internet dispatch service in his spam folders.

33. As was his right, in addition to reception, Respondent demanded that service of the November 2021 subpoena be effectuated in accordance with D.C. Superior Court Rule 45 (incorporated by reference into the Rules of the District of Columbia Bar by Rule XI, § 18(a)).

34. Respondent objected to the subpoena by letter dated January 31, 2022, asserting his Fifth Amendment right not to be compelled to testify.[10] He also maintained that the subpoena "seeks privileged information, seeks information that exceeds constitutional limitations or is otherwise improper" under D.C. Bar Board of Professional Responsibility Rule 2.9(a), and preserved his right to litigate "novel, complex and difficult Executive Privilege, Separation of Powers, Fifth and Sixth Amendment, and Professional Responsibility issues" necessarily involved when an Assistant Attorney General of the United States makes legal policy recommendations to the Acting Attorney General, the PADAG, and the President of the United States.

---

[10] We maintain that Respondent is innocent of the charges and that it is axiomatic that the Fifth Amendment is not a right that can be claimed only by those who concede guilt. Mr. Clark has been a distinguished member of the D.C. Bar for 25 years and starting in 2001 has been entrusted with multiple office of federal trust and honor. His reputation for probity in federal office or as an officer of the courts (whether during public or private law practice) was never seriously questioned until the intensely contentious political disputes surrounding the 2020 presidential election arose.

A copy of Respondent's objections is attached as Exhibit B-2.

35. On February 3, 2022, Disciplinary Counsel Fox filed, under seal in the DCCA, a Motion to Compel the production of the records and information requested in the November 2021 subpoena.  A copy of the Motion to Compel is attached as Exhibit B-6.

36. Respondent replied, under seal, with a Response to Motion to Compel and Cross-Motion to Quash, Exh. B-11, asserting, among other things, that the District of Columbia Bar did not have jurisdiction to investigate either the content of, or basis for, internal deliberations among officers of the United States and their communications with the President of the United States, and that all such information was covered by a variety of limitations arising under the Constitution and laws of the United States, including Executive Privilege, separation of powers, the First, Fifth and Sixth Amendment, and 28 U.S.C. § 530B.

37. Briefing on the Motion to Compel in the DCCA was complete as of March 14, 2022. Months elapsed without any action by the DCCA.

38. While Disciplinary Counsel's Motion to Compel and Respondent's Response to Motion to Compel and Cross-Motion to Quash were pending before the DCCA, Mr. Fox (apparently impatient with the pace of adjudication on an appellate motion he himself had elected to file) filed the Charges against Respondent, asserting violations of Rules 8.4 (a) and (c) of D.C. Rules of Professional Conduct because Respondent

"attempted to engage in conduct involving dishonesty, by sending the Proof of Concept letter containing false statements," and a violation of Rules "Rules 8.4(a) and (d), in that Respondent "attempted to engage in conduct that would seriously interfere with the administration of justice." Exhibit A-2 at 9.

39. On September 15, 2022, the DCCA filed an order unsealing all of the records, holding that, "because disciplinary proceedings have been initiated the pending [investigative-stage] subpoena" was no longer operative. It dismissed the Motion to Compel as moot; denied Respondent's Motion to Quash the subpoena; ordered, pursuant to D.C. Bar Rule XI § 18(c) that "that all motions to quash a subpoena must be heard and decided by a Hearing Committee designated by the Executive Attorney;" and held that the power to issue subpoenas under D.C. Bar Rule XI § 18(a) rests with either Disciplinary Counsel or a member of a Hearing Committee. A copy of the DCCA Order dated September 15, 2022 is attached as Exhibit A-47.

40. Respondent filed a Motion to Defer on August 29, 2022 (Exhibit A-16), an Answer on September 1, 2022 (Exhibit A-21), and a Motion to Dismiss on September 1, 2022 (Exhibit A-20). The Motion to Defer was denied on September 27, 2022 (Exhibit A-49).

41. On September 29, 2022, the Chair of the Hearing Committee ruled that he did not have authority under the Board Rules and the precedents of the District of Columbia Court of Appeals to rule on Respondent's Motion to Dismiss, but is instead required to include a report and recommendation thereon *only after* an evidentiary hearing on

the merits. A copy of the Hearing Committee Order dated September 29, 2022 is attached as Exhibit A-50 at 2.

