# EXHIBIT A-2

**DISTRICT OF COLUMBIA COURT OF APPEALS**
**BOARD ON PROFESSIONAL RESPONSIBILITY**

RECEIVED
Jul 19 2022 12:42pm
Board on Professional Responsibility

| | |
|---|---|
| **In the Matter of** | |
| **JEFFREY B. CLARK, ESQUIRE** | **Disciplinary Docket No. 2021-D193** |
| **Respondent** | |
| **A Member of the Bar of the District of Columbia Court of Appeals** | |
| **Bar Number: 455315** | |
| **Date of Admission: July 7, 1997** | |

**<u>SPECIFICATION OF CHARGES</u>**

The disciplinary proceedings instituted by this petition are based upon conduct that violates the standards governing the practice of law in the District of Columbia as prescribed by D.C. Bar Rule X and Rule XI, § 2(b).

Jurisdiction for this disciplinary proceeding is prescribed by D.C. Bar R. XI. Pursuant to D.C. Bar R. XI, § 1(a), jurisdiction is found because:

1. Respondent Jeffrey B. Clark is a member of the Bar of the District of Columbia Court of Appeals, having been admitted on July 7, 1997, and assigned Bar Number 455315.

The conduct and standards that Respondent has violated are as follows:

2. Following the November 3, 2020, presidential election, the United States Department of Justice conducted a number of criminal investigations into

allegations of election fraud and irregularities.

3. These investigations were conducted primarily at the local level by the Federal Bureau of Investigation and the relevant United States Attorney's Offices. The Public Integrity Section of the Criminal Division in the Department was also involved.

4. Richard Donoghue, the Principal Associate Deputy Attorney General in the Office of Deputy Attorney General, monitored these investigations. As a result, he was the official in the Department of Justice who was most knowledgeable about these investigations. Mr. Donoghue kept the Deputy Attorney General, Jeffrey Rosen, and the Attorney General, William Barr, regularly informed as to the progress of the investigations.

5. By December 1, 2020, it was apparent to Mr. Donoghue that there was no evidence of election fraud or irregularities that could have potentially affected the outcome of the 2020 presidential election.

6. On December 1, 2020, and again on December 21, 2020, Mr. Barr publicly announced that there was no evidence of election fraud or irregularities that would have altered the result of the 2020 presidential election.

7. On December 23, 2020, Mr. Barr resigned as Attorney General. Mr. Rosen became the Acting Attorney General. Mr. Donoghue assumed the duties of the Deputy Attorney General.

8. Respondent had been appointed the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice. At all relevant times, because of a vacancy, he also served as the Acting Assistant Attorney General for the Civil Division.

9. As Acting Assistant Attorney General for the Civil Division, Respondent had no involvement in or responsibility for the Department's post-election investigations into allegations of fraud or irregularities.

10. On December 27, 2020, President Donald Trump telephoned Mr. Rosen to discuss various matters concerning the presidential election. Mr. Rosen added Mr. Donoghue to the conversation because he was the most knowledgeable person about the Department's post-election investigations.

11. During that call, the President expressed his unhappiness with the lack of results in the post-election investigations. In that context, he raised Respondent's name as someone in the Department of Justice about whom he had heard good things. In a later telephone conversation that same day with Mr. Donoghue, a Pennsylvania congressman, also raised Mr. Clark's name in the same context.

12. On the morning of December 28, 2020, Respondent asked Kenneth A. Klukowski, a senior counsel in the Civil Division, to research the authority of state legislatures to send unauthorized slate of electors to Congress. Respondent used this research to write a draft letter, referred to as the "Proof of Concept" letter.

13. On the afternoon of December 28, 2020, Respondent emailed the Proof of Concept letter to Mr. Rosen and Mr. Donoghue. In the cover email accompanying the letter, Respondent asked for a briefing from the Director of National Intelligence concerning foreign election interference in the 2020 presidential election.

14. The Proof of Concept letter was addressed to the Georgia Governor, Speaker of the House, and President *Pro Tempore* of the Senate. It recommended that the Governor call the Georgia legislature into special session and argued that if the Governor refused to do so, the legislature had the authority to convene such a session on its own initiative. It was drafted to be signed by Mr. Rosen, Mr. Donoghue, and Respondent.

15. The Proof of Concept letter stated that the Department of Justice had "identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia." This statement was false. The Department was aware of no allegations of election fraud in Georgia that would have affected the results of the presidential election.

16. The Proof of Concept letter stated that the Department of Justice found "troubling the current posture of a pending lawsuit in Fulton County" and the "litigation's sluggish pace.". This statement was false. The Department had no involvement in the Fulton County case and was not concerned by its lack of progress.

