# EXHIBIT A-9

# DISTRICT OF COLUMBIA COURT OF APPEALS

# BOARD ON PROFESSIONAL RESPONSIBILITY

### Under Seal

RECEIVED

Aug 5 2022 4:30pm

Board on Professional Responsibility

In the Matter of

**JEFFREY B. CLARK**

**A Member of the Bar of the District of Columbia Court of Appeals**

**Bar No. 455315**

**Date of Admission: July 7, 1997**

**Disciplinary Docket No.**

**2021-D193**

## REPLY IN SUPPORT OF MOTION FOR
## EXTENSION OF TIME

Comes now Jeffrey B. Clark, Respondent in the above-entitled matter, and submits this Reply in support of his motion for an extension of time to respond to the Specification of Charges filed against him.

Disciplinary Counsel attempts to justify his opposition to the motion for an extension of time with a diatribe against what he has chosen to portray as Mr. Clark's "dilatory tactics."  In fact, any delay going back to service of the original letter of inquiry and subpoena for the production of documents stems directly from ODC's failure to respect the applicable procedural requirements. The attempt to blame Respondent mischaracterizes the facts. In seeking an extension Respondent did not address those topics or invite argument about them, but he is now obliged to respond.

This history will only be briefly reviewed here for it is recounted in detail with supporting affidavits in Respondent's Lodged Motion to Quash filed with the Board on March 15, 2022. The full presentation there, and the supporting affidavits, are incorporated herein by reference.

## I. PROCEDURAL BACKGROUND

### 1. THE FIRST SUBPOENA FOR DOCUMENTS AT THE INVESTIGATIVE STAGE

Disciplinary Counsel attempted to serve a subpoena for documents on the Respondent (the "First Subpoena"). Service of the First Subpoena was defective — and not because of any action by Respondent. It was (*i*) not personally served at all, (*ii*) was not accompanied by the required fee to pay for contingent attendance at ODC's offices if documents were not to be produced on grounds of privilege, (*iii*) the affidavit of service was not certified and signed by the serving adult, and (*iv*) personal service was never waived by counsel or Respondent. Additionally, Respondent did not receive a full copy of the First Subpoena and its attachments, albeit lacking proper service, until January 6, 2022, at which time Respondent, who was at the tail end of recovering from COVID-19, immediately set to work discussing the retention of counsel with his professional responsibility insurance carrier. *See* Lodged Motion to Quash, Exh. B, pp. 27, 53 of pdf)[1]. Ethics counsel,

---

[1] Citations in this filing to exhibits attached to the Lodged Motion to Quash submitted to the Board on March 15, 2022 will be cited as "LMQ, Exh. #, pdf p. #" with the pdf page number referring to the page of the entire pdf ofd the Lodged Motion to Quash submitted to the Board rather than the page number of the exhibit.

once retained and with approval of Respondent's insurer, also began to work on the myriad of legal defenses and issues involved in this case. On the return date of the First Subpoena, counsel for Respondent served ODC with extensive letters objecting to the subpoena. Disciplinary Counsel implies there was something untoward about objecting to the First Subpoena right on the return date, but such a complaint about a timely objection has no legal merit whatsoever. The whole point of the negotiated deadline of January 31, 2022 was that this was the date by which Mr. Clark, through his lawyers, would respond to ODC's subpoena. We do not understand how any obligation to respond sooner could be implied.

After Respondent objected to the First Subpoena on multiple grounds (*see* Letter #1 to ODC on Behalf of Respondent (Jan. 31, 2022) (LMQ Exhibit B, pdf p. 27)) and Letter #2 to ODC on Behalf of Respondent (Jan. 31, 2022) (LMQ Exhibit C, pdf p. 72)), Disciplinary Counsel chose not to confer with us, and instead went immediately to the DCCA and filed sealed Case No. 22-BS-0059 on February 3, 2022 to try to enforce the First Subpoena. Disciplinary Counsel thus took a mere three days to evaluate the extensive battery of legal deficiencies in the First Subpoena (as set out in Letter #1 (LMQ Exhibit B, pdf p. 27) and to Letter #2 (LMQ Exhibit C, pdf p. 72) before rushing into the DCCA.  *See* Disciplinary Counsel's Motion to Enforce Subpoena *Duces Tecum* (LMQ Exhibit D, pdf p. 217).  That case

remains pending at the time of this filing.[3]

