# EXHIBIT A-16

## DISTRICT OF COLUMBIA COURT OF APPEALS
## BOARD ON PROFESSIONAL RESPONSIBILITY



RECEIVED

Aug 29 2022 3:01pm

Board on Professional
Responsibility

### Under Seal

In the Matter of

**JEFFREY B. CLARK**

**A Member of the Bar of the District of Columbia Court of Appeals**

**Bar No. 455315**

**Date of Admission: July 7, 1997**

**Disciplinary Docket No. 2021-D193**

## REQUEST FOR DEFERRAL UNDER BOARD RULE 4.2

Charles Burnham
DC Bar No. 1003464
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*_Motion for pro hac vice application in progress_

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

*_Motion for pro hac vice admission in progress_

# TABLE OF CONTENTS

Introduction ..................................................................................................... 3

Procedural Background .................................................................................... 4

Board Rule 4.2 Procedure and Standard of Review ................................. 8

Argument ......................................................................................................... 9

    I.    Overlapping Issues in Pending Litigation and in Pending Criminal and Congressional Investigations Should Be Resolved Before Proceeding with the Charges and Indeed All Proceedings Should be Suspended at This Time. ............................................... 10

        A.    Overlapping Issues in Pending Litigation Before the DCCA in This Case. .............................................................. 11

            1.    Jurisdiction of the Board While This Case Is Before the DCCA. .................................................. 11

            2.    Subject Matter Jurisdiction and Merits Arguments Before the DCCA and the Board. ....................... 13

        B.    Overlapping Issues in the Pending Federal Criminal Investigation. ............................................................ 21

        C.    Overlapping Issues in the January 6 Committee Investigation .... 22

        D.    Overlapping Issues in the Fulton County, Georgia Special Grand Jury Investigation. .......................................... 25

    II.    Resolution of Overlapping Legal and Factual Issues in the DCCA Litigation and the Related Congressional and Criminal Investigations Would Be Helpful and Warrants Deferral. ................ 26

Conclusion ...................................................................................................... 28

### DISTRICT OF COLUMBIA COURT OF APPEALS
### BOARD ON PROFESSIONAL RESPONSIBILITY

| | |
|---|---|
| **In the Matter of** | |
| **JEFFREY B. CLARK** | **Disciplinary Docket No. 2021-D193** |
| **A Member of the Bar of the District of Columbia Court of Appeals** | |
| **Bar No. 455315** | |
| **Date of Admission: July 7, 1997** | |

## REQUEST FOR DEFERRAL UNDER BOARD RULE 4.2

Pursuant to Section 4.2 of the Rules of the Board of Professional Responsibility ("Board Rule"), Respondent hereby moves to defer proceedings on the Specification of Charges filed by the Office of Disciplinary Counsel on July 19, 2022 in light of the pendency of related civil investigations, quasi-criminal litigation, and two other separate criminal investigations. Disciplinary Counsel has pre-emptively indicated his opposition to this request before the topic was even raised with him.

## INTRODUCTION

Board Rule 4.2 authorizes a party to disciplinary proceedings to request a deferral of a disciplinary case based on the pendency of either a related ongoing criminal and civil investigations or related pending criminal litigation. In this case, the request for deferral is based on (1) related ongoing (and currently sealed)

litigation in the District of Columbia Court of Appeals ("DCCA") in this very case;[1] (2) a related ongoing federal criminal investigation; (3) the related ongoing investigation of the January 6 Committee; and (4) the related ongoing investigation by a Special Purpose Grand Jury in Fulton County, Georgia.

As will be shown, there is substantial overlap between the issues in this case and the issues in these other proceedings. Deferring this case to allow the overlapping issues to first be resolved in these other proceedings, which have jurisdictional priority over this forum, will be materially helpful to these proceedings. First, because one of the proceedings (the pending DCCA case) will likely answer whether this forum has any jurisdiction in the first instance and second, because the other proceedings will resolve or shed light on other disputed factual and legal questions in a way that will help this forum avoid conflicting or erroneous findings and conclusions that improperly infringe on the separation of powers and Respondent's individual constitutional rights.

## PROCEDURAL BACKGROUND

The Office of Disciplinary Counsel ("ODC") began this case in response to a letter from a single Democrat Senator, Richard Durbin of the Judiciary Committee,

---

[1] Bar disciplinary proceedings are referred to as being quasi-criminal in nature. *See, e.g., In re Benjamin*, 696 A.2d 434, 439 n.8 (D.C. 1997). From that perspective, the pending appeal could be construed as criminal in nature. Though nothing turns here on whether the pending DCCA case's overlap with the Charges involves a criminal or civil matter. The need for deferral would be the same.

who possesses no first-hand knowledge of any of the internal Executive Branch deliberations involved and has not and never has been Mr. Clark's client. Nor did Mr. Clark participate in any proceedings held by the Senate Judiciary Committee because, *inter alia*, a majority of the Committee's members did not issue him a subpoena.

ODC attempted to serve a subpoena upon Respondent (thereby supplying a power Senator Durbin lacked) but failed to do so in accord with proper governing procedures. Without waiving defective service, Respondent voluntarily agreed to a return date of January 31, 2022, at which time he delivered a lengthy and thoroughly researched and argued set of objections to the subpoena and the written inquiries posed by ODC. These objections included defective service, and a series of weighty constitutional, jurisdictional, and merits-based objections. In view of the risk of criminal prosecution by a highly politicized and partisan Department of Justice and the witch-hunt atmosphere raging in the media around the facts alleged in the charges, and the two-tiered system of justice tilted against Republicans in Washington, D.C.,[2] Respondent also asserted his Fifth Amendment rights against self-incrimination.

---

[2] Quasi-judicial notice can be taken of how ODC has proceeded in this case versus the very different and lenient treatment of former FBI lawyer Kevin Clinesmith. Mr. Clinesmith **pleaded guilty**. On Mr. Clark's behalf, and by contrast, we maintain that Mr. Clark has done nothing wrong and there has certainly been no adjudication to the contrary.

Three days later on February 3, 2022, ODC filed a motion to enforce the subpoena in the DCCA. Respondent filed his response on February 15, 2022, along with a cross-motion to quash the subpoena. Undersigned counsel had difficulty securing from ODC a complete copy of the papers filed with the DCCA, even as the response clock began ticking down.

ODC then attempted to cure its defective service of the subpoena by serving a second subpoena. Counsel on both sides agreed to the timing for the second service attempt to be made. In briefing to the DCCA, Respondent pointed out that even the second attempt at service was defective under Superior Court Rule 45(b)(1) because it prohibits parties from serving their own subpoenas. Respondent next lodged with the Board a protective motion to quash the second subpoena that asserted all the same arguments as had been asserted in the DCCA, and attached a copy of the DCCA filings. ODC then filed a motion in the DCCA to strike the protective motion to quash that had been lodged with the Board on the grounds that the DCCA had *exclusive jurisdiction* over enforcement or quashing the subpoena.

