# EXHIBIT A-18

# DISTRICT OF COLUMBIA COURT OF APPEALS
# BOARD ON PROFESSIONAL RESPONSIBILITY
# HEARING COMMITTEE NUMBER TWELVE



RECEIVED
Aug 31 2022 3:55pm
Board on Professional Responsibility

| | |
|---|---|
| In the Matter of : | Board Docket No. 22-BD-039 |
| JEFFREY B. CLARK, ESQUIRE : | Disciplinary Docket No. 2021-D193 |
| Respondent : | |
| A Member of the Bar of the District : of Columbia Court of Appeals. : Bar Number: 455315 : Date of Admission: July 7, 1997 : | |

## DISCIPLINARY COUNSEL'S OPPOSITION TO REQUEST FOR DEFERRAL

Disciplinary Counsel opposes Respondent's Request for Deferral Under Board Rule 4.2.

## PRELIMINARY STATEMENT

Without seeking leave, Respondent filed his Request for Deferral under seal. This is a public matter, and it should not be litigated in secrecy. Rule XI, § 17(a). To the extent that Respondent believes it necessary to refer to matters under seal, the appropriate method is to include those matters in a sealed appendix. Moreover, Respondent has filed this pleading with the Board, but Board Rule 4.2 contemplates that the Hearing Committee is to make the initial recommendation of efforts to defer proceedings.

## ARGUMENT

**1.      Factual Inaccuracies**

There are a number of factual inaccuracies in Respondent's pleading (parenthetical references are to the pages of Respondent's pleading):

     a.     (pp. 4-5) Disciplinary Counsel did not initiate this matter in response to a letter from Senator Durbin.  Rather, this matter arose following receipt of the Majority Staff Report of the Senate Judiciary Committee, entitled "Subverting Justice: How the Former President and His Allies Pressured DOJ to Overturn the 2020 Election," as well as the report's supporting documentation, including transcribed interviews from former Acting Attorney General Jeffrey Rosen and former Principal Associate Deputy Attorney General Richard Donoghue.  The letter from Senator Durbin was a cover letter transmitting these materials.  While Respondent attacks the testimony before the January 6 Committee as not being taken subject to cross-examination, the Minority Staff of the Judiciary Committee participated equally in the transcribed interviews and asked questions of both Mr. Rosen and Mr. Donoghue.

     b.     (p. 5, n. 2) The reference to the case against Kevin Clinesmith is puzzling.  He was not convicted of a crime of moral turpitude.  Disciplinary Counsel initiated proceedings against Mr. Clinesmith and entered into a

negotiated discipline, approved by the Court, suspending Mr. Clinesmith for one year. *In re Clinesmith*, 258 A.2d 161 (D.C. 2021) (per curiam).

  c. (pp. 6-7) Service of the petition was not coordinated with the January 6 Committee as Respondent implies. The timing was dictated by the date that the contact member approved the charges—although Respondent does not explain the significance of its service the day before a Committee hearing that did not concern his conduct.

  d. (p. 7 & n. 3) Disciplinary Counsel's "blast email" with copies of the Specification of Charges to certain reporters was part of a standard arrangement with those reporters to send them copies of *all* public charges after they have been served on respondents. This case was treated no differently than all other cases in that regard.

  e. (p. 7) Matthew Kaiser is no longer a member of the Board. There could be no more illustrative example of Respondent's efforts to file every conceivable motion to delay these proceedings than his motion to recuse Mr. Kaiser after he was no longer a Board member. It also illustrates Respondent's cavalier approach to factual investigation.

  f. (pp. 16, 18) The Specification of Charges is not an effort to second guess the confidential internal deliberations of the Department of Justice. The Department of Justice made the decision not to send the letter

3

drafted by Respondent containing false information, and Disciplinary Counsel is not challenging that decision. The charges are instead based upon Respondent's insistence on sending the letter after he was informed that the information was false and his attempt to use coercion to bring about his desired result. In no way do the charges purport to be oversight of the Department; they are directed at a member of the D.C. Bar who engaged in dishonest conduct while employed at the Department.

     g.    (p. 22) The suggestion that Disciplinary Counsel is "a stalking horse for potential federal charges" has no basis in fact. The only contact that Disciplinary Counsel has had with the Department of Justice is to contact the Counsel for the Office of Professional Responsibility to obtain *Touhy* letters so that former Department lawyers and Respondent can provide testimony.

     h.    (p. 23) Nor was the Specification of Charges based upon the testimony of Messrs. Rosen and Donoghue before the January 6 Committee. It was based upon their interviews before the Judiciary Committee and Disciplinary Counsel's subsequent investigation.

     i.    (pp. 24-25) The Specification of Charges has nothing to do with foreign election interference or Hunter Biden's laptop.

  j. (*passim*) These proceedings are not being brought by or before the "D.C. Bar." Disciplinary Counsel is not an agency of the Bar, but an arm of the Court. Nor are the Board or its hearing committees agencies of the Bar.

