# EXHIBIT A-30



RECEIVED
Sep 6 2022 2:42pm
Board on Professional Responsibility

# DISTRICT OF COLUMBIA COURT OF APPEALS
# BOARD ON PROFESSIONAL RESPONSIBILITY
# HEARING COMMITTEE NUMBER TWELVE

|  |  |
|---|---|
| In the Matter of | Board No. 22-BD-039 |
| JEFFREY B. CLARK, ESQUIRE | Disciplinary Docket No. 2021-D193 |
| Respondent, |  |
| A Member of the Bar of the District of Columbia Court of Appeals. Bar Number: 455315 Date of Admission: July 7, 1997 |  |

### DISCIPLINARY COUNSEL'S OMNIBUS RESPONSE
### TO RESPONDENT'S SEPTEMBER 1, 2022 PLEADINGS

Disciplinary Counsel submits this Omnibus Response to the pleadings filed by Respondent on September 1, 2022.

On September 1, 2022, Respondent filed an Answer, a Motion to Dismiss, and three motions to file various pleadings under seal. The next day, September 2, 2022, the Board resolved the motions to file under seal: only the portions of the pleadings that refer to a confidential matter are to be place under seal; redacted versions of pleadings are to be filed in the public record. The Answer requires no response. Only the Motion to Dismiss now requires a response. Under the Board Rules, rather than engage in extensive pre-hearing rulings on motions, the Hearing Committee is required to conduct the evidentiary hearing on the merits of the Specification of

Charges and in its report and recommendation, make recommendations to the Board as to the disposition of the motion to dismiss. Board Rule 7.16(a). Even if the Rules did not require this procedure, it would nonetheless be the only reasonable procedure to follow given the nature of the allegations made in the Motion to Dismiss.

Many of Respondent's arguments are dependent upon factual issues that have not yet been litigated. For example, all his arguments relating to his claim that the charges fail to state a violation of the Rules are heavily fact-dependent. They assume that the conduct at issue was a pre-decisional recommendation, part of providing advice to the President, or an honest expression of opinion on a legal issue, and therefore does not implicate Rule 8.4. The evidence will show that this is not so. Had Respondent merely suggested sending the so-called "Proof of Concept" letter to various Georgia officials, this case would not have been brought. It is generally not a disciplinary violation to make a stupid suggestion. Rather, these charges arise from Respondent's conduct *after* he proposed sending the letter and was informed by his superiors that there was no factual basis for the claims made in it—most significantly that there was no evidence of fraud in the 2020 presidential election that might have affected to results in Georgia. The Department lawyers who were familiar with the investigations into election fraud told Respondent that there was no such evidence and attempted to put him in touch with the United States Attorney who had conducted the Georgia investigation. Respondent did not follow up with

the U. S. Attorney. Nevertheless, he persisted in attempting to persuade and then coerce his superiors to send the letter asserting the false information, and when they still refused to do so, attempted to have himself appointed Acting Attorney General based upon his assurances to the President that if he were so appointed, he would send the letter.

Perhaps Respondent contests these facts. It is impossible to say since his Answer provides only a general denial. Therefore, the facts need to be determined at an evidentiary hearing before Respondent's Motion to Dismiss can be resolved. Even his jurisdictional arguments are at least partially dependent upon unresolved facts. For example, part of his separation of powers argument and his official immunity argument turned on his claim that he was giving legal advice to the President. Those arguments have no merit, and Disciplinary Counsel believes the evidence will show that rather than advise the President, Respondent was engaged in an attempt to interfere improperly in state election proceedings. This case does not attempt to intrude upon internal Department deliberations or regulate president authority, but rather regulate the conduct of an individual attorney subject to the Court's disciplinary authority who attempted to engage in dishonest conduct. But those issues can only be resolved by airing the facts.

Moreover, Disciplinary Counsel believes that once the facts are developed at an evidentiary hearing, many of the convoluted legal arguments Respondent has put

3

forth will disappear, and that the logical time to address those arguments is after the facts have been established. Accordingly, except to touch lightly on three points, Disciplinary Counsel does not intend to address them in this pleading, but rather to defer to the post-hearing briefing, as is the standard procedure.

