# EXHIBIT A-34

## DISTRICT OF COLUMBIA COURT OF APPEALS
## BOARD ON PROFESSIONAL RESPONSIBILITY



RECEIVED

Aug 29 2022 3:01pm

Board on Professional Responsibility

### Under Seal

|  |  |
|---|---|
| In the Matter of | |
| **JEFFREY B. CLARK** | **Disciplinary Docket No. 2021-D193** |
| A Member of the Bar of the District of Columbia Court of Appeals | |
| **Bar No. 455315** | |
| **Date of Admission: July 7, 1997** | |

## REQUEST FOR DEFERRAL UNDER BOARD RULE 4.2

Charles Burnham
DC Bar No. 1003464
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*\* Motion for pro hac vice application in progress*

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

*\*Motion for pro hac vice admission in progress*

# TABLE OF CONTENTS

Introduction .................................................................................................. 3

Procedural Background .................................................................................. 4

Board Rule 4.2 Procedure and Standard of Review ................................... 8

Argument ....................................................................................................... 9

I.    Overlapping Issues in Pending Litigation and in Pending Criminal
and Congressional Investigations Should Be Resolved Before
Proceeding with the Charges and Indeed All Proceedings Should
be Suspended at This Time. ............................................................ 10

    A.    ███████████████████████████████████

           ████████████████████████████████████

           ██████████████████████████████ 13

    B.    Overlapping Issues in the Pending Federal Criminal
Investigation. .................................................................. 21

    C.    Overlapping Issues in the January 6 Committee Investigation .... 22

    D.    Overlapping Issues in the Fulton County, Georgia Special
Grand Jury Investigation ................................................. 25

II.   Resolution of Overlapping Legal and Factual Issues in ██████
████████████ Related Congressional and Criminal
Investigations Would Be Helpful and Warrants Deferral. ................ 26

Conclusion .................................................................................................. 28

**DISTRICT OF COLUMBIA COURT OF APPEALS**
**BOARD ON PROFESSIONAL RESPONSIBILITY**

| | |
|---|---|
| In the Matter of | |
| **JEFFREY B. CLARK** | **Disciplinary Docket No. 2021-D193** |
| A Member of the Bar of the District of Columbia Court of Appeals | |
| Bar No. 455315 | |
| Date of Admission: July 7, 1997 | |

## REQUEST FOR DEFERRAL UNDER BOARD RULE 4.2

Pursuant to Section 4.2 of the Rules of the Board of Professional Responsibility ("Board Rule"), Respondent hereby moves to defer proceedings on the Specification of Charges filed by the Office of Disciplinary Counsel on July 19, 2022 in light of the pendency of related civil investigations, quasi-criminal litigation, and two other separate criminal investigations. Disciplinary Counsel has pre-emptively indicated his opposition to this request before the topic was even raised with him.

### INTRODUCTION

Board Rule 4.2 authorizes a party to disciplinary proceedings to request a deferral of a disciplinary case based on the pendency of either a related ongoing criminal and civil investigations or related pending criminal litigation. In this case, the request for deferral is based on (1) ███████████████████

██████████████████████████████████████████████████████████

██[1] (2) a related ongoing federal criminal investigation; (3) the related ongoing investigation of the January 6 Committee; and (4) the related ongoing investigation by a Special Purpose Grand Jury in Fulton County, Georgia.

As will be shown, there is substantial overlap between the issues in this case and the issues in these other proceedings. Deferring this case to allow the overlapping issues to first be resolved in these other proceedings, which have jurisdictional priority over this forum, will be materially helpful to these proceedings. First, because ████████████████████████████████████ ███████████████████████████████████████████████████████ and second, because the other proceedings will resolve or shed light on other disputed factual and legal questions in a way that will help this forum avoid conflicting or erroneous findings and conclusions that improperly infringe on the separation of powers and Respondent's individual constitutional rights.

## PROCEDURAL BACKGROUND

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████,

---

[1] Bar disciplinary proceedings are referred to as being quasi-criminal in nature. *See, e.g., In re Benjamin*, 696 A.2d 434, 439 n.8 (D.C. 1997).███████████████████████ ████████████████████████████████████████████████████████ ███████████

███████████████████████████████████████████

███████████████████████████████████████ Nor did

Mr. Clark participate in any proceedings held by the Senate Judiciary Committee

because, *inter alia*, a majority of the Committee's members did not issue him a

subpoena.

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████

---

[2] Quasi-judicial notice can be taken of how ODC has proceeded in this case versus the very different and lenient treatment of former FBI lawyer Kevin Clinesmith. Mr. Clinesmith **pleaded guilty**. On Mr. Clark's behalf, and by contrast, we maintain that Mr. Clark has done nothing wrong and there has certainly been no adjudication to the contrary.