42. Disciplinary Counsel Fox declined by email dated October 3, 2022 to join Respondent in seeking judicial review of the subject matter jurisdiction issue so that it could be resolved before potentially consuming wasted resources on an unnecessary trial. A copy of Disciplinary Counsel Fox's email is attached as Exhibit C.

43. During a scheduling conference held on Thursday, October 6, 2022, Respondent asked that the Hearing Committee Chair recommend that the Board of Professional Responsibility join in seeking judicial review of the subject matter jurisdiction issue.[11] The Chair of the Hearing Committee declined and reaffirmed his prior decision. *See* Transcript of Oct. 6, 2022 virtual hearing, attached as Exh. A-53; *see id* at 10:10-11:13.

44. Short of filing an extraordinary writ with the DCCA to establish that jurisdiction does not exist to allow ODC to file and pursue the Charges against Mr. Clark, Respondent had no choice but to remove this case to this Court so that he could obtain threshold review of the jurisdictional issue, which is not only mandated by binding Supreme Court precedent but constitutes the only orderly way for litigation to proceed. To hold

---

[11] Respondent undertook this step because DCCA disciplinary cases sometimes see all of the ODC, the Board majority, and any Board minority represented by **separate** lawyers. *See, e.g., In re Artis*, 883 A.2d 85 (D.C. 2005) (reflecting separate representation of both the Board and "Bar Counsel," the prior title for the ODC position now known as "Disciplinary Counsel.").

a factfinding hearing *before* jurisdiction is established is to put the cart before the horse. It also risks creating a media spectacle, exposing internal Executive Branch deliberations that should have remained confidential at all times under prevailing lawyer ethics rules common to all bars, and the resulting prejudice to Respondent of a public hearing on a matter of intense political debate. ODC should not be permitted to make the process the punishment.

45. Respondent puts ODC, the Board, and its Hearing Committees on notice, however, that if, for some reason this case is ultimately remanded, even after appellate review, Respondent reserves his right to challenge the malconstructed sequencing the DCCA has put in place for its discipline cases (wherein factual hearings inefficiently go before the resolution of jurisdictional disputes) via the filing of an extraordinary writ or the like in the DCCA shortly after remand.

## **Removal Jurisdiction Exists Over This Case Pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442.**

46. The first basis for removing the Deemed-State Court Action to this Court arises because Respondent is being assailed for actions taken while he was a federal officer. As a result, this matter falls squarely within the removal jurisdiction of 28 U.S.C. § 1442, regardless of the nature of the relevant cause of action brought against Respondent or how any such action is styled by its plaintiff or proponent. *See id.* § 1442(a)(1) (allowing removal of actions filed against a federal officer "in an official *or* individual capacity") (emphasis added).

47. Section 1442(a)(1) provides as follows:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

48. This case can clearly be seen as either a "civil action or criminal prosecution." *See, e.g.*, *In re Artis*, 883 A.2d at 101 (referring to "a disciplinary case, which is 'quasi-criminal' in nature"). Indeed, the main holding of *In re Artis* is that the anti-compelled testimony clause of the Fifth Amendment to the U.S. Constitution applies to disciplinary proceedings like this one.

49. Moreover, in reality, ODC's Charges trigger a criminal-civil hybrid. *See* BLACK'S LAW DICTIONARY (defining "quasi" to carry a number of meanings: "[s]eemingly but not actually; *in some sense or degree; resembling; nearly*.") ("emphasis added"). Since it is obvious that *In re Artis*, by providing some protections afforded in the criminal context, is *not saying* that disciplinary proceedings are "not actually" criminal to any degree, the most applicable meanings of "quasi" in *Artis* are clearly "in some sense or degree; resembling; nearly."

50. In other words, District disciplinary proceedings are *to some degree* criminal, meaning

that their remaining degree is civil and thus opening up to Respondent the use of both civil and criminal removal statutes.