17. The Proof of Concept letter stated that the Department of Justice believed "that in Georgia . . . both a slate of electors supporting Joseph R. Biden, Jr., and a separate slate of electors supporting Donald J. Trump, gathered on that day at the proper location to cast their ballots, and that both sets of those ballots have been transmitted to Washington, D.C., to be opened by Vice President Pence." This statement was misleading. The Governor of Georgia had certified a slate of electors to the Electoral College pledged to Joseph Biden, and there was no legitimate alternative slate of Georgia electors pledged to Donald Trump.

18. The Proof of Concept letter stated that the Department of Justice had concluded that the Governor should convene a special session of the Georgia legislature. This statement was false. The Department had not made such a determination.

19. The Proof of Concept letter stated that the Department had concluded that if the Governor refused to convene a special session of the Georgia legislature, the legislature had the authority to do so on its own initiative. This statement was false. The Department had made no such determination.

20. In a little more than an hour after receiving the Proof of Concept letter on December 28, 2020, Mr. Donoghue sent an email, copying Mr. Rosen, informing Respondent that he would not sign the Proof of Concept letter because "'I know of nothing that would support the statement, 'we have identified significant concerns

that may have impacted the outcome of the election in multiple states." Further, "I do not think the Department's role should include making recommendations to a State legislature about how they should meet their Constitutional obligations to appoint Electors."

21.     At around 6:00 PM on December 28, 2020, Respondent met with Mr. Rosen and Mr. Donoghue. They informed Respondent that they would not authorize or sign the letter because it contained false statements. Mr. Donoghue explained that none of the investigations into election fraud or irregularities in Georgia had produced reliable evidence of fraud or other irregularities that could have affected the outcome of the presidential election.

22.     Either at the meeting on December 28, 2020, or in a phone conversation within a day or two of the meeting, Mr. Rosen authorized Respondent to receive a briefing from the Director of National Intelligence. Mr. Rosen and Mr. Donoghue also urged Respondent to contact the United States Attorney for the Northern District of Georgia, who had conducted the investigations into election fraud in that jurisdiction. Mr. Rosen subsequently followed up and provided Respondent the contact information for the United States Attorney, including his cell phone number.

23.     On January 2, 2021, Respondent met with Mr. Rosen and Mr. Donoghue a second time. In this conversation, he informed them that the President had offered him the position of Acting Attorney General, and that he was thinking

about accepting it if Mr. Rosen and Mr. Donoghue were unwilling to send the Proof of Concept letter.

24. In the January 2, 2021, meeting, Mr. Rosen or Mr. Donoghue asked Respondent if he had met with the Director of National Intelligence or the United States Attorney for the Northern District of Georgia. Respondent said that he had met with the Director of National Intelligence and had learned that his office had found no evidence of foreign election interference. Respondent said that he had not telephoned the United States Attorney for the Northern District of Georgia but that he had spoken to someone in Georgia who allegedly had information about election irregularities. At least one of these allegations related to a matter that the United States Attorney had already investigated and had found to be without merit.

25. Mr. Rosen and Mr. Donoghue again refused to send the Proof of Concept letter.

26. On January 3, 2021, Respondent met with Mr. Rosen again. Respondent requested that Mr. Donoghue not be present. Respondent stated that he intended to accept the President's offer to become Acting Attorney General and that he would send the Proof of Concept letter once he assumed the position. He invited Mr. Rosen to serve as his deputy. Mr. Rosen declined.

27. Mr. Rosen informed Mr. Donoghue of Respondent's plans to accept the position and send the Proof of Concept letter. Mr. Donoghue arranged for a phone

call with some of the Assistant Attorneys General. Those on the call agreed that they would resign if Respondent carried out his plan.

28. Mr. Rosen telephoned the White House Counsel and arranged for a meeting with the President. The meeting occurred at approximately 6:00 PM on January 3, 2021, in the Oval Office. Present were the President, Mr. Rosen, Respondent, the White House Counsel, two other lawyers, and Mr. Donoghue who joined shortly after the meeting began.

29. Except for Respondent, all the lawyers argued against appointing Respondent as Acting Attorney General. All but Respondent opposed sending the Proof of Concept letter because it contained false statements. Respondent stated that he would send the Proof of Concept letter if the President appointed him Acting Attorney General.