### 2.   THE SECOND SUBPOENA FOR DOCUMENTS AT THE INVESTIGATIVE STAGE

Seeking to correct defective service of the First Subpoena, Disciplinary Counsel undertook to serve a Second Subpoena. Through counsel, Respondent agreed to accept service at home on February 28, 2021.  Disputes about the impact of the Second Subpoena on the pending DCCA case have not yet been resolved by that Court.

In Disciplinary Counsel's Reply to Respondent's Opposition to Motion to Compel and Cross-Motion to Quash Subpoena, he argued that the motion to quash aspect of Respondent's Cross-Motion to Quash in the DCCA was filed in the wrong place, *i.e.,* it should have been filed with a Hearing Committee.  *See* LMQ Exhibit F, pdf p. 349 at 5-7 (but (*i*) not arguing that any and all arguments challenging the validity of the First Subpoena had been waived; and *(ii)* failing to parse what Respondent had supposedly waived from what he had not).  Apart from the defective service of the First Subpoena, we pointed out that cross-motions are proper under the DCCA's Rules, and that before this filing ODC made no attempt to respond to any of the array of arguments presented against the First Subpoena's validity or

---

[3] *See also* Response to Motion to Compel and Cross-Motion to Quash (LMQ Exhibit E, pdf p. 234-348); Disciplinary Counsel's Reply to Respondent's Opposition to Motion to Compel and Cross-Motion to Quash Subpoena (LMQ Exhibit F, pdf p. 349); Respondent's Reply in Support of Cross-Motion to Quash (LMQ Exhibit G, pdf p. 360), all attached to Lodged Motion to Quash submitted to the Board on March 15, 2022.

enforceability in our January 31, 2022 letters to ODC, instead rushing into the DCCA on February 3, 2022.  *See* LMQ Exhibit G, pdf p. 360 at 360 and 366.

Obviously, responsibility for defective service of the subpoenas lies with Disciplinary Counsel, not Respondent.[4]

Disciplinary Counsel also grumbles that Respondent asserted a thoroughly researched and argued set of legal objections to the jurisdiction of the D.C. Bar over the conduct under investigation and to the enforceability of either the First or Second Subpoenas. The offense taken by Disciplinary Counsel is unwarranted, as it appears premised on a view that Respondent is somehow not entitled to defend himself. ODC's response would certainly have reflected criticism in very different terms, had the Respondent's objections been asserted without thorough legal support. ODC cannot place a lawyer under scrutiny in the impossible position of being damned if he does, and damned if he doesn't.

Disciplinary Counsel next accuses Respondent of "evading service" of the Specification of Charges. No evidence is offered to support this attempt to besmirch Respondent, and indeed it is false. Disciplinary Counsel made the same false

---

[4] Disciplinary Counsel's attempted service of his Motion to Enforce in the DCCA was also beleaguered by a startling array of missteps. When counsel requested delivery of the full package, Disciplinary Counsel was dismissive of the assertion by Respondent's counsel that the entire package had not been received. In fact, Respondent did not receive a copy of the entire Motion to Enforce package until February 14, 2022, *the day before* the response was due in the DCCA. Even so, Respondent did not seek an extension of time to respond in the DCCA, and filed a complete response in that Court on February 15, 2022. See LMQ Exh. E, pdf p. 234 and Exh. 3 thereto, MacDougald Affidavit, pdf p. 282, ¶¶ 7-15 (pdf pp. 285-287). Disciplinary Counsel makes no mention of these events, which refute his narrative that Respondent has continuously and wrongfully sought delay. It was Disciplinary Counsel, not Respondent, that chose the forum for the Motion to Enforce that he now complains is too slow.

accusation in an email to one of Respondent's attorneys on July 21, 2022 as follows:

"I sent a process server to serve Clark yesterday. He refused to open the door and

said he had to check with his lawyer.  Are we really going to play this game?  I can

always apply to the Court for permission to serve him by alternative means." In

response, Respondent's counsel informed Disciplinary Counsel that his story was

not correct:

> 2. The only communication between Mr. Clark and the process
> server yesterday was by phone. When the process server declined to
> identify the papers that he was wanting to serve, Mr. Clark asked to speak
> with his counsel. There was no refusal to open a door and no
> communication through a closed door. The last time you wanted to serve
> something through a process server you coordinated it through me without
> any problem, so I don't know why you didn't go that route this time.