There the matter lay until ODC filed the pending Specification of Charges on July 19, 2022. ODC attempted to serve Respondent via a process server on July 20, which was the day before the January 6 Committee's most recent prime-time hearing on July 21, 2022. No attempt was made to arrange service through counsel as had been done with the second subpoena. Due to the lack of any attempt at cooperative

service, the seemingly independent process server apparently could not find Respondent at home because he was working at his new job in the District. ODC emailed counsel for Respondent on July 21 inquiring about service and lodging an unfounded accusation that Respondent was evading service, which was both false and ridiculous. Service was quickly arranged by agreement and was received voluntarily first thing on the morning of July 22, 2022. Within an hour of service being made, ODC sent a blast email to a half-dozen national reporters with copies of the Charges.[3]

After filing the public Charges with the Board, Respondent moved to recuse Board Member and former Board Chair Matthew Kaiser (that issue and its impact remain pending). Respondent also sought a three-week extension of time to respond to the Charges, which ODC opposed. An extension was granted until September 1, 2022. Most of those filings before the Board have been under seal because they mention the matter pending before the DCCA, which is presently under seal.

ODC then moved in the DCCA to unseal those proceedings based on the

---

[3] A copy of this email to reporters was attached as Exhibit A to the Response to Motion to Unseal and Cross-Motion to Stay Proceedings Before the Board of Professional Responsibility Pending Resolution in This Court, a copy of which was filed with the Board as an Exhibit to the Notice and Incorporated Motion to Seal, filed with the Board August 16, 2022.

Additionally, the way ODC is proceeding with reporters is troubling and raises the prospect that ODC is aiming to adjudicate this case in the press, which is generally improper and especially improper when questions swirl about as to whether ODC even had the power here to breach the confidentiality of the investigative stage when it still had (and has) a pending sealed appeal before the DCCA that inherently connects to the investigative stage.

publicly filed charges before the Board. Respondent opposed unsealing and filed a cross-motion to seal and stay proceedings before the Board based on the pendency of the matter before the DCCA, which is confidential and under seal, and the substantial overlap of issues before the DCCA and those that would be litigated before the Board if it proceeded. Respondent also lodged a copy of those filings with the Board for informational purposes.

## BOARD RULE 4.2 PROCEDURE AND STANDARD OF REVIEW

Under Board Rule 4.2, a request for deferral and any opposition thereto is submitted to the Chair of the Hearing Committee to which the case is assigned. The Chair then submits the request and any opposition thereto to the Chair of the Board along with their recommendation. The Board Chair then rules on the request under the standards in Board Rule 4.1.

Under Board Rule 4.1, deferral may be ordered based on related ongoing criminal investigations or civil litigation "when there is a substantial likelihood that the resolution of the related investigation or litigation will help to resolve material issues involved in the pending disciplinary matter."

As set forth below, this standard is met in this case as to both the related DCCA litigation and the related federal and state criminal investigations and the related congressional investigation.

## ARGUMENT

As a general matter, whether the "resolution of the related investigation or litigation will help resolve the material issues involved in the pending disciplinary matter" depends on the extent to which they overlap and involve the same factual or legal issues. The standard is analogous but not identical to that of *Stebbins v. Stebbins*, 673 A.2d 184, 189 (D.C. 1996), which addresses whether proceedings in a trial court are precluded pending an appeal in the same case. In this case, there is an additional and crucial pro-deferral factor—the pending related litigation is ***in this very case***—and is still pending before the DCCA, whose eventual decision will be binding on the Board.

As will be explained further below, many of the key arguments made to the DCCA against enforcement of the subpoena would also be asserted at this level, including fundamental constitutional, statutory, and administrative law challenges to the subject matter jurisdiction of the D.C. Bar to regulate the conduct alleged in the Charges. Obviously, DCCA's resolution of those issues "will help to resolve material issues involved in the pending disciplinary matter" as its decision will be binding on the Board.

In addition, as also explained below, there is also a substantial overlap between the pending criminal investigation and the Charges filed against Respondent, the pending investigation of the House Select January 6 Committee,

and the investigation of a Special Grand Jury in Fulton County Georgia.

Based on the overlapping issues between the DCCA litigation and the pending criminal investigation, deferral is warranted under Board Rule 4.2.

I. **OVERLAPPING ISSUES IN PENDING LITIGATION AND IN PENDING CRIMINAL AND CONGRESSIONAL INVESTIGATIONS SHOULD BE RESOLVED BEFORE PROCEEDING WITH THE CHARGES AND INDEED ALL PROCEEDINGS SHOULD BE SUSPENDED AT THIS TIME.**

The factual and legal issues presented by the Charges, and by Respondent's defenses to those Charges, overlap substantially with the pending case before (i) the DCCA, (ii) a pending federal criminal investigation, (iii) the pending January 6 Committee investigation, and (iv) a pending Special Grand Jury investigation in Fulton County, Georgia. Allowing those matters to conclude first will or may resolve important factual and legal issues in this case and prove materially helpful to reaching the appropriate result on the pending Charges. In particular, the Board and its Hearing Committee should wait until the DCCA rules on important constitutional and jurisdictional issues in this case that go to the propriety of these Charges in the first instance.

This motion for deferral presents the reasoning as to why deferral should be granted as a matter of prudence. It should be construed to be without prejudice to Respondent's argument that the Board and Hearing Committee have no jurisdiction at this time because exclusive jurisdiction is lodged in the DCCA.

**N.B.** Additionally, because exclusive jurisdiction exists in the DCCA, all deadlines in this case should be suspended and the Board should so rule ***before the current September 1, 2022 deadline*** to file an answer and motions arrives. To require Respondent to meet that deadline is to exercise a form of jurisdiction over Respondent, which is inherently contrary to the divestiture of jurisdiction of proceedings before the Board and its Hearing Committees.

## A. OVERLAPPING ISSUES IN PENDING LITIGATION BEFORE THE DCCA IN THIS CASE.

Respondent makes two jurisdictional arguments in the DCCA. First, that the Board does not possess jurisdiction over this case while the same issues are pending before the DCCA, and second, that under the unique circumstancs of this case, and based on fundamental principles of constitutional, statutory, and administrative law, the D.C. Bar does not have jurisdiction to investigate or Charge the particular alleged conduct in question. The same arguments would be made at the same time at the Board level if the case is not deferred.