**2. The Pending Matter Filed Under Seal Does Not Justify Deferral**

Disciplinary Counsel has previously addressed this issue in its Opposition to Respondent's Cross-Motion to Stay Proceedings Before the Board on Professional Responsibility Pending Resolution in this Court, which Disciplinary Counsel filed with the Court of Appeals on August 15, 2022. A copy of this pleading was served on the Board. Because that discussion related to pleadings filed under seal, it is not repeated here. However, as Respondent notes, he has sought a stay of these proceedings before the Court of Appeals. What he omits is that the Court has not granted that stay, which it clearly had time to do since the Court was put on notice by Disciplinary Counsel in its Opposition that the extended deadline to answer the charges is September 1, 2022. Respondent cannot rely on an ungranted stay as justification to defer these proceedings.

**3. The Parallel Criminal Proceedings.**

Respondent admits that the Special Grand Jury in Georgia has not yet even contacted him. He does not know if he is going to be involved in those proceedings even as a witness, much less a target. The only thing he points to in the federal investigation is the execution of a search warrant for his electronic devices. He does

5

not say whether he is a target of that investigation. The execution of a search warrant means only that Respondent had in his possession physical evidence that was relevant to charges under investigation. It does not mean that he is the person under investigation. How were the prosecutors going to obtain physical evidence from Respondent other than by search warrant? Respondent has been open about his refusal to cooperate in these investigations, which he refers to in his pleading as being brought by "a highly politicized and partisan Department of Justice and the witch-hunt atmosphere raging in the media around the facts alleged in the charges, and the two-tiered system of justice tilted against Republicans in Washington, D.C." (p.5) *See* Claudia Grisales, *Jan. 6 panel votes to refer ex-DOJ official Jeffrey Clark for contempt of Congress*, NPR, https://www.npr.org/2021/12/01/1056503745/jan-6-panel-to-take-up-contempt-referral-for-former-doj-official-jeffrey-clark; Ryan Nobles et al., *Former DOJ official Jeffrey Clark pleaded the Fifth Amendment more than 100 times in January 5 committee interview*, CNN, https://www.cnn.com/2022/02/03/politics/jeffrey-clark-justice-department-plead-fifth-january-6/index.html. Other persons have received target letters informing them of their status. *See* Tom Hamburger and Eugene Scott, *Giuliani is target in Ga. criminal probe of 2020 election, lawyers say*, Washington Post, https://www.washingtonpost.com/national-security/2022/08/15/trump-2020-election-georgia-investigation/; Olivia Rubin, *Georgia prosecutors 'target' 16 'fake*

*electors' in 2020 election probe*, ABC News, https://abcnews.go.com/Politics/georgia-prosecutors-target-16-fake-electors-2020-election/story?id=87120720. Respondent has not produced one.

Respondent says that the crimes mentioned in the warrant as being under investigation included 18 U.S.C. §§ 1001 and 1512, which he asserts are similar to the disciplinary violations for which he has been charged. (Disciplinary Counsel has no access to the warrant, and Respondent has not produced it.) First, he does not say that the false statements under investigation as violations of § 1001 were *his* false statements or that it was *his* conduct that is being investigated as obstruction of justice under § 1512. The dishonest conduct alleged in the Specification of Charges on which the Rule 8.4(c) charge is based was not a false statement made in a matter within the jurisdiction of the federal executive, legislative, or judicial branches of the United States, an element of sec. 1001. Rather, the dishonesty was Respondent's unsuccessful attempt to get the Department of Justice to send a letter to various Georgia officials containing false information. Disciplinary Counsel has not charged Respondent with violating § 1001. Nor does conduct seriously interfering with the administration of justice, in violation of Rule 8.4(d), equate to obstruction of justice. The former generally refers to causing unnecessary proceedings before a tribunal — here, the Georgia legislature and the litigation that would have ensued

7

had Respondent been successful.  Obstruction, on the other hand, generally refers to conduct that interferes with or impedes an investigation or official proceeding.