1. **The D.C. Court of Appeals is an Article I Court Established by Federal Law and is Empowered to Regulate the Conduct of Members of Its Bar.**

While at times recognizing the unique status of the District of Columbia—"All law in the District is federal law . . ." (Motion to Dismiss at 18)—Respondent continually treats these proceedings as though they are an effort by a "mere" organ of a city government or a local bar association to regulate the operation of the federal government. In fact, the Court of Appeals was created by a 1970 act of Congress. District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, 84 Stat. 473 (1970). Its judges are appointed by the President and confirmed by the Senate. It is not an organ of the D.C. Government; the mayor and city council are not involved in the appointment process, for example.

As authorized by Congress, the Court sets its own rules for admission to its Bar and for the conduct of its members. *Id.* at 521. *See also* D.C. App. R. 46; D.C. Bar Rule XI. The Board on Professional Responsibility, including the hearing committees appointed by the Board, are agents of the Court. *See* Rule XI, § 4. They are not agents of the D.C. Bar. The Board also appoints Disciplinary Counsel, who is also not an agent of the D.C. Bar. *See* Rule XI, § 4(e)(2). Thus, disciplinary

4

proceedings are not bar proceedings, but court proceedings. Lawyers who are members of the D.C. Bar, but who are employed by the federal government, must still adhere to the standards of conduct to which all D.C. Bar members are held.

In a recent disciplinary matter, the Court reminded lawyers of its authority to regulate the conduct of members of its bar. Bar membership "arises from consensual covenant" between the Court and the attorney admitted to practice before it, and "[i]n return for the benefits of bar membership, members agree to be bound by Bar Rules and Rules of Professional Conduct … and to be subject to the disciplinary authority of this court and the Board …." *In re O'Neill*, 276 A.3d 492, 500 (D.C. 2022). The Court went on to remind attorneys that bar membership is a privilege, the receipt of which carries a duty "at all times and in all conduct, both professional and personal, to conform to the standards imposed upon members of the Bar," and that a violation of that duty "shall be grounds for discipline …." *Id*.

2. **The Department of Justice has Authority to Require its Lawyers to Comply with the Standards of Conduct of the Bars to Which They Are Admitted.**

Although the Court is empowered to discipline members of its bar, if necessary, Disciplinary Counsel can address in post-hearing briefing Respondent's contrived argument as to why he is not subject to the Rules of Professional Conduct, issued by the Court to which he is admitted to practice, by virtue of his status as an officer or employee of the Justice Department. Department lawyers and other high

5

federal officials who have been disciplined by the Court of Appeals would be surprised to learn of this immunity. *See In re Howes*, 52 A.3d 1 (D.C. 2012); *In re Kline*, 113 A.3d 202 (D.C. 2015); *In re Dobbie & Taylor* (BPR Jan. 13, 2021) (pending before DCCA); *see also In re Abrams*, 689 A.2d 6 (D.C. 1997) (Assistant Secretary of State for Inter–American Affairs); *In re Berger*, 927 A.2d 1032 (D.C. 2007) (National Security Advisor); *In re Sofaer*, 728 A.2d 625 (D.C. 1999) (Legal Advisor to U.S. State Department). In fact, although not members of the D.C. Bar, two presidents of the United States have been disbarred or suspended by state bars for their conduct while in office. *See Matter of Nixon*, 53 A.D.2d 178, 385 N.Y.S.2d 305 (1976) (disbarred); *Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan 19, 2001) (five-year suspension).

But the Department of Justice has adopted a regulation that subjects its lawyers to compliance with the rules of the bars of the courts to which they are admitted "to the same extent and in the same manner" as other attorneys admitted to those bars. 28 C.F.R. § 77.3. While Respondent puts forth a complex argument as to why D.C. is not a "state" for purposes of 28 U.S.C. § 530B(a), if true, this would only mean that the Department was not *required* by the statute to make its D.C. Bar members—in contrast to all other lawyers employed by the Department—adhere to the rules of the jurisdiction to which they were admitted. Respondent does not say why this result would make any policy sense. Surely, in setting the employment

6

rules for its employees, the Department has independent authority, regardless of whether there is a federal statute that so requires, to mandate its D.C. Bar members to adhere to the D.C. Rules of Professional Conduct—specious arguments about *ultra vires* regulations, the *Chevron* doctrine, and the newly-minted "major question" doctrine, notwithstanding.