ODC filed the pending Specification of Charges on July 19, 2022. ODC attempted to serve Respondent via a process server on July 20, which was the day before the January 6 Committee's most recent prime-time hearing on July 21, 2022. No attempt was made to arrange service through counsel as had been done with the second subpoena. Due to the lack of any attempt at cooperative

service, the seemingly independent process server apparently could not find Respondent at home because he was working at his new job in the District. ODC emailed counsel for Respondent on July 21 inquiring about service and lodging an unfounded accusation that Respondent was evading service, which was both false and ridiculous. Service was quickly arranged by agreement and was received voluntarily first thing on the morning of July 22, 2022. Within an hour of service being made, ODC sent a blast email to a half-dozen national reporters with copies of the Charges.[3]

 After filing the public Charges with the Board, Respondent moved to recuse Board Member and former Board Chair Matthew Kaiser (that issue and its impact remain pending). Respondent also sought a three-week extension of time to respond to the Charges, which ODC opposed. An extension was granted until September 1, 2022. Most of those filings before the Board have been under seal ████████ ████████████████████████████████████████████.

████████████████████████████████████████████

---

[3] A copy of this email to reporters was attached as Exhibit A to ███████████ ████████████████████████████████████████ Incorporated Motion to Seal, filed with the Board August 16, 2022.

Additionally, the way ODC is proceeding with reporters is troubling and raises the prospect that ODC is aiming to adjudicate this case in the press, which is generally improper and especially improper when questions swirl ████████████████████████████████ ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████

### BOARD RULE 4.2 PROCEDURE AND STANDARD OF REVIEW

Under Board Rule 4.2, a request for deferral and any opposition thereto is submitted to the Chair of the Hearing Committee to which the case is assigned. The Chair then submits the request and any opposition thereto to the Chair of the Board along with their recommendation. The Board Chair then rules on the request under the standards in Board Rule 4.1.

Under Board Rule 4.1, deferral may be ordered based on related ongoing criminal investigations or civil litigation "when there is a substantial likelihood that the resolution of the related investigation or litigation will help to resolve material issues involved in the pending disciplinary matter."

As set forth below, this standard is met in this case as to both ███████ ██████████ and the related federal and state criminal investigations and the related congressional investigation.

## ARGUMENT

As a general matter, whether the "resolution of the related investigation or litigation will help resolve the material issues involved in the pending disciplinary matter" depends on the extent to which they overlap and involve the same factual or legal issues. The standard is analogous but not identical to that of *Stebbins v. Stebbins*, 673 A.2d 184, 189 (D.C. 1996), which addresses whether proceedings in a trial court are precluded pending an appeal in the same case.

As will be explained further below,

In addition, as also explained below, there is also a substantial overlap between the pending criminal investigation and the Charges filed against Respondent, the pending investigation of the House Select January 6 Committee,

and the investigation of a Special Grand Jury in Fulton County Georgia.

Based on the overlapping issues ███████████████████ █ the pending

criminal investigation, deferral is warranted under Board Rule 4.2.

## I.   OVERLAPPING ISSUES IN PENDING LITIGATION AND IN PENDING CRIMINAL AND CONGRESSIONAL INVESTIGATIONS SHOULD BE RESOLVED BEFORE PROCEEDING WITH THE CHARGES AND INDEED ALL PROCEEDINGS SHOULD BE SUSPENDED AT THIS TIME.

The factual and legal issues presented by the Charges, and by Respondent's

defenses to those Charges, overlap substantially with the pending case before (i)

███████ (ii) a pending federal criminal investigation, (iii) the pending January

6 Committee investigation, and (iv) a pending Special Grand Jury investigation

in Fulton County, Georgia. Allowing those matters to conclude first will or may

resolve important factual and legal issues in this case and prove materially helpful

to reaching the appropriate result on the pending Charges. In particular, the Board

and its Hearing Committee ████████████████████████

████████████████████████████████

████████████████

This motion for deferral presents the reasoning as to why deferral should

be granted as a matter of prudence. It should be construed to be without prejudice

to Respondent's argument that ██████████████████████

████████████████████████████████

10

**N.B.** Additionally, 

A.

*Morfessis v. Hollywood Credit Clothing Co.*, 163 A.2d 825, 827 (D.C.





The subject matter jurisdiction arguments ███████████. They rest on constitutional, statutory, and administrative law principles. The constitutional grounds are applicable because (1) the Supremacy Clause (U.S. Const. art. VI) gives operation of the three branches of the federal government and the constitutional separation of powers doctrine primacy over D.C.'s home rule, and (2) because Rule XI § 8(a) of the Rules Governing the District of Columbia Bar incorporates into all Disciplinary Counsel proceedings any constitutional limitations that may apply.