51. **For purposes of Section 1442**, this case was "commenced in a State Court." The DCCA is clearly a court of the District of Columbia. And Section 1442(d)(5) defines the "District of Columbia" and certain other federal entities as "States." 42 U.S.C. § 1442(d)(5). The Board of Professional Responsibility is, in turn, part of the DCCA. *See* D.C. Bar Rule XI, § 1(a) (referring to "the disciplinary jurisdiction of this Court and ***its Board*** on Professional Responsibility") (emphasis added). The DCCA thus clearly regards the Board as a possessive creature of that court itself. In turn, the Board appoints the members of its Hearing Committees, such as Hearing Committee Number Twelve, which has been assigned Respondent's case. And D.C. Bar Rule XI, § 4(e)(4), "Board of Professional Responsibility" (italics in original) provides as follows:

> The Board shall have the power and duty to …. To appoint two or more Hearing Committees, each consisting of two members of the Bar and one person who is not a lawyer, and such alternate Hearing Committee members as may be required, who shall conduct hearings under this rule and such other hearings as the Court or the Board may direct, and shall submit their findings and recommendations, together with the record, to the Board or, if required under this rule, to the Court.

Clearly, both the Board and the Board's Hearing Committees are adjuncts of the DCCA. All of these bodies, taken together, constitute either the DCCA (a court proper) or arms of that court.

52. This case is "against or directed to" Respondent, 42 U.S.C. § 1442(a), who was, at the

time of alleged unethical conduct, "an[] officer . . . of the United States or of any agency thereof." *Id.* at § 1442(a)(1). As noted above, Mr. Clark was a double Assistant Attorney General at the United States Department of Justice, beginning (as to one of his offices) on November 1, 2018 and ending January 14, 2021 (as to both of his offices).

53. Section 1442 federal officer removal exists when the underlying conduct occurs while a defendant is in federal employ. *See, e.g., Williams v. Lockheed Martin Corp.*, 990 F.3d 852 (5th Cir. 2021) (exercising civil removal jurisdiction over a former employee plaintiff exposed to asbestos while working for the predecessor corporation to Lockheed Martin, where that employee helped to build federal government rockets for NASA); *Kentucky v. Long*, 837 F.2d 727 (6th Cir. 1988) (exercising removal jurisdiction as to a criminal action filed in 1986 against a former FBI agent, relating to actions undertaken when he was in federal employ from 1979 to 1981). All that matters is that the actions complained of against Mr. Clark occurred during his federal employment. And surely here, the gravamen of the Charges assails conduct undertaken inside the government from December 2020 to early January 2021, when Mr. Clark was indisputably in federal employ.

54. During this span of time focused on by the Charges, Mr. Clark's conduct has been brought into question "[a] for or relating to any act under color of such office or [b] on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C.

§ 1442(a)(1). Mr. Clark is alleged to have spoken with former President Trump and to have been offered the position of Acting Attorney General. *See* Exhibit A-2, Charges, at ¶ 23. Former President Trump is alleged to have been unhappy with post-election DOJ investigations conducted by others and thus suggested Respondent as someone who could be tasked in this vein. *See id.* at ¶¶ 10-11. Next, as a result of these consultations, ODC alleges that Respondent began to engage in legal research concerning the powers of state legislatures (under the U.S. Constitution). *See id.* at ¶ 12. These are official-duty "acts" that occurred under color of Mr. Clark's federal office. They also relate to potential actions pursuant to DOJ "authority claimed under any Act of Congress for the apprehension or punishment of criminals." 28 U.S.C. § 1442(a)(1). For any ensuing election investigations could have led to federal criminal charges.

55. Respondent has averred a series of federal-law based defenses to the Charges, including defenses based on the doctrines of separation of powers, federalism, the lack of jurisdiction in the DCCA, immunity, the Opinion Clause, the Take Care Clause and numerous other legal provisions and doctrines. *See generally* Exhibit A-21 (Answer advancing 53 substantive defenses, most of which are based on federal law, not local District law).

56. "We must construe the statute liberally in favor of removal, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), and 'we credit the [officer's] theory of the case for

purposes of both elements of' the removal inquiry, [*Jefferson Cty, Ala. v.*] *Acker*, 527 U.S. [423,] 432 [(1999)]." *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 506 (D.C. Cir. 2020) (the two elements being (1) raising a colorable federal defense that (2) relates to any act under color of the removing federal official's office).