30. Mr. Donoghue informed the President that if Respondent were appointed, then he should expect that all the Assistant Attorneys General would resign. He stated that he had not had time to consult with the United States Attorneys, but he believed it was likely that a number of them would also resign along with career Department employees. The White House Counsel also threatened to resign. The President decided not to appoint Respondent Acting Attorney General, and the Proof of Concept letter was never sent.

31. Respondent's conduct in Count I violated the following District of Columbia Rules of Professional Conduct:

a. Rules 8.4(a) and (c), in that Respondent attempted to engage in conduct involving dishonesty, by sending the Proof of Concept letter containing false statements; and

b. Rules 8.4(a) and (d), in that Respondent attempted to engage in conduct that would seriously interfere with the administration of justice.

Respectfully submitted,

*Hamilton P. Fox, III*

Hamilton P. Fox, III
Disciplinary Counsel

/s/ Jason R. Horrell

Jason R. Horrell
Assistant Disciplinary Counsel

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501

**VERIFICATION**

I do affirm that I verily believe the facts stated in the Specification of Charges to be true.

_*Hamilton P. Fox, III*_______________
Hamilton P. Fox, III
Disciplinary Counsel

Subscribed and affirmed in the District of Columbia this 29th day of June, 2022.

**DISTRICT OF COLUMBIA COURT OF APPEALS**
**BOARD ON PROFESSIONAL RESPONSIBILITY**

| | | |
|---|---|---|
| **In the Matter of** | : | |
| | : | |
| **JEFFREY B. CLARK, ESQUIRE** | : | **Disciplinary Docket No. 2021-D193** |
| | : | |
| **Respondent** | : | |
| | : | |
| **A Member of the Bar of the District of Columbia Court of Appeals** | : | |
| **Bar Number: 455315** | : | |
| **Date of Admission: July 7, 1997** | : | |

## PETITION INSTITUTING FORMAL DISCIPLINARY PROCEEDINGS

A. This Petition (including the attached Specification of Charges which is made part of this Petition) notifies Respondent that disciplinary proceedings are hereby instituted pursuant to Rule XI, § 8(c), of the District of Columbia Court of Appeals' Rules Governing the Bar (D.C. Bar R.).

B. Respondent is an attorney admitted to practice before the District of Columbia Court of Appeals on the date stated in the caption of the Specification of Charges.

C. A lawyer member of a Hearing Committee assigned by the Board on Professional Responsibility (Board) pursuant to D.C. Bar R. XI, § 4(e)(5), has approved the institution of these disciplinary proceedings.

**D.** ***Procedures***

(1) **Referral to Hearing Committee** -- When the Board receives the Petition Instituting Formal Disciplinary Proceedings, the Board shall refer it to a Hearing Committee.

(2) **Filing Answer** -- Respondent must respond to the Specification of Charges by filing an answer with the Board and by serving a copy on the Office of Disciplinary Counsel within 20 days of the date of service of this Petition, unless the time is extended by the Chair of the Hearing Committee. Permission to file an answer after the 20-day period may be granted by the Chair of the Hearing Committee if the failure to file an answer was attributable to mistake, inadvertence, surprise, or excusable neglect. If a limiting date occurs on a Saturday, Sunday, or official holiday in the District of Columbia, the time for submission will be extended to the next business day. Any motion to extend the time to file an answer, and/or any other motion filed with the Board or Hearing Committee Chair, must be served on the Office of Disciplinary Counsel at the address shown on the last page of this petition.

(3) **Content of Answer** -- The answer may be a denial, a statement in exculpation, or a statement in mitigation of the alleged misconduct. Any charges not answered by Respondent may be deemed established as provided in Board Rule 7.7.

(4) **Mitigation** -- Respondent has the right to present evidence in mitigation to the Hearing Committee regardless of whether the substantive allegations of the Specification of Charges are admitted or denied.

(5) **Process** -- Respondent is entitled to fifteen days' notice of the time and place of hearing, to be represented by counsel, to cross-examine witnesses, and to present evidence.

E. In addition to the procedures contained in D.C. Bar R. XI, the Board has promulgated Board Rules relating to procedures and the admission of evidence which are applicable to these procedures. A copy of these rules is being provided to Respondent with a copy of this Petition.

**WHEREFORE**, the Office of Disciplinary Counsel requests that the Board consider whether the conduct of Respondent violated the District of Columbia Rules of Professional Conduct, and, if so, that it impose/recommend appropriate discipline.

OFFICE OF DISCIPLINARY COUNSEL

BY: *Hamilton P. Fox, III*

Hamilton P. Fox, III
Disciplinary Counsel

OFFICEO F DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
TELEPHONE: (202) 638-1501
FAX: (202) 638-0862