*See* Exh. A attached hereto, email chain between Mr. Fox and Mr. MacDougald,

attached hereto; Exh. B attached hereto (Declaration of Jeffrey B. Clark). In fact,

Mr. Clark was accompanied by two witnesses (whom we can produce to the Board

if necessary) when he voluntarily accepted service by agreement on the morning of

July 22, 2022 near his workplace on Capitol Hill in the District. Within an hour, Mr.

Fox's office blasted a copy of the complaint to six national reporters. *See* Exh. C

attached hereto, an email from a Reuters reporter forwarding an email from

Lawrence Bloom of the Office of Disciplinary Counsel transmitting a copy of the

Charges to six reporters, one at Bloomberg, two at CNN, two at Reuters, and one at

American Lawyer Media.[5]

After finishing his mistaken recounting of the facts, Disciplinary Counsel finally turns to taking up the grounds for the Motion for an Extension of Time. He belittles the complexity of the undertaking before Respondent and his counsel and belittles the obstacles imposed by the Department of Justice's seizure of Respondent's computer containing all of his work on this matter and all of his work for his new employer. Disciplinary Counsel cannot fairly trivialize the genuine problem these circumstances create for Respondent, nor should he attempt to exploit the situation. That is no way to responsibly conduct these proceedings.

Before the DCCA, Disciplinary Counsel ridiculed Respondent's invocation of his Fifth Amendment rights, with Mr. Fox contending there was no reasonable prospect of prosecution. That argument was demonstrably false back at that time and is even more so now.   Given that the Department of Justice chose to execute an early morning search warrant with a dozen armed officers in tactical gear and proceeded to take all of Respondent's electronic devices, Disciplinary Counsel can no longer deride Respondent's apprehension of criminal jeopardy – so he simply ignores it. He offers no more than a passing disparagement of the weighty arguments we presented

---

[5] The attempt to serve Mr. Clark on July 20, 2022 – without any prior notice to counsel for Mr. Clark nor any attempt arrange for acceptance of service – came quite coincidentally the day before the highly publicized July 21, 2022 hearing of the January 6 Committee. The filing of the charges was reported in the national news on the day service was made. *See*, *e.g.* Google search results for "Jeffrey Clark Bar charges": https://tinyurl.com/2p85nzzn (Approx. 6.5 million results on August 4, 2022)..

that the D.C. Bar lacks jurisdiction over the charged conduct that were set forth in counsel's lengthy letter of January 31, 2022, and the Response to the Motion to Enforce and Motion to Quash. Moreover, instead of waiting for the DCCA to rule, Disciplinary Counsel has rushed to file the Charges, rushed to serve Mr. Clark the day before a prime time hearing of the January 6 Committee, and lastly rushed to blitz the Charges out to reporters. Indeed, without explaining the timing for why he was asking, Reuters reporter David Thomas reached out to undersigned counsel, Mr. MacDougald (email reprinted in the footnote below), at 9:26 *am* EDT  the morning of July 20, 2022. This suggests that someone in ODC may have leaked to Mr. Thomas that service of public charges against Mr. Clark would be attempted later that same day.[6]

Disciplinary Counsel has now refused a routine courtesy in an effort to exploit Respondent's predicament and purported to justify it by groundlessly blaming Respondent for Disciplinary Counsel's own mistakes and litigation choices. ODC's relations with the press are further cause for concern. This goes beyond the denial of a "courtesy" to opposing counsel—it is downright unfair.  Disciplinary counsel would force Respondent to respond to the Charges and to make the choice