### 1. Jurisdiction of the Board While This Case Is Before the DCCA.

When a matter comes before the District of Columbia Court of Appeals ("DCCA"), the lower tribunal is typically divested of jurisdiction pending resolution of the case in the DCCA. *See Stebbins v. Stebbins*, 673 A.2d 184, 189 (D.C. 1996), which collects numerous authorities on this rule as follows:

> *Morfessis v. Hollywood Credit Clothing Co.*, 163 A.2d 825, 827 (D.C. 1960) (reversing grant of new trial where losing party had already noted an appeal); *Potts v. Catterton*, 82 A.2d 133, 134 (D.C. 1951) (affirming trial court's denial of motion for relief from judgment made during pendency of appeal on the ground that the trial court had no jurisdiction to grant the motion); *Maltby v. Thompson*, 55 A.2d 142–43 (D.C. 1947) (holding that grant of new trial by trial court after appeal had been noted was ineffective); *Lasier v. Lasier*, 47 App. D.C. 80 (1917) (reversing trial court's order correcting clerical mistake in decree where appeal had previously been perfected); *see also Pyramid Nat'l Van Lines v. Goetze*, 66 A.2d 693, 694 (D.C. 1949) ("When the mandate of an appellate court is filed in the lower court, that court reacquires the jurisdiction which it lost by the taking of the appeal."); *Smith v. Pollin*, 90 U.S. App. D.C. 178, 180, 194 F.2d 349, 350 (1952) ("It is clear that the District Court could not grant a motion for a new trial in a case which is pending in this court upon appeal. Jurisdiction of the case is in this court while the appeal is pending.").

Unlike most cases, this one originated in the DCCA rather than the Board. Despite the original filing being in the DCCA, the regular principles of jurisdiction between subordinate and appellate tribunals apply in a straightforward fashion.

This rule is flexible and is intended to avoid duplication of effort: "While the line that marks the division between what the trial court may and may not do is usually cast in terms of 'lack of jurisdiction,' the doctrine is judge-made, designed to avoid the confusion and waste of time that might flow from having two courts deal with a single case at the same time. Hence, it is subject to a common-sense flexibility in application." *Id.* (quoting *Carter v. Cathedral Ave. Coop.*, 532 A.2d 681, 684 n.7 (D.C. 1987)).

ODC previously insisted exclusive jurisdiction lay with the DCCA. As

noted above, when Respondent lodged his Protective Motion to Quash with the Board, ODC moved to strike, arguing "[n]ot only does the Court have exclusive jurisdiction over the question of the enforceability of the subpoena, but also the Court has the matter under consideration." Motion to Strike "Lodged Protective Motion to Quash," p. 4, attached as Exhibit 1.

ODC nevertheless filed the Charges, notwithstanding the pendency of the case before the DCCA. ODC argues to the DCCA that *Stebbins* is inapplicable because "only one court is involved" due to the Board's status as an agency of the DCCA rather than a separately constituted court. The merits of that distinction are weak because *Stebbins* acknowledges that we are dealing with a judge-made doctrine designed to protect the interests of efficiency, whereas ODC's one-court-vs.-two distinction embodies a mere formalism. But whatever those merits, it is obvious that this case is now pending before both the DCCA and the Board, and that many of the same arguments would be asserted in both forums, making it duplicative and wasteful for both levels to have the same issues in the same case under active consideration at the same time.

2.  Subject Matter Jurisdiction and Merits Arguments Before the DCCA and the Board

It can be no surprise that the jurisdictional and merits arguments raised against the subpoena in the DCCA would significantly overlap with the anticipated legal defenses that would be asserted in response to the Specification of Charges.

The subject matter jurisdiction arguments will be the same. They rest on constitutional, statutory, and administrative law principles. The constitutional grounds are applicable because (1) the Supremacy Clause (U.S. Const. art. VI) gives operation of the three branches of the federal government and the constitutional separation of powers doctrine primacy over D.C.'s home rule, and (2) because Rule XI § 8(a) of the Rules Governing the District of Columbia Bar incorporates into all Disciplinary Counsel proceedings any constitutional limitations that may apply.

The conduct described in the Charges describes consultations by the President of the United States with his most senior Senate-confirmed legal advisors in the Department of Justice in the discharge of his core Article II authorities over federal law enforcement.

Under the U.S. Constitution, the President of the United States, not the Attorney General, is its chief law enforcement officer. *See* U.S. Const., art. II, § 3 (the President "shall take Care that the Laws be faithfully executed ….."). The President's constitutional responsibility for seeing that the laws be faithfully executed, carry with it, as a matter of settled law, "illimitable" discretion to remove principal officers carrying out his Executive functions. *See Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 493 (2010). The Constitution vests all Federal law enforcement power, and hence prosecutorial discretion, in the President. The

14

President's discretion in these areas has long been considered "absolute," and his decisions exercising this discretion are presumed to be regular and are generally deemed non-reviewable. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *see generally* S. Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521 (2005). The Attorney General and other DOJ lawyers such as the Respondent exercised discretion delegated to them by the President subject to his supervision. They are "the hand" of the President for the discharge of these authorities. *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922). When so acting they consequently enjoy the same protection.

.To assist the President in the discharge of these authorities and responsibilities, he has the right to receive full and frank advice and information from his advisors. The Opinion Clause imposes on senior federal officers like Respondent a reciprocal duty to provide such advice upon request. *See* U.S. Const., art. II, § 2, cl. 1 (Opinion Clause); 28 U.S.C. § 506 (Assistant Attorney Generals, like Mr. Clark, to be appointed by President with advice and consent of Senate); OLC Opinion, *State Bar Disciplinary Rules as Applied to Federal Government Attorneys* (Aug. 2, 1985) ("Rules promulgated by state courts or bar associations that are inconsistent with the requirements or exigencies of federal service may violate the Supremacy Clause."), *available at* https://tinyurl.com/56bft7sb, *last visited* (Aug. 27, 2022).

This is not a situation in which Respondent entered an appearance before a Court and misrepresented some fact at oral argument. This is a case that attempts to peel back the curtain of the Executive Branch and second guess its confidential internal deliberations at the highest level—among the senior-most officials of DOJ and directly with the President himself in the Oval Office regarding how to carry out the President's core authorities under Article II. For a State to try to do that would be a constitutionally unthinkable violation of federalism and, if the State were purportedly acting pursuant to congressional statute, to the separation of powers too. For a ***city government*** to try to do so (even one that Congress ***sometimes*** treats as if it were a State, like D.C.—though Congress ***did not*** do so here) is even more unthinkable and a patent violation of the separation of powers because the authority of the DCCA and hence the Board descends from Congress's Article I lawmaking powers.