Notably absent in Respondent's Request for Deferral is how long he seeks to have this proceeding deferred.  What are the end points of a state investigation, in which he has yet had no involvement, and a federal investigation, the subject or targets of which are unknown?  The Rule 4.1 standard is "when there is a substantial likelihood that the resolution of the related investigation or litigation will help to resolve material issues involved in the pending disciplinary matter."  There is no such likelihood here, much less a substantial one.  In Georgia, there is no indication that Respondent is even involved.  Respondent has not shown that the conduct that resulted in the federal search warrant relates to the limited subject of these proceedings—his efforts to coerce Department officials to send a letter containing false information.  Only if Respondent were indicted for and either convicted or acquitted of charges very similar to the conduct underlying the Specification of Charges might the resolution of the criminal matters assist in these proceedings.  Moreover, the facts of this case are simple and well known.  Mr. Rosen and Mr. Donoghue's testimony before the Senate Judiciary Committee is a matter of public record and does not need to be developed further.  They will be the principle, perhaps only, witnesses against Respondent in this matter.  Deferral would in no way accomplish anything other than delay.

## 4. The January 6 Committee Proceedings.

It is even more ludicrous to believe that the January 6 Committee hearings will help resolve this disciplinary proceeding. Respondent asserts that those hearings "must be deemed civil in nature" (p. 22), whatever that means. They are certainly not civil litigation that could possibly result in a judgment, and the hearings would have no preclusive effect on this matter. In fact, Respondent's argument here is contradictory: he rails about how unfair the proceedings are and about how he has been denied due process, but then says the disciplinary system must wait until they are over because they may help resolve material issues here.

The portion of the hearing relating to Respondent appears to be concluded. *See 06/23/22 Select Committee Hearing*, Select Committee to Investigate the January 6th Attack on the United States Capitol, https://january6th.house.gov/legislation/hearings/062322-select-committee-hearing. A transcript of that hearing is publicly available, as are transcripts of the interviews given by Messrs. Rosen and Donoghue to the Senate Judiciary Committee prior to their public testimony before the January 6 Committee. Respondent says that there may be more evidence that the January 6 Committee has collected that is relevant. But the events in question here are fairly simple, occurring over just a few days. Disciplinary Counsel has been in touch with Committee staff, who say that they anticipate making all the materials available in the Fall. If that occurs,

9

Respondent and Disciplinary Counsel can make whatever use they can of it. But we do not need these unknown materials to try this case fairly. Respondent does not point to any evidence, for example, in the possession of the Committee that might be exculpatory. And since there is no preclusive effect from the Committee report —which Respondent has already damned in advance as being highly partisan and unfair—there is no reason to wait for it.

In response to Respondent's Motion for Extension of Time, Disciplinary Counsel alerted the Hearing Committee to Respondent's efforts to delay these proceedings. The last thing he wants is a day of reckoning. The extraordinary obstacles to resolving this matter that he has already thrown up—as set forth in his four pages of "Procedural Background"—are proof of what is going on here. Respondent has known for months he was going to seek to defer this matter. He asked Disciplinary Counsel to do so more than six-months ago. Rather than play games about needing more time to answer the Specification of Charges, he should have filed this motion weeks ago. But that would not have maximized his efforts to gum up the works with the sort of motion practice disciplinary proceedings eschew.

Respondent should be required to file his Answer on September 1 as the Committee has previously ordered. He should also file his motions after that time, as the Rules contemplate, and the Committee should make a recommendation on those motions in its Report and Recommendation. This is a simple hearing;

Disciplinary Counsel can try its case in no more than three days, and probably in two. The case should be set for a hearing this Fall and further efforts to delay it should not be tolerated.

Respectfully submitted,

*Hamilton P. Fox, III*

_____
Hamilton P. Fox, III
Disciplinary Counsel

/s/ Jason R. Horrell
Jason R. Horrell
Assistant Disciplinary Counsel

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501

## CERTIFICATE OF COMPLIANCE

This document complies with the length and format requirements of Board Rule 19.8(c) because it contains **2,389** words, double-spaced, with one-inch margins, on 8 ½ by 11-inch paper. I am relying on the word-count function in Microsoft Word in making this representation.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August 2022, I caused a copy of the foregoing *Disciplinary Counsel's Opposition to Request for Deferral* to be served on the Board of Professional Responsibility c/o Case Managers to casemanagers@dcbpr.org and to Respondent's counsels via email to Harry W. MacDougald, Esquire, to hmacdougald@CCEDlaw.com, to Charles Burnham, Esquire, to charles@burnhamgorokhov.com, and Robert A. Destro, Esquire, to Robert.destro@protonmail.com.

*Hamilton P. Fox, III*
_____
Hamilton P. Fox, III

12