### 3. The Only Proceeding Pending Before the Court of Appeals is a Motion to Enforce a Subpoena.

This proceeding did not originate before the Court of Appeals, and the merits of Respondent's conduct are not under consideration by the Court. When Respondent refused to comply with a subpoena for documents during the investigation of this matter, Disciplinary Counsel moved to enforce the subpoena before the Court pursuant to Rule XI, § 18(d). Then Respondent sought to have the subpoena quashed by the Board, to which Disciplinary Counsel pointed out that the matter—meaning only the issue of the enforcement of the subpoena because that was the only matter pending—was before the Court. The primary issue before the Court is whether the Fifth Amendment right against self-incrimination permits Respondent to refuse to comply with a subpoena that sought any evidence he had to support the claims made in the "Proof of Concept" letter that there was sufficient evidence of fraud in Georgia to affect the outcome of the 2020 election.

While the motion was under advisement, Disciplinary Counsel continued to investigate and concluded there was sufficient evidence to charge Respondent

without a response to its subpoena. These charges were brought approximately six months after the motion to enforce the investigative subpoena was filed with the Court. That does not mean that the subpoenaed evidence is not relevant, just not essential. (One might think that evidence supporting the claims Respondent sought to put forward in the "Proof of Concept" letter would be exculpatory and therefore something that Respondent would want made part of the record.) Respondent, however, wants to treat this ancillary evidentiary matter as though the entire case were under consideration by the Court. His only hook for doing so is that, as a make-weight argument to his extensive discussion of the Fifth Amendment issues, he threw into his brief arguments about lack of jurisdiction over Department of Justice employees. But even he admits that the law in the District of Columbia does not require one tribunal to defer to another if efficiency is not served—if resolution in one tribunal will not resolve the issues in another. And of course, here we do not have separate tribunals—the Board and its hearing committees are agencies of the Court of Appeals. In any case, Respondent admits, in his discussion of the D.C. case law, that the "divestiture-of jurisdiction rule" is not really a jurisdictional prohibition. So it is not true, despite the heading to his argument, that "The Board Lacks Jurisdiction." Motion to Dismiss at 9.

*   *   *   *   *   *   *   *   *   *   *   *   *

There is one genuine pre-litigation motion pending before the Hearing Committee — its recommendation on Respondent's request to defer these proceedings. That issue is briefed. If the decision is not to defer, the Hearing Committee should promptly schedule a status conference to establish a hearing date. Respondent's counsel requested and received access to Disciplinary Counsel's file last Fall. There may be some additional documents acquired since then, but there will not be many, if any. The exhibits will be sparse, and Disciplinary Counsel estimates that it would call three witnesses. There is no reason this case cannot be heard in the second half of October 2022.

          Respectfully submitted,

          *Hamilton P. Fox, III*

          _____
          Hamilton P. Fox, III
          Disciplinary Counsel

          **/s/ Jason R. Horrell**
          Jason R. Horrell
          Assistant Disciplinary Counsel

          OFFICE OF DISCIPLINARY COUNSEL
          515 Fifth Street, N.W.
          Building A, Room 117
          Washington, D.C.  20001
          (202) 638-1501

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September 2022, I caused a copy of the foregoing *Disciplinary Counsel's Omnibus Response to Respondent's September 1, 2022 Pleadings* to be served on the Board of Professional Responsibility c/o Case Managers to casemanagers@dcbpr.org and to Respondent's counsels via email to Harry W. MacDougald, Esquire, to hmacdougald@CCEDlaw.com, to Charles Burnham, Esquire, to charles@burnhamgorokhov.com, and Robert A. Destro, Esquire, to Robert.destro@protonmail.com.

*Hamilton P. Fox, III*
_____
Hamilton P. Fox, III