The conduct described in the Charges describes consultations by the President of the United States with his most senior Senate-confirmed legal advisors in the Department of Justice in the discharge of his core Article II authorities over federal law enforcement.

Under the U.S. Constitution, the President of the United States, not the Attorney General, is its chief law enforcement officer. *See* U.S. Const., art. II, § 3 (the President "shall take Care that the Laws be faithfully executed …."). The President's constitutional responsibility for seeing that the laws be faithfully executed, carry with it, as a matter of settled law, "illimitable" discretion to remove principal officers carrying out his Executive functions. *See Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 493 (2010). The Constitution vests all Federal law enforcement power, and hence prosecutorial discretion, in the President. The

President's discretion in these areas has long been considered "absolute," and his decisions exercising this discretion are presumed to be regular and are generally deemed non-reviewable. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *see generally* S. Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521 (2005). The Attorney General and other DOJ lawyers such as the Respondent exercised discretion delegated to them by the President subject to his supervision. They are "the hand" of the President for the discharge of these authorities. *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922). When so acting they consequently enjoy the same protection.

.To assist the President in the discharge of these authorities and responsibilities, he has the right to receive full and frank advice and information from his advisors. The Opinion Clause imposes on senior federal officers like Respondent a reciprocal duty to provide such advice upon request. *See* U.S. Const., art. II, § 2, cl. 1 (Opinion Clause); 28 U.S.C. § 506 (Assistant Attorney Generals, like Mr. Clark, to be appointed by President with advice and consent of Senate); OLC Opinion, *State Bar Disciplinary Rules as Applied to Federal Government Attorneys* (Aug. 2, 1985) ("Rules promulgated by state courts or bar associations that are inconsistent with the requirements or exigencies of federal service may violate the Supremacy Clause."), *available at* https://tinyurl.com/56bft7sb, *last visited* (Aug. 27, 2022).

This is not a situation in which Respondent entered an appearance before a Court and misrepresented some fact at oral argument. This is a case that attempts to peel back the curtain of the Executive Branch and second guess its confidential internal deliberations at the highest level—among the senior-most officials of DOJ and directly with the President himself in the Oval Office regarding how to carry out the President's core authorities under Article II. For a State to try to do that would be a constitutionally unthinkable violation of federalism and, if the State were purportedly acting pursuant to congressional statute, to the separation of powers too. For a *city government* to try to do so (even one that Congress *sometimes* treats as if it were a State, like D.C.—though Congress *did not* do so here) is even more unthinkable and a patent violation of the separation of powers because the authority of the DCCA and hence the Board descends from Congress's Article I lawmaking powers.

The statutory arguments ███████████. The statute Congress passed purporting to subject Justice Department lawyers to state and local bar rules, 28 U.S.C. § 530B(a), provides that "[a]n attorney for the Government shall be subject to *State* laws and rules, and local Federal court rules, governing attorneys in each *State* where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that *State*." (emphasis added). The District of Columbia is not a "State." All law in the District is federal law and Congress alone

defines the nature, scope, and means of enforcement of all federal powers exercised here, including that of the D.C. Bar. U.S. Const., art. I, § 8, cl. 17 ("Seat of the Government"). Specific language is ordinarily required to treat the District as if it were a State. *See, e.g., District of Columbia v. Carter*, 409 U.S. 418, 432-33 (1973) (D.C. not a State for purposes of 42 U.S.C. § 1983, with the statute later being amended to treat D.C. as a State). The United States Code is replete with examples where Congress has ***specifically defined*** D.C. to fall within the meaning of the term "State," but only for purposes of that particular statute.[4] Indeed, by contrast, Chapter 31 of part II of title 28 of the United States Code (where 28 U.S.C. § 530B is found) lacks any specialized definition section. Congress surely knows how to confer power on District authorities when it wants to. And it expressly withheld such power here.

The administrative law arguments ███████████. In 1999, as a matter of administrative law, DOJ by regulation issued under Section 530(B)(b) improperly purported ***to extend*** the reach of Section 530B(a) to the District of Columbia. *See* 28 C.F.R. § 77.2(h).