57. Additionally, incorporating all of the allegations in all foregoing Paragraphs of this Notice of Removal, federal officer removal jurisdiction exists because of the new subpoena issued to Respondent by ODC on October 6, 2022.

58. 28 U.S.C. § 1442(d)(1) (emphasis added) provides as follows:

> The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, ***including a subpoena for testimony or documents, is sought or issued***. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

59. Here, an October 6, 2022 subpoena—principally for documents, but, in the alternative, apparently for testimony—has been issued, permitting the entire action to be removed per the first sentence of Section 1442(d)(1).

60. Additionally, the second sentence of Section 1442(d)(1) does not apply because there is "[an]other basis for removal." Namely, the next basis for removal covered below concerning 28 U.S.C. §§ 1331 (and the doctrine of complete preemption) & 1441.

**Original Jurisdiction Exists Pursuant to the Federal Question Statute (28 U.S.C. § 1331) Under the Doctrine of Complete Preemption and Thus Civil Removal Jurisdiction Also Exists Pursuant to 28 U.S.C. § 1441.**

61. Disciplinary jurisdiction by the DCCA and its adjuncts over Respondent's conduct is

*not* self-executing (especially where Respondent did not appear, as relevant to the Charges, to litigate before any local court of the District). Instead, a federal statute is required to *even potentially* authorize such local disciplinary jurisdiction.

62. The federal statute in question, 28 U.S.C. § 530B(a) (emphasis added), provides as follows: "An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, *to the same extent and in the same manner as other attorneys in that State*."

63. The problem for ODC is that *the District of Columbia is <u>not</u> a "State."* Hence, Section 530B(a) confers no authority on the DCCA and its adjuncts to try to discipline the conduct of Respondent. Federal statutes *sometimes deem the District to be treated as if it were a State*, but there is no such special directive in Section 530B, or indeed anywhere in Chapter 31 of Title 28 of the United States Code (which collects statutes involving the Attorney General and DOJ). By contrast, and also under the canon of *expressio unius est exclusio alterius* (the expression of one alternative implies the exclusion of all others), the text of the first and primary removal statute invoked to support this Notice of Removal itself explicitly confers "deemed State" status on the District. *See* 28 U.S.C. §§ 1442(d)(5)-(6) & 1451(2). *See, e.g., TVA v. Hill*, 437 U.S. 153, (1978) (a grouping of hardship exceptions to the applicability of the Endangered Species Act was exclusive). But when one turns away from removal issues to the

*substantive issue* of disciplinary authority, there is no "deemed State" status conferred on the District. Instead, under Section 530B(a), the disciplinary delegation occurs *only to "States" full stop,* whereas the grouping to which federal officer removal jurisdiction applies is a *different grouping* of "States" and deemed States, *i.e.,* States together with (1) the "District of Columbia," (2) "United States territories and insular possessions, and [(3)] Indian country." 42 U.S.C. § 1442(d)(5).

64. Congress thus knows how to deem the District a "State" when it wants to do so. It clearly wanted to do so for purposes of removal but, equally clearly, it did *not* want to do so as to the topic of attorney discipline. For Sections 1442(d)(5) and 530B(a) cannot be read to apply to *interchangeable* groupings of jurisdictions granted disciplinary power over Justice Department attorneys. The language of the two statutes is too disparate to even attempt to do so.

65. For these reasons, the DCCA is entirely fenced out of the federal grant of authority to regulate Justice Department lawyers engaged in internal deliberations. Therefore, that area of regulation is, in short, completely preempted.

66. "In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a defense to the application of state law; rather, it replaced state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum." Wright, Miller & Cooper, 14B FEDERAL PRACTICE &

PROCEDURE § 3722.1 at 512 (3d ed. 1998). Here, the rationale for complete preemption is even stronger because regulating Justice Department lawyers is inherently a federal role—and not, in the absence of a clear delegation (absent here), a state role. Simply put, Section 530B(a) never textually delegates to the District any power to discipline Justice Department Attorneys, especially when they are not interfacing with the local courts of the District. State/local law here was not displaced. No, it was never made applicable to District disciplinary regulation in the first place.