---

[6] "To Harry MacDougald, My name is David Thomas and I am a reporter with Reuters. I understand you are representing Jeffrey Clark during his investigation by the D.C. Office of Disciplinary Counsel.  I believe my colleagues reached out to you in March about how former colleagues of Clark's are cooperating with the disciplinary counsel's investigation:  https://www.reuters.com/world/us/exclusive-two-former-us-officials-help-ethics-probe-trump-ally-clark-source-says-2022-03-29/ I was wondering if you had any comment now regarding that investigation. If you could get back to me at your soonest convenience, I would greatly appreciate it." *See* Exh. D, attached hereto.

precipitously of asserting or waiving his Fifth Amendment rights in this proceeding while there is a federal criminal investigation underway, in a controversy that is politically supercharged, in a jurisdiction that is extremely politically biased against Respondent. Moreover, this very case is currently pending in the DCCA, which as we will explain at the appropriate time impacts whether jurisdiction presently exists in this forum and whether these proceedings must be sealed at least until the DCCA rules. *See* ODC's motion to file under seal their response to the motion for an extension of time. The legal and strategic issues in this case are complex and momentous for the Respondent and precedential for the D.C. Bar as a whole, notwithstanding Disciplinary Counsel's attempt here to paint a simple extension request as if it were unethical conduct or sharp practice.

## CONCLUSION

The record shows that the delay about which Disciplinary Counsel complains was actually caused by clerical and procedural faults and strategic decisions that he made, not Respondent. It further shows that Disciplinary Counsel's smear of Respondent as trying to evade service of the Charges in this case is reckless and false, and furthermore was made after he was told by undersigned counsel that it was not true. Disciplinary Counsel has taken to blaming others for his own mistakes or tactical regrets. Mr. Clark (and we as his lawyers) are entitled to insist on full observance of both his procedural and substantive rights.

Respondent respectfully requests that under these circumstances he be granted an additional 21 days in which to respond to the Charges.

Respectfully submitted this 5th day of August, 2022.

*/s/ Charles Burnham*

Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

*Motion for pro hac vice admission before DCCA in progress*

Harry W. MacDougald*
Georgia Bar No. 453076
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*Motion for pro hac vice admission before DCCA in progress*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party

with a copy of this *Reply in Support of Motion for Extension of Time* by email

addressed to:

Hamilton P. Fox
Jason R. Horrell
D.C. Bar
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

This this 5 day of August, 2022.

*/s/ Charles Burnham*
Charles Burnham
DC Bar No. 1003464
1424 K Street, NW
Suite 500
Washington DC 20005
(202)3866920

charles@burnhamgorokhov.com

11

**Subject: RE: [EXT]Re: Clark**

From: hmacdougald@ccedlaw.com - To: Phil Fox - Cc: Angela Thornton, Azadeh Matinpour, Jason Horrell - Date: July 21, 2022 at
12:34 PM

He'll be there, and we'll agree to disagree on the jurisdictional point.

Regards,

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956
Direct: 404-843-4109

From: Phil Fox <foxp@dcodc.org>
Date: July 21, 2022 at 12:22:00 PM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Cc: Angela Thornton <thorntona@dcodc.org>, Azadeh Matinpour <matinpoura@dcodc.org>, Jason Horrell
<horrellj@dcodc.org>
Subject:  RE: [EXT]Re: Clark

> I will agree to your terms, but your jurisdictional argument makes no sense.  The
> entire disciplinary process is conducted before the Court of Appeals.  We very
> much want the Court to rule on the pending motion and do not intend to deprive it
> of jurisdiction,

**From:** Harry MacDougald <hmacdougald@ccedlaw.com>
**Sent:** Thursday, July 21, 2022 12:17 PM
**To:** Phil Fox <FoxP@dcodc.org>
**Cc:** Angela Thornton <thorntona@dcodc.org>; Azadeh Matinpour <matinpoura@dcodc.org>;
Jason Horrell <horrellj@dcodc.org>
**Subject:** [EXT]Re: Clark

<span style="color:red">**Exhibit A**</span>

Phil:


1. If you will agree that accepting service will be without prejudice to our ability to argue that
jurisdiction remains in the DC Court of Appeals during the pendency of your motion to enforce in
that court, Mr. Clark will accept service of your papers tomorrow morning at 9:15 AM in front of
the Hunan Dynasty Restaurant at 215 Pennsylvania Ave., SW, Washington, DC 20003. We also
require your assurance that press will not be there. Please let me know if these points are
agreeable.