The statutory arguments will also be the same. The statute Congress passed purporting to subject Justice Department lawyers to state and local bar rules, 28 U.S.C. § 530B(a), provides that "[a]n attorney for the Government shall be subject to ***State*** laws and rules, and local Federal court rules, governing attorneys in each ***State*** where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that ***State***." (emphasis added). The District of Columbia is not a "State." All law in the District is federal law and Congress alone

defines the nature, scope, and means of enforcement of all federal powers exercised here, including that of the D.C. Bar. U.S. Const., art. I, § 8, cl. 17 ("Seat of the Government"). Specific language is ordinarily required to treat the District as if it were a State. *See, e.g., District of Columbia v. Carter*, 409 U.S. 418, 432-33 (1973) (D.C. not a State for purposes of 42 U.S.C. § 1983, with the statute later being amended to treat D.C. as a State). The United States Code is replete with examples where Congress has ***specifically defined*** D.C. to fall within the meaning of the term "State," but only for purposes of that particular statute.[4] Indeed, by contrast, Chapter 31 of part II of title 28 of the United States Code (where 28 U.S.C. § 530B is found) lacks any specialized definition section. Congress surely knows how to confer power on District authorities when it wants to. And it expressly withheld such power here.

The administrative law arguments are also the same. In 1999, as a matter of administrative law, DOJ by regulation issued under Section 530(B)(b) improperly purported ***to extend*** the reach of Section 530B(a) to the District of Columbia. *See* 28 C.F.R. § 77.2(h).

But a federal agency cannot extend to the District in a regulation a power not

---

[4] *See, e.g.*, 28 U.S.C. § 1257(b) ("For the purposes of this section, the term 'highest court of a State' includes the District of Columbia Court of Appeals."); 42 U.S.C. § 8285a(2) ("the term 'State' means any of the several States, the District of Columbia …"); *see also, e.g.*, 26 U.S.C. § 170(c)(1) (applying term "charitable contribution" for tax purposes to include gifts for the use of "States, a possession of the United States … or the United States or the District of Columbia");. And Supreme Court Rule 47 states that "[t]he term "state court," when used in these Rules, includes the District of Columbia Court of Appeals."

given to it by the enabling statute. The preamble of the regulation cites to 28 U.S.C. §§ 509, 510, 515(a), 516, 517, 519, 533, and 547. *See* 64 Fed. Reg. 19,273, 19,274 (Apr. 20, 1999). But none of these statutes even reference the District of Columbia specifically. And these provisions say nothing about the power of D.C. Bar authorities to sit in oversight of the discretionary actions of U.S. Justice Department lawyers.[5] The 1999 rule is thus invalid under step one of the *Chevron* test, which voids regulatory interpretations of any statute that conflict with the statute's plain text, interpreted using "traditional tools of statutory construction." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984). And the canon of interpreting statutes as part of the *corpus juris* (the whole body of the law) is no doubt such a traditional tool of statutory interpretation. *See, e.g., Branch v. Smith*, 538 U.S. 254, 282 (2003) ("courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes."). The plain text is violated here because D.C. is not a "State."

---

[5] The preamble of the regulation also mentions (1) Pub. L. 96-132, 93 Stat. 1040, 1044 (1979); and (2) Pub. L. 105-277 (1998), section 102 of the Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act. But both of these provisions are appropriations law limited to one-off fiscal years; they lack general effect. Moreover, the former provision predates Section 530B(a) and the latter provision is silent on 530B(a) and thus cannot be read to amend it. Finally, the fact that the statutes DOJ cited to extend Section 530B(a) to District of Columbia Bar rules point to two specific appropriations statutes mentioning the District shows that not even the DOJ of 1999 thought that it would be plausible to argue that D.C. Bar's rules were "local Federal court rules" within the meaning of Section 530B(a) or the preamble would have made that argument.

Additionally, several months after investigation got underway, the Supreme Court decided *West Virginia v. EPA*,. 142 S. Ct. 2587 (2022). *West Virginia* is a landmark administrative law case holding that a clear statement to delegate power is required in a statute when the entity wielding delegated power seeks to resolve a "major question." *Id.* at 2607-08. State and local regulation of Executive Branch law enforcement discretion in connection with the 2020 presidential election controversies is surely such a "major question" of political significance as applied. Indeed, even more importantly, state and local regulation of internal Executive Branch deliberations as a general matter constitute "major questions," *id.*, even putting aside the specific context of the 2020 presidential election. The major questions doctrine operates as a kind of *Chevron* step zero and here, the notion that the D.C. Bar can penetrate into and indeed take over Justice Department deliberations flunks at that zero step, since there is no clear statement issued by Congress that the local D.C. Bar was ever intended to possess such extraordinary power. *See also id.* at 2617, 2621 (Gorsuch, J., concurring) (doctrine protects both separation of powers ***and*** federalism).

Accordingly, as a matter of administrative law, the D.C. Bar does not have jurisdiction over Respondent's conduct as described in the Charges.

The gist of the merits arguments before the Board and the DCCA, that there is no violation of the Rules, will also be the same. Rule 8.4 is not violated (or even

implicated) when a senior Justice Department attorney proposes a policy position in a draft letter and circulates it for discussion among other senior Department of Justice attorneys and the President of the United States (as Mr. Clark stands accused of doing). Nor is Rule 8.4 violated (or even implicated) if that policy proposal is rejected after those discussions and the draft letter never goes out. This is inherently how deliberative processes work—they select one course of action and reject others. The losing side should never be at risk of being held to be dishonest because others on the prevailing side disagreed with the losing side's position. It is possible for reasonable minds to differ in their appraisals of the facts, the law and the appropriate policy.

Finally, even if the statute and the regulation could give the D.C. Bar general authority over Respondent, both the statute, 28 U.S.C. 530B, and the regulation, 28 C.F.R. § 77.2(j)(2), ***textually limit*** the D.C. Bar's jurisdiction to conduct that is ***normally or ordinarily*** subjected to discipline. Thus, the statute, where it applies, authorizes a State to discipline federal attorneys only "to the same extent and in the same manner as other attorneys in that State," while the regulation does not apply if the local jurisdiction "would not ***ordinarily*** apply its rules of ethical conduct to particular conduct or activity by the attorney." (Emphasis added).

As we have argued to both Disciplinary Counsel in response to the subpoena, and to the DCCA, we are unaware of any case where Rule 8.4 has been applied to

any pre-decisional discussion among a team of lawyers concerning a proposed draft statement of position in a letter that, for policy reasons, was never sent, much less to a senior Senate-confirmed DOJ official engaged in law enforcement and policy deliberations falling within the President's core Article II authorities operating in conjunction with the highest levels of the DOJ and with the President himself. ODC has been repeatedly challenged to identify any such case, and has yet to do so.