But a federal agency cannot extend to the District in a regulation a power not

---

[4] *See, e.g.*, 28 U.S.C. § 1257(b) ("For the purposes of this section, the term 'highest court of a State' includes the District of Columbia Court of Appeals."); 42 U.S.C. § 8285a(2) ("the term 'State' means any of the several States, the District of Columbia …"); *see also, e.g.*, 26 U.S.C. § 170(c)(1) (applying term "charitable contribution" for tax purposes to include gifts for the use of "States, a possession of the United States … or the United States or the District of Columbia");. And Supreme Court Rule 47 states that "[t]he term "state court," when used in these Rules, includes the District of Columbia Court of Appeals."

given to it by the enabling statute. The preamble of the regulation cites to 28 U.S.C. §§ 509, 510, 515(a), 516, 517, 519, 533, and 547. *See* 64 Fed. Reg. 19,273, 19,274 (Apr. 20, 1999). But none of these statutes even reference the District of Columbia specifically. And these provisions say nothing about the power of D.C. Bar authorities to sit in oversight of the discretionary actions of U.S. Justice Department lawyers.[5] The 1999 rule is thus invalid under step one of the *Chevron* test, which voids regulatory interpretations of any statute that conflict with the statute's plain text, interpreted using "traditional tools of statutory construction." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984). And the canon of interpreting statutes as part of the *corpus juris* (the whole body of the law) is no doubt such a traditional tool of statutory interpretation. *See, e.g., Branch v. Smith*, 538 U.S. 254, 282 (2003)  ("courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes."). The plain text is violated here because D.C. is not a "State."

---

[5] The preamble of the regulation also mentions (1) Pub. L. 96-132, 93 Stat. 1040, 1044 (1979); and (2) Pub. L. 105-277 (1998), section 102 of the Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act. But both of these provisions are appropriations law limited to one-off fiscal years; they lack general effect. Moreover, the former provision predates Section 530B(a) and the latter provision is silent on 530B(a) and thus cannot be read to amend it. Finally, the fact that the statutes DOJ cited to extend Section 530B(a) to District of Columbia Bar rules point to two specific appropriations statutes mentioning the District shows that not even the DOJ of 1999 thought that it would be plausible to argue that D.C. Bar's rules were "local Federal court rules" within the meaning of Section 530B(a) or the preamble would have made that argument.

Additionally, ██████████████████████████████, the Supreme Court decided *West Virginia v. EPA*,. 142 S. Ct. 2587 (2022). *West Virginia* is a landmark administrative law case holding that a clear statement to delegate power is required in a statute when the entity wielding delegated power seeks to resolve a "major question." *Id.* at 2607-08. State and local regulation of Executive Branch law enforcement discretion in connection with the 2020 presidential election controversies is surely such a "major question" of political significance as applied. Indeed, even more importantly, state and local regulation of internal Executive Branch deliberations as a general matter constitute "major questions," *id.*, even putting aside the specific context of the 2020 presidential election. The major questions doctrine operates as a kind of *Chevron* step zero and here, the notion that the D.C. Bar can penetrate into and indeed take over Justice Department deliberations flunks at that zero step, since there is no clear statement issued by Congress that the local D.C. Bar was ever intended to possess such extraordinary power. *See also id.* at 2617, 2621 (Gorsuch, J., concurring) (doctrine protects both separation of powers *and* federalism).

Accordingly, as a matter of administrative law, the D.C. Bar does not have jurisdiction over Respondent's conduct as described in the Charges.

The gist of the merits arguments ██████████████████████ that there is no violation of the Rules, ██████████████. Rule 8.4 is not violated (or even

19

implicated) when a senior Justice Department attorney proposes a policy position in a draft letter and circulates it for discussion among other senior Department of Justice attorneys and the President of the United States (as Mr. Clark stands accused of doing). Nor is Rule 8.4 violated (or even implicated) if that policy proposal is rejected after those discussions and the draft letter never goes out. This is inherently how deliberative processes work—they select one course of action and reject others. The losing side should never be at risk of being held to be dishonest because others on the prevailing side disagreed with the losing side's position. It is possible for reasonable minds to differ in their appraisals of the facts, the law and the appropriate policy.

Finally, even if the statute and the regulation could give the D.C. Bar general authority over Respondent, both the statute, 28 U.S.C. 530B, and the regulation, 28 C.F.R. § 77.2(j)(2), *textually limit* the D.C. Bar's jurisdiction to conduct that is *normally or ordinarily* subjected to discipline. Thus, the statute, where it applies, authorizes a State to discipline federal attorneys only "to the same extent and in the same manner as other attorneys in that State," while the regulation does not apply if the local jurisdiction "would not *ordinarily* apply its rules of ethical conduct to particular conduct or activity by the attorney." (Emphasis added).

As we have argued ████████████████████████████ ████████████████ we are unaware of any case where Rule 8.4 has been applied to

any pre-decisional discussion among a team of lawyers concerning a proposed draft statement of position in a letter that, for policy reasons, was never sent, much less to a senior Senate-confirmed DOJ official engaged in law enforcement and policy deliberations falling within the President's core Article II authorities operating in conjunction with the highest levels of the DOJ and with the President himself. ODC has been repeatedly challenged to identify any such case, and has yet to do so.