67. ODC may well point to Section 530B(b), which grants rulemaking power concerning Section 530B to the Attorney General. A federal rule resulting from that delegation does exist and it does purport to *expand* Section 530B's reach to the District. *See* 28 C.F.R. § 77.2(i). But Respondent's position is that this rule is *ultra vires* in violation of Step One of *Chevron* because it attempts to vary the plain text of Section 530B(a), which agencies lack the power to do. *See Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 843 n.9 (1984). Rulemaking cannot supply the failure to grant DOJ the power to make the statute apply District ethics laws to DOJ lawyers.

68. Additionally, Section 77.2 has an important caveat, which *independently* places this case beyond the jurisdiction of ODC, the DCCA, and the DCCA's other adjuncts: "Nor does the phrase include any jurisdiction that would *not ordinarily apply* its rules of ethical conduct to particular conduct or activity by the attorney." 28 C.F.R. § 77.2(j)(2). This provision carries out Section 530B(a)'s caveat that ethics regulation, even where

it is delegated to the States (not the District) apply only "*to the same extent and in the same manner as other attorneys in that State*."

69. And Mr. Fox recently conceded, in an email exchange undersigned counsel initiated to try to ascertain the proposed sanction he is seeking against Respondent, that this case is not one in the ordinary course, being conducted "to the same extent and in the same manner" as other disciplinary matters ODC handles. This is because Mr. Fox recognizes that *there has never been a case like this before* (a key point Respondent's counsel has argued repeatedly to ODC, the Hearing Committee, the Board, and the DCCA). *See* Exhibit D, Email from Phil Fox to Charles Burnham, *et al.* (Oct. 6, 2022) (emphasis added) ("I don't think there is *any comparable conduct*, which means this is something that I will need to dwell on."). If there is no comparable conduct, then the attempt to discipline such conduct is not a matter "ordinarily" brought up for District lawyer discipline and so it falls outside even an *ultra vires* regulation that tries to make the square peg of Section 530B's authorization to "State" disciplinary proceedings apply to the round hole of "District" disciplinary proceedings. Similarly, and even more importantly, the lack of comparable cases means that this disciplinary matter cannot be one where ODC is proceeding "*to the same extent and in the same manner as* [it pursues discipline concerning] *other attorneys in that State*" (even assuming, incorrectly but *arguendo*, that the District can function as a "State" under

32

the statute). 28 U.S.C. § 530B(a) (emphasis added).[12]

70. 42 U.S.C.  § 1441(a) provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

71. As explained above, District disciplinary proceedings are criminal-civil hybrids. As such, Section 1441(a) applies here, for this proceeding is, at least in part, a "civil action."

72. Section 1451(2) deems the District to be a "State" "for purposes of this chapter" (*i.e.*, Chapter 89 of Title 28 of the United States Code). And Section 1441(a) is part of Chapter 89. As such, this in-part "civil action" is pending in "a State Court," within the meaning of Section 1441(a) as supplemented by Section 1451(2).

73. The District Court has original federal question jurisdiction over this in-part "civil

---

[12] The fact that ODC admits that its case against Mr. Clark is unprecedented distinguishes it from cases where, for example, Assistant United States Attorneys ("AUSAs") have faced discipline. *See, e.g. In re Andrew J. Kline*, 11 A.3d 202 (D.C.  2015) (discipline case involving discovery violations by an AUSA). Without conceding that ODC can reach such conduct under Section 530B (a question not presented here), we recognize that ODC does "ordinarily apply" its rules to attorneys who appear before D.C. courts. However, as the ODC has admitted, it does not "ordinarily apply" its rules of ethics to non-court, purely internal advice provided by high-ranking DOJ lawyers to their superiors up to and including the President of the United States. Thus, whether on the basis of a pure-text reading of Section 530B(a) or, even assuming the validity of Section 77.2(i), the Charges brought here are beyond ODC's powers.

action" because the attempted District lawyer discipline at issue here is completely preempted as it falls outside the authorization of Section 530B(a) (and Section 77.2(j)(2)).

74. The term "defendant" is not defined in Section 1441(a) but Respondent is clearly placed by District law in a defensive posture as to the Charges being advanced by ODC, even though District procedural law refers to him by a different term.