2. The only communication between Mr. Clark and the process server yesterday was by phone.
When the process server declined to identify the papers that he was wanting to serve, Mr. Clark
asked to speak with his counsel. There was no refusal to open a door and no communication

through a closed door. The last time you wanted to serve something through a process server you coordinated it through me without any problem, so I don't know why you didn't go that route this time.


-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109


From: Phil Fox <foxp@dcodc.org>
Date: July 21, 2022 at 11:04:24 AM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Cc: Angela Thornton <thorntona@dcodc.org>, Jason Horrell <horrellj@dcodc.org>, Azadeh Matinpour <matinpoura@dcodc.org>
Subject:  Clark


I sent a process server to serve Clark yesterday.  He refused to open the door and said he had to check with his lawyer.  Are we really going to play this game?  I can always apply to the Court for permission to serve him by alternative means.

## DISTRICT OF COLUMBIA COURT OF APPEALS

## BOARD ON PROFESSIONAL RESPONSIBILITY

### <u>Under Seal</u>

In the Matter of

**JEFFREY B. CLARK**

**A Member of the Bar of the District of Columbia Court of Appeals**

**Bar No. 455315**

**Date of Admission: July 7, 1997**

**Disciplinary Docket No.**

**2021-D193**

## DECLARATION OF
## JEFFREY B. CLARK

Personally appeared before the undersigned officer, duly authorized to administer oaths, Jeffrey B. Clark, who, after being duly sworn, testified and stated as follows:

1.

My name is Jeffrey B. Clark.  I am over the age of 18, suffer no mental imparities, and have personal knowledge of the following:

2.

I am an attorney licensed to practice law in the District of Columbia since 1997. I am admitted to the bars of the U.S. Supreme Court, the U.S. Courts of Appeal for all Circuits, the U.S. District Court for the District of Columbia, as well as several

other Districts, and the Court of Federal Claims. I am the Respondent in the above-referenced matter.

3.

On the evening of July 20, 2022, I received a phone call from a man who stated he was trying to serve me with papers. I asked him who he was serving the papers for, and he identified the D.C. Bar. I asked him what the papers were exactly. He managed to note it was something from the Office of Disciplinary Counsel but it was clear that fully understanding the nature of the papers was something he could not do accurately. I then told him that I would like to speak to at least one of my lawyers before agreeing to accept service. I was still physically at work at my new job in the District of Columbia, which is in the Capitol Hill area, when this conversation took place — not at my home in Lorton, Virginia. I told him I would call him back depending on the advice I received from my lawyers.

4.

I have seen the filing by Disciplinary Counsel for the D.C. Bar in response to my Motion for an Extension of Time which states, in reference to service of the Specification of Charges, that "When a process server went to Mr. Clark's home to serve him with the petition and specification of charges, Mr. Clark refused to admit him." *See* Response, p. 3. This is not true. I had no communication with the first process server who called me on July 20 other than over the phone, as described

above. I never knew that day — nor do I know now — whether the process server actually went to my home. I was not at home when he called, so I would not have heard anyone ring the doorbell or knock on the door if he did do that before dialing me. Nor do I know what time the process server might have relayed to Mr. Fox that he went to my home, so I do not know if he had gone to my home before I left for work that morning or never went to my home at all. There was no note or card left at my door when I left for work on July 20 or when I got home that evening. When I saw certain email traffic between Mr. Fox and one of my lawyers wrongly asserting I had refused to answer the door to a process server, I asked my other family members if a man (or anyone) had knocked at the door that afternoon or evening and they had turned such a person away.  My family members all told me "no."  Nor did the first process server I spoke to by phone even tell me he had gone to my home or ask me to step outside my home in Virginia (I would have told him I was not there) or ask me to open the door to my home.  I got the distinct impression from the first process server I spoke to that he first wanted me to agree to accept service that night and tell him where to drive to for service purposes, but as noted, I insisted I wanted to speak to counsel first, so I did not give him a location.  In sum, even if the first process server did come to my house unbeknownst to me and my family at home without me at the time, I certainly did not refuse to admit the first process server to

3

my house. I never communicated with him at all except over the phone as described above.