B.   OVERLAPPING ISSUES IN THE PENDING FEDERAL CRIMINAL INVESTIGATION.

The D.C. Bar's Charges allege "attempted false statements" in violation of Rule of Professional Conduct 8.4(c), and "attempted" "serious interference with the administration of justice" in violation of Rule 8.4(d). On June 20, 2022, approximately a dozen armed agents of the Department of Justice's Office of Inspector General executed a criminal search warrant at Respondent's home at around 7 a.m. and seized his electronic devices. *See* https://tinyurl.com/nha3u4k3, *last visited* Aug. 29, 2022. The statutes specified in the search warrant were 18 U.S.C. § 1001, which relates to false statements, 18 U.S.C. § 371, which relates to conspiracy, and 18 U.S.C § 1512, which relates to obstruction of justice. The overlap between the first and third statutes cited in the search warrant and the Charges is readily apparent. The alleged "attempted" false statements under Rule 8.4(c) correspond to the investigation of allegedly false statements under 18 U.S.C. § 1001, while alleged attempted serious interference with the administration of justice under

Case 1:22-mc-00096-RC   Document 1-16   Filed 10/17/22   Page 23 of 41


Rule 8.4(d) corresponds to alleged obstruction of justice under 18 U.S.C § 1512. Both the federal criminal investigation and the Charges this case arise from or relate to the same alleged underlying conduct. The resolution of the criminal investigation will almost certainly help resolve material issues in this matter.

In view of the overlapping issues, ODC's Charges against Respondent can be viewed as a stalking horse for potential federal criminal charges. Compelling Respondent to defend the Charges at this time could force him to choose between asserting his Fifth Amendment privilege against self-incrimination and mounting a full factual defense of his license to practice law. Burdening the exercise of his constitutional right against self-incrimination in a quasi-criminal proceeding is unfair, unconstitutional,[6] and should not be countenanced unless and until the pending related civil and criminal matters have been resolved.

### C. OVERLAPPING ISSUES IN THE JANUARY 6 COMMITTEE INVESTIGATION

The issues framed by the Charges also overlap entirely with a subset of the issues being investigated (indeed flogged) in public hearings by the House January 6 Committee (hearings that must be deemed civil in nature). In fact, ODC seems to

---

[6] Penalizing Respondent's exercise of his procedural rights violates due process. *See generally Ex Parte Young*, 209 U.S. 193 (1908). Additionally, forcing Respondent to choose between observance of his Fifth Amendment rights and his law license (under challenge in a quasi-criminal proceeding) represents an unconstitutional condition. *See Griffin v. California*, 380 U.S. 609, 614 (1965) ("It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.").

have concluded that the public hearings of the January 6 Committee gave it sufficient evidence to file Charges against Respondent despite its investigation not yet being complete and even though there is no semblance of due process, true party balance, or cross-examination in the January 6 Committee's one-sided, carefully choreographed hearings. ODC is clearly relying on the incomplete version of events set forth in the so far publicly released portions of the testimony of former Acting Attorney General Jeff Rosen and former Acting Deputy Attorney General Richard Donoghue as the evidentiary support for the Charges. The investigation of the January 6 Committee is not yet complete, and the Committee and its members regularly put out statements that they continue to collect new evidence and that additional witnesses continue to come forward with relevant and material evidence. And the January 6 Committee will wield power and possibly issue supplemental findings until as late as circa January 2, 2023.

The Committee refuses to release the full deposition transcripts of the witnesses who have appeared before it, including the witnesses ODC will rely on to try to prove its case. Instead, it has released only selective, cherry-picked excerpts that advance the Committee's favored narrative. As commentators across the political spectrum have observed, the Committee is a political monolith, and there is no adversary testing of any of the witnesses, any of the evidence, or any of the Committee's theories. The result has been a presentation that affected witnesses have

publicly alleged was misleading or intentionally false, including testimony relating to Respondent.[7]

Respondent has compelling Sixth Amendment Confrontation Clause and Fifth Amendment due process rights to review and dissect the full and complete Committee deposition transcripts of the witness who may be called to testify against him in order to prepare his cross-examination. Under the Speech and Debate Clause, the Committee likely cannot be compelled by subpoena to release the full transcripts.[8] The Committee has unfettered discretion over whether to release the transcripts and have indicated they will not do so until their investigation is complete. In addition, Respondent has Fifth and Sixth Amendment rights to present evidence over which the DOJ has asserted law enforcement privilege, *see* Exhibit 2, and which also involves classified and privileged national security information about foreign election interference Respondent is presently constrained not to disclose.[9]

---

[7] *See Lawyer Accuses Jan. 6 Committee Of 'False' Accusations and Mischaracterizations,* https://www.washingtonexaminer.com/news/ken-klukowski-rips-jan-6-committee-false-accusations-mischaracterizations; *Trump White House Attorney Disputes Cassidy Hutchinson's Testimony About Handwritten Note,* https://abcnews.go.com/US/trump-white-house-attorney-disputes-cassidy-hutchinsons-testimony/story?id=85898838; *Secret Service Reportedly Denies Cassidy Hutchinson's Jan. 6 Tale,* https://www.washingtontimes.com/news/2022/jun/28/secret-service-denies-cassidy-hutchinson-jan-6-tal/, *last visited* Aug. 25, 2022.

[8] Cf. Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 501-501 (1975) ("Without exception our cases have read the Speech and Debate Clause broadly to effectuate its purposes. … The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress can be performed independently.")

[9] For this reason, recent revelations that the FBI interfered in the 2020 election (by visiting one or more social media companies), based on the false premise that Hunter Biden's laptop was "Russian

On first principles, Respondent cannot get a fair hearing before the Hearing Committee until he has access to the documents and transcripts necessary to his defense. It is therefore both necessary and helpful to the Board and the Hearing Committee to defer these proceedings until the related proceedings have been concluded and all necessary documents to which Respondent is entitled for his defense become available to him.

D.   OVERLAPPING ISSUES IN THE FULTON COUNTY, GEORGIA SPECIAL GRAND JURY INVESTIGATION.

A special grand jury has been empaneled in Fulton County Georgia to investigate what the District Attorney refers to as attempts to influence the November 2020 Presidential election. The Special Grand Jury has cast a very wide net, subpoenaing dozens of lawyers, Republican presidential electors, state officials, and others. While the Special Grand Jury has not yet contacted Respondent (though it has contacted Dr. John Eastman, whose phone was also seized by the DOJ OIG on the same day as Respondent's electronics), an overlap between that investigation of events in Georgia and the Charges in this case seems likely in that the pre-decisional draft letter that is the focus of the Charges was marked for delivery to state officials in Georgia.