     B.    OVERLAPPING ISSUES IN THE PENDING FEDERAL
              CRIMINAL INVESTIGATION.

The D.C. Bar's Charges allege "attempted false statements" in violation of Rule of Professional Conduct 8.4(c), and "attempted" "serious interference with the administration of justice" in violation of Rule 8.4(d). On June 20, 2022, approximately a dozen armed agents of the Department of Justice's Office of Inspector General executed a criminal search warrant at Respondent's home at around 7 a.m. and seized his electronic devices. *See* https://tinyurl.com/nha3u4k3, *last visited* Aug. 29, 2022. The statutes specified in the search warrant were 18 U.S.C. § 1001, which relates to false statements, 18 U.S.C. § 371, which relates to conspiracy, and 18 U.S.C § 1512, which relates to obstruction of justice. The overlap between the first and third statutes cited in the search warrant and the Charges is readily apparent. The alleged "attempted" false statements under Rule 8.4(c) correspond to the investigation of allegedly false statements under 18 U.S.C. § 1001, while alleged attempted serious interference with the administration of justice under

Rule 8.4(d) corresponds to alleged obstruction of justice under 18 U.S.C § 1512. Both the federal criminal investigation and the Charges this case arise from or relate to the same alleged underlying conduct. The resolution of the criminal investigation will almost certainly help resolve material issues in this matter.

In view of the overlapping issues, ODC's Charges against Respondent can be viewed as a stalking horse for potential federal criminal charges. Compelling Respondent to defend the Charges at this time could force him to choose between asserting his Fifth Amendment privilege against self-incrimination and mounting a full factual defense of his license to practice law. Burdening the exercise of his constitutional right against self-incrimination in a quasi-criminal proceeding is unfair, unconstitutional,[6] and should not be countenanced unless and until the pending related civil and criminal matters have been resolved.

### C. OVERLAPPING ISSUES IN THE JANUARY 6 COMMITTEE INVESTIGATION

The issues framed by the Charges also overlap entirely with a subset of the issues being investigated (indeed flogged) in public hearings by the House January 6 Committee (hearings that must be deemed civil in nature). In fact, ODC seems to

---

[6] Penalizing Respondent's exercise of his procedural rights violates due process. *See generally Ex Parte Young*, 209 U.S. 193 (1908). Additionally, forcing Respondent to choose between observance of his Fifth Amendment rights and his law license (under challenge in a quasi-criminal proceeding) represents an unconstitutional condition. *See Griffin v. California*, 380 U.S. 609, 614 (1965) ("It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.").

have concluded that the public hearings of the January 6 Committee gave it sufficient evidence to file Charges against Respondent despite its investigation not yet being complete and even though there is no semblance of due process, true party balance, or cross-examination in the January 6 Committee's one-sided, carefully choreographed hearings. ODC is clearly relying on the incomplete version of events set forth in the so far publicly released portions of the testimony of former Acting Attorney General Jeff Rosen and former Acting Deputy Attorney General Richard Donoghue as the evidentiary support for the Charges. The investigation of the January 6 Committee is not yet complete, and the Committee and its members regularly put out statements that they continue to collect new evidence and that additional witnesses continue to come forward with relevant and material evidence. And the January 6 Committee will wield power and possibly issue supplemental findings until as late as circa January 2, 2023.

The Committee refuses to release the full deposition transcripts of the witnesses who have appeared before it, including the witnesses ODC will rely on to try to prove its case. Instead, it has released only selective, cherry-picked excerpts that advance the Committee's favored narrative. As commentators across the political spectrum have observed, the Committee is a political monolith, and there is no adversary testing of any of the witnesses, any of the evidence, or any of the Committee's theories. The result has been a presentation that affected witnesses have

publicly alleged was misleading or intentionally false, including testimony relating to Respondent.[7]

Respondent has compelling Sixth Amendment Confrontation Clause and Fifth Amendment due process rights to review and dissect the full and complete Committee deposition transcripts of the witness who may be called to testify against him in order to prepare his cross-examination. Under the Speech and Debate Clause, the Committee likely cannot be compelled by subpoena to release the full transcripts.[8] The Committee has unfettered discretion over whether to release the transcripts and have indicated they will not do so until their investigation is complete. In addition, Respondent has Fifth and Sixth Amendment rights to present evidence over which the DOJ has asserted law enforcement privilege, *see* Exhibit 2, and which also involves classified and privileged national security information about foreign election interference Respondent is presently constrained not to disclose.[9]

---

[7] *See Lawyer Accuses Jan. 6 Committee Of 'False' Accusations and Mischaracterizations,* https://www.washingtonexaminer.com/news/ken-klukowski-rips-jan-6-committee-false-accusations-mischaracterizations; *Trump White House Attorney Disputes Cassidy Hutchinson's Testimony About Handwritten Note,* https://abcnews.go.com/US/trump-white-house-attorney-disputes-cassidy-hutchinsons-testimony/story?id=85898838; *Secret Service Reportedly Denies Cassidy Hutchinson's Jan. 6 Tale,* https://www.washingtontimes.com/news/2022/jun/28/secret-service-denies-cassidy-hutchinson-jan-6-tal/, *last visited* Aug. 25, 2022.