**Notice of Position on Ability of the DCCA, Board, and Any Hearing Committee to Proceed Further on This Matter Now That Removal Has Occurred**

75. As noted above, this matter is a criminal-civil hybrid. As such, it must be governed by a harmonizing the procedural removal statute for criminal actions (Section 1455) with the procedural removal statute for civil actions (Section 1446).

76. Section 1455(b)(3) provides that "The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded." 42 U.S.C. § 1455(b)(3).

77. But Section 1446(d) provides that once notice of removal is filed as to a civil action with the clerk of the "State court" and notice is given to adverse parties "the State court shall proceed no further unless and until the case is remanded." 42 U.S.C. § 1446(d).

78. The only way to harmonize those two statutes, both of which apply to this removal, is for the State Court—here the *Deemed*-State Court (*i.e.*, the DCCA and its adjuncts)

34

to be precluded from proceeding further with the matter "unless and until the case is remanded." *See, e.g., United States v. Fausto*, 484 U.S. 439, 453 (1988) ("we must engage in the classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination") (cleaned up).

79. Respondent will promptly notify the Court if the DCCA or any of its adjuncts attempt to proceed to the contrary. Any such action would run flatly contrary to the intent of the federal-officer removal statute, which is to shift the locus for adjudicating cases that might imping upon federal officers' powers to an Article III court forum.

**Post-Removal Procedural Matters in This Court**

80. Many complex issues will arise about how to procedurally conduct this case in this Court now that it has been removed, especially because of its hybrid criminal-civil nature. As noted, Respondent's counsel will soon propose a status conference at which both Parties should be heard to address those issues.

81. In the interim, the October 21, 2022 response date for the October 6, 2022 subpoena should be recognized to be suspended until the Court has first determined whether the Charges can survive threshold motions practice, especially on the topic of removal jurisdiction and then on the topic of ODC's subject matter jurisdiction. Both are topics that can be discussed at the proposed status conference.

**Venue and Removal Under 28 U.S.C. § 1441(a)**

82. Venue is proper in this Court pursuant to 28 U.S.C. § 1446(a), as the United States

District Court for District of Columbia is the District in which the State Court Action was pending.

83. This matter is removable under 28 U.S.C. § 1441 as in-part a civil action over which the United States District Court for the District of Columbia has original subject matter jurisdiction under 28 U.S.C. § 1331 and the doctrine of complete preemption.

84. This matter is thus also removable under 28 U.S.C. § 1442 and § 1455 because the Charges are in-part a criminal prosecution that is pending within another jurisdiction (the DCCA), which also falls within the span of the United States District Court for the District of Columbia.

**Effectuation of Removal**

85. Respondent hereby removes this quasi-prosecution case to the United States District Court for the District of Columbia.

86. By filing this Notice of Removal, Respondent expressly consents to the removal.

87. Pursuant to 28 U.S.C. § 1446(a), copies of all pleadings, as well as copies of all process and other papers, including the Charges, on file in the record of the Deemed-State Court Action that are within the possession, custody and control of Respondent are attached as Exhibit A (noting one document not within Respondent's possession).

88. Also, out of an abundance of caution, pre-case/pre-quasi-prosecution documents at the investigative stage have been attached as Exhibit B.

89. The allegations herein were true at the time the Deemed-State Court Action was

commenced and remain true as of the date of filing of this Notice of Removal.

90. Undersigned counsel certifies that a notice of filing this removal, along with a copy of

this Notice of Removal, will be promptly filed with the Board, which will give notice

to its Hearing Committee. Respondent will also serve this filing on opposing counsel.

WHEREFORE, Respondent hereby removes this action to the United States District Court

for the District of Columbia.

Respectfully submitted,

*/s/ Charles Burnham*

Charles Burnham
D.C. Bar 1003464
*Attorney for Respondent*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Notice of Removal (and its accompany exhibits) was hereby filed on October 17, 2022, and that copies of the Notice of Removal were served on the District of Columbia Board of Professional Responsibility, which will give notice to the Chair of Hearing Committee Twelve, and on Disciplinary Counsel Hamilton P. Fox on October 17, 2022 as well. I sign consistent with Federal Rule of Civil Procedure 11.

_/s/ Charles Burnham_

Charles Burnham
D.C. Bar 1003464
_Attorney for Respondent_
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
charles@burnhamgorokhov.com