5.

After consulting with my counsel starting the evening of July 20 and running into about midday on July 21, my lawyer, Mr. MacDougald, made arrangements with Mr. Fox for personal service on me, and I agreed to accept service on July 22, 2022. As a result, I met the second process server (who, based on his voice and manner of speech, seemed to be a different person than the first process server) at the agreed time and place, which was the morning of July 22 at a location on Capitol Hill. I was then voluntarily served on July 22, consistent with the prior arrangements that were made on July 21. I had two interns from my place of employment with me at the time who are witnesses to this event.

6.

Had Disciplinary Counsel approached my counsel to arrange for service in the first instance, his baseless smear that I had attempted to evade service of the Charges could have and should have been avoided. At all prior times since I retained counsel for this matter, Mr. Fox or one of his subordinates have called or emailed counsel first before trying to contact me. I do not know why Mr. Fox followed a different procedure as to a represented party in this instance.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 4, 2022.

_____/s/ Jeffrey B. Clark_____

Jeffrey B. Clark

**Subject: FW: Public Specification of Charges (Clark)**

From: Lynch, Sarah N. (Reuters) - To: JEFFREY.B.CLARK@GMAIL.COM, hmacdougald@ccedlaw.com - Cc:  - Date: July 22, 2022
at 10:08 AM, Attachments: Spec. Jeffrey B. Clark.pdf

Jeff & Harry,

Do you have any response to these charges?
Please email if possible.
I am in court, covering the Bannon trial, so unable to take calls at this time.

Best,
Sarah

202 579 0289

---

**From:** Lawrence Bloom <blooml@dcodc.org>
**Sent:** Friday, July 22, 2022 10:01 AM
**To:** David McAfee <dMcAfee@bloombergindustry.com>; Katelyn Polantz
<katelyn.polantz@warnermedia.com>; Scarcella, Mike (Reuters) <Mike.Scarcella@thomsonreuters.com>;
Lynch, Sarah N. (Reuters) <Sarah.N.Lynch@thomsonreuters.com>; Tierney Sneed
<tierney.sneed@warnermedia.com>; Vanessa Blum <vblum@alm.com>
**Cc:** Phil Fox <FoxP@dcodc.org>; Angela Thornton <thorntona@dcodc.org>
**Subject:** [EXT] Public Specification of Charges (Clark)

 **External Email:** Use caution with links and attachments.

Lawrence K. Bloom
Senior Staff Attorney
Office of Disciplinary Counsel
515 Fifth Street, NW
Building A, Room 117
Washington, DC 20001
(202) 638-1501 ext. 1744

**Exhibit C**

**Subject: Reuters reporter question**

From: Thomas, David (Reuters) - To: hmacdougald@ccedlaw.com - Cc:  - Date: July 20, 2022 at 9:27 AM

To Harry MacDougald,

My name is David Thomas and I am a reporter with Reuters. I understand you are representing Jeffrey Clark during his investigation by the D.C. Office of Disciplinary Counsel. I believe my colleagues reached out to you in March about how former colleagues of Clark's are cooperating with the disciplinary counsel's investigation: https://www.reuters.com/world/us/exclusive-two-former-us-officials-help-ethics-probe-trump-ally-clark-source-says-2022-03-29/

I was wondering if you had any comment now regarding that investigation. If you could get back to me at your soonest convenience, I would greatly appreciate it.

Thank you.

David Thomas (he/him)
Legal News Reporter
Thomson Reuters
+1 646 823 0937
d.thomas@thomsonreuters.com
Twitter: @DaveThomas5150

This e-mail is for the sole use of the intended recipient and contains information that may be privileged and/or confidential. If you are not an intended recipient, please notify the sender by return e-mail and delete this e-mail and any attachments. Certain required legal entity disclosures can be accessed on our website: https://www.thomsonreuters.com/en/resources/disclosures.html

**Exhibit D**