_____

misinformation" may also become relevant to these proceedings. *See* Thomas Barrabi, *Mark Zuckerberg Tells Joe Rogan Facebook Was Wrong to Ban the Post's Hunter Biden Laptop Story*, NEW YORK POST (Aug. 25, 2022), *last visited* Aug. 29, 2022 ("[Zuckerberg] said the platform opted to limit sharing on the story — but not halt it entirely — ***after the FBI told Meta employees to be wary of Russian propaganda ahead of the election***") (emphasis added).

## II.   RESOLUTION OF OVERLAPPING LEGAL AND FACTUAL ISSUES IN THE DCCA LITIGATION AND THE RELATED CONGRESSIONAL AND CRIMINAL INVESTIGATIONS WOULD BE HELPFUL AND WARRANTS DEFERRAL.

The constitutional, statutory and administrative law arguments described above are all pending before the DCCA[10] with respect to enforcing or quashing ODC's subpoena or with respect to a motion to stay proceedings before the Board. In light of the substantial overlap between the arguments pending before the DCCA and that will be asserted here, even angels would fear to tread before knowing how the DCCA will rule on these questions. It would thus be helpful to the Board to defer until the DCCA rules, lest proceedings at this level, and the work of the Hearing Committee, the Board and the parties, be obviated by the eventual decision of the DCCA. *Compare Stebbins,* 673 A.2d. at 189 ("[T]he issue is whether it is judicially efficient for the trial court to take a particular action in the face of the particular matter pending before the appellate court."). It would make no sense and be wasteful for the Hearing Committee, the Board, and the DCCA to simultaneously adjudicate the same or, at least, highly similar legal issues all going to the jurisdiction, validity and propriety of the investigation and now of the Charges. Proceedings at this level should not move forward unless and until the DCCA holds that it is lawful to do so.

---

[10] With the exception of the major questions doctrine argument because that Supreme Court case is new. However, Respondent intends to update the DCCA in the sealed case on the relevance of the Supreme Court's *West Virginia* decision.

26

Similarly, the Charges pending here arise from and relate to the same conduct currently under investigation by the DOJ OIG, an investigation being carried out with criminal search warrants and seizure of electronic records.

The Charges also entirely overlap with a subset of issues being investigated and publicized by the January 6 Committee. In fact, the Charges appear to be based on testimony publicized by the January 6 Committee, even though that testimony is cherry-picked, incomplete, and was not developed through any adversary process— and even though the full transcripts of the witnesses are not available as long as the Committee's investigation remains open.

There is also a likely overlap with the investigation of the Special Purpose Grand Jury in Fulton County, Georgia.

The outcome of both the case before DCCA and the pending related civil and criminal investigations will likely be helpful to the Board in this case. Therefore, deferral should be ordered pursuant to Rule 4.2.

Finally, deferral would work no prejudice to the D.C. Bar, the interests of justice, or the public interest. The only urgency associated with this case is drawn— improperly—from the politicized context from which it emerges. The D.C. Bar does not normally commence investigations or file charges in response to complaints from non-clients with no personal knowledge who are transparently grinding a political axe—but it did in this case, beginning an investigation in response to a

lawfare style complaint from a partisan warrior of long standing, Senator Richard Durbin. ODC then rushed to bring charges before its own case in the DCCA was even concluded, relying on cherry-picked evidence presented at the hyper-politicized January 6 Committee show-trial hearings. ODC attempted to serve the Charges by ambush the day before the second of the January 6 Committee's prime-time televised hearings. The exigencies of the political calendar should have no effect on these proceedings. No politically motivated rush to judgment should be allowed to prejudice Respondent's constitutional rights.

## CONCLUSION

Granting the request for deferral would avoid the risk of an outcome inconsistent with that of the related pending civil, criminal, and congressional proceedings which have jurisdictional primacy over this forum. The DCCA has before it now many of the critical legal issues in this case that absent deferral would have to be decided at this level. To avoid the risk of inconsistent rulings, and to avoid infringing the important constitutional and jurisdictional interests that are so prominent in this case, the request to defer should be granted.

Respectfully submitted this 29th day of August, 2022.

_/s/ Charles Burnham_               Robert A. Destro*
Charles Burnham                     Ohio Bar #0024315
DC Bar No. 1003464                  4532 Langston Blvd, #520
Burnham and Gorokhov, PLLC          Arlington, VA 22207
1424 K Street, NW                   202-319-5303
Suite 500                           robert.destro@protonmail.com

Washington DC 20005                     *Application PHV Pending*
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
*Application PHV Pending*

29

## CERTIFICATE OF COMPLIANCE WITH
## RULE 19.8(C)

This document complies with the length and format requirements of Board Rule 19.8(c) because it contains 6,582 words, including footnotes, is double-spaced, with one-inch margins, on 8½ by 11-inch paper. I am relying on the word-count function in Microsoft Word in making this representation.

*/s/ Charles Burnham*
Charles Burnham
DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Request For Board Rule 4.2 Deferral Of Proceeding* by U.S. First Class Mail with sufficient postage thereon to insure delivery, and by email addressed to:

> Hamilton P. Fox
> Jason R. Horrell
> horrellj@dcodc.org
> Office of Disciplinary Counsel, D.C. Bar
> Building A, Room 117
> 515 5th Street NW
> Washington DC 20001
> foxp@dcodc.org

This 29th day of August, 2022.

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com



Clerk of the Court
Received 03/15/2022 04:20 PM
Filed 03/15/2022 04:20 PM

**UNDER SEAL**

**DCCA No. 22-BS-0059**

**DISTRICT OF COLUMBIA
COURT OF APPEALS**

| | |
|---|---|
| In the Matter of : | |
| : | |
| CONFIDENTIAL (J.B.C.), ESQ.   : | **Disciplinary Docket No. 2021-D193** |
| : | |
| Respondent,   : | |
| : | |
| A Member of the Bar of the District : | |
| of Columbia Court of Appeals.   : | |
| Bar Number: 455315   : | |
| Date of Admission:  July 7, 1997   : | |
| : | |

**DISCIPLINARY COUNSEL'S MOTION TO STRIKE
"LODGED PROTECTIVE MOTION TO QUASH"**

Because the issues raised in this motion, as Respondent admits, are already
under review by the Court of Appeals, the Board lacks jurisdiction to consider this
"Lodged Protective Motion to Quash," and it should be dismissed.