[8] Cf. Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 501-501 (1975) ("Without exception our cases have read the Speech and Debate Clause broadly to effectuate its purposes. … The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress can be performed independently.")

[9] For this reason, recent revelations that the FBI interfered in the 2020 election (by visiting one or more social media companies), based on the false premise that Hunter Biden's laptop was "Russian

On first principles, Respondent cannot get a fair hearing before the Hearing Committee until he has access to the documents and transcripts necessary to his defense. It is therefore both necessary and helpful to the Board and the Hearing Committee to defer these proceedings until the related proceedings have been concluded and all necessary documents to which Respondent is entitled for his defense become available to him.

### D.   OVERLAPPING ISSUES IN THE FULTON COUNTY, GEORGIA SPECIAL GRAND JURY INVESTIGATION.

A special grand jury has been empaneled in Fulton County Georgia to investigate what the District Attorney refers to as attempts to influence the November 2020 Presidential election. The Special Grand Jury has cast a very wide net, subpoenaing dozens of lawyers, Republican presidential electors, state officials, and others. While the Special Grand Jury has not yet contacted Respondent (though it has contacted Dr. John Eastman, whose phone was also seized by the DOJ OIG on the same day as Respondent's electronics), an overlap between that investigation of events in Georgia and the Charges in this case seems likely in that the pre-decisional draft letter that is the focus of the Charges was marked for delivery to state officials in Georgia.

---

misinformation" may also become relevant to these proceedings. *See* Thomas Barrabi, *Mark Zuckerberg Tells Joe Rogan Facebook Was Wrong to Ban the Post's Hunter Biden Laptop Story*, NEW YORK POST (Aug. 25, 2022), *last visited* Aug. 29, 2022 ("[Zuckerberg] said the platform opted to limit sharing on the story — but not halt it entirely — ***after the FBI told Meta employees to be wary of Russian propaganda ahead of the election***") (emphasis added).

## II.   RESOLUTION OF OVERLAPPING LEGAL AND FACTUAL ISSUES IN ███ ███████████████ AND THE RELATED CONGRESSIONAL AND CRIMINAL INVESTIGATIONS WOULD BE HELPFUL AND WARRANTS DEFERRAL.

The constitutional, statutory and administrative law arguments described

above ████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████ ████████████████████████████

████████████████████████████████████████████

████████████████████████. It would thus be helpful to the Board ██████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[10] ████████████████████████████████████████████
████████████████████████████████████████

Similarly, the Charges pending here arise from and relate to the same conduct currently under investigation by the DOJ OIG, an investigation being carried out with criminal search warrants and seizure of electronic records.

The Charges also entirely overlap with a subset of issues being investigated and publicized by the January 6 Committee. In fact, the Charges appear to be based on testimony publicized by the January 6 Committee, even though that testimony is cherry-picked, incomplete, and was not developed through any adversary process— and even though the full transcripts of the witnesses are not available as long as the Committee's investigation remains open.

There is also a likely overlap with the investigation of the Special Purpose Grand Jury in Fulton County, Georgia.

The outcome of ██████████████████████ d the pending related civil and criminal investigations will likely be helpful to the Board in this case. Therefore, deferral should be ordered pursuant to Rule 4.2.

Finally, deferral would work no prejudice to the D.C. Bar, the interests of justice, or the public interest. The only urgency associated with this case is drawn— improperly—from the politicized context from which it emerges. The D.C. Bar does not normally commence ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████, Senator Richard

Durbin. ODC then rushed to bring charges ███████████████████████

██████████████, relying on cherry-picked evidence presented at the hyper-

politicized January 6 Committee show-trial hearings. ODC attempted to serve the

Charges by ambush the day before the second of the January 6 Committee's prime-

time televised hearings. The exigencies of the political calendar should have no

effect on these proceedings. No politically motivated rush to judgment should be

allowed to prejudice Respondent's constitutional rights.

## CONCLUSION

Granting the request for deferral would avoid the risk of an outcome

inconsistent with that of the related pending civil, criminal, and congressional

proceedings which have jurisdictional primacy over this forum. ██████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ to avoid

infringing the important constitutional and jurisdictional interests that are so

prominent in this case, the request to defer should be granted.

Respectfully submitted this 29th day of August, 2022.