Beginning in October 2021, Disciplinary Counsel attempted to serve on
Respondent the formal notification of investigation, required by Board Rule 2.7, as
well as a subpoena for documents, as permitted by Rule XI, § 18.  Disciplinary
Counsel had identified and therefore contacted a lawyer who had represented
Respondent before the Judiciary Committee.   While this lawyer was uncertain
whether he would represent Respondent in the disciplinary investigation, he agreed

**EXHIBIT 1**

that the documents should be sent to him. The investigation arose from a referral from the Chair of the Senate Committee on the Judiciary, so the initial notification was accompanied by the usual documents as well as the Majority Staff Report and related letters.  As has been the practice during the pandemic, these materials were sent electronically.

After the date passed for a response pursuant to Board Rule 2.8 and for the return date on the subpoena, Disciplinary Counsel contacted Respondent's counsel and was informed that none of the documents had been received.  But counsel was no longer representing Respondent, and he directed that the materials be sent directly to Respondent.  This occurred in November 2021.  Respondent reported some difficulty in receiving all the material, although never specified that he had not received the subpoena and asked for several continuances in which to respond.  On January 6, 2022, he admitted having received everything, and Disciplinary Counsel insisted on a response during the month of January.  Respondent chose January 31, 2022.  On that date, he asserted his right against self-incrimination in not responding to the substance of the documents on which the investigation was based.  He also noted objections to the subpoena, including, for the first time, an objection that it had not been served on him personally and a claim that the act of producing documents would incriminate him.  His two letters objecting to the subpoena totaled 93 pages (not including attachments). He waited until the date the production was

due before making any objections and did not file a motion to quash pursuant to Rule XI, § 18(c).  Disciplinary Counsel then filed a motion to compel production on February 3, 2022, which motion is now pending before the Court. Respondent has filed 47 pages of pleadings (not counting attachments or the filings made to the Court on March 15, 2022, which are 134 pages) objecting to the subpoena.

To eliminate the personal service issue, Disciplinary Counsel arranged to serve Respondent with a second subpoena, identical to the first but for the dates, on February 3, 2022.  The production date was March 14, 2022, but Disciplinary Counsel agreed with Respondent's counsel that Respondent did not need to appear on that date because he was continuing to assert the objections that he had raised before the Court.

After business hours on March 14, 2022, the day the subpoena return was due, Respondent also filed 676 pages of pleadings and attachments with the Board, labeled, "Lodged Protective Motion to Quash."  We attach an index of these attachments to this response.  But as Respondent admits, neither the Board nor any hearing committee that the Board might assign, has jurisdiction over this matter because the matter is before the Court.  Since that proposition is undisputed by the parties, the appropriate response by the Board is to dismiss this matter.  Why the Board should be subjected to 676 pages of pleadings and attachments with respect to a matter over which Respondent concedes it has no jurisdiction is inexplicable.

There is no such thing as a "Lodged Protective Motion" within the rules of the Board or the Court.  Not only does the Court have exclusive jurisdiction over the question of the enforceability of the subpoena, but also the Court has the matter under consideration.  There is no reason to raise the same issues before the Board.  This appears to part of a consistent effort to delay this investigation by opening a second litigation "theater" and deluging the tribunals with paper.  Accordingly, this motion should be dismissed.

Respectfully submitted,

*Hamilton P. Fox, III*

_____
Hamilton P. Fox, III
Disciplinary Counsel
Bar Registration No. 113050


**/s/ Jason R. Horrell**_____
Jason R. Horrell
Assistant Disciplinary Counsel
Bar Registration No. 1033885

OFFICE OF DISCIPLINARY COUNSEL
515 5th Street, N.W.
Building A, Room 117
Washington, D.C.  20001
202-638-1501

4

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of March, 2022, I caused a copy of the foregoing *Disciplinary Counsel's Motion to Strike "Lodged Protective Motion to Quash"* to be served on the Respondent's counsel, Harry W. MacDougald, Esq., by email to hmacdougald@CCEDlaw.com, and by first-class U.S. mail to Harry W. MacDougald, Esq., Caldwell, Carlson, Elliott & DeLoach, LLP, Two Ravinia Drive, Suite 1600, Atlanta, GA 30345, to Robert Destro via email at Robert.destro@protonmail.com, and to Charles Burnham via email at charles@burnhamgorokhov.com.

*Hamilton P. Fox, III*

_____
Hamilton P. Fox, III

**INDEX OF MATERIALS FILED IN MARCH 14, 2022 PLEADING**

|  | Pgs | Total Pgs |
|---|---|---|
| **Lodged Protective Motion to Quash and Exhibits** | **20** | **20** |
| • Exhibit A – ODC's Subpoena served on 2/28/22 | 6 | 6 |
| • Exhibit B – Letter to Phil Fox re Response to 11/22/21 Subpoena dated 1/31/22 | 23 | 45 |
|    o Exhibits | 22 | |
| • Exhibit C – Letter to Fox dated 1/31/22 re ODC's subpoena | 70 | 145 |
|    o Attachments | 75 | |
| • Exhibit D – ODC's Motion for Leave to File Under Seal and to Enforce dated 2/3/22 | 17 | 17 |
| • Exhibit E – Respondent's Response to Motion to Compel and Motion to Quash dated 2/15/22 | 35 | 115 |
|    o Exhibits | 80 | |
| • Exhibit F – ODC's Reply Motion to Quash dated 2/18/22 | 11 | 11 |
| • Exhibit G – Respondent's Reply in Support of Cross-Motion to Quash dated 2/21/22 | 12 | 12 |
| • Exhibit H – ECF 160 Opposition to Plaintiff's Privilege Claims filed on 3/2/22 in *Eastman v. Thompson*, et al., Case 8:22-cv-00099 | 61 | 94 |
|    o Exhibits | 33 | 33 |
| • Exhibit I – Emails from J6C Counsel dated 3/10/22 | 1 | 1 |
| • Exhibit J – Wisconsin Office of Special Counsel 2d Interim Report dated 3/1/2022 | 136 | 136 |
| • Exhibit K – Voter GA Press Conference: How Georgia 2020 Election Results Were Electronically Manipulated, dated 3/7/22 | 24 | 24 |

**TOTAL PAGES: 626**



**U.S. Department of Justice**

Office of the Deputy Attorney General

---

*Bradley Weinsheimer*
Associate Deputy Attorney General

*Washington, D.C. 20530*

July 26, 2021

Jeffrey B. Clark
Lorton, VA
Via email to Counsel

Dear Mr. Clark:

      The Department of Justice (Department) understands that you have been requested by the U.S. House of Representatives Committee on Oversight and Reform (House Oversight Committee), and the U.S. Senate Judiciary Committee to provide transcribed interviews to the Committees relating to your service as Assistant Attorney General for the Environment and Natural Resources Division and Acting Assistant Attorney General for the Civil Division.  In these interviews, you are authorized to provide information you learned while at the Department as described more fully below.