/s/ Charles Burnham                    Robert A. Destro*
Charles Burnham                        Ohio Bar #0024315
DC Bar No. 1003464                     4532 Langston Blvd, #520
Burnham and Gorokhov, PLLC             Arlington, VA 22207
1424 K Street, NW                      202-319-5303
Suite 500                              robert.destro@protonmail.com

Washington DC 20005                     *Application PHV Pending*
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
*Application PHV Pending*

## CERTIFICATE OF COMPLIANCE WITH
## RULE 19.8(C)

This document complies with the length and format requirements of Board Rule 19.8(c) because it contains 6,582 words, including footnotes, is double-spaced, with one-inch margins, on 8½ by 11-inch paper. I am relying on the word-count function in Microsoft Word in making this representation.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party

with a copy of this *Request For Board Rule 4.2 Deferral Of Proceeding* by U.S. First

Class Mail with sufficient postage thereon to insure delivery, and by email addressed

to:

> Hamilton P. Fox
> Jason R. Horrell
> horrellj@dcodc.org
> Office of Disciplinary Counsel, D.C. Bar
> Building A, Room 117
> 515 5th Street NW
> Washington DC 20001
> foxp@dcodc.org

> This 29th day of August, 2022.

> /s/ *Charles Burnham*
> Charles Burnham
> DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

**EXHIBIT 1**







Respectfully submitted,

*Hamilton P. Fox, III*

_____
Hamilton P. Fox, III
Disciplinary Counsel
Bar Registration No. 113050


**/s/ Jason R. Horrell_____**
Jason R. Horrell
Assistant Disciplinary Counsel
Bar Registration No. 1033885

OFFICE OF DISCIPLINARY COUNSEL
515 5th Street, N.W.
Building A, Room 117
Washington, D.C.  20001
202-638-1501

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of March, 2022, I caused a copy of the

foregoing ███████████████████████████████████████████

████████ to be served on the Respondent's counsel, Harry W. MacDougald, Esq., by

email to <u>hmacdougald@CCEDlaw.com</u>, and by first-class U.S. mail to Harry W.

MacDougald, Esq., Caldwell, Carlson, Elliott & DeLoach, LLP, Two Ravinia Drive,

Suite 1600, Atlanta, GA 30345, to Robert Destro via email at

<u>Robert.destro@protonmail.com</u>, and to Charles Burnham via email at

<u>charles@burnhamgorokhov.com</u>.


*Hamilton P. Fox, III*

_____

Hamilton P. Fox, III

5





**U.S. Department of Justice**

Office of the Deputy Attorney General

---

*Bradley Weinsheimer*
Associate Deputy Attorney General

*Washington, D.C. 20530*

July 26, 2021

Jeffrey B. Clark
Lorton, VA
Via email to Counsel

Dear Mr. Clark:

The Department of Justice (Department) understands that you have been requested by the U.S. House of Representatives Committee on Oversight and Reform (House Oversight Committee), and the U.S. Senate Judiciary Committee to provide transcribed interviews to the Committees relating to your service as Assistant Attorney General for the Environment and Natural Resources Division and Acting Assistant Attorney General for the Civil Division. In these interviews, you are authorized to provide information you learned while at the Department as described more fully below.

According to information provided to you and the Department by the House Oversight Committee, its focus is on "examining President Trump's efforts to pressure the Department of Justice (DOJ) to take official action to challenge the results of the presidential election and advance unsubstantiated allegations of voter fraud."[1] The House Oversight Committee has stated that they wish to ask you questions "regarding any efforts by President Trump and others to advance unsubstantiated allegations of voter fraud, challenge the 2020 election results, interfere with Congress's count of the Electoral College vote, or overturn President Biden's certified victory."[2]

Based upon information provided to you and to the Department from the Senate Judiciary Committee, the Department understands that the scope of that Committee's inquiry is very similar to that of the House Oversight Committee. The letter to the Department dated January 23, 2021, explained that the Senate Judiciary Committee is conducting oversight into public reporting about "an alleged plot between then-President Donald Trump and [you] to use the Department of Justice to further Trump's efforts to subvert the results of the 2020 presidential election"—events that the letter described as raising "deeply troubling questions regarding the Justice Department's role" in those purported efforts.[3] In addition, the Senate Judiciary

---

[1] Letter from Carolyn B. Maloney, Chairwoman, House Committee on Oversight and Reform, to Jeffrey B. Clark, June 14, 2021.

[2] *Id.*

[3] Letter from Richard J. Durbin et al., Senate Judiciary Committee, to Monty Wilkinson, Acting Attorney General, Dep't of Justice, January 23, 2021, at 1, https://www.judiciary.senate.gov/press/dem/releases/senate-judiciary-committee-democrats-seek-answers-about-dojs-role-in-trumps-scheme-to-overturn-the-2020-election.