      According to information provided to you and the Department by the House Oversight Committee, its focus is on "examining President Trump's efforts to pressure the Department of Justice (DOJ) to take official action to challenge the results of the presidential election and advance unsubstantiated allegations of voter fraud."[1]  The House Oversight Committee has stated that they wish to ask you questions "regarding any efforts by President Trump and others to advance unsubstantiated allegations of voter fraud, challenge the 2020 election results, interfere with Congress's count of the Electoral College vote, or overturn President Biden's certified victory."[2]

      Based upon information provided to you and to the Department from the Senate Judiciary Committee, the Department understands that the scope of that Committee's inquiry is very similar to that of the House Oversight Committee.  The letter to the Department dated January 23, 2021, explained that the Senate Judiciary Committee is conducting oversight into public reporting about "an alleged plot between then-President Donald Trump and [you] to use the Department of Justice to further Trump's efforts to subvert the results of the 2020 presidential election"—events that the letter described as raising "deeply troubling questions regarding the Justice Department's role" in those purported efforts.[3]  In addition, the Senate Judiciary

---

[1] Letter from Carolyn B. Maloney, Chairwoman, House Committee on Oversight and Reform, to Jeffrey B. Clark, June 14, 2021.

[2] *Id.*

[3] Letter from Richard J. Durbin et al., Senate Judiciary Committee, to Monty Wilkinson, Acting Attorney General, Dep't of Justice, January 23, 2021, at 1, https://www.judiciary.senate.gov/press/dem/releases/senate-judiciary-committee-democrats-seek-answers-about-dojs-role-in-trumps-scheme-to-overturn-the-2020-election.

**EXHIBIT 2**

Committee has represented to the Department that the scope of its interview will cover your knowledge of attempts to involve the Department in efforts to challenge or overturn the 2020 election results. This includes your knowledge of any such attempts by Department officials or by White House officials to engage in such efforts. The Committee has further represented that the time frame for its inquiry will begin following former Attorney General William Barr's December 14, 2021, resignation announcement.

Department attorneys, including those who have left the Department, are obligated to protect non-public information they learned in the course of their work. Such information could be subject to various privileges, including law enforcement, deliberative process, attorney work product, attorney-client, and presidential communications privileges. The Department has a longstanding policy of closely protecting the confidentiality of decision-making communications among senior Department officials. Indeed, the Department generally does not disclose documents relating to such internal deliberations. For decades and across administrations, however, the Department has sought to balance the Executive Branch's confidentiality interests with Congress's legitimate need to gather information.[4]

The extraordinary events in this matter constitute exceptional circumstances warranting an accommodation to Congress in this case. Congress has articulated compelling legislative interests in the matters being investigated, and the information the Committees have requested from you bears directly on Congress's interest in understanding these extraordinary events: namely, the question whether former President Trump sought to cause the Department to use its law enforcement and litigation authorities to advance his personal political interests with respect to the results of the 2020 presidential election. After balancing the Legislative and Executive Branch interests, as required under the accommodation process, it is the Executive Branch's view that this presents an exceptional situation in which the congressional need for information outweighs the Executive Branch's interest in maintaining confidentiality.

The Executive Branch reached this view consistent with established practice. Because of the nature of the privilege, the Department has consulted with the White House Counsel's Office in considering whether to authorize you to provide information that may implicate the presidential communications privilege. The Counsel's Office conveyed to the Department that President Biden has decided that it would not be appropriate to assert executive privilege with respect to communications with former President Trump and his advisors and staff on matters related to the scope of the Committees' proposed interviews, notwithstanding the view of former President Trump's counsel that executive privilege should be asserted to prevent testimony regarding these communications. *See Nixon v. Administrator of General Servs.*, 433 U.S. 425, 449 (1977) ("[I]t must be presumed that the incumbent President is vitally concerned with and in the best position to assess the present and future needs of the Executive Branch, and to support

---

[4] *See* Letter for Rep. John Linder, Chairman, Subcommittee on Rules and Organization, from Robert Raben, Assistant Attorney General, Office of Legislative Affairs at 2 (Jan. 27, 2000) ("Linder Letter") ("In implementing the longstanding policy of the Executive Branch to comply with Congressional requests for information to the fullest extent consistent with the Constitutional and statutory obligations of the Executive Branch, the Department's goal in all cases is to satisfy legitimate legislative interests while protecting Executive Branch confidentiality interests.").

invocation of the privilege accordingly."); *see also id.* (explaining that the presidential communications privilege "is not for the benefit of the President as an individual, but for the benefit of the Republic") (internal citation omitted).

Therefore, given these extraordinary circumstances, including President Biden's determination on executive privilege, and having reviewed the scope of the Committees' requested interviews, the Department authorizes you to provide unrestricted testimony to the Committees, irrespective of potential privilege, so long as the testimony is confined to the scope of the interviews as set forth by the Committees and as limited in the penultimate paragraph below.[5]  This accommodation is unique to the facts and circumstances of this particular matter and the legislative interests that the Committees have articulated.

Consistent with appropriate governmental privileges, the Department expects that you will decline to respond to questions outside the scope of the interview as outlined above and instead will advise the Committees to contact the Department's Office of Legislative Affairs should they seek information that you are unable to provide.

Please note that it is important that you not discuss Department deliberations concerning investigations and prosecutions that were ongoing while you served in the Department.  The Department has a longstanding policy not to provide congressional testimony concerning prosecutorial deliberations.  If prosecutors knew that their deliberations would become "subject to Congressional challenge and scrutiny, we would face a grave danger that they would be chilled from providing the candid and independent analysis essential to just and effective law enforcement or, just as troubling, that they might err on the side of prosecution simply to avoid public second-guessing."  Linder Letter.  Discussion of pending criminal cases and possible charges also could violate court rules and potentially implicate rules of professional conduct governing extra-judicial statements.  We assume, moreover, that such Department deliberations are not within the scope of the requested testimony as defined by the Committees.

Accordingly, consistent with standard practice, you should decline to answer any such questions and instead advise the Committees to contact the Department's Office of Legislative Affairs if they wish to follow up on the questions.  Responding in such a way would afford the Department the full opportunity to consider particular questions and possible accommodations that may fulfill the Committees' legitimate need for information while protecting Executive Branch confidentiality interests regarding investigations and prosecutions.

Sincerely,

Bradley Weinsheimer

---

[5] You are not authorized to reveal information the disclosure of which is prohibited by law or court order, including classified information and information subject to Federal Rule of Criminal Procedure 6(e).

3