**EXHIBIT 2**

Committee has represented to the Department that the scope of its interview will cover your knowledge of attempts to involve the Department in efforts to challenge or overturn the 2020 election results. This includes your knowledge of any such attempts by Department officials or by White House officials to engage in such efforts. The Committee has further represented that the time frame for its inquiry will begin following former Attorney General William Barr's December 14, 2021, resignation announcement.

Department attorneys, including those who have left the Department, are obligated to protect non-public information they learned in the course of their work. Such information could be subject to various privileges, including law enforcement, deliberative process, attorney work product, attorney-client, and presidential communications privileges. The Department has a longstanding policy of closely protecting the confidentiality of decision-making communications among senior Department officials. Indeed, the Department generally does not disclose documents relating to such internal deliberations. For decades and across administrations, however, the Department has sought to balance the Executive Branch's confidentiality interests with Congress's legitimate need to gather information.[4]

The extraordinary events in this matter constitute exceptional circumstances warranting an accommodation to Congress in this case. Congress has articulated compelling legislative interests in the matters being investigated, and the information the Committees have requested from you bears directly on Congress's interest in understanding these extraordinary events: namely, the question whether former President Trump sought to cause the Department to use its law enforcement and litigation authorities to advance his personal political interests with respect to the results of the 2020 presidential election. After balancing the Legislative and Executive Branch interests, as required under the accommodation process, it is the Executive Branch's view that this presents an exceptional situation in which the congressional need for information outweighs the Executive Branch's interest in maintaining confidentiality.

The Executive Branch reached this view consistent with established practice. Because of the nature of the privilege, the Department has consulted with the White House Counsel's Office in considering whether to authorize you to provide information that may implicate the presidential communications privilege. The Counsel's Office conveyed to the Department that President Biden has decided that it would not be appropriate to assert executive privilege with respect to communications with former President Trump and his advisors and staff on matters related to the scope of the Committees' proposed interviews, notwithstanding the view of former President Trump's counsel that executive privilege should be asserted to prevent testimony regarding these communications. *See Nixon v. Administrator of General Servs.*, 433 U.S. 425, 449 (1977) ("[I]t must be presumed that the incumbent President is vitally concerned with and in the best position to assess the present and future needs of the Executive Branch, and to support

---

[4] *See* Letter for Rep. John Linder, Chairman, Subcommittee on Rules and Organization, from Robert Raben, Assistant Attorney General, Office of Legislative Affairs at 2 (Jan. 27, 2000) ("Linder Letter") ("In implementing the longstanding policy of the Executive Branch to comply with Congressional requests for information to the fullest extent consistent with the Constitutional and statutory obligations of the Executive Branch, the Department's goal in all cases is to satisfy legitimate legislative interests while protecting Executive Branch confidentiality interests.").

invocation of the privilege accordingly."); *see also id.* (explaining that the presidential communications privilege "is not for the benefit of the President as an individual, but for the benefit of the Republic") (internal citation omitted).

Therefore, given these extraordinary circumstances, including President Biden's determination on executive privilege, and having reviewed the scope of the Committees' requested interviews, the Department authorizes you to provide unrestricted testimony to the Committees, irrespective of potential privilege, so long as the testimony is confined to the scope of the interviews as set forth by the Committees and as limited in the penultimate paragraph below.[5]  This accommodation is unique to the facts and circumstances of this particular matter and the legislative interests that the Committees have articulated.

Consistent with appropriate governmental privileges, the Department expects that you will decline to respond to questions outside the scope of the interview as outlined above and instead will advise the Committees to contact the Department's Office of Legislative Affairs should they seek information that you are unable to provide.

Please note that it is important that you not discuss Department deliberations concerning investigations and prosecutions that were ongoing while you served in the Department.  The Department has a longstanding policy not to provide congressional testimony concerning prosecutorial deliberations.  If prosecutors knew that their deliberations would become "subject to Congressional challenge and scrutiny, we would face a grave danger that they would be chilled from providing the candid and independent analysis essential to just and effective law enforcement or, just as troubling, that they might err on the side of prosecution simply to avoid public second-guessing."  Linder Letter.  Discussion of pending criminal cases and possible charges also could violate court rules and potentially implicate rules of professional conduct governing extra-judicial statements.  We assume, moreover, that such Department deliberations are not within the scope of the requested testimony as defined by the Committees.

Accordingly, consistent with standard practice, you should decline to answer any such questions and instead advise the Committees to contact the Department's Office of Legislative Affairs if they wish to follow up on the questions.  Responding in such a way would afford the Department the full opportunity to consider particular questions and possible accommodations that may fulfill the Committees' legitimate need for information while protecting Executive Branch confidentiality interests regarding investigations and prosecutions.

Sincerely,

Bradley Weinsheimer

---

[5] You are not authorized to reveal information the disclosure of which is prohibited by law or court order, including classified information and information subject to Federal Rule of Criminal Procedure 6(e).