# EXHIBIT A-53



RECEIVED

Oct 11 2022 11:04am

Board on Professional
Responsibility

**Date:** October 6, 2022

**Case:** In Re:  Jeffrey B. Clark



ACE·FEDERAL

Ace-Federal Reporters, Inc.
Phone: 202-347-3700
Fax: 202-737-3638
Email: info@acefederal.com
Internet: www.acefederal.com

In Re:  Jeffrey B. Clark
October 6, 2022

The Board on Professional Responsibility

Pre-Hearing

In re Jeffrey B. Clark, Board DNo. 22-BD-039 /

Disciplinary DNo. 2021-D193

ZOOM

Thursday, October 6, 2022 9:30 AM

PARTICIPANTS

Hearing Committee Number Twelve

Merril Hirsh, Esquire

Chair


Hamilton P. Fox, III, Esquire

Disciplinary Counsel

Jason R. Horrell, Esquire

Assistant Disciplinary Counsel


Charles Burnham, Esquire

Harry W. MacDougald, Esquire

Robert A. Destro, Esquire

Respondent's Counsel

Jeffrey B. Clark, Esquire

Respondent

Page 1

In Re:  Jeffrey B. Clark
October 6, 2022

Page 2

1     PROCEEDINGS
2        (9:32 a.m.)
3     CHAIR HIRSH: Good morning.
4     MR. MacDOUGALD: Good morning, sir.
5     CHAIR HIRSH: Good morning.  Just give me
6  one second.  There's one piece of paper that I
7  actually wanted to look for --
8     MR. MacDOUGALD:   I never have that
9  problem, sir.
10     CHAIR HIRSH: No one else ever has this
11  problem.  Just give me one second.
12     Thank you very much everybody.  Before we
13  swear in the Court Reporter and take appearances, I
14  just wanted to just introduce the proceeding.
15     This is Board Number 22-BD-039, in re
16  Jeffrey B. Clark.  This matter is before a Hearing
17  Committee pursuant to Rule 11 of the District of
18  Columbia Court of Appeals governing the District of
19  Columbia.
20     I am Merril Hirsh. I am the Chair of
21  Hearing Committee 12.  And the purpose of this
22  prehearing conference is to clarify issues, to

Page 3

1  determine whether the parties can agree to
2  stipulations, or at least talk about it; set dates
3  for the exchange of evidence and witness lists -- we
4  need to do that; and determine the length of the
5  hearing and schedule the hearing.
6     Before we begin, I will note that the
7  COVID-19 pandemic has required the disciplinary
8  system to make many adjustments to ensure that cases
9  can continue to move forward without in-person
10  appearances.
11     Specifically, the disciplinary system has
12  had to modify how it conducts these hearings vis
13  video conference which we will live stream for public
14  access through YouTube.
15     The Board staff has made every effort to
16  make this hearing run smoothly, but we know that
17  there still may be some inevitable glitches with
18  technology that may arise.  So we may need to
19  exercise patience.
20     I will also ask the parties to put
21  yourselves on mute when you are not speaking, which
22  will help to minimize the feedback and allow us to

Page 4

1  hear people more clearly.
2     And now what I will do is swear in the
3  Court Reporter.  Mr. Catherine, do you solemnly -- do
4  you want "swear" or "affirm"?
5     COURT REPORTER: AFFIRM.
6     CHAIR HIRSH: Affirm?  Okay.  Do you
7  solemnly affirm that you will faithfully and
8  accurately report the present proceeding to the best
9  of your ability as directed by the Presiding Officer
10  herein?
11     COURT REPORTER:  I do.
12     CHAIR HIRSH: Thank you very much, Mr.
13  Catherine.
14     Okay, now could counsel please make their
15  appearances on the record.
16     MR. FOX:  I am Hamilton Fox and Jason
17  Horrell for the Office of the Disciplinary Counsel.
18  And let me just apologize.  For about 30 minutes
19  every morning I get this flow of sunlight into the
20  window which makes it a little difficult for me to
21  see the screen, and probably a little difficult for
22  you to see me.  I think it will go away in a few

Page 5

1  minutes.
2     CHAIR HIRSH; Okay, well it's the first sun
3  we've seen in a week, so -- (Laughing).
4     Welcome.  Good morning.  And for the --
5     MR. MacDOUGALD:   I am Harry MacDougald
6  for the Respondent Jeffrey Clark.
7     MR. BURNHAM: Charles Burnham, appearing as
8  well for Mr. Clark.  Good morning, everyone.
9     MR. DESTRO: Robert Destro, appearing also
10  for Mr. Clark.  Good morning, everyone.
11     And Mr. Clark is here, as well, sir.
12     CHAIR HIRSH:   Good morning, Mr. Clark.
13     RESPONDENT CLARK: Good morning, Your
14  Honor.
15     CHAIR HIRSH: It's flattering to be called
16  "Your Honor." I actually don't even play a judge on
17  TV.
18     RESPONDENT CLARK: Good morning, Chair
19  Hirsh.
20     CHAIR HIRSH: Thank you very much.
21     MR. MacDOUGALD: I've been wondering how to
22  address the Chairman, because for 37 years it's been

In Re:  Jeffrey B. Clark
October 6, 2022

**Page 6**

1  "Your Honor" every time, and I may -- I may fall back
2  into that.
3        CHAIR HIRSH: Yeah, it's a habit that
4  lawyers learn, and it's not a bad habit.  If you need
5  to say something, say "Your Honor," and I understand.
6  "Mr. Hirsh," "Chairman," those are both fine, but I
7  appreciate it.
8        Alright, I discussed what we are going to
9  be discussing today, but I am going to kind of take
10  in reverse order.  I would like to start with
11  discussing the hearing, when it is going to be, how
12  long it is going to be.  So why don't we start with
13  that.
14        Either one can really start first.  First
15  of all, are there any preliminary matters you want to
16  discuss before we get to that?
17        MR. MacDOUGALD: Yeah, for us there is,
18  Your Honor.  And in the papers that were filed on
19  Monday, we described the question of whether subject
20  matter jurisdiction is a threshold issue that has to
21  be decided first.
22        We understand of course that the Chair has

**Page 7**

1  ruled on that; that it doesn't have authority under
2  the Rules of the Board, and the decisions of the
3  Court of Appeals to take that question up.  But at
4  the same time, there is higher law that we cited in
5  the filing on Monday to the effect that subject
6  matter jurisdiction challenges like the one that we
7  have made have to be decided first as a threshold
8  question before deciding the merits.
9        But essentially the interpretation of the
10  Board's rules that has been applied is that the
11  Committee and the board are required to
12  hypothetically assume subject matter jurisdiction and
13  then decide the merits of the case.
14        But the Supreme Court of the United States
15  in the Steel Company versus Citizens for A Better
16  Environment case that we filed and cited in the
17  papers filed on Monday expressly forbids
18  hypothetically assuming subject matter jurisdiction
19  in order to decide the merits.
20        And it says doing so without subject
21  matter jurisdiction is by definition ultra vires.
22  And it says that rule has to be applied inflexibly

**Page 8**

1  and without exception.  So we think there is a fair
2  question of whether the Board's rules and the
3  interpretation of those rules controls over two
4  Supreme Court decisions and the decision of the D.C.
5  Court of Appeals, or whether subject matter
6  jurisdiction has to be decided first.
7        So again, with all respect, and I don't
8  want to argue with the Chairman about something that
9  has already been ruled on, but we do think there is a
10  fair issue here.  And we think it has to be addressed
11  before the merits.
12        So we don't think this Board or the
13  Committees get many subject matter jurisdictions that
14  are structured as ours has been.  It appears the
15  rules do not contemplate such challenges, because
16  the rules carry motions to dismiss with the merits
17  hearing, which is not what the Supreme Court said has
18  to be done.
19        And that Supreme Court Rule applies to
20  federal courts.  And at the end of the day, this is a
21  federal court, or at least it's an agency of a
22  federal court.

**Page 9**

1        So recognizing the constraints that the
2  Chair is operating under, and the decisions of the
3  Court of Appeals, we wanted to let you know that we
4  are considering our options for seeking judicial
5  review on the subject matter jurisdiction question.
6  And we asked -- before the case is heard on the
7  merits -- we asked Mr. Fox's position on that, and
8  he's opposed to that.  So we know where he stands.
9        But we wanted to put it before the
10  Chairman and ask if the Chair had a position on
11  whether it makes sense to have judicial review of the
12  subject matter jurisdiction question before a hearing
13  on the merits.  Not a recommendation on the merits,
14  but a recommendation on whether it ought to be heard.
15  And that could be done, for instance, by the Chair
16  recommending that the issue be given judicial review,
17  for example, in a mandamus petition that we might
18  file.
19        We are not asking you to take a position
20  on how that ought to be decided, just whether it
21  ought to be taken up and considered before a hearing
22  on the merits, in light of the authorities that we

3  (Pages 6 to 9)

In Re:  Jeffrey B. Clark
October 6, 2022

---

Page 10

1    have cited.
2         The Board would be able to take its own
3    position.  Mr. Fox and ODC would take their position,
4    arguing against it, but we do think that you would
5    have the authority to make a recommendation about
6    whether it ought to be heard, without taking a
7    position on how it ought to come out.
8         And so we would respectfully ask if the
9    Chair has a response or a position on that?
10        CHAIR HIRSH: My response is, if you want
11   to seek judicial review of our jurisdiction, it's up
12   to you.  I am not going to take a position and say
13   you ought to seek judicial review.
14        I also just note that in addition to not
15   deciding, but discussing for purposes of your motion
16   deferral, some of the arguments that you're making on
17   the jurisdictional point, which I understand what I
18   am supposed to do as part of my report and
19   recommendation on that motion.  Since that time the
20   D.C. Court of Appeals ruled in a subpoena matter that
21   the court cited as part of that, and as part of what
22   the D.C. Court of Appeals did, is it said that these

---

Page 11

1    kinds of issues ought to be considered in the first
2    instance by me and by the Board.
3         And so to the extent anyone -- and that
4    was, as I understood it, after you present a
5    jurisdictional arguments, that the subpoena shouldn't
6    be enforceable because there's no jurisdiction before
7    the D.C. Court of Appeals.
8         So if you want to take some, you know,
9    step about that, from my standpoint my marching order
10   is to continue with the proceeding, bring it to a
11   hearing, do a report and recommendation, and follow
12   the normal process.  And that is what I am planning
13   to do.
14        MR. MacDOUGALD:  Thank you.
15        CHAIR HIRSH: It's up to you to decide
16   whether to seek judicial review.
17        MR. MacDOUGALD:  Thank you for that, Your
18   Honor, and again we want to be clear.  We are not
19   trying to argue with you with what you've already
20   said, and we respect the constraints that you operate
21   under, but, you know, we've got to do what we've got
22   to do.

---

Page 12

1         CHAIR HIRSH:  Okay.  No, I understand
2    that, too.  Alright, any other preliminary matters?
3         MR. MacDOUGALD:  There is one more, Your
4    Honor, and that is -- and this again comes back to
5    the topic of deferral -- when we originally requested
6    deferral, we made reference to, at some point the
7    January 6th Committee would be finished, and they
8    would release a report, and their full deposition
9    transcripts.  And we didn't know, of course, when
10   that was going to happen exactly.
11        We now understand from press reports that
12   they are going to release their final report before
13   the election.  And based on their prior statements,
14   that would also involve a release of the full
15   deposition transcripts.  And undoubtedly, we are
16   going to learn things that are relevant and material
17   to this proceeding, for reasons that we explained
18   when we originally moved for a deferral.
19        And one of the reasons deferral was denied
20   was that we didn't know how long these other related
21   investigations might take.  And, well at least for
22   January 6th, we now think that we do.  And so we

---

Page 13

1    wanted to renew the motion for a deferral in light of
2    that to at least get us past the release of those
3    materials, which include depositions of witnesses
4    that Mr. Fox said he intends to call.
5         So we ask that you consider deferring it
6    to get past the release of the January 6th Committee
7    materials.
8         CHAIR HIRSH: Well, I don't see that's a
9    reason for deferring this.  There are a lot of
10   reasons why I don't agree with that.  One of them is,
11   so you're telling me that -- we're going to be
12   talking about dates in January, because both of you
13   have -- and I've asked counsel to come with dates in
14   January -- so you're saying two months or so before
15   the hearing you're going to have material.  That
16   isn't a reason to stop doing other things.
17        Your filing on Monday also suggests that
18   you need time to follow the Justice Department's
19   Touhy regulations on access; that you want to try to
20   potentially subpoena witnesses, which we will talk
21   about later, but there isn't any reason to delay all
22   of those things while all the rest of this happens.

---

In Re:  Jeffrey B. Clark
October 6, 2022

## Page 14

1      And the grounds for deferral are
2 relatively limited.  The basic idea of our procedure
3 is that we try to move as fast as we can -- as fast
4 as we can is a little too strong.  Our procedure is
5 thorough.  It is very careful.  It has been
6 criticized as taking too long, you know, and I think
7 everybody associated with the disciplinary process
8 realizes we try very hard to get it right, but it
9 does sometimes take a longer time than people would
10 want, both from the standpoint of the public and its
11 interest and from the standpoint of respondents who
12 want to get a decision one way or the other as it
13 affects their career.
14      So there is a pretty significant weight
15 against deferring, and the fact that a month from now
16 I may get more evidence that would be useful for a
17 hearing in January I don't see as grounds.  So I am
18 going to deny that request.
19      MR. MacDOUGALD:  Alright, Your Honor.
20 Let's move on to the details.
21      CHAIR HIRSH: Okay, thank you very much.
22 Alright, I asked in light of the filing

## Page 15

1 from Monday, you know, one of the takeaways I had
2 from the filings so far as states are concerned
3 where, both because of practical considerations and
4 what people do, and because of the time of year and
5 people's other commitments, we're really talking
6 January here.
7      So has counsel any dates to suggest?  And
8 while we're doing that, I will pull up my own
9 calendar to see what works.  Why don't we just start,
10 first of all, how long are people anticipating the
11 hearing is going to take, so that might affect what
12 we need to block off?
13      MR. FOX:  Mr. Hirsh, I believe that my
14 case can be put on in two days, or just say three to
15 be conservative, although I generally am pretty
16 accurate -- good about hitting the mark.  The one
17 thing that I don't know is how long cross-examination
18 -- you know, people have different styles of
19 cross-examination, and so I can't really factor that
20 in because I've never had a case with any of these
21 gentlemen before.
22      But there are two primary witnesses, and,

## Page 16

1 you know, if we're talking about a period of roughly
2 a week in time where the events in question occurred,
3 and I believe that to be safe three days will be more
4 than adequate for us to put on the case.
5      CHAIR HIRSH: Okay.  Mr. MacDougal?
6      MR. MacDOUGALD: Thank you.  Part of our
7 difficulty is we don't know exactly what evidence Mr.
8 Fox intends to put on, or the exact contours of his
9 case are going to be.  And depending on those exact
10 contours, we may need to put on more evidence.
11      So if he's going to take three days, I
12 would say we might need somewhere between four and
13 seven.  And as far as cross-examination is concerned,
14 I don't know how long it will take, but my one
15 commitment is that we will be thorough and swift.
16      MR. FOX: Mr. Hirsh, may I respond to that?
17      CHAIR HIRSH:  Sure.
18      MR. FOX:  More so than I believe in any
19 case that I have tried, the respondent has complete
20 discovery and knows exactly what these witnesses are
21 going to say.  The witnesses are Mr. Rosen and Mr.
22 Donoghue.  They have been in written, transcribed

## Page 17

1 testimony before the Senate Judiciary Committee,
2 which the respondent has had for more than a year.
3 They gave testimony before the January 6th
4 Committee.  While we don't have the transcripts of
5 their depositions, the transcripts of that testimony,
6 or the portions that were given, are there.  So we
7 will have, certainly by what sounds like November,
8 the transcripts of the depositions they gave, but
9 even without that they have already got the
10 Judiciary.
11      So they know precisely what the case is
12 going to be.  And it is not an accurate
13 representation to say that they don't know what it is
14 going to be.  And there is no excuse whatsoever at
15 this point for them not to know how long it's going
16 to take them to put on their case.
17      MR. MacDOUGALD:  Your Honor -- or, Mr.
18 Chairman, you might have observed that in response to
19 our motion to dismiss, Mr. Fox changed his story
20 about what this case is about.  And in his argument,
21 he has shifted the ground upon which he intends to
22 prove his case.

In Re:  Jeffrey B. Clark
October 6, 2022

## Page 18

1    It started out with the framing of the
2  charges that the alleged attempted falsity was
3  strictly by comparison between the positions proposed
4  in the draft letter on the one hand, and the
5  then-expressed positions of Mr. Clark's superiors at
6  the Department of Justice on the other.
7    Mr. Fox in his response to our motion to
8  dismiss conceded that there's nothing wrong with
9  proposing a change in position.  Now the problem is,
10  and I quote, "but nevertheless he persisted."
11    So we don't know exactly where he's going.
12  We have a good idea, it's true.  And it's true we
13  have the Senate Judiciary Committee transcripts.  But
14  one of the distinguishing features of those
15  transcripts is that the Department of Justice limited
16  the topics of inquiry based on law enforcement
17  privilege objections.
18    We don't know where that's going to go.
19  Those may be topics that we want to pursue on cross.
20  And if the position of Mr. Fox is that it was
21  necessarily, knowingly false to suggest that
22  additional investigation of the election was

## Page 19

1  appropriate, and that seems to be the direction that
2  he's going from his response to the motion to
3  dismiss, well we don't know exactly where that might
4  go, or exactly what evidence we would put on to rebut
5  that.
6    So the case may take longer.  I mean, if
7  it's so simple and straightforward, why does it take
8  him three days?
9    CHAIR HIRSH:   Here is my reaction.  There
10  has never been a case where everyone -- and certainly
11  in this setting, but even in a civil case,  where
12  you've had massive discovery, and depositions, and
13  everybody who ever had any information or anything
14  related to anything, that everyone has known exactly
15  what's going to happen at a trial.  It just doesn't
16  happen.  Okay?
17    I think that probably in the great
18  pantheon of information you don't have 100 percent,
19  but you probably have more than you have in the
20  average disciplinary proceeding.  But regardless, the
21  real question is how much time does this hearing
22  take?  And how much time does it require?  And every

## Page 20

1  hearing is important, okay?  Everyone who comes here
2  is important, and it affects their career.
3    My reaction, given what limited
4  information I know about the case at this point, and
5  I have to be humble about that.  I've read what's
6  been filed, but I don't know all the details of the
7  case at this point, is to think that what you're
8  describing, Mr. MacDougald, sounds on the long side,
9  okay?
10    What I would like to do is the following.
11  And the other thing is that -- focusing, before I say
12  that -- sometimes focusing the hearing helps, okay?
13  If you give people an infinite amount of time, they
14  will take it.
15    So what I would like to try to do is start
16  on the assumption that it will be a five-day hearing
17  total, with Disciplinary Counsel more or less
18  expected to have the first two-and-a-half, subject to
19  the vagaries of how long cross-examination is.  I'm
20  not inclined to have some kind of chess clock where
21  everybody figures out each minute of what they do,
22  you know that's just kind of silly.

## Page 21

1    I'm trying to give you a general
2  guideline.  And as we approach the end of the time we
3  have blocked out, we will discuss whether there is
4  really need for more time.  But I am going to go on a
5  presumption that this is going to be enough, and I
6  expect counsel on both sides to be acting in good
7  faith on this and to be tried, not to stretch things
8  out for the point of stretching it out, which is not
9  in anybody's interest.
10    So if Mr. Fox can present his case in two
11  days rather than two-and-a-half, I would expect him
12  to do that.  And I would expect -- you know, I am not
13  going to arbitrarily cut off things.  So I will leave
14  open, when we get to a circumstance whether we need
15  to schedule an additional day, but we have to have
16  some idea of what we are going to block off.
17    So let's talk about blocking off five
18  days.
19    MR. MacDOUGALD:   And I hear you, Mr.
20  Hirsh, and what I would say is as we get closer these
21  things may come into sharper focus.
22    CHAIR HIRSH:  Sure.  That can happen.

In Re:  Jeffrey B. Clark
October 6, 2022

Page 22

1 And you may find out really you need is a three-day
2 hearing --
3      MR. MacDOUGALD:  Or we may need more.
4 But we are not going to belabor things in the
5 hearing.  We want to be crisp and effective in what
6 we present.  So -- but at the same time, this is a
7 very unusual case.  It presents a lot of novel
8 questions, and we owe Mr. Clark our best efforts to
9 represent him and tell the story the best way we can.
10      And again, as we commented in some of our
11 filings, there is a premise underneath this case that
12 we don't accept.
13      MR. HIRSH:  I understand that.
14      MR. MacDOUGALD:  And if we go -- and if
15 we are required to rebut that in our presentation, it
16 will take more time.
17      MR. HIRSH:  Okay.  Alright, well let's
18 talk about dates.  Have you folks had an opportunity
19 to speak with each other since I issued the Order
20 asking for dates in January?
21      MR. FOX:  We probably had the
22 opportunity, but we didn't avail ourselves of it.

Page 23

1      MR. HIRSH:  Okay, you didn't avail
2 yourselves.
3      MR. MacDOUGALD: That's a fair statement
4 from Mr. Fox.
5      MR. HIRSH:  Okay, so what are we looking
6 at?  What dates might be available?
7      MR. MacDOUGALD:  If I could, for our
8 team, we would ask that it not be immediately after
9 the New Year, because that will create some hardships
10 for people that have families.  So the week of
11 January 16th, that's a Monday.  Is that MLK Day? Yes,
12 the 16th is MLK Day.
13      MR. FOX:  That was precisely the week I
14 was going to suggest, so we are in agreement on that.
15      MR. MacDOUGALD:  But does the panel do
16 business on MLK day?
17      MR. HIRSH:  The 16th is a holiday, so I
18 think the government is off.
19      MR. FOX:  The 17th, then.
20      MR. HIRSH:  The difficulty is -- for that
21 week, is my schedule.  That week doesn't really work
22 for me.  The week before, or starting on the 25th

Page 24

1 would work for me.  The week of the 9th would work
2 for me, or perhaps the -- no, the 16th is a holiday.
3      MR. FOX:  I can certainly do it the week
4 of the 9th.
5      I consulted with the witnesses, and that
6 week of the 9th would work.  The following week
7 doesn't work for one of the witnesses.  The week
8 after the 16th, but the week of the 9th is
9 available.
10      MR. MacDOUGALD:  Okay, so I think Mr. Fox
11 just said starting the 25th would not work for your
12 witnesses?
13      MR. FOX:  That gets us into February, and
14 frankly I haven't inquired about February.  I thought
15 we were going with January.
16      MR. MacDOUGALD:  And, Your Honor, we
17 haven't yet identified all of our witnesses, or
18 talked to them.  So we don't know right now about
19 their availability or any given date.  You know,
20 because we can take depositions to preserve evidence
21 for use at trial, and because we can present
22 testimony by Zoom, we hope we can work through any

Page 25

1 availability problems.  But, you know, we haven't
2 either identified or confirmed availability for our
3 witnesses for any of these dates.
4      MR. HIRSH:  Understood.  And, you know, I
5 will make efforts to accommodate -- look, we're all
6 remote and I should tell you in January -- the plans
7 haven't been set.  So the entire hearing may be
8 remote in January.  So obviously I am not going to
9 get desperately upset if somebody has to testify by
10 remote testimony, even if we are live.  And I will
11 try to accommodate practical things like that.
12      Can we focus on the week of the 9th?
13      MR. MacDOUGALD:  Does anybody -- on our
14 team, have a conflict that week?  I'm not hearing
15 one.  Nothing has come up at the moment, Your Honor.
16 We would rather start on the 25th or the 30th, but --
17
18      MR. HIRSH:  Alright, let's go with the
19 week of the 9th, then.  I'll block off the 9th to the
20 13th with the understanding that we're going to try
21 to avoid needing additional time.  And I expect
22 people to try to fit within the time, but if it comes

In Re:  Jeffrey B. Clark
October 6, 2022

---

Page 26

1 up and we actually need time and it can't be done
2 separately or remotely, we have lots of
3 possibilities, that a continuation would be on the
4 25th.
5      MR. MacDOUGALD:   In other words, if we
6 don't finish the week of the 9th, we would resume on
7 the 25th?
8      MR. HIRSH:  Yeah.  And I assume that
9 would handle Mr. Fox's problem, because he would
10 already have presented his case during the week 9th.
11      MR. FOX:  Yes.
12      MR. MacDOUGALD:  For the sake of
13 continuity, would it be better to start on the 25th
14 and continue the following week, if we need to --
15      MR. HIRSH:  No.  I'd rather start on the
16 week of the 9th. I don't need to have this stacked
17 to back and frequently things get divided up because
18 of schedules.  I'd like to get this done, and the
19 week of the 9th works.  I don't want to try to
20 explore stuff.  So let's start on the 9th.  I'm
21 hoping that all we'll need is the week of the 9th.
22      MR. MacDOUGALD:  Well, we're hoping we

---

Page 27

1 won't even need the week of the 9th.
2      MR. HIRSH: Okay, and you're hoping you
3 won't even need -- see we're on the same page.
4      (Laughter.)
5      MR. HIRSH:  Okay.  Alright --
6      MR. BURNHAM:  I'm sorry, Mr. Chairman?
7 How many days in the week of the 25th should we block
8 out?  I didn't catch that.
9      MR. HIRSH:  I'm assuming we won't need
10 it.  What I'm saying is that if we need an additional
11 day, it will be the 25th.  Okay?  So that people
12 will have an idea of when this will be, if it
13 happens.  Just helping for people's schedules.  Okay?
14      MR. BURNHAM:  Thank you.
15      MR. HIRSH:  Thank you.  Alright, now
16 there are dates that queue off that timing that we
17 just set up.  Now the -- Mr. Clark has proposed 30
18 days before the hearing for submission of the
19 witness list and exhibits, as I read it.  Is that
20 correct, Mr. MacDougald?
21      MR. MacDOUGALD: Yes, it is.
22      MR. HIRSH: Mr. Fox, do you have a position

---

Page 28

1 on that?
2      MR. FOX:   I am fine with all the schedule
3 that Mr. Clark's counsel has proposed.  The one
4 caveat is that I want to look at what days the
5 holidays are and we may want to adjust a day or two
6 around the holidays.  But with that caveat, I am fine
7 with all the dates they suggest.
8      The one thing I would say is that I think
9 the normal rule about declaring 21 days before the
10 hearing whether testimony is going to be done
11 remotely in the context of the way we've been trying
12 these cases now, is a bit silly, and that -- and
13 particularly in light of your comment a moment ago
14 that we simply ought to agree that there are
15 witnesses -- even if we go live, if there are
16 witnesses who are outside the District of Columbia
17 and it's easier for them to testify remotely, that we
18 can do it by Zoom or some other remote way, without
19 having the necessity of declaring that 21 days in
20 advance.  But aside from that, I have no problem
21 with any of the schedule that they suggest.
22      CHAIR HIRSH:   Alright, why don't we do

---

Page 29

1 this.
2      MR. MacDOUGALD: We would agree with that
3 last suggestion.
4      MR. HIRSH:   Okay.  Alright, I will make
5 as part of my Order that witnesses may testify
6 remotely, the whole hearing might be remote, but
7 regardless, witnesses will be able to testify
8 remotely, and we'll set up for doing that.
9      And perhaps when people identify the
10 witness, the 30 days before, they can just indicate
11 whether they are intending to call them remotely so
12 that opposing counsel is aware of it.  Okay?
13      And that saves that deadline of 21 days to
14 come up with this gut-wrenching decision.
15      MR. MacDOUGALD: That is -- that rule was a
16 challenge.
17      MR. HIRSH:  Yeah, right.  Okay.
18      MR. MacDOUGALD: And, Your Honor, the idea
19 of having stipulations come after the witness list
20 and the exhibit list is, when we see those we may
21 have the ability to stipulate documents.  We would be
22 in a better position to stipulate the things at that

---

8  (Pages 26 to 29)

In Re:  Jeffrey B. Clark
October 6, 2022

## Page 30

1 point.  But if we can reach stipulations ahead of
2 that, you know, we will pursue that.
3        MR. HIRSH:  Okay.  Well let me sort of
4 work backwards.  My rough math if this is done
5 quickly, is December 12th would be the day for the
6 witness and exhibit lists?
7        I think the 11th might actually be -- it
8 may be 29 days rather than 30, but it seems like
9 there's a weekend before the 12th.  The 12th is a
10 Monday.  Would that work for the exhibit and
11 witness lists?
12        MR. MacDOUGALD:  December the 12th?
13        MR. HIRSH:  Yes.
14        MR. FOX:  That's fine with me.
15        MR. HIRSH:  Okay.
16        MR. MacDOUGALD:  Let me interject that,
17 depending on the timing of the January 6th Committee
18 releases, we may be hard up on that date or even past
19 it.
20        So, you know, we would like -- if there's
21 something in there that we need to get in, we'd like
22 to be able to come back and amend the list, if

## Page 31

1 needed.  You know, we don't know what we have or
2 what they're going to release, but we know that some
3 of it is going to be favorable compared to what's
4 been publicly released.
5        MR. HIRSH:  Look, I will take that up, if
6 it comes.
7        MR. MacDOUGALD:  Okay.
8        MR. HIRSH: I hope I can get across.  I'm
9 not trying to stand overly on ceremony, okay?  If
10 people have good reasons for things, then we will get
11 to some things that in fact, you know, I do want you
12 to follow the rules on some of the discovery stuff,
13 but I'm not here to say, okay, well, we just the
14 stock yesterday, too bad, too late.  You know, it's
15 not--
16        MR. MacDOUGALD:  Thank you very much.
17        MR. HIRSH:  I will handle things in a --
18        MR. MacDOUGALD: We understand that you've
19 got to set a schedule to move the case, and we will
20 do our best on all that.  But I wanted to flag it so
21 that it didn't come up as -- it wouldn't be a
22 surprise or sound like we were making stuff up at the

## Page 32

1 time.
2        MR. HIRSH:  Okay.  Now let's talk about
3 day two.  Object to exhibits, to file objections.  Do
4 we want to say the 19th?   That's one week after the
5 12th.
6        MR. MacDOUGALD:  I think a week is
7 probably enough for us.  Charles, any thoughts on
8 that?
9        MR. BURNHAM: That's fine.
10        MR. HIRSH:  Okay, on the stipulations,
11 you would propose 21 days before the hearing for the
12 stipulations.  So more or less that would be December
13 21st.
14        MR. FOX:  Mr. Chairman, I don't have any
15 problem with that.  But it has also been my
16 observation that a hearing committee has welcomed
17 stipulations following the deadline.  I don't know
18 exactly -- and I presume we are going to get to that
19 next -- what the defense -- or the respondent's case
20 is going to look like.
21        I would think, frankly, that in the
22 context that we-- what I know of our case, this is

## Page 33

1 not a case that is going to result in very many
2 stipulations -- perhaps through authenticity of
3 documents -- but I just don't see that there's much
4 that I would be seeking a stipulation about. So I
5 just want to flag that.
6        But in any event, I am certainly going to
7 be open if something comes up the day before the
8 hearing and it makes sense to stipulate, to stipulate
9 to it.
10        MR. HIRSH:  You can kumbaya at any
11 moment.  We will include that in the Order, but of
12 course that is true.  The advantage of having a
13 deadline is -- I'm gonna expect that if we have a
14 deadline for stipulations, that counsel are going to
15 talk with each other.  And it is not unusual in a lot
16 of cases, you know, I mean you both file briefs to
17 some extent that you have critical things to say
18 about how the other side curious things, which is not
19 the first time this has ever happened in, you know,
20 in all disputes.
21        I do want you to work together
22 professionally and cooperatively.  If there are ways

In Re:  Jeffrey B. Clark
October 6, 2022

Page 34

1  of, you know, avoiding arguments particularly about
2  various details and things that, you know, aren't
3  really disputed, you know -- I mean obviously there
4  are things that are not disputed that may not be
5  worth the time.  The way Mr. Clark was admitted to
6  the Bar, for example, is a relevant fact, that I
7  doubt is in dispute, you know, for example.
8          MR. FOX:  The facts have been admitted
9  to.
10         MR. MacDOUGALD:  We have.  We admitted
11  that.
12         CHAIR HIRSH:  You admitted that in your
13  answer, so I assume that is -- you know, I'm giving
14  that as an example.
15         So, okay, the other -- Mr. Clark's brief
16  also raised timing for motions in limine.
17         MR. MacDOUGALD:  Yeah, maybe we ought to
18  change the suggested dates on those, although I don't
19  know exactly when they ought to be.  And our thinking
20  on that was we do what we have to do as lawyers, but
21  if we can, not be briefing like mad men between
22  Christmas and New Year's, that would be good.

Page 35

1          CHAIR HIRSH:  Yeah, I think that makes
2  sense.  Let me ask a sort of separate but related
3  question, which is: I was going to ask whether people
4  want to file prehearing briefs.  And what I am going
5  to get to -- and you might just want to put a pin in
6  that question, because what I wanted to do a little
7  bit during this is, try to focus a little bit on, not
8  necessarily -- I'm not going to give you a pop quiz,
9  you know, what is your argument here?  What do you
10  mean there?  And, you know, whatever.
11         What I tend to do at hearings is something
12  I wish judges did with me so I try to do it for other
13  people, which is sometimes judges sit there
14  stone-faced listening to arguments, smile politely,
15  say thank you counsel, and hear the other argument
16  and walk away, and you never know what it is that
17  concerned them, interested them, or would be worth
18  spending time and my attention on.
19         So I am going to give you sort of --
20  nowhere close to a ruling.  This is not a decision.
21  It's not even close to a decision.  You shouldn't
22  even infer anything.  But some of the things that I

Page 36

1  see raised in the briefs that you've already filed
2  that I'd like you to think about, okay, and address.
3  And I absolutely want people to be prepared at the
4  hearing to address this, okay?  I don't want to find
5  out, well, we haven't thought about it, or it will
6  end up in our post-hearing briefs, because it will
7  help us understand the evidence at the hearing.
8          The question is whether it is worthwhile
9  to follow up with a prehearing brief to do this or
10 not.  And I'm open to people's views.  As I said, you
11 might want to hear the sort of things I have been
12 thinking about so far as what parties have said
13 before deciding that.  Or you might want to comment
14 on it now, to see that to some extent potentially
15 tied to the motion in limine.  Because motions in
16 limine may relate to what the theories of the case
17 are, you know, how it is being argued.
18         So do you have a general thought on that?
19         MR. MacDOUGALD:  I think our preference
20 would be to have a briefing on that.  But it
21 obviously depends on the issue and the question.
22         CHAIR HIRSH:  Mr. Fox, do you have

Page 37

1  thoughts on it?
2          MR. FOX:  I frankly would rather hear
3  first what the positions are.  I mean --
4          CHAIR HIRSH: You don't want to buy a pig
5  in a poke.
6          MR. FOX:  Exactly so.  In addition to
7  that, there has been some rather extensive briefing
8  already --
9          CHAIR HIRSH: That's certainly true.
10         MR. FOX:  -- on a number of issues.
11         CHAIR HIRSH:  There have been some.  But
12 to some extent -- and I'm not criticizing this --
13 part of your response was this isn't the time to
14 address it.
15         MR. FOX:  That's correct.
16         CHAIR HIRSH:  So, alright, so let me talk
17 a little bit about that, and then we'll work back on
18 some things with the schedule.
19         As I said, I do this really as a courtesy
20 to counsel, okay?  I haven't made decisions in this
21 case.  It's early in the case.  I have read the
22 briefs that people have filed, and it's unusual.

10  (Pages 34 to 37)

In Re:  Jeffrey B. Clark
October 6, 2022

## Page 38

1  People have spent more time talking about the issues
2  surrounding the case than most of our cases have,
3  okay?  So usually I don't even have this much.
4      So, Mr. Fox, let me just start with you.
5  And as I said, this isn't a pop quiz.  If you want to
6  say, okay, I've got your point, I'll think about it,
7  I'm perfectly fine with that.  You don't have to have
8  an answer off the top of your head about everything.
9      First is just kind of a point of
10 clarification.  As I understand the specification of
11 charges, both of the counts that you are reining --
12 it's not actually separated in accounts, but they are
13 both attempt.  They are both a combination of 8.4A,
14 discussing attempts, and either 8.4C discussing
15 dishonesty and other things, and 8.4D, discussing
16 serious interference with the administration of
17 justice.
18      Your claim is that in both of the
19 instances Mr. Clark attempted, not did -- it's not
20 just a pure 8.4 C or D, if you understand my
21 question.  It's a case about attempt.
22      MR. FOX:  That's correct.

## Page 39

1      CHAIR HIRSH:  Okay.  And as I understand,
2  there is an exchange in the briefing where you were
3  responding to Mr. Clark's characterization of the
4  events in his motion to dismiss.  And in your omnibus
5  response, you said:  "Respondent's arguments assume
6  that the conduct at issue was a predecisional
7  recommendation, part of providing advice to the
8  President or an honest expression of opinion on a
9  legal issue, and therefore does not implicate Rule
10 8.4."
11      That is the rule that all of your claims
12 fall under.
13      "The evidence will show that this is not
14 so.  Had Respondent merely suggested sending the
15 so-called proof of concept letter to various Georgia
16 officials, this case would not have been brought.  It
17 is generally not a disciplinary violation to make a
18 stupid suggestion.  Rather, these charges arise from
19 Respondent's conduct after he proposed sending the
20 letter, and was informed by his superiors that there
21 was no factual basis for the claims made in it.  Most
22 significantly, that there was no evidence of fraud in

## Page 40

1  the 2020 Presidential election that might have
2  affected the results in Georgia."
3      It goes on beyond that.  But what I want
4  to focus on is -- what I want you to focus on in
5  presenting your case, not necessarily now, is a
6  question I have in my mind that I want to apprise you
7  of so that you can think about it, is:  What is the
8  line that Mr. Clark crossed?  Okay?  Where was it?
9      As I understand it -- your theory.  You're
10 not saying that drafting this memo after Attorney
11 General Barr had said that there wasn't evidence --
12 I'm over-simplifying -- said there wasn't evidence of
13 substantial fraud on December 1st; it was, rather,
14 continuing to pursue the memo at some point.
15      What I want you to be able to articulate
16 is:  At what point does this become attempted
17 dishonesty, as opposed to what you describe as a
18 stupid suggestion?
19      Okay?  Where is the line?  And how do we
20 draw that line in deciding how to apply this?  Okay?
21 That was one thing that struck me about it.
22      A second issue -- and if you want to

## Page 41

1  comment now, that is fine, but I can understand why
2  you might want to think about it, you know, but
3  either way is fine.
4      MR. FOX:  Well, I mean I'm happy to
5  comment now.  I should probably have had the dates
6  more at my fingertips than I do, and I don't, but our
7  position is, that after he was initially told that
8  there was no basis to make these claims, that he came
9  back and used coercive methods, or means to attempt
10 to get the letter to be sent, even though he had no
11 additional information.  Indeed, there was a
12 suggestion that he made that he contact the U.S.
13 Attorney in Atlanta, which he didn't do.  And even
14 though the people that he was addressing it to were
15 the people who had the responsibility, the overall
16 responsibility of supervising the investigations that
17 were being made into election irregularities, and
18 that when he came back and attempted to coerce them
19 into sending the letter, that that's where he crossed
20 the line.
21      CHAIR HIRSH:  Okay, I appreciate you
22 providing that insight.  This is not -- as I said,

In Re:  Jeffrey B. Clark
October 6, 2022

Page 42

1  it's not a pop quiz.  So if you think about refining
2  some of this point, or a different way of
3  articulating it, I'm not going to say ah-ha!  You
4  told me on October 6th, X but now it's X-prime.
5       People think about cases they develop, but
6  my point in flagging it is this is something I was
7  wondering about, I don't know right, wrong, or
8  whatever.
9       Another thing I'm wondering about -- and I
10  should also add, I'm going to be the Chair of the
11  Committee.  There are going to be two other people at
12  the hearing, so I am not the sole decision-maker,
13  even to the point of an important recommendation.
14  And of course all it is is an important
15  recommendation to a Board who will decide what it
16  wants to do, and potentially proceeding before the
17  D.C. Court of Appeals who is also responsible for
18  particularly legal issues.
19       So I am just one part of this process, but
20  I am trying to help people in formulating things that
21  have struck me.
22       The other one I wanted to raise with you,

Page 43

1  Mr. Fox, is, your theory is "attempted serious
2  interference with the administration of justice under
3  8.4D."  In what way do you maintain that Mr. Clark
4  attempted to interfere with the administration of
5  justice?  What's the administration of justice that
6  was interfered with, or potentially, or attempted to
7  be interfered with?  And how does that fit into that
8  box?
9       MR. FOX:  And here my answer is a little
10  more tentative, but I think there are two ways.
11       There is one case in the District of
12  Columbia, I think it's called "White" in which the
13  interference in a legislative matter was deemed to be
14  an 8.4D violation.  So that's the first thing.
15       And the -- because, you know, clearly what
16  he was seeking to do was to cause all kinds of what
17  we would contend to be unwarranted legislative
18  activity, and in this context the legislative
19  activity is -- it's legislative, but it's also sort
20  of a fact-finding quasi-judicial function.
21       And secondly, that undoubtedly, had the
22  Department of Justice done what Mr. Clark was

Page 44

1  attempting to cause them to do, the litigation --
2  unnecessary litigation that would have followed would
3  have been extraordinary.
4       So that's my response with respect to the
5  8.4D.
6       CHAIR HIRSH:  Thank you.  Mr. MacDougald,
7  again I don't know if you want to comment on these
8  particular points right now.  This was more me,
9  trying to frame things that people can think about.
10  If you want to comment, that's fine, but if you don't
11  that's fine, too.
12       Let me ask you a couple of things from
13  what I've seen in the papers that Mr. Clark has
14  submitted.  Your answer raises 54 I think affirmative
15  defenses, many of which cite various provisions of
16  the Constitution, or various deliberative process,
17  rules of Administrative Law or Practice, and various
18  other things.
19       And, you know, I understand these
20  provisions existing, but what is not quite as clear
21  to me in some of the briefing is the connection
22  between some of the points you make and our

Page 45

1  proceeding. There really are a couple of aspects of
2  it that, you know, it would help me if you would
3  address how the theories of this work.
4       One of the aspects of it is, you kind of
5  make a general point that the President is the boss
6  of the Attorney General, I'm putting it in very
7  simple terms, but basically it's that ultimately
8  it's the President and the Attorney General.  But it
9  is not clear to me exactly what that means in the
10  context.
11       First of all, part of that is: Is the
12  Attorney General reporting to the Office of the
13  President, or the personal interest of the President
14  as an aspect of how you do this?  And is there a
15  distinction between those two?  If the person who is
16  there as opposed to the Office of the President.
17       Another area where I'm unclear about how
18  you're articulating it is: Okay, so what does that
19  mean? Can the President -- is every -- you know,
20  what is the limiting principle?  Is every employee of
21  the Justice Department, or every appointed person in
22  the Justice Department obliged to do something no

In Re:  Jeffrey B. Clark
October 6, 2022

Page 46

1  matter how obvious it might be contrary to law,
2  simply because the President says so?  You know, what
3  does that mean, right?  What's the limiting principle
4  on that?
5          And the third aspect of it that I'm trying
6  to get a connection between all of these principles
7  is: How does that apply to the enforcement not of a
8  governmental action -- this isn't a lawsuit where
9  you're trying to say, you know, someone is bringing
10 a civil suit saying Mr. Clark shouldn't advise the
11 President.  Okay?  I understand that, you know, that
12 application of what you're talking about.
13          But this is, Mr. Clark is a member of the
14 D.C. Bar.  And from Mr. Fox's perspective, from the
15 Disciplinary Counsel's perspective, the D.C. Bar has
16 rules.  And if you are a member of our Bar, you have
17 a license -- as he describes it under  case law,
18 it's a privilege to serve as a lawyer in the District
19 of Columbia, and you have to follow the rules.
20          How does all that play out to what's
21 actually before us as opposed to principles that
22 might apply differently to, you know, could you have

Page 47

1  access to communications that take place for you,
2  know, the delivery of process privilege argument, or
3  4A exemption 5, or something.
4          How does that relate exactly to our
5  proceeding, is at least from my initial reading of
6  what you filed, less obvious than that these
7  principles are out there.  Okay?
8          MR. MacDOUGALD:  Those are thoughtful
9  questions, and I would have hoped that we had been
10 sufficiently clear in our briefing, but perhaps we
11 didn't hit the mark.  We'd like to huddle and submit
12 briefing on that, additional briefing.  Those are
13 very important questions, and there's some subtlety
14 to it.  So we would like to express it in writing, if
15 it's all right with the Chair.
16          CHAIR HIRSH:  I don't need the answers
17 right now.  I mean, if we're going to have a
18 prehearing brief, I'd rather you do this more in the
19 context of the facts, because the theories may
20 change.
21          MR. MacDOUGALD:  Okay.
22          CHAIR HIRSH:  Because I'm not going to

Page 48

1  make a ruling on this today, and I don't want you
2  spending all of your life writing additional briefs.
3  I just wanted to alert it as a courtesy so you could
4  think about it.
5          And there's kind of a flip side, Mr. Fox,
6  to this on your side, which is: Okay, I see part of
7  their argument is that there is a deliberative
8  process here, and there are ordinarily some
9  protections to what takes place in a deliberative
10 process.  Okay.  How does that affect any of this?
11 Does it affect it not at all, that some of this stuff
12 might be under a normal kind of, you know, a
13 pre-decisional discussion about stuff that ordinarily
14 in some sense -- and I'm not trying to overstate or
15 misstate; I'm just trying to lay it out -- some sense
16 is part of this is not fair game, in some sense.
17 Okay?
18          And how does that play into this case and
19 how we evaluate the significance of the evidence
20 you're going to present?  I mean, does the context
21 matter not at all, I guess is the question, or does
22 it matter, but not enough?  Or whatever, it may not

Page 49

1  be clear, but -- .
2          MR. FOX:   I mean if we're going to do a
3  prehearing briefing, we are going to obviously
4  address it there, but frankly I don't understand the
5  question very well.  I mean, we are not challenging
6  advice that Mr. Clark gave to the President, or even
7  to the Acting Attorney General.
8          Our challenge is that he attempted to have
9  the Department of Justice engage in what was very
10 serious conduct with no basis to do so.  And, you
11 know, to the extent that there's a pre-decision
12 line, I think -- I'm not sure it is, but I think it
13 is the one that I've already drawn, which is: look, I
14 worked in the Department of Justice.  I'm sure that I
15 wrote some memos that had, you know, were dumb ideas
16 and they got shot down.  But, you know, if after
17 being told that there is no basis for it, no factual
18 basis for it, I nevertheless went ahead and tried to
19 act as though they were, then that's problematic.
20 And it is particularly problematic if, you know, I
21 attempt to say if you don't sign this letter it's
22 going to cost you your job.

In Re:  Jeffrey B. Clark
October 6, 2022

Page 50

1   So, you know, that's the line that I would
2   draw.  And, frankly, I don't understand all of the
3   arguments that have been advanced, that this is
4   somehow Presidential advice or something like that.
5   And if Mr. MacDougald is able to articulate better
6   what it is his position is, I'm happy to refine that
7   answer.
8       CHAIR HIRSH: Okay.
9       MR. MacDOUGALD:  Well, you know, they've
10  got the burden of proof by clear and convincing
11  evidence that there was a violation of the rules.
12  And this goes right back to the question that the
13  Chairman posed, which is where is the line?  Where is
14  the line?
15      If it's okay to make a suggestion but it's
16  not okay to persist in the suggestion, there's
17  nothing in the rules about that.
18      CHAIR HIRSH:  Okay.  That's helpful.
19      And, Mr. MacDougald, you make a point I
20  wanted to emphasize.  At this point, it's burden of
21  proof by clear and convincing evidence.   I'm not
22  assuming any facts are true.  I'm just trying to

Page 51

1   understand what the theories are.
2       MR. MacDOUGALD:  And, you know, speaking
3   for our side, we are very grateful for the questions
4   that have been posed.  It's helpful.
5       CHAIR HIRSH:  Thank you.
6       Alright, well let's continue on getting to
7   the things we need to discuss.  Alright, if we are
8   going to have -- Mr. Fox, now that you've heard some
9   of my musings, okay, and please treat them as such,
10  how do you feel about doing prehearing briefs?
11      MR. FOX:  Well, you know, it sounds to me
12  like this is a case that inevitably is going to
13  result in prehearing briefs, because of the nature of
14  the "throw it against the wall and see what sticks"
15  defense that's being put forward.  And that may be a
16  way to refine that.
17      And so I certainly don't oppose doing so.
18  Indeed, I think another issue that needs to be
19  addressed in the prehearing briefs is that Mr. Clark
20  has asserted his right against self-incrimination,
21  and should he persist in doing that, the evidentiary
22  effect of that in these proceedings.

Page 52

1   And opposition is going to be that --
2   well, I won't say what the position is, but this is
3   not like a criminal trial where one is prohibited
4   from commenting on that to the jury.
5       MR. BURNHAM:  And, Your Honor, we would -
6   -
7       MR. MACDOUGALD:  Go ahead, Charles.
8       MR. BURNHAM:  I was just going to say,
9   real briefly, we obviously object to the position Mr.
10  Fox has intimated, and I'm happy to go into that now
11  if it would be helpful to the Chair at this point.
12  Or we can include that on our list of things to brief
13  up, because we think the ODC's position is quite
14  incorrect on that.  Thank you.
15      CHAIR HIRSH:  Let me just make two
16  comments.  One is, I can't control the tone of your
17  back-and-forth arguments, okay?  Here today you've
18  been, you know, very professional, of course, and
19  reasonably civil, although there's differences you
20  both had made, but in your briefs which is a bit more
21  of this.
22      Look, you know, I can't control it.  You

Page 53

1   can make whatever arguments you want.  I'm
2   telling you as the audience, you know, that type of
3   stuff doesn't really move me very much.  I am more
4   interested in the merits.  If an argument doesn't
5   have merit, it is not because you dislike the
6   opposing attorney, it is because the argument doesn't
7   have merit and I'm not going to buy it.
8       If the argument has merit, it doesn't
9   matter how bad the opposing -- you know, you think
10  the attorney is, if it's a meritorious argument, it
11  is.  So you might want to -- I can't stop you.  I'm
12  just telling you what effects, how I read it.
13      As far as the, whatever, it seems to me
14  that you folks should probably talk.  I'm not
15  requiring you to do it, but it would make sense to
16  try to.  Because I'm not going to have 47 rounds of
17  pretrial briefing where you make replies and counter
18  replies, okay?  That's just a waste of people's time.
19      I think it would help to have everybody
20  file a pretrial brief, and it would probably help for
21  counsel to talk with each other just to understand
22  the broad topics that are going to be addressed so

In Re:  Jeffrey B. Clark
October 6, 2022

## Page 54

1  that the issues don't fly past each other.
2       And here's what I'm going to do.  Going
3  back to our calendar, I'm going to ask that you meet
4  and confer about the topics of the brief by say,
5  December 12, and file the brief by the 21st, which is
6  the same schedule on the motions in limine, which
7  will get it to correspond.
8       MR. MacDOUGALD:  12/20?  Or 12/21?  I'm
9  sorry, I misheard.
10      CHAIR HIRSH: Yeah, not actually maybe we
11 should move this up.  Why don't you meet and confer
12 by December 7, and file your prehearing briefs on
13 December 14, with motions in limine.  That will allow
14 a response to the motion in limine before we get too
15 close to the holidays.
16      MR. MacDOUGALD:  Okay.
17      CHAIR HIRSH:  And then have a response to
18 the motion in limine due December 21st?
19      MR. MacDOUGALD:  And, Mr. Chairman, in
20 your Order are you going to enumerate any of the
21 topics that you've identified?  Or should we just go
22 from our notes?  I mean that gives us some

## Page 55

1  structure on what to address.
2       CHAIR HIRSH:  I understand, but I'm going
3  to leave it to you, okay?  I'm raising these, you
4  know, as I said, as a heads-up.  This is something
5  I'm thinking about, so it would help if you address
6  it, not as a "you're required to."  I'm only one of
7  three people on this panel anyway.  I'm just giving
8  you an insight, you know, into what kinds of topics
9  I'd like people to help explain.
10      And, truly, don't take it as a view on the
11 merits, okay?  I haven't decided any of these for
12 either side, okay?  You know, I think it's important
13 to give people the opportunity to make their best
14 case before I make that decision.  So that's really
15 what I'm trying to do.
16      Okay, are there going to be any expert
17 witnesses?
18      MR. MacDOUGALD: Mr. Fox?
19      MR. FOX:  No.
20      MR. MacDOUGALD:  We may have one or two,
21 Your Honor.
22      MR. FOX:  Mr. Hirsh, there was an

## Page 56

1  indication in one of the papers -- and perhaps it was
2  in an email -- that the Respondent was considering
3  calling an expert in legal ethics, and I would just
4  refer respondents to the decision that the Court of
5  Appeals came down with about two weeks ago, I think
6  it was, in the Clayman case in which they said that
7  expert testimony on the subject of legal ethics is
8  not appropriate in these proceedings.
9       Now I don't know what other kinds of
10 experts there may be.  If we are going to have
11 experts, I would request that we build into the
12 schedule a requirement that an expert report be filed
13 at some time that would give me the opportunity, if
14 it is needed -- I suspect it may not be needed -- to
15 designate a counter-expert.
16      MR. MacDOUGALD:  Let us have a chance to
17 study on the claimant opinion and we'll --
18      CHAIR HIRSH:  Sorry?
19      MR. MacDOUGALD:  We'd like to study the
20 claimant opinion on the point raised by Mr. Fox, as
21 he suggested we do.  And then we'll confer with him
22 about that after that.

## Page 57

1       CHAIR HIRSH:  Okay.
2       MR. FOX:  But I do request, Mr. Hirsh,
3  that we have built into the schedule a date by which
4  expert reports need to be submitted. And that would
5  be done in sufficient time to allow me to designate a
6  counter-expert if I deem that necessary.
7       CHAIR HIRSH:  Okay, so what dates would
8  you propose, Mr. Fox?
9       MR. FOX:  I would say 30 days out about
10 the time of the witness list.
11      CHAIR HIRSH:  Okay, so that would be the
12 December 19th date we're using?
13      MR. FOX:  I thought it was the 12th --
14      CHAIR HIRSH:  Oh, right, I'm sorry.
15 December 12th, I'm sorry.  I just can't read my
16 notes, but otherwise it's fine.  Any experts will be
17 designated by December 12th, and what's the deadline
18 for the reports?
19      MR. FOX:  I would think the reports by
20 December 12th.
21      CHAIR HIRSH:  Okay, designated and report
22 at the same time?

15  (Pages 54 to 57)

In Re:  Jeffrey B. Clark
October 6, 2022

## Page 58

1   MR. FOX:  Yeah, because I can't -- you
2   know, the designation that you get for an expert is
3   "Mr. Jones is going to testify, give his opinion
4   about," whatever.  And I can't make a real
5   knowledgeable determination as to whether I need to
6   counter that unless I have the meat of the opinion in
7   front of me.
8   CHAIR HIRSH:  Alright, so you're talking
9   about designating an expert with a report on December
10  12th, and then when would a responding expert, or
11  opposing expert need to be designated also with a
12  report?
13  MR. FOX:  I would say, my suggestion
14  would be three weeks later.  You know, getting an
15  expert report in three weeks is a bit of a push, but
16  it is doable, and that should give the respondents
17  ample time to prepare to cross
18  CHAIR HIRSH:  Yeah, the difficulty is you
19  are getting into the holidays, but if that isn't a
20  problem -- three weeks after the 12th puts you on the
21  day after New Year's, a week before the hearing.
22  MR. FOX:  Well let's make it the 31st.

## Page 59

1   CHAIR HIRSH:  The 31st is a Saturday.
2   MR. FOX:  The 30th, then.
3   CHAIR HIRSH:  Does that schedule work
4   with you, Mr. MacDougald?
5   MR. MacDOUGALD:  Your Honor, that's --
6   dealing with the rebuttal expert it's putting us
7   right on the eve of the hearing, and, you know, Mr.
8   Fox's predicament, which I sympathize with, of
9   wanting to know the case he's got to confront, is
10  going to consist of, is a shoe that was on my foot
11  just a few minutes ago.
12  CHAIR HIRSH:  Alright, what if we moved
13  it up a week?
14  MR. MacDOUGALD: It makes sense to maybe
15  push the hearing out a little bit to allow any expert
16  discovery to occur --
17  MR. FOX:  I'll do it earlier rather than
18  to push the hearing.
19  CHAIR HIRSH:  I prefer to do it earlier.
20  Why don't we have the expert designation on the 5th
21  instead of the 12th and make it December 23rd instead
22  of the 30th.  That gives you the same amount of time,

## Page 60

1   but it gives you more time before the hearing.
2   MR. FOX:  That's fine with me.
3   MR. BURNHAM:  Your Honor, can I ask a
4   clarifying question?  Just to try to avoid any
5   disputes about whether the, quote, report is
6   sufficient, would it be sufficient if we filed
7   something consistent with the expert notice provision
8   in Federal Rule of Evidence 16?
9   CHAIR HIRSH:  Well, I was thinking --
10  you're talking about the expert notice of a pretrial,
11  on the pretrial rule as opposed to an expert report
12  that -- I need to go back and look at it, because the
13  elements of a report -- is there a separate rule on
14  it?
15  MR. FOX:  The Superior Court Rule for
16  expert reports, which I would submit is more
17  relevant, I think it is 26.
18  CHAIR HIRSH:  That's what I was thinking.
19  I thought it was Rule 26.
20  MR. FOX:  It could be 28, but I think
21  it's 26.  I'm not --
22  CHAIR HIRSH:  I thought it was Rule 26.

## Page 61

1   Rule 16 is what you need to say in pretrial, for a
2   pretrial hearing.
3   MR. FOX:  I would suggest --
4   CHAIR HIRSH:  I once had a case I was
5   arguing in the D.C. Circuit on Title 8, and Judge
6   Edwards says, well how would this work under Title 7?
7   You know, there were two statutes four years apart.
8   How does Title 7 work?  It was one of these pop
9   quizzes, right?
10  (Laughter.)
11  CHAIR HIRSH:  So, you know, I believe --
12  look, a normal report that would comply with D.C.
13  Superior Court rules for the submission of an expert
14  report, I'm fine with using that as guidance.  I just
15  don't think it's actually Rule 16 is the right rule
16  for it, from my off-hand recollection.
17  MR. BURNHAM: I was referring to the
18  Federal Rules, but --
19  CHAIR HIRSH:  It's hard to track it, but
20  I would look at the D.C. Circuit Court rules.
21  MR. BURNHAM:  Thank you, Your Honor.
22  MR. FOX:  It is Rule 26.

16  (Pages 58 to 61)

In Re:  Jeffrey B. Clark
October 6, 2022

Page 62

1    CHAIR HIRSH:  That's what I thought.
2    MR. FOX:  26 A-2, I think.
3    CHAIR HIRSH:  You passed the quiz.
4    (Laughter.)
5    CHAIR HIRSH:  Okay.  Alright, we've
6  talked about experts.  Now let's go back to some of
7  the points that Mr. Clark has raised about discovery
8  issues.  Okay?
9    First of all, I don't know if it's Mr.
10  MacDougald or Mr. Burnham, but let me start with Mr.
11  Fox for a second.
12    Have you made Touhy requests to the
13  Justice Department in connection with calling Mr.
14  Rosen and Mr. MacDougald?
15    MR. FOX:  Oh, yeah, I have.  That's been
16  done for more than a year.  And I've supplied copies
17  of the letters to Mr. Clark's counsel.
18    MR. MacDOUGALD:  And -- the DOJ -- we
19  objected to the sufficiency of whether they complied
20  with the Touhy regulations, because the letter we got
21  back didn't reflect that.  And we got a letter back
22  from DOJ that said, well, actually, we're not

Page 63

1  required to go through the Touhy regulation process
2  because this request from Mr. Fox did not trigger
3  those regulations, because it was just a request and
4  not a subpoena, demand or order.
5    CHAIR HIRSH:  Okay.
6    MR. MACDOUGALD:  But there is a letter
7  from DOJ, authorizing these witnesses to give
8  information to the DC Bar.  They reserve the right to
9  review what testimony might be given publicly and
10  potentially assert their position on what testimony
11  they think should be excluded.  And as I mentioned
12  earlier, in the Senate Judiciary Committee
13  depositions, there were quite a number of objections
14  based on law enforcement privilege concerning DOJ's
15  investigations of the election.
16    So that issue may come up again.
17    CHAIR HIRSH:  Okay.
18    MR. MacDOUGALD:  And, you know, if these
19  witnesses are going to appear not under subpoena, you
20  know, presumably the DOJ position would be that the
21  Touhy regulations were still not triggered.
22    So, you know, we've been calling that a

Page 64

1  non-Touhy Touhy letter.  But for us, if we get an
2  ex-DOJ employee under subpoena, we are for sure going
3  to trigger the full panoply of Touhy review.  And,
4  you know, so I want to come back to a antecedent of
5  questions about that in just a second, but we don't
6  know how long that's going to take, or how it's going
7  to come out.  But, you know, just looking at which
8  way the wind blows we are not expecting DOJ to be
9  helpful to us in that process.
10    CHAIR HIRSH:  Let me separate out a few
11  different things.
12    First of all, you mentioned the Law
13  Enforcement Privilege?
14    MR. MacDOUGALD:  Yes.
15    CHAIR HIRSH:  Okay, to the extent this is
16  an issue so far as what I would expect to hear, or
17  the panel would expect to hear at the hearing,
18  address it in your pretrial brief.  You know, again
19  it's not a pop quiz.  But if this is something we
20  need to handle in some way, and alternatively put
21  aside whether it's a privilege about asking a
22  question, if the DOJ or somebody else is going to ask

Page 65

1  that a portion of this hearing take place under seal
2  or confidentially, or if something that comes up --
3    MR. MacDOUGALD:  I don't know that it is.
4    CHAIR HIRSH:  Okay, I'm just saying
5  that's something I would want to know about in
6  advance so we can figure it out.
7    MR. MacDOUGALD:  And, you know, that's
8  why we put it in our material file Monday.  We wanted
9  to raise the flag that the whole point of the Touhy
10  regulations is to permit the Executive Branch to put
11  forth equities with respect to the evidence being
12  sought.  And those equities run the gamut of Executive
13  Branch privileges from Executive Privilege, to Law
14  Enforcement Privilege, Deliberative Process
15  Privilege, Presidential Communications Privilege, and
16  on and on.  There's a whole panoply of those.
17    And that process is intended to establish
18  a rigorous procedure for evaluating those questions.
19  And we know from the Senate Judiciary Transcripts
20  that they are asserting Law Enforcement Privilege
21  with respect to most of the universe of topics that
22  would be embraced by investigation of the election.

17 (Pages 62 to 65)

In Re:  Jeffrey B. Clark
October 6, 2022

## Page 66

1  They were only permitted testimony in a couple of

2  narrow areas.

3       And inasmuch as Mr. Fox has indicated that

4  a premise of his case is that there's no basis for

5  further investigation because Mr. Clark was told that

6  by his superiors, well then it becomes relevant to

7  know to get behind that.

8       CHAIR HIRSH;  Okay, as I said, address

9  that in the briefs.  I don't want to cut you off from

10  responding --

11       MR. MacDOUGALD:   And I apologize for

12  going over.

13       CHAIR HIRSH: No, that's no problem.  I

14  just don't-- I want to focus on this at a time when I

15  have enough information to do something intelligent

16  about it, as opposed to going -- I appreciate it's an

17  issue.  I don't know how big an issue it is, or

18  whether, if it is an issue we need to figure out how

19  to work with it.

20       MR. MacDOUGALD:   It can have a serious

21  consequence on whether we are able to put on our

22  defense.

## Page 67

1       CHAIR HIRSH:   Now let me -- so far as

2  discovery is concerned, first of all I assume you've

3  already gotten the Rule 3.1 discovery and access to

4  Mr. Fox's files?

5       MR. MacDOUGALD:   We have been provided

6  some documents from his files.  He's asserted work

7  product privileges with respect to certain categories

8  of information.  Some of that we agree with, and some

9  of that we don't.  So rather than try to argue that

10  here, would the appropriate vehicle then be to file a

11  motion with the court, or do a meet-and-confer with

12  Mr. Fox antecedent to a motion?

13       How would you like us to handle that?

14       CHAIR HIRSH:   Do a meet-and-confer.  I'd

15  like you to do these things as expeditiously as

16  possible, to use a lawyer word, as fast as possible,

17  you know, and not have this be a reason for delay.

18       MR MacDOUGALD: Okay.

19       CHAIR HIRSH:   And so talk about it.  If

20  you've got a dispute over whether you've gotten

21  access under 3.1, you can file a motion to me and I

22  will consider it.

## Page 68

1       MR. MacDOUGALD:   Okay, very good.

2       CHAIR HIRSH:   As far as -- okay, now as

3  far as the remaining, you talk about one or more DOJ

4  witnesses.  One or more who might be out of town is

5  what you say in this.

6       First of all, have you submitted a -- have

7  you identified who it is you're talking about?

8       MR. MacDOUGALD:   We have spent a good bit

9  of time trying to identify those people.  And we hope

10  to have that finalized relatively soon.

11       But I would like to ask an embarrassingly

12  dumb question, Mr. Chairman.  And that is, whether

13  the subpoena from the Board is something that we can

14  use through the Uniform Foreign Deposition Act to get

15  witnesses under subpoena in foreign jurisdictions?

16  And I apologize.  I just don't know the answer to

17  that question.

18       CHAIR HIRSH:   Well, okay, Mr. Fox, I

19  don't know for sure but I imagine the answer is

20  'yes,' but I'll ask Mr. Fox.

21       MR. FOX:   It varies from jurisdiction to

22  jurisdiction.  But I think the cart is considerably

## Page 69

1  in front of --

2       CHAIR HIRSH:   No, I think you're about

3  four steps before we get there, but -- but let me

4  start with the steps and understand it.

5       First of all, are you talking about -- I

6  gather from your statement of subpoena you're talking

7  about people who would not voluntarily agree to

8  testify.

9       MR. MacDOUGALD:   Well, if they are former

10  DOJ employees, Mr. Chairman, they're not permitted to

11  testify under subpoena --

12       CHAIR HIRSH:   There are Touhy

13  regulations, just as Mr. Fox is dealing with.

14       MR. MacDOUGALD:   Okay, fine.

15       CHAIR HIRSH:   But whether the witness

16  insists on getting a subpoena to testify is a

17  question for the witness.  So are we first talking

18  about people who -- is the issue that these are

19  current or former DOJ employees and we have a

20  regulatory system that gives the Justice Department

21  the prior notice and ability to weight in, to put it

22  in simple terms, you know, into whether there's a

18  (Pages 66 to 69)

In Re:  Jeffrey B. Clark
October 6, 2022

## Page 70

1    problem with having this person testify about these
2    subjects?  That is how I understand the Touhy
3    regulations to operate.
4          Are we talking about people who you don't
5    think would be going to testify unless they were
6    subpoenaed?
7          MR. MacDOUGALD:  The truthful answer,
8    Your Honor, is I don't know.
9          CHAIR HIRSH:  Okay.  And --
10         MR. FOX:  Mr. Hirsh, could I interject.
11   I apologize, but could I ask a clarifying question?
12   Are we talking about witnesses to testify at the
13   hearing?  Or are we talking about discovery
14   depositions?
15         CHAIR HIRSH:  This is the next question I
16   was going to ask.
17         MR. MacDOUGALD:  Well, we would like to
18   take their depositions so we can figure out whether
19   we want to use them at the hearing.  That may
20   streamline the hearing.
21         CHAIR HIRSH:  Alright.  That's a good
22   question.  The reason it's a good question is the

## Page 71

1    rules operate very differently with respect to
2    requesting people to attend the hearing and getting
3    discovery.  Okay?
4          MR. MacDOUGALD: Right.
5          CHAIR HIRSH:  "Discovery" is actually
6    kind of the wrong word for this proceeding, okay, of
7    third parties.  There are proceedings to ask for
8    information from each other, okay?  You know, from a
9    Disciplinary Counsel respondent, there's 3.1.  There
10   are ways of getting information from the respondent.
11         As far as third-party discovery, that's
12   under 3.2.  And 3.2 has a standard that is far from
13   automatic.
14         MR. MacDOUGALD:  Right.
15         CHAIR HIRSH:  But basically it's -- you
16   have to demonstrate a compelling need for the
17   additional discovery in the preparation of the
18   defense, and that such discovery is not an undue
19   burden on the complainant or others.  That's the
20   standard under 3.2.  So it's far from automatic that
21   you can get discovery in this proceeding, and you
22   need to file a motion to demonstrate that you meet

## Page 72

1    the requirements.
2          It's different if you're seeking a
3    subpoena for participation at the hearing.  So which
4    is it you're seeking?
5          MR. MacDOUGALD:  I can't say exactly
6    right now.  It depends.  We have not talked to these
7    people.  And, you know, many of them have lawyers and
8    we're in a very fraught environment for people who
9    talk about these topics, because there are criminal
10   investigations going on.  And so people -- we expect
11   people to be reluctant to testify.
12         But, you know, we just haven't had time to
13   identify those.  Now we will expeditiously find out
14   where we stand on that, and we'll just have to make a
15   call about whether we try to depose them or now.  And
16   the way ya'll will know is we file motion for a
17   discovery subpoena.
18         I apologize for not being able to answer
19   that.  I know it's a great question and we have been
20   giving that some thought, but we're just not resolved
21   on that at the moment.
22         CHAIR HIRSH:  Okay.  Here's what I'd like

## Page 73

1    you to do.  Alright?  First of all, I don't want this
2    to delay things, okay?  If you need to make a Touhy
3    request, I take at face value you don't know how long
4    the Justice Department will take with the request, or
5    what kind of reaction you'll get, or you may fear a
6    negative reaction.  I understand that.  But nothing
7    happens until you submit.
8          So you need to submit the request as soon
9    as possible so that you can start the process, you
10   know.  Then you can come back to me later and tell me
11   what a problem it is, and then we can try to figure
12   out what to do about it, and whether it affects
13   anything.
14         But, you know, in the abstract, telling me
15   I'm going to do something and I haven't done it yet
16   and it's going to be a problem, doesn't tell me what
17   the problem is.  Okay?
18         So it needs to be concrete.  You need to
19   submit the Touhy request for anybody you think might
20   be covered by the Touhy regulations as quickly as
21   possible.  And you need to come as quickly as
22   possible to a conclusion as to whether you want to

In Re:  Jeffrey B. Clark
October 6, 2022

Page 74

1  try to -- you know, whether you think the
2  circumstances meet 3.2, and submit a motion so that I
3  can, you know, give Mr. Fox an opportunity to respond
4  and act on.
5       I will tell you, in fairness, I will try
6  to act quickly.  You know, I recognize that if I'm
7  putting counsel under a time limitations.  I will try
8  to put myself -- you know, I can't always promise
9  where I'm going to be on Tuesday.  Nobody can.  But I
10 will try to act quickly on these, because I
11 understand about the timing, but I can't act on
12 something that's not been filed.
13      MR. MacDOUGALD:  That's completely fair,
14 and we will do as instructed.
15      MR. FOX:  May I make two observations?
16 One is, it is conceptually difficult for me to
17 conceive of a situation where the respondent has a
18 compelling need to take discovery from a witness
19 when they can't -- at this date, haven't even
20 identified the witness.
21      The second is to just call to everyone's
22 attention Rule 3.5, which says that discovery

Page 75

1  requests are not an excuse to delay the proceedings.
2       CHAIR HIRSH:  I agree.  I mean, I
3  understand those point.  I want to give Mr. Clark the
4  opportunity to try to get -- you know, to try to do
5  what he wants to do.  And if he wants to make an
6  argument you disagree with as to whether a particular
7  thing is needed, I will hear both sides.
8       And just as you can't respond to anything,
9  knowing it I can't decide in advance of knowing it
10 who's right.
11      So the other thing I might add ultimately
12 on the subpoena, and Mr. Fox perhaps you can confirm,
13 but my understanding is that a subpoena when it is
14 issued, includes 25 miles from D.C.  It's not just
15 limited to D.C.  I don't know whether all -- any of
16 these people are in the D.C. area, but that may
17 simplify your process.  It follows Superior Court
18 Rule 45.
19      MR. MacDOUGALD:  It helps with some
20 folks.  It doesn't help with others.  With others
21 we're going to have to get a subpoena issued in their
22 home jurisdiction.

Page 76

1       CHAIR HIRSH:  Okay.
2       Alright, now so far as documents are
3  concerned, Mr. Fox, have you now gotten from Mr.
4  Clark -- let me phrase it this way:  Do you anticipate
5  hiring something to try to get additional documents
6  from Mr. Clark?
7       MR. FOX:  Yes, and that was on my list of
8  things to raise.  We are going to take the court's
9  suggestion and serve a subpoena on Mr. Clark under
10 Rule 45, simply for documents.  It will pretty much
11 track the -- I'm not saying we won't tweak it here or
12 there -- but pretty much track the subpoena we served
13 earlier.  Essentially what we're asking for is any
14 documents that he has that support the position that
15 he took that there was evidence of -- I forget
16 whether he phrased it in terms of fraud or
17 irregularities -- in the Georgia election.  And I
18 wanted to inquire whether it was going to be
19 necessary to actually serve Mr. Clark with that
20 subpoena, or whether counsel, in light of your
21 admonitions earlier, would accept service.
22      Heretofore, counsel has been unwilling to

Page 77

1  accept service, and indeed requiring us to tender a
2  check when there is no anticipation that Mr. Clark
3  would actually have to appear and testify.
4       CHAIR HIRSH:  Okay, so you anticipate
5  you're going to serve him with a subpoena and there
6  might be a fight over it?
7       MR. FOX:  Right.  The first thing is I
8  would like to inquire through the Chair whether
9  counsel will accept the subpoena on behalf of Mr.
10 Clark.  If not, we will serve him promptly and we'll
11 get the subpoena out in a day or so.  Then if there's
12 a fight, there's a fight.
13      MR. MacDOUGALD:  We'll accept service.
14      CHAIR HIRSH:  You will?
15      MR. MacDOUGALD:  Yes.
16      CHAIR HIRSH:  Okay.  Well that solves
17 that part of the problem.  And we'll figure out if
18 there's a fight over the scope of the production,
19 I'll say the same thing to you.
20      MR. FOX:  Mr. Hirsh, could I --
21      CHAIR HIRSH:  Raise it quickly so that we
22 can get this thing resolved and so that it doesn't,

In Re:  Jeffrey B. Clark
October 6, 2022

Page 78

1   you know, foster additional delay.
2           Okay, the other sort of category I had
3   just to discuss things are some comments just to
4   bring to your attention about how the hearing, how I
5   am anticipating at this point the hearing is going to
6   be handled, just to give you some sense of it.
7           I expect the format on the docs, you know,
8   the exhibits and stuff follow the rules.  The rules
9   describe how the exhibits are to be formatted and all
10  of that stuff.
11          I told you I don't know if the hearing
12  will be live or remote.  I will, even though we have
13  pretrial briefs, you know, things come up in the
14  briefs or whatever, I am hoping and expecting that
15  people will be conversant and ready to discuss, you
16  know, how the facts apply to the law, to put it that
17  way, at the hearing.
18          I don't mean we're going to have a
19  four-day legal argument over everything I'm not
20  anticipating that, but sometimes what happens at
21  these hearing is you raise issues and I say, well,
22  that's a really interesting point, we'll address it

Page 79

1   in the post-hearing brief.  And while I am absolutely
2   contemplating, you're going to be filing post-hearing
3   briefs, and you don't need to give every point 12 of
4   your argument, you know, and all this stuff, I want
5   you to be prepared particularly in this case because
6   there are a lot of issues that are out there, you
7   know, to have thought through these.  And that was
8   part of the reason why I was giving you some, you
9   know, sense of my very initial kind of sense of
10  issues.
11          Now the normal procedure at the hearing is
12  that ODC gives an opening statement.  They of course
13  have the burden of proof as Disciplinary Counsel.
14  And then Mr. Clark will be given the opportunity to
15  give a statement, but he isn't required to give an
16  opening statement.
17          And also the normal procedure in our
18  rules, which has nothing specific to Mr Clark, but
19  under Rule 11.11, is that you hear the testimony,
20  once everybody rests on providing the testimony on
21  whether there has been a violation.
22          Our Committee recesses to executive

Page 80

1   session to discuss whether to make a preliminary
2   nonbinding determination that Disciplinary Counsel
3   has proven at least one rule violation by clear and
4   convincing evidence.  And if that determination is
5   made, the parties are then asked to put on evidence
6   from the Disciplinary Counsel's side, things like
7   prior disciplines, if any, or that might be
8   aggravating from the side of a respondent, mitigating
9   evidence that might be taken into account in
10  determining the sanctions.
11          And one of the things that I want people
12  prepared to think about, although I don't know we've
13  reached a determination, I don't know if it will ever
14  be reached, but because this happens immediately at
15  the hearing, I want people to think through what
16  sanction might be appropriate so that we can discuss
17  that intelligently if there is such a finding.
18          One of the things that from time to time
19  happens in these cases that I don't think is ideal is
20  that people say, okay, well now we have the evidence
21  and this is basically what we do, and we'll tell you
22  in the brief what we think the sanctions ought to be

Page 81

1   or oughtn't to be, and that leads to less ability for
2   the parties to joint the issue properly and explain
3   why they're thinking about it.  And, you know, we
4   need to do the work to construct the parties'
5   arguments and think it through.  And it is more
6   useful if I know at the hearing, if we get to that
7   point which we may not, what the parties' views are
8   and what an appropriate sanction would be.
9           So just as in a civil case, this is a
10  naturally bifurcated proceeding.  But in a civil case
11  where you think you're going to win on liability, you
12  still make arguments about damages.  I want people to
13  be prepared to do that so that we have all the
14  information.  That will make it easier for us to
15  understand your post-hearing briefs.
16          And, you know, we can set the timing of
17  the post-hearing briefs at the hearing. I don't need
18  to do that in advance.  But I wanted to give people a
19  warning so that they could prepare.
20          Are there any thoughts or concerns about
21  that?
22          MR. FOX:  Mr. Hirsh, normally -- one of

**Page 82**

1    the reasons that we -- and it doesn't apply to this
2    case -- but one of the reasons that we sometimes and
3    sometimes do not make a final determination --
4    recommendation about sanction at the hearing is that
5    I want them to confer with me before they do so, and
6    I want to confer in light of how the evidence came
7    out at the hearing.
8            That is not going to be a factor here,
9    since I'll be involved in the hearing and I will know
10   that, and so I will certainly be able to address the
11   issue of sanctions at the appropriate time.
12           But I do want to understand that it's not
13   that we sort of duck that issue, it's that I, as the
14   person in charge of the office, want to weigh in on
15   it.  And that's the reason for the hesitation.  It
16   won't be a factor here because I'll be trying the
17   case.
18           CHAIR HIRSH:  Okay.  We can discuss that
19   in other cases.  I understand we all operate under
20   constraints, but it is sometimes -- it is sometimes
21   difficult when you're doing a long opinion in a
22   complex case to have to wait for the briefs to figure

**Page 83**

1    out, okay, so you say A, B, and C is the reason to do
2    this, and, you know, it would have been helpful.  And
3    effectively we don't get an opportunity to talk it
4    through.
5            So the type of questioning you might want
6    to do, and sometimes sanctions is particularly that
7    because sanctions is a judgmental comparison of isn't
8    this worse than this, and this, and this, you know,
9    and not as bad as that.  We don't have that type of
10   ability to do those interchanges with the schedule.
11   So that's why I raise it.  Okay, unless -- I think
12   that's all the things I had.  Obviously, I'll issue
13   an Order based on this.  Are there other things that
14   people want to discuss?
15           MR. MacDOUGALD:  Yes, Your Honor.  We
16   would like to order an expedited transcript from the
17   Court Reporter.
18           CHAIR HIRSH:  Okay.
19           MR. MacDOUGALD:  And returning to the
20   point that I raised initially, if we do seek a
21   judicial review that may impact the schedule.  And we
22   want to be up front about that.  That is why we

**Page 84**

1    mentioned it in our filing Monday.  We are going to
2    do everything that you told us to do, but I want to
3    be clear that we are still considering our options on
4    that.
5            CHAIR HIRSH:  Okay, I understand you're
6    considering the options.  Just so, you know, from
7    your standpoint understand I'm going to continue to
8    do this on the schedule we're dealing with, unless
9    somebody tells me not to.
10           MR. MacDOUGALD:  That is understood.
11           CHAIR HIRSH:  I am planning to do that.
12           MR. MacDOUGALD:  We understand, thank
13   you.
14           MR. BURNHAM:  One final thing, Mr.
15   Chairman.  To the extent that the Hearing Committee
16   is on the fence as to whether to do this as an
17   in-person or entirely virtual, I think our side would
18   have a preference for in-person, if public health
19   conditions permit.
20           CHAIR HIRSH:  Okay, I'm not sure it's
21   going to be my decision -- I don't know.   Mr. Fox, I
22   don't know what you --

**Page 85**

1            MR. FOX:  I don't have any intelligence
2    on that.  We're operating under an Order from the
3    Board that is still in existence about that we do
4    these things virtually.  My preference also is to do
5    them face to face, if it is possible.  But so far,
6    the Order is that we conduct them this way.
7            CHAIR HIRSH:  Okay, I appreciate it.  Mr.
8    Fox, do you have anything else?
9            MR. FOX:  No, I have nothing further.
10           CHAIR HIRSH:  Okay, Mr. MacDougald or Mr.
11   Burnham?
12           MR. BURNHAM:  I don't think so.  Thank
13   you, Your Honor.
14           MR. MacDOUGALD:  Thank you very much,
15   Your Honor.  We very much appreciate your time and
16   attention.
17           MR. FOX:  Thank you, Your Honor.
18           CHAIR HIRSH:  As far as the transcript, I
19   don't know, Mr. Catherine, whether -- what's your --
20   I can't, you know.  I heard that you ordered an
21   expedited transcript, but since I'm not doing the
22   work, it's easier --

In Re:  Jeffrey B. Clark
October 6, 2022

Page 86

1    (Laughter.)

2    COURT REPORTER:   Yes, we can provide

3  that, but I'm not sure if it goes through Meghan or

4  should we give the information to order directly to

5  Mr. MacDougald.

6    MS. BORRAZAS:   I guess my question would

7  be how fast do you want it?  Typically we do 10

8  business days.

9    MR. MacDOUGALD:   We might need it a

10  little quicker than that.

11    MS. BORRAZAS:   It depends on -- pricing

12  depends on the day.  So just how fast you would like

13  it, just let me know.

14    MR. MacDOUGALD:   We'll send you an email.

15    MS. BORRAZAS:   Okay, great.

16    CHAIR HIRSH:   Alright, then.  Is there

17  anything else?

18    MR. MacDOUGALD:   I don't think so.

19    MR. FOX:   Not from me.

20    CHAIR HIRSH:   And I assume if any of the

21  executive attorney people on this had something I

22  needed to do, they would have sent me something in

Page 87

1  chat with lots of exclamation points or something, so

2  I assume we are --

3    MR. MacDOUGALD:   You get those, too.

4    (Laughter.)

5    CHAIR HIRSH:   Okay, so in that case we're

6  adjourned.

7    (Whereupon, at 11:14 a.m., Thursday,

8  October 6, 2022, the hearing was adjourned.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 88

1    CERTIFICATE OF COURT REPORTER

2

3    I, GAYNELL CATHERINE, Court Reporter, do hereby

4  certify that that the testimony contained herein is a

5  true record of the testimony given by said witness,

6  and I further certify that I am neither attorney nor

7  counsel for, related to, or employed by any of the

8  parties to the action in which this statment is

9  taken; and, further, that I am not a relative or an

10  employee of any attorney or counsel employed by the

11  parties hereto, or financially interested in the

12  action.

13

14

15

16    GAYNELL CATHERINE

17

18

19

20

21

22

**A**

**A-2** 62:2
**a.m** 2:2 87:7
**ability** 4:9 29:21 69:21
  81:1 83:10
**able** 10:2 29:7 30:22
  40:15 50:5 66:21 72:18
  82:10
**absolutely** 36:3 79:1
**abstract** 73:14
**accept** 22:12 76:21 77:1,9
  77:13
**access** 3:14 13:19 47:1
  67:3,21
**accommodate** 25:5,11
**account** 80:9
**accounts** 38:12
**accurate** 15:16 17:12
**accurately** 4:8
**act** 49:19 68:14 74:4,6,10
  74:11
**acting** 21:6 49:7
**action** 46:8 88:8,12
**activity** 43:18,19
**add** 42:10 75:11
**addition** 10:14 37:6
**additional** 18:22 21:15
  25:21 27:10 41:11
  47:12 48:2 71:17 76:5
  78:1
**address** 5:22 36:2,4 37:14
  45:3 49:4 55:1,5 64:18
  66:8 78:22 82:10
**addressed** 8:10 51:19
  53:22
**addressing** 41:14
**adequate** 16:4
**adjourned** 87:6,8
**adjust** 28:5
**adjustments** 3:8
**administration** 38:16
  43:2,4,5
**Administrative** 44:17
**admitted** 34:5,8,10,12
**admonitions** 76:21
**advance** 28:20 65:6 75:9
  81:18
**advanced** 50:3
**advantage** 33:12
**advice** 39:7 49:6 50:4
**advise** 46:10
**affect** 15:11 48:10,11
**affirm** 4:4,5,6,7
**affirmative** 44:14
**agency** 8:21
**aggravating** 80:8

**ago** 28:13 56:5 59:11
**agree** 3:1 13:10 28:14
  29:2 67:8 69:7 75:2
**agreement** 23:14
**ah-ha** 42:3
**ahead** 30:1 49:18 52:7
**alert** 48:3
**alleged** 18:2
**allow** 3:22 54:13 57:5
  59:15
**alright** 6:8 12:2 14:19,22
  22:17 25:18 27:5,15
  28:22 29:4 37:16 51:6,7
  58:8 59:12 62:5 70:21
  73:1 76:2 86:16
**alternatively** 64:20
**amend** 30:22
**amount** 20:13 59:22
**ample** 58:17
**answer** 34:13 38:8 43:9
  44:14 50:7 68:16,19
  70:7 72:18
**answers** 47:16
**antecedent** 64:4 67:12
**anticipate** 76:4 77:4
**anticipating** 15:10 78:5
  78:20
**anticipation** 77:2
**anybody** 25:13 73:19
**anybody's** 21:9
**anyway** 55:7
**apart** 61:7
**apologize** 4:18 66:11
  68:16 70:11 72:18
**Appeals** 2:18 7:3 8:5 9:3
  10:20,22 11:7 42:17
  56:5
**appear** 63:19 77:3
**appearances** 2:13 3:10
  4:15
**appearing** 5:7,9
**appears** 8:14
**application** 46:12
**applied** 7:10,22
**applies** 8:19
**apply** 40:20 46:7,22
  78:16 82:1
**appointed** 45:21
**appreciate** 6:7 41:21
  66:16 85:7,15
**apprise** 40:6
**approach** 21:2
**appropriate** 19:1 56:8
  67:10 80:16 81:8 82:11
**arbitrarily** 21:13
**area** 45:17 75:16

**areas** 66:2
**argue** 8:8 11:19 67:9
**argued** 36:17
**arguing** 10:4 61:5
**argument** 17:20 35:9,15
  47:2 48:7 53:4,6,8,10
  75:6 78:19 79:4
**arguments** 10:16 11:5
  34:1 35:14 39:5 50:3
  52:17 53:1 81:5,12
**articulate** 40:15 50:5
**articulating** 42:3 45:18
**aside** 28:20 64:21
**asked** 9:6,7 13:13 14:22
  80:5
**asking** 9:19 22:20 64:21
  76:13
**aspect** 45:14 46:5
**aspects** 45:1,4
**assert** 63:10
**asserted** 51:20 67:6
**asserting** 65:20
**Assistant** 1:15
**associated** 14:7
**assume** 7:12 26:8 34:13
  39:5 67:2 86:20 87:2
**assuming** 7:18 27:9 50:22
**assumption** 20:16
**Atlanta** 41:13
**attempt** 38:13,21 41:9
  49:21
**attempted** 18:2 38:19
  40:16 41:18 43:1,4,6
  49:8
**attempting** 44:1
**attempts** 38:14
**attend** 71:2
**attention** 35:18 74:22
  78:4 85:16
**attorney** 40:10 41:13
  45:6,8,12 49:7 53:6,10
  86:21 88:6,10
**audience** 53:2
**authenticity** 33:2
**authorities** 9:22
**authority** 7:1 10:5
**authorizing** 63:7
**automatic** 71:13,20
**avail** 22:22 23:1
**availability** 24:19 25:1,2
**available** 23:6 24:9
**average** 10:21
**avoid** 25:21 60:4
**avoiding** 34:1
**aware** 29:12

**B**

**B** 1:3,21 2:16 83:1
**back** 6:1 12:4 26:17
  30:22 37:17 41:9,18
  50:12 54:3 60:12 62:6
  62:21,21 64:4 73:10
**back-and-forth** 52:17
**backwards** 30:4
**bad** 6:4 31:14 53:9 83:9
**Bar** 34:6 46:14,15,16
  63:8
**Barr** 40:11
**based** 12:13 18:16 63:14
  83:13
**basic** 14:2
**basically** 45:7 71:15
  80:21
**basis** 39:21 41:8 49:10,17
  49:18 66:4
**behalf** 77:9
**belabor** 22:4
**believe** 15:13 16:3,18
  61:11
**best** 4:8 22:8,9 31:20
  55:13
**better** 7:15 26:13 29:22
  50:5
**beyond** 40:3
**bifurcated** 81:10
**big** 66:17
**bit** 28:12 35:7,7 37:17
  52:20 58:15 59:15 68:8
**block** 15:12 21:16 25:19
  27:7
**blocked** 21:3
**blocking** 21:17
**blows** 64:8
**board** 1:1,3 2:15 3:15 7:2
  7:11 8:12 10:2 11:2
  42:15 68:13 85:3
**Board's** 7:10 8:2
**BORRAZAS** 86:6,11,15
**boss** 45:5
**box** 43:8
**Branch** 65:10,13
**brief** 34:15 36:9 47:18
  52:12 53:20 54:4,5
  64:18 79:1 80:22
**briefing** 34:21 36:20 37:7
  39:2 44:21 47:10,12,12
  49:3 53:17
**briefly** 52:9
**briefs** 33:16 35:4 36:1,6
  37:22 48:2 51:10,13,19
  52:20 54:12 66:9 78:13
  78:14 79:3 81:15,17

82:22
**bring** 11:10 78:4
**bringing** 46:9
**broad** 53:22
**brought** 39:16
**build** 56:11
**built** 57:3
**burden** 50:10,20 71:19
79:13
**Burnham** 1:17 5:7,7 27:6
27:14 32:9 52:5,8 60:3
61:17,21 62:10 84:14
85:11,12
**business** 23:16 86:8
**buy** 37:4 53:7

**C**

**C** 2:1 38:20 83:1
**calendar** 15:9 54:3
**call** 13:4 29:11 72:15
74:21
**called** 5:15 43:12
**calling** 56:3 62:13 63:22
**career** 14:13 20:2
**careful** 14:5
**carry** 8:16
**cart** 68:22
**case** 7:13,16 9:6 15:14,20
16:4,9,19 17:11,16,20
17:22 19:6,10,11 20:4,7
21:10 22:7,11 26:10
31:19 32:19,22 33:1
36:16 37:21,21 38:2,21
39:16 40:5 43:11 46:17
48:18 51:12 55:14 56:6
59:9 61:4 66:4 79:5
81:9,10 82:2,17,22 87:5
**cases** 3:8 28:12 33:16
38:2 42:5 80:19 82:19
**catch** 27:8
**categories** 67:7
**category** 78:2
**Catherine** 4:3,13 85:19
88:3,16
**cause** 43:16 44:1
**caveat** 28:4,6
**ceremony** 31:9
**certain** 67:7
**certainly** 17:7 19:10 24:3
33:6 37:9 51:17 82:10
**CERTIFICATE** 88:1
**certify** 88:4,6
**Chair** 1:10 2:3,5,10,20
4:6,12 5:2,12,15,18,20
6:3,22 9:2,10,15 10:9
10:10 11:15 12:1 13:8

14:21 16:5,17 19:9
21:22 28:22 34:12 35:1
36:22 37:4,9,11,16 39:1
41:21 42:10 44:6 47:15
47:16,22 50:8,18 51:5
52:11,15 54:10,17 55:2
56:18 57:1,7,11,14,21
58:8,18 59:1,3,12,19
60:9,18,22 61:4,11,19
62:1,3,5 63:5,17 64:10
64:15 65:4 66:8,13 67:1
67:14,19 68:2,18 69:2
69:12,15 70:9,15,21
71:5,15 72:22 75:2 76:1
77:4,8,14,16,21 82:18
83:18 84:5,11,20 85:7
85:10,18 86:16,20 87:5
**Chairman** 5:22 6:6 8:8
9:10 17:18 27:6 32:14
50:13 54:19 68:12
69:10 84:15
**challenge** 29:16 49:8
**challenges** 7:6 8:15
**challenging** 49:5
**chance** 56:16
**change** 18:9 34:18 47:20
**changed** 17:19
**characterization** 39:3
**charge** 82:14
**charges** 18:2 38:11 39:18
**Charles** 1:17 5:7 32:7
52:7
**chat** 87:1
**check** 77:2
**chess** 20:20
**Christmas** 34:22
**Circuit** 61:5,20
**circumstance** 21:14
**circumstances** 74:2
**cite** 44:15
**cited** 7:4,16 10:1,21
**Citizens** 7:15
**civil** 19:11 46:10 52:19
81:9,10
**claim** 38:18
**claimant** 56:17,20
**claims** 39:11,21 41:8
**clarification** 38:10
**clarify** 2:22
**clarifying** 60:4 70:11
**Clark** 1:3,21 2:16 5:6,8
5:10,11,12,13,18 22:8
27:17 34:5 38:19 40:8
43:3,22 44:13 46:10,13
49:6 51:19 62:7 66:5
75:3 76:4,6,9,19 77:2

77:10 79:14,18
**Clark's** 18:5 28:3 34:15
39:3 62:17
**Clayman** 56:6
**clear** 11:18 44:20 45:9
47:10 49:1 50:10,21
80:3 84:3
**clearly** 4:1 43:15
**clock** 20:20
**close** 35:20,21 54:15
**closer** 21:20
**coerce** 41:18
**coercive** 41:9
**Columbia** 2:18,19 28:16
43:12 46:19
**combination** 38:13
**come** 10:7 13:13 21:21
25:15 29:14,19 30:22
31:21 63:16 64:4,7
73:10,21 78:13
**comes** 12:4 20:1 25:22
31:6 33:7 65:2
**comment** 28:13 36:13
41:1,5 44:7,10
**commented** 22:10
**commenting** 52:4
**comments** 52:16 78:3
**commitment** 16:15
**commitments** 15:5
**committee** 1:8 2:17,21
7:11 12:7 13:6 17:1,4
18:13 30:17 32:16
42:11 63:12 79:22
84:15
**Committees** 8:13
**communications** 47:1
65:15
**Company** 7:15
**compared** 31:3
**comparison** 18:3 83:7
**compelling** 71:16 74:18
**complainant** 71:19
**complete** 16:19
**completely** 74:13
**complex** 82:22
**complied** 62:19
**comply** 61:12
**conceded** 18:8
**conceive** 74:17
**concept** 39:15
**conceptually** 74:16
**concerned** 15:2 16:13
35:17 67:2 76:3
**concerning** 63:14
**concerns** 81:20
**conclusion** 73:22

**concrete** 73:18
**conditions** 84:19
**conduct** 39:6,19 49:10
85:6
**conducts** 3:12
**confer** 54:4,11 56:21 82:5
82:6
**conference** 2:22 3:13
**confidentially** 65:2
**confirm** 75:12
**confirmed** 25:2
**conflict** 25:14
**confront** 59:9
**connection** 44:21 46:6
62:13
**consequence** 66:21
**conservative** 15:15
**consider** 13:5 67:22
**considerably** 68:22
**considerations** 15:3
**considered** 9:21 11:1
**considering** 9:4 56:2 84:3
84:6
**consist** 59:10
**consistent** 60:7
**Constitution** 44:16
**constraints** 9:1 11:20
82:20
**construct** 81:4
**consulted** 24:5
**contact** 41:12
**contained** 88:4
**contemplate** 8:15
**contemplating** 79:2
**contend** 43:17
**context** 28:11 32:22
43:18 45:10 47:19
48:20
**continuation** 26:3
**continue** 3:9 11:10 26:14
51:6 84:7
**continuing** 40:14
**continuity** 26:13
**contours** 16:8,10
**contrary** 46:1
**control** 52:16,22
**controls** 8:3
**conversant** 78:15
**convincing** 50:10,20 80:4
**cooperatively** 33:22
**copies** 62:16
**correct** 27:20 37:15
38:22
**correspond** 54:7
**cost** 49:22
**counsel** 1:13,15,20 4:14

4:17 13:13 15:7 20:17
21:6 28:3 29:12 33:14
35:15 37:20 53:21
62:17 71:9 74:7 76:20
76:22 77:9 79:13 80:2
88:7,10
**Counsel's** 46:15 80:6
**counter** 53:17 58:6
**counter-expert** 56:15
57:6
**counts** 38:11
**couple** 44:12 45:1 66:1
**course** 6:22 12:9 33:12
42:14 52:18 79:12
**court** 2:13,18 4:3,5,11
7:3,14 8:4,5,17,19,21
8:22 9:3 10:20,21,22
11:7 42:17 56:4 60:15
61:13,20 67:11 75:17
83:17 86:2 88:1,3
**court's** 76:8
**courtesy** 37:19 48:3
**courts** 8:20
**covered** 73:20
**COVID-19** 3:7
**create** 23:9
**criminal** 52:3 72:9
**crisp** 22:5
**critical** 33:17
**criticized** 14:6
**criticizing** 37:12
**cross** 18:19 58:17
**cross-examination** 15:17
15:19 16:13 20:19
**crossed** 40:8 41:19
**curious** 33:18
**current** 69:19
**cut** 21:13 66:9

**D**

**D** 2:1 38:20
**D.C** 8:4 10:20,22 11:7
42:17 46:14,15 61:5,12
61:20 75:14,15,16
**damages** 81:12
**date** 24:19 30:18 57:3,12
74:19
**dates** 3:2 13:12,13 15:7
22:18,20 23:6 25:3
27:16 28:7 34:18 41:5
57:7
**day** 8:20 21:15 23:11,12
23:16 27:11 28:5 30:5
32:3 33:7 58:21 77:11
86:12
**days** 15:14 16:3,11 19:8

21:11,18 27:7,18 28:4,9
28:19 29:10,13 30:8
32:11 57:9 86:8
**DC** 63:8
**deadline** 29:13 32:17
33:13,14 57:17
**dealing** 59:6 69:13 84:8
**December** 30:5,12 32:12
40:13 54:5,12,13,18
57:12,15,17,20 58:9
59:21
**decide** 7:13,19 11:15
42:15 75:9
**decided** 6:21 7:7 8:6 9:20
55:11
**deciding** 7:8 10:15 36:13
40:20
**decision** 8:4 14:12 29:14
35:20,21 55:14 56:4
84:21
**decision-maker** 42:12
**decisions** 7:2 8:4 9:2
37:20
**declaring** 28:9,19
**deem** 57:6
**deemed** 43:13
**defense** 32:19 51:15
66:22 71:18
**defenses** 44:15
**deferral** 10:16 12:5,6,18
12:19 13:1 14:1
**deferring** 13:5,9 14:15
**definition** 7:21
**delay** 13:21 67:17 73:2
75:1 78:1
**deliberative** 44:16 48:7,9
65:14
**delivery** 47:2
**demand** 63:4
**demonstrate** 71:16,22
**denied** 12:19
**deny** 14:18
**Department** 18:6,15
43:22 45:21,22 49:9,14
62:13 69:20 73:4
**Department's** 13:18
**depending** 16:9 30:17
**depends** 36:21 72:6 86:11
86:12
**depose** 72:15
**deposition** 12:8,15 68:14
**depositions** 13:3 17:5,8
19:12 24:20 63:13
70:14,18
**describe** 40:17 78:9
**described** 6:19

**describes** 46:17
**describing** 20:8
**designate** 56:15 57:5
**designated** 57:17,21
58:11
**designating** 58:9
**designation** 58:2 59:20
**desperately** 25:9
**Destro** 1:19 5:9,9
**details** 14:20 20:6 34:2
**determination** 58:5 80:2
80:4,13 82:3
**determine** 3:1,4
**determining** 80:10
**develop** 42:5
**differences** 52:19
**different** 15:18 42:2
64:11 72:2
**differently** 46:22 71:1
**difficult** 4:20,21 74:16
82:21
**difficulty** 16:7 23:20
58:18
**directed** 4:9
**direction** 19:1
**directly** 86:4
**disagree** 75:6
**Discipliinary** 71:9
**disciplinary** 1:4,13,15 3:7
3:11 4:17 14:7 19:20
20:17 39:17 46:15
79:13 80:2,6
**disciplines** 80:7
**discovery** 16:20 19:12
31:12 59:16 62:7 67:2,3
70:13 71:3,5,11,17,18
71:21 72:17 74:18,22
**discuss** 6:16 21:3 51:7
78:3,15 80:1,16 82:18
83:14
**discussed** 6:8
**discussing** 6:9,11 10:15
38:14,14,15
**discussion** 48:13
**dishonesty** 38:15 40:17
**dislike** 53:5
**dismiss** 8:16 17:19 18:8
19:3 39:4
**dispute** 34:7 67:20
**disputed** 34:3,4
**disputes** 33:20 60:5
**distinction** 45:15
**distinguishing** 18:14
**District** 2:17,18 28:16
43:11 46:18
**divided** 26:17

**DNo** 1:3,4
**doable** 58:16
**docs** 78:7
**documents** 29:21 33:3
67:6 76:2,5,10,14
**doing** 7:20 13:16 15:8
29:8 51:10,17,21 82:21
85:21
**DOJ** 62:18,22 63:7,20
64:8,22 68:3 69:10,19
**DOJ's** 63:14
**don't--** 66:14
**Donoghue** 16:22
**doubt** 34:7
**draft** 18:4
**drafting** 40:10
**draw** 40:20 50:2
**drawn** 49:13
**duck** 82:13
**due** 54:18
**dumb** 49:15 68:12

**E**

**E** 2:1,1
**earlier** 59:17,19 63:12
76:13,21
**early** 37:21
**easier** 28:17 81:14 85:22
**Edwards** 61:6
**effect** 7:5 51:22
**effective** 22:5
**effectively** 83:3
**effects** 53:12
**effort** 3:15
**efforts** 22:8 25:5
**either** 6:14 25:2 38:14
41:3 55:12
**election** 12:13 18:22 40:1
41:17 63:15 65:22
76:17
**elements** 60:13
**email** 56:2 86:14
**embarrassingly** 68:11
**embraced** 65:22
**emphasize** 50:20
**employed** 88:7,10
**employee** 45:20 64:2
88:10
**employees** 69:10,19
**enforceable** 11:6
**enforcement** 18:16 46:7
63:14 64:13 65:14,20
**engage** 49:9
**ensure** 3:8
**entire** 25:7
**entirely** 84:17

In Re:  Jeffrey B. Clark
October 6, 2022

enumerate 54:20
environment 7:16 72:8
equities 65:11,12
Esquire 1:9,12,14,17,18
  1:19,21
essentially 7:9 76:13
establish 65:17
ethics 56:3,7
evaluate 48:19
evaluating 65:18
eve 59:7
event 33:6
events 16:2 39:4
everybody 2:12 14:7
  19:13 20:21 53:19
  79:20
everyone's 74:21
evidence 3:3 14:16 16:7
  16:10 19:4 24:20 36:7
  39:13,22 40:11,12
  48:19 50:11,21 60:8
  65:11 76:15 80:4,5,9,20
  82:6
evidentiary 51:21
ex-DOJ 64:2
exact 16:8,9
exactly 12:10 16:7,20
  18:11 19:3,4,14 32:18
  34:19 37:6 45:9 47:4
  72:5
example 9:17 34:6,7,14
exception 8:1
exchange 3:3 39:2
exclamation 87:1
excluded 63:11
excuse 17:14 75:1
executive 65:10,12,13
  79:22 86:21
exemption 47:3
exercise 3:19
exhibit 29:20 30:6,10
exhibits 27:19 32:3 78:8
  78:9
existence 85:3
existing 44:20
expect 21:6,11,12 25:21
  33:13 64:16,17 72:10
  78:7
expected 20:18
expecting 64:8 78:14
expedited 83:16 85:21
expeditiously 67:15
  72:13
expert 55:16 56:3,7,12
  57:4 58:2,9,10,11,15
  59:6,15,20 60:7,10,11

  60:16 61:13
experts 56:10,11 57:16
  62:6
explain 55:9 81:2
explained 12:17
explore 26:20
express 47:14
expression 39:8
expressly 7:17
extensive 37:7
extent 11:3 33:17 36:14
  37:12 49:11 64:15
  84:15
extraordinary 44:3

                F
face 73:3 85:5,5
fact 14:15 31:11 34:6
fact-finding 43:20
factor 15:19 82:8,16
facts 34:8 47:19 50:22
  78:16
factual 39:21 49:17
fair 8:1,10 23:3 48:16
  74:13
fairness 74:5
faith 21:7
faithfully 4:7
fall 6:1 39:12
false 18:21
falsity 18:2
families 23:10
far 15:2 16:13 36:12
  53:13 64:16 67:1 68:2,3
  71:11,12,20 76:2 85:5
  85:18
fast 14:3,3 67:16 86:7,12
favorable 31:3
fear 73:5
features 18:14
February 24:13,14
federal 8:20,21,22 60:8
  61:18
feedback 3:22
feel 51:10
fence 84:16
fight 77:6,12,12,18
figure 65:6 66:18 70:18
  73:11 77:17 82:22
figures 20:21
file 9:18 32:3 33:16 35:4
  53:20 54:5,12 65:8
  67:10,21 71:22 72:16
filed 6:18 7:16,17 20:6
  36:1 37:22 47:6 56:12
  60:6 74:12

files 67:4,6
filing 7:5 13:17 14:22
  79:2 84:1
filings 15:2 22:11
final 12:12 82:3 84:14
finalized 68:10
financially 88:11
find 22:1 36:4 72:13
finding 80:17
fine 6:6 28:2,6 30:14 32:9
  38:7 41:1,3 44:10,11
  57:16 60:2 61:14 69:14
fingertips 41:6
finish 26:6
finished 12:7
first 5:2 6:14,14,21 7:7
  8:6 11:1 15:10 20:18
  33:19 37:3 38:9 43:14
  45:11 62:9 64:12 67:2
  68:6 69:5,17 73:1 77:7
fit 25:22 43:7
five 21:17
five-day 20:16
flag 31:20 33:5 65:9
flagging 42:6
flattering 5:15
flip 48:5
flow 4:19
fly 54:1
focus 21:21 25:12 35:7
  40:4,4 66:14
focusing 20:11,12
folks 22:18 53:14 75:20
follow 11:11 13:18 31:12
  36:9 46:19 78:8
followed 44:2
following 20:10 24:6
  26:14 32:17
follows 75:17
foot 59:10
forbids 7:17
foreign 68:14,15
forget 76:15
format 78:7
formatted 78:9
former 69:9,19
formulating 42:20
forth 65:11
forward 3:9 51:15
foster 78:1
four 16:12 61:7 69:3
four-day 78:19
Fox 1:12 4:16,16 10:3
  13:4 15:13 16:8,16,18
  17:19 18:7,20 21:10
  22:21 23:4,13,19 24:3

  24:10,13 26:11 27:22
  28:2 30:14 32:14 34:8
  36:22 37:2,6,10,15 38:4
  38:22 41:4 43:1,9 48:5
  49:2 51:8,11 52:10
  55:18,19,22 56:20 57:2
  57:8,9,13,19 58:1,13,22
  59:2,17 60:2,15,20 61:3
  61:22 62:2,11,15 63:2
  66:3 67:12 68:18,20,21
  69:13 70:10 74:3,15
  75:12 76:3,7 77:7,20
  81:22 84:21 85:1,8,9,17
  86:19
Fox's 9:7 26:9 46:14 59:8
  67:4
frame 44:9
framing 18:1
frankly 24:14 32:21 37:2
  49:4 50:2
fraud 39:22 40:13 76:16
fraught 72:8
frequently 26:17
front 58:7 69:1 83:22
full 12:8,14 64:3
function 43:20
further 66:5 85:9 88:6,9

                G
G 2:1
game 48:16
gamut 65:12
gather 69:6
GAYNELL 88:3,16
general 21:1 36:18 40:11
  45:5,6,8,12 49:7
generally 15:15 39:17
gentlemen 15:21
Georgia 39:15 40:2 76:17
getting 51:6 58:14,19
  69:16 71:2,10
give 2:5,11 20:13 21:1
  35:8,19 55:13 56:13
  58:3,16 63:7 74:3 75:3
  78:6 79:3,15,15 81:18
  86:4
given 9:16 17:6 20:3
  24:19 63:9 79:14 88:5
gives 54:22 59:22 60:1
  69:20 79:12
giving 34:13 55:7 72:20
  79:8
glitches 3:17
go 4:22 18:18 19:4 21:4
  22:14 25:18 28:15 52:7
  52:10 54:21 60:12 62:6

63:1
**goes** 40:3 50:12 86:3
**going** 6:8,9,11,12 10:12
    12:10,12,16 13:11,15
    14:18 15:11 16:9,11,21
    17:12,14,15 18:11,18
    19:2,15 21:4,5,13,16
    22:4 23:14 24:15 25:8
    25:20 28:10 31:2,3
    32:18,20 33:1,6,14 35:3
    35:4,8,19 42:3,10,11
    47:17,22 48:20 49:2,3
    49:22 51:8,12 52:1,8
    53:7,16,22 54:2,2,3,20
    55:2,16 56:10 58:3
    59:10 63:19 64:2,6,6,22
    66:12,16 70:5,16 72:10
    73:15,16 74:9 75:21
    76:8,18 77:5 78:5,18
    79:2 81:11 82:8 84:1,7
    84:21
**gonna** 33:13
**good** 2:3,4,5 5:4,8,10,12
    5:13,18 15:16 18:12
    21:6 31:10 34:22 68:1,8
    70:21,22
**gotten** 67:3,20 76:3
**governing** 2:18
**government** 23:18
**governmental** 46:8
**grateful** 51:3
**great** 19:17 72:19 86:15
**ground** 17:21
**grounds** 14:1,17
**guess** 48:21 86:6
**guidance** 61:14
**guideline** 21:2
**gut-wrenching** 29:14

### H

**habit** 6:3,4
**Hamilton** 1:12 4:16
**hand** 18:4
**handle** 26:9 31:17 64:20
    67:13
**handled** 78:6
**happen** 12:10 19:15,16
    21:22
**happened** 33:19
**happens** 13:22 27:13
    73:7 78:20 80:14,19
**happy** 41:4 50:6 52:10
**hard** 14:8 30:18 61:19
**hardships** 23:9
**Harry** 1:18 5:5
**head** 38:8

**heads-up** 55:4
**health** 84:18
**hear** 4:1 21:19 35:15
    36:11 37:2 64:16,17
    75:7 79:19
**heard** 9:6,14 10:6 51:8
    85:20
**hearing** 1:8 2:16,21 3:5,5
    3:16 6:11 8:17 9:12,21
    11:11 13:15 14:17
    15:11 19:21 20:1,12,16
    22:2,5 25:7,14 27:18
    28:10 29:6 32:11,16
    33:8 36:4,7 42:12 58:21
    59:7,15,18 60:1 61:2
    64:17 65:1 70:13,19,20
    71:2 72:3 78:4,5,11,17
    78:21 79:11 80:15 81:6
    81:17 82:4,7,9 84:15
    87:8
**hearings** 3:12 35:11
**help** 3:22 36:7 42:20 45:2
    53:19,20 55:5,9 75:20
**helpful** 50:18 51:4 52:11
    64:9 83:2
**helping** 27:13
**helps** 20:12 75:19
**hereto** 88:11
**Heretofore** 76:22
**hesitation** 82:15
**higher** 7:4
**hiring** 76:5
**Hirsh** 1:9 2:3,5,10,20 4:6
    4:12 5:2,12,15,19,20
    6:3,6 10:10 11:15 12:1
    13:8 14:21 15:13 16:5
    16:16,17 19:9 21:20,22
    22:13,17 23:1,5,17,20
    25:4,18 26:8,15 27:2,5
    27:9,15,22 28:22 29:4
    29:17 30:3,13,15 31:5,8
    31:17 32:2,10 33:10
    34:12 35:1 36:22 37:4,9
    37:11,16 39:1 41:21
    44:6 47:16,22 50:8,18
    51:5 52:15 54:10,17
    55:2,22 56:18 57:1,2,7
    57:11,14,21 58:8,18
    59:1,3,12,19 60:9,18,22
    61:4,11,19 62:1,3,5
    63:5,17 64:10,15 65:4
    66:8,13 67:1,14,19 68:2
    68:18 69:2,12,15 70:9
    70:10,15,21 71:5,15
    72:22 75:2 76:1 77:4,14
    77:16,20,21 81:22

82:18 83:18 84:5,11,20
    85:7,10,18 86:16,20
    87:5
**hit** 47:11
**hitting** 15:16
**holiday** 23:17 24:2
**holidays** 28:5,6 54:15
    58:19
**home** 75:22
**honest** 39:8
**Honor** 5:14,16 6:1,5,18
    11:18 12:4 14:19 17:17
    24:16 25:15 29:18 52:5
    55:21 59:5 60:3 61:21
    70:8 83:15 85:13,15,17
**hope** 24:22 31:8 68:9
**hoped** 47:9
**hoping** 26:21,22 27:2
    78:14
**Horrell** 1:14 4:17
**huddle** 47:11
**humble** 20:5
**hypothetically** 7:12,18

### I

**idea** 14:2 18:12 21:16
    27:12 29:18
**ideal** 80:19
**ideas** 49:15
**identified** 24:17 25:2
    54:21 68:7 74:20
**identify** 29:9 68:9 72:13
**III** 1:12
**imagine** 68:19
**immediately** 23:8 80:14
**impact** 83:21
**implicate** 39:9
**important** 20:1,2 42:13
    42:14 47:13 55:12
**in-person** 3:9 84:17,18
**inasmuch** 66:3
**inclined** 20:20
**include** 13:3 33:11 52:12
**includes** 75:14
**incorrect** 52:14
**indicate** 29:10
**indicated** 66:3
**indication** 56:1
**inevitable** 3:17
**inevitably** 51:12
**infer** 35:22
**infinite** 20:13
**inflexibly** 7:22
**information** 19:13,18
    20:4 41:11 63:8 66:15
    67:8 71:8,10 81:14 86:4

**informed** 39:20
**initial** 47:5 79:9
**initially** 41:7 83:20
**inquire** 76:18 77:8
**inquired** 24:14
**inquiry** 18:16
**insight** 41:22 55:8
**insists** 69:16
**instance** 9:15 11:2
**instances** 38:19
**instructed** 74:14
**intelligence** 85:1
**intelligent** 66:15
**intelligently** 80:17
**intended** 65:17
**intending** 29:11
**intends** 13:4 16:8 17:21
**interchanges** 83:10
**interest** 14:11 21:9 45:13
**interested** 35:17 53:4
    88:11
**interesting** 78:22
**interfere** 43:4
**interfered** 43:6,7
**interference** 38:16 43:2
    43:13
**interject** 30:16 70:10
**interpretation** 7:9 8:3
**intimated** 52:10
**introduce** 2:14
**investigation** 18:22 65:22
    66:5
**investigations** 12:21
    41:16 63:15 72:10
**involve** 12:14
**involved** 82:9
**irregularities** 41:17
    76:17
**issue** 6:20 8:10 9:16
    36:21 39:6,9 40:22
    51:18 63:16 64:16
    66:17,17,18 69:18 81:2
    82:11,13 83:12
**issued** 22:19 75:14,21
**issues** 2:22 11:1 37:10
    38:1 42:18 54:1 62:8
    78:21 79:6,10

### J

**January** 12:7,22 13:6,12
    13:14 14:17 15:6 17:3
    22:20 23:11 24:15 25:6
    25:8 30:17
**Jason** 1:14 4:16
**Jeffrey** 1:3,21 2:16 5:6
**job** 49:22

joint 81:2
**Jones** 58:3
**judge** 5:16 61:5
**judges** 35:12,13
**judgmental** 83:7
**judicial** 9:4,11,16 10:11
  10:13 11:16 83:21
**Judiciary** 17:1,10 18:13
  63:12 65:19
**jurisdiction** 6:20 7:6,12
  7:18,21 8:6 9:5,12
  10:11 11:6 68:21,22
  75:22
**jurisdictional** 10:17 11:5
**jurisdictions** 8:13 68:15
**jury** 52:4
**justice** 13:18 18:6,15
  38:17 43:2,5,5,22 45:21
  45:22 49:9,14 62:13
  69:20 73:4

**K**

**kind** 6:9 20:20,22 38:9
  45:4 48:5,12 71:6 73:5
  79:9
**kinds** 11:1 43:16 55:8
  56:9
**know** 3:16 9:3,8 11:8,21
  12:9,20 14:6 15:1,17,18
  16:1,7,14 17:11,13,15
  18:11,18 19:3 20:4,6,22
  21:12 24:18,19 25:1,4
  30:2,20 31:1,1,2,11,14
  32:17,22 33:16,19 34:1
  34:2,3,7,13,19 35:9,10
  35:16 36:17 41:2 42:7
  43:15 44:7,19 45:2,19
  46:2,9,11,22 47:2 48:12
  49:11,15,16,20 50:1,9
  51:2,11 52:18,22 53:2,9
  55:4,8,12 56:9 58:2,14
  59:7,9 61:7,11 62:9
  63:18,20,22 64:4,6,7,18
  65:3,5,7,19 66:7,17
  67:17 68:16,19 69:22
  70:8 71:8 72:7,12,16,19
  73:3,10,14 74:1,3,6,8
  75:4,15 78:1,7,11,13,16
  79:4,7,9 80:12,13 81:3
  81:6,16 82:9 83:2,8
  84:6,21,22 85:19,20
  86:13
**knowing** 75:9,9
**knowingly** 18:21
**knowledgeable** 58:5
**known** 19:14

**knows** 16:20
**kumbaya** 33:10

**L**

**late** 31:14
**Laughing** 5:3
**Laughter** 27:4 61:10 62:4
  86:1 87:4
**law** 7:4 18:16 44:17 46:1
  46:17 63:14 64:12
  65:13,20 78:16
**lawsuit** 46:8
**lawyer** 46:18 67:16
**lawyers** 6:4 34:20 72:7
**lay** 48:15
**leads** 81:1
**learn** 6:4 12:16
**leave** 21:13 55:3
**legal** 39:9 42:18 56:3,7
  78:19
**legislative** 43:13,17,18,19
**length** 3:4
**let's** 14:20 21:17 22:17
  25:18 26:20 32:2 51:6
  58:22 62:6
**letter** 18:4 39:15,20
  41:10,19 49:21 62:20
  62:21 63:6 64:1
**letters** 62:17
**liability** 81:11
**license** 46:17
**life** 48:2
**light** 9:22 13:1 14:22
  28:13 76:20 82:6
**limine** 34:16 36:15,16
  54:6,13,14,18
**limitations** 74:7
**limited** 14:2 18:15 20:3
  75:15
**limiting** 45:20 46:3
**line** 40:8,19,20 41:20
  49:12 50:1,13,14
**list** 27:19 29:19,20 30:22
  52:12 57:10 76:7
**listening** 35:14
**lists** 3:3 30:6,11
**litigation** 44:1,2
**little** 4:20,21 14:4 35:6,7
  37:17 43:9 59:15 86:10
**live** 3:13 25:10 28:15
  78:12
**long** 6:12 12:20 14:6
  15:10,17 16:14 17:15
  20:8,19 64:6 73:3 82:21
**longer** 14:9 19:6
**look** 2:7 25:5 28:4 31:5

32:20 49:13 52:22
  60:12 61:12,20
**looking** 23:5 64:7
**lot** 13:9 22:7 33:15 79:6
**lots** 26:2 87:1

**M**

**MacDougald** 1:18 2:4,8
  5:5,5,21 6:17 11:14,17
  12:3 14:19 16:5,6 17:17
  20:8 21:19 22:3,14 23:3
  23:7,15 24:10,16 25:13
  26:5,12,22 27:20,21
  29:2,15,18 30:12,16
  31:7,16,18 32:6 34:10
  34:17 36:19 44:6 47:8
  47:21 50:5,9,19 51:2
  52:7 54:8,16,19 55:18
  55:20 56:16,19 59:4,5
  59:14 62:10,14,18 63:6
  63:18 64:14 65:3,7
  66:11,20 67:5,18 68:1,8
  69:9,14 70:7,17 71:4,14
  72:5 74:13 75:19 77:13
  77:15 83:15,19 84:10
  84:12 85:10,14 86:5,9
  86:14,18 87:3
**mad** 34:21
**maintain** 43:3
**making** 10:16 31:22
**mandamus** 9:17
**marching** 11:9
**mark** 15:16 47:11
**massive** 19:12
**material** 12:16 13:15
  65:8
**materials** 13:3,7
**math** 30:4
**matter** 2:16 6:20 7:6,12
  7:18,21 8:5,13 9:5,12
  10:20 43:13 46:1 48:21
  48:22 53:9
**matters** 6:15 12:2
**mean** 19:6 33:16 34:3
  35:10 37:3 41:4 45:19
  46:3 47:17 48:20 49:2,5
  54:22 75:2 78:18
**means** 41:9 45:9
**meat** 58:6
**meet** 54:3,11 71:22 74:2
**meet-and-confer** 67:11
  67:14
**Meghan** 86:3
**member** 46:13,16
**memo** 40:10,14
**memos** 49:15

**men** 34:21
**mentioned** 63:11 64:12
  84:1
**merely** 39:14
**merit** 53:5,7,8
**meritorious** 53:10
**merits** 7:8,13,19 8:11,16
  9:7,13,13,22 53:4 55:11
**Merril** 1:9 2:20
**methods** 41:9
**miles** 75:14
**mind** 40:6
**minimize** 3:22
**minute** 20:21
**minutes** 4:18 5:1 59:11
**misheard** 54:9
**misstate** 48:15
**mitigating** 80:8
**MLK** 23:11,12,16
**modify** 3:12
**moment** 25:15 28:13
  33:11 72:21
**Monday** 6:19 7:5,17
  13:17 15:1 23:11 30:10
  65:8 84:1
**month** 14:15
**months** 13:14
**morning** 2:3,4,5 4:19 5:4
  5:8,10,12,13,18
**motion** 10:15,19 13:1
  17:19 18:7 19:2 36:15
  39:4 54:14,18 67:11,12
  67:21 71:22 72:16 74:2
**motions** 8:16 34:16 36:15
  54:6,13
**move** 3:9 14:3,20 31:19
  53:3 54:11
**moved** 12:18 59:12
**musings** 51:9
**mute** 3:21

**N**

**N** 2:1
**narrow** 66:2
**naturally** 81:10
**nature** 51:13
**necessarily** 18:21 35:8
  40:5
**necessary** 57:6 76:19
**necessity** 28:19
**need** 3:4,18 6:4 13:18
  15:12 16:10,12 21:4,14
  22:1,3 26:1,14,16,21
  27:1,3,9,10 30:21 47:16
  51:7 57:4 58:5,11 60:12
  61:1 64:20 66:18 71:16

In Re:  Jeffrey B. Clark
October 6, 2022

71:22 73:2,8,18,21
74:18 79:3 81:4,17 86:9
**needed** 31:1 56:14,14
75:7 86:22
**needing** 25:21
**needs** 51:18 73:18
**negative** 73:6
**neither** 88:6
**never** 2:8 15:20 19:10
35:16
**nevertheless** 18:10 49:18
**New** 23:9 34:22 58:21
**non-Touhy** 64:1
**nonbinding** 80:2
**normal** 11:12 28:9 48:12
61:12 79:11,17
**normally** 81:22
**not--** 31:15
**note** 3:6 10:14
**notes** 54:22 57:16
**notice** 60:7,10 69:21
**novel** 22:7
**November** 17:7
**number** 1:8 2:15 37:10
63:13

———————— O ————————

**O** 2:1
**object** 32:3 52:9
**objected** 62:19
**objections** 18:17 32:3
63:13
**obliged** 45:22
**observation** 32:16
**observations** 74:15
**observed** 17:18
**obvious** 46:1 47:6
**obviously** 25:8 34:3
36:21 49:3 52:9 83:12
**occur** 59:16
**occurred** 16:2
**October** 1:6 42:4 87:8
**ODC** 10:3 79:12
**ODC's** 52:13
**off-hand** 61:16
**office** 4:17 45:12,16
82:14
**Officer** 4:9
**officials** 39:16
**Oh** 57:14 62:15
**okay** 4:6,14 5:2 12:1
14:21 16:5 19:16 20:1,9
20:12 22:17 23:1,5
24:10 27:2,5,11,13 29:4
29:12,17 30:3,15 31:7,9
31:13 32:2,10 34:15

36:2,4 37:20 38:3,6
39:1 40:8,19,20 41:21
45:18 46:11 47:7,21
48:6,10,17 50:8,15,16
50:18 51:9 52:17 53:18
54:16 55:3,11,12,16
57:1,7,11,21 62:5,8
63:5,17 64:15 65:4 66:8
67:18 68:1,2,18 69:14
70:9 71:3,6,8 72:22
73:2,17 76:1 77:4,16
78:2 80:20 82:18 83:1
83:11,18 84:5,20 85:7
85:10 86:15 87:5
**omnibus** 39:4
**once** 61:4 79:20
**open** 21:14 33:7 36:10
**opening** 79:12,16
**operate** 11:20 70:3 71:1
82:19
**operating** 9:2 85:2
**opinion** 39:8 56:17,20
58:3,6 82:21
**opportunity** 22:18,22
55:13 56:13 74:3 75:4
79:14 83:3
**oppose** 51:17
**opposed** 9:8 40:17 45:16
46:21 60:11 66:16
**opposing** 29:12 53:6,9
58:11
**opposition** 52:1
**options** 9:4 84:3,6
**order** 6:10 7:19 11:9
22:19 29:5 33:11 54:20
63:4 83:13,16 85:2,6
86:4
**ordered** 85:20
**ordinarily** 48:8,13
**originally** 12:5,18
**ought** 9:14,20,21 10:6,7
10:13 11:1 28:14 34:17
34:19 80:22
**oughtn't** 81:1
**outside** 28:16
**over-simplifying** 40:12
**overall** 41:15
**overly** 31:9
**overstate** 48:14
**owe** 22:8

———————— P ————————

**P** 1:12 2:1
**page** 27:3
**pandemic** 3:7
**panel** 23:15 55:7 64:17

**panoply** 64:3 65:16
**pantheon** 19:18
**paper** 2:6
**papers** 6:18 7:17 44:13
56:1
**part** 10:18,21,21 16:6
29:5 37:13 39:7 42:19
45:11 48:6,16 77:17
79:8
**PARTICIPANTS** 1:7
**participation** 72:3
**particular** 44:8 75:6
**particularly** 28:13 34:1
42:18 49:20 79:5 83:6
**parties** 3:1,20 36:12 71:7
80:5 81:2 88:8,11
**parties'** 81:4,7
**passed** 62:3
**patience** 3:19
**people** 4:1 14:9 15:4,10
15:18 20:13 23:10
25:22 27:11 29:9 31:10
35:3,13 36:3 37:22 38:1
41:14,15 42:5,11,20
44:9 55:7,9,13 68:9
69:7,18 70:4 71:2 72:7
72:8,10,11 75:16 78:15
80:11,15,20 81:12,18
83:14 86:21
**people's** 15:5 27:13 36:10
53:18
**percent** 19:18
**perfectly** 38:7
**period** 16:1
**permit** 65:10 84:19
**permitted** 66:1 69:10
**persist** 50:16 51:21
**persisted** 18:10
**person** 45:15,21 70:1
82:14
**personal** 45:13
**perspective** 46:14,15
**petition** 9:17
**phrase** 76:4
**phrased** 76:16
**piece** 2:6
**pig** 37:4
**pin** 35:5
**place** 47:1 48:9 65:1
**planning** 11:12 84:11
**plans** 25:6
**play** 5:16 46:20 48:18
**please** 4:14 51:9
**point** 10:17 12:6 17:15
20:4,7 21:8 30:1 38:6,9
40:14,16 42:2,6,13 45:5

50:19,20 52:11 56:20
65:9 75:3 78:5,22 79:3
81:7 83:20
**points** 44:8,22 62:7 87:1
**poke** 37:5
**politely** 35:14
**pop** 35:8 38:5 42:1 61:8
64:19
**portion** 65:1
**portions** 17:6
**posed** 50:13 51:4
**position** 9:7,10,19 10:3,3
10:7,9,12 18:9,20 27:22
29:22 41:7 50:6 52:2,9
52:13 63:10,20 76:14
**positions** 18:3,5 37:3
**possibilities** 26:3
**possible** 67:16,16 73:9,21
73:22 85:5
**post-hearing** 36:6 79:1,2
81:15,17
**potentially** 13:20 36:14
42:16 43:6 63:10
**practical** 15:3 25:11
**Practice** 44:17
**pre-decision** 49:11
**pre-decisional** 48:13
**Pre-Hearing** 1:2
**precisely** 17:11 23:13
**predecisional** 39:6
**predicament** 59:8
**prefer** 59:19
**preference** 36:19 84:18
85:4
**prehearing** 2:22 35:4
36:9 47:18 49:3 51:10
51:13,19 54:12
**preliminary** 6:15 12:2
80:1
**premise** 22:11 66:4
**preparation** 71:17
**prepare** 58:17 81:19
**prepared** 36:3 79:5 80:12
81:13
**present** 4:8 11:4 21:10
22:6 24:21 48:20
**presentation** 22:15
**presented** 26:10
**presenting** 40:5
**presents** 22:7
**preserve** 24:20
**President** 39:8 45:5,8,13
45:13,16,19 46:2,11
49:6
**Presidential** 40:1 50:4
65:15

**Presiding** 4:9
**press** 12:11
**presumably** 63:20
**presume** 32:18
**presumption** 21:5
**pretrial** 53:17,20 60:10
 60:11 61:1,2 64:18
 78:13
**pretty** 14:14 15:15 76:10
 76:12
**pricing** 86:11
**primary** 15:22
**principle** 45:20 46:3
**principles** 46:6,21 47:7
**prior** 12:13 69:21 80:7
**privilege** 18:17 46:18
 47:2 63:14 64:13,21
 65:13,14,15,15,20
**privileges** 65:13 67:7
**probably** 4:21 19:17,19
 22:21 32:7 41:5 53:14
 53:20
**problem** 2:9,11 18:9 26:9
 28:20 32:15 58:20
 66:13 70:1 73:11,16,17
 77:17
**problematic** 49:19,20
**problems** 25:1
**procedure** 14:2,4 65:18
 79:11,17
**proceeding** 2:14 4:8
 11:10 12:17 19:20
 42:16 45:1 47:5 71:6,21
 81:10
**proceedings** 51:22 56:8
 71:7 75:1
**process** 11:12 14:7 42:19
 44:16 47:2 48:8,10 63:1
 64:9 65:14,17 73:9
 75:17
**product** 67:7
**production** 77:18
**professional** 1:1 52:18
**professionally** 33:22
**prohibited** 52:3
**promise** 74:8
**promptly** 77:10
**proof** 39:15 50:10,21
 79:13
**properly** 81:2
**propose** 32:11 57:8
**proposed** 18:3 27:17 28:3
 39:19
**proposing** 18:9
**protections** 48:9
**prove** 17:22

**proven** 80:3
**provide** 86:2
**provided** 67:5
**providing** 39:7 41:22
 79:20
**provision** 60:7
**provisions** 44:15,20
**public** 3:13 14:10 84:18
**publicly** 31:4 63:9
**pull** 15:8
**pure** 38:20
**purpose** 2:21
**purposes** 10:15
**pursuant** 2:17
**pursue** 18:19 30:2 40:14
**push** 58:15 59:15,18
**put** 3:20 9:9 15:14 16:4,8
 16:10 17:16 19:4 35:5
 51:15 64:20 65:8,10
 66:21 69:21 74:8 78:16
 80:5
**puts** 58:20
**putting** 45:6 59:6 74:7

————————
**Q**
**quasi-judicial** 43:20
**question** 6:19 7:3,8 8:2
 9:5,12 16:2 19:21 35:3
 35:6 36:8,21 38:21 40:6
 48:21 49:5 50:12 60:4
 64:22 68:12,17 69:17
 70:11,15,22,22 72:19
 86:6
**questioning** 83:5
**questions** 22:8 47:9,13
 51:3 64:5 65:18
**queue** 27:16
**quicker** 86:10
**quickly** 30:5 73:20,21
 74:6,10 77:21
**quite** 44:20 52:13 63:13
**quiz** 35:8 38:5 42:1 62:3
 64:19
**quizzes** 61:9
**quote** 18:10 60:5

————————
**R**
**R** 1:14 2:1
**raise** 42:22 65:9 76:8
 77:21 78:21 83:11
**raised** 34:16 36:1 56:20
 62:7 83:20
**raises** 44:14
**raising** 55:3
**reach** 30:1
**reached** 80:13,14

**reaction** 19:9 20:3 73:5,6
**read** 20:5 27:19 37:21
 53:12 57:15
**reading** 47:5
**ready** 78:15
**real** 19:21 52:9 58:4
**realizes** 14:8
**really** 6:14 15:5,19 21:4
 22:1 23:21 34:3 37:19
 45:1 53:3 55:14 78:22
**reason** 13:9,16,21 67:17
 70:22 79:8 82:15 83:1
**reasonably** 52:19
**reasons** 12:17,19 13:10
 31:10 82:1,2
**rebut** 19:4 22:15
**rebuttal** 59:6
**recesses** 79:22
**recognize** 74:6
**recognizing** 9:1
**recollection** 61:16
**recommendation** 9:13,14
 10:5,19 11:11 39:7
 42:13,15 82:4
**recommending** 9:16
**record** 4:15 88:5
**refer** 56:4
**reference** 12:6
**referring** 61:17
**refine** 50:6 51:16
**refining** 42:1
**reflect** 62:21
**regardless** 19:20 29:7
**regulation** 63:1
**regulations** 13:19 62:20
 63:3,21 65:10 69:13
 70:3 73:20
**regulatory** 69:20
**reining** 38:11
**relate** 36:16 47:4
**related** 12:20 19:14 35:2
 88:7
**relative** 88:9
**relatively** 14:2 68:10
**release** 12:8,12,14 13:2,6
 31:2
**released** 31:4
**releases** 30:18
**relevant** 12:16 34:6 60:17
 66:6
**reluctant** 72:11
**remaining** 68:3
**remote** 25:6,8,10 28:18
 29:6 78:12
**remotely** 26:2 28:11,17
 29:6,8,11

**renew** 13:1
**replies** 53:17,18
**report** 4:8 10:18 11:11
 12:8,12 56:12 57:21
 58:9,12,15 60:5,11,13
 61:12,14
**Reporter** 2:13 4:3,5,11
 83:17 86:2 88:1,3
**reporting** 45:12
**reports** 12:11 57:4,18,19
 60:16
**represent** 22:9
**representation** 17:13
**request** 14:18 56:11 57:2
 63:2,3 73:3,4,8,19
**requested** 12:5
**requesting** 71:2
**requests** 62:12 75:1
**require** 19:22
**required** 3:7 7:11 22:15
 55:6 63:1 79:15
**requirement** 56:12
**requirements** 72:1
**requiring** 53:15 77:1
**reserve** 63:8
**resolved** 72:20 77:22
**respect** 8:7 11:20 44:4
 65:11,21 67:7 71:1
**respectfully** 10:8
**respond** 16:16 74:3 75:8
**respondent** 1:22 5:6,13
 5:18 16:19 17:2 39:14
 56:2 71:9,10 74:17 80:8
**respondent's** 1:20 32:19
 39:5,19
**respondents** 14:11 56:4
 58:16
**responding** 39:3 58:10
 66:10
**response** 10:9,10 17:18
 18:7 19:2 37:13 39:5
 44:4 54:14,17
**responsibility** 1:1 41:15
 41:16
**responsible** 42:17
**rest** 13:22
**rests** 79:20
**result** 33:1 51:13
**results** 40:2
**resume** 26:6
**returning** 83:19
**reverse** 6:10
**review** 9:5,11,16 10:11
 10:13 11:16 63:9 64:3
 83:21
**right** 14:8 24:18 29:17

42:7 44:8 46:3 47:15,17
  50:12 51:20 57:14 59:7
  61:9,15 63:8 71:4,14
  72:6 75:10 77:7
**rigorous** 65:18
**Robert** 1:19 5:9
**Rosen** 16:21 62:14
**rough** 30:4
**roughly** 16:1
**rounds** 53:16
**rule** 2:17 7:22 8:19 28:9
  29:15 39:9,11 60:8,11
  60:13,15,19,22 61:1,15
  61:15,22 67:3 74:22
  75:18 76:10 79:19 80:3
**ruled** 7:1 8:9 10:20
**rules** 7:2,10 8:2,3,15,16
  31:12 44:17 46:16,19
  50:11,17 61:13,18,20
  71:1 78:8,8 79:18
**ruling** 35:20 48:1
**run** 3:16 65:12

**S**

**S** 2:1
**safe** 16:3
**sake** 26:12
**sanction** 80:16 81:8 82:4
**sanctions** 80:10,22 82:11
  83:6,7
**Saturday** 59:1
**saves** 29:13
**saying** 13:14 27:10 40:10
  46:10 65:4 76:11
**says** 7:20,22 46:2 61:6
  74:22
**schedule** 3:5 21:15 23:21
  28:2,21 31:19 37:18
  54:6 56:12 57:3 59:3
  83:10,21 84:8
**schedules** 26:18 27:13
**scope** 77:18
**screen** 4:21
**seal** 65:1
**second** 2:6,11 40:22
  62:11 64:5 74:21
**secondly** 43:21
**see** 4:21,22 13:8 14:17
  15:9 27:3 29:20 33:3
  36:1,14 48:6 51:14
**seek** 10:11,13 11:16
  83:20
**seeking** 9:4 33:4 43:16
  72:2,4
**seen** 5:3 44:13
**self-incrimination** 51:20

**Senate** 17:1 18:13 63:12
  65:19
**send** 86:14
**sending** 39:14,19 41:19
**sense** 9:11 33:8 35:2
  48:14,15,16 53:15
  59:14 78:6 79:9,9
**sent** 41:10 86:22
**separate** 35:2 60:13
  64:10
**separated** 38:12
**separately** 26:2
**serious** 38:16 43:1 49:10
  66:20
**serve** 46:18 76:9,19 77:5
  77:10
**served** 76:12
**service** 76:21 77:1,13
**session** 80:1
**set** 3:2 25:7 27:17 29:8
  31:19 81:16
**setting** 19:11
**seven** 16:13
**sharper** 21:21
**shifted** 17:21
**shoe** 59:10
**shot** 49:16
**show** 39:13
**side** 20:8 33:18 48:5,6
  51:3 55:12 80:6,8 84:17
**sides** 21:6 75:7
**sign** 49:21
**significance** 48:19
**significant** 14:14
**significantly** 39:22
**silly** 20:22 28:12
**simple** 19:7 45:7 69:22
**simplify** 75:17
**simply** 28:14 46:2 76:10
**sir** 2:4,9 5:11
**sit** 35:13
**situation** 74:17
**smile** 35:14
**smoothly** 3:16
**so-called** 39:15
**sole** 42:12
**solemnly** 4:3,7
**solves** 77:16
**somebody** 25:9 64:22
  84:9
**soon** 68:10 73:8
**sorry** 27:6 54:9 56:18
  57:14,15
**sort** 30:3 35:2,19 36:11
  43:19 78:2 82:13
**sought** 65:12

**sound** 31:22
**sounds** 17:7 20:8 51:11
**speak** 22:19
**speaking** 3:21 51:2
**specific** 79:18
**Specifically** 3:11
**specification** 38:10
**spending** 35:18 48:2
**spent** 38:1 68:8
**stacked** 26:16
**staff** 3:15
**stand** 39:1 72:14
**standard** 71:12,20
**standpoint** 11:9 14:10,11
  84:7
**stands** 9:8
**start** 6:10,12,14 15:9
  20:15 25:16 26:13,15
  26:20 38:4 62:10 69:4
  73:9
**started** 18:1
**starting** 23:22 24:11
**statement** 23:3 69:6
  79:12,15,16
**statements** 12:13
**states** 7:14 15:2
**statment** 88:8
**statutes** 61:7
**Steel** 7:15
**step** 11:9
**steps** 69:3,4
**sticks** 51:14
**stipulate** 29:21,22 33:8,8
**stipulation** 33:4
**stipulations** 3:2 29:19
  30:1 32:10,12,17 33:2
  33:14
**stock** 31:14
**stone-faced** 35:14
**stop** 13:16 53:11
**story** 17:19 22:9
**straightforward** 19:7
**stream** 3:13
**streamline** 70:20
**stretch** 21:7
**stretching** 21:8
**strictly** 18:3
**strong** 14:4
**struck** 40:21 42:21
**structure** 55:1
**structured** 8:14
**study** 56:17,19
**stuff** 26:20 31:12,22
  48:11,13 53:3 78:8,10
  79:4
**stupid** 39:18 40:18

**styles** 15:18
**subject** 6:19 7:5,12,18,20
  8:5,13 9:5,12 20:18
  56:7
**subjects** 70:2
**submission** 27:18 61:13
**submit** 47:11 60:16 73:7
  73:8,19 74:2
**submitted** 44:14 57:4
  68:6
**subpoena** 10:20 11:5
  13:20 63:4,19 64:2
  68:13,15 69:6,11,16
  72:3,17 75:12,13,21
  76:9,12,20 77:5,9,11
**subpoenaed** 70:6
**substantial** 40:13
**subtlety** 47:13
**sufficiency** 62:19
**sufficient** 57:5 60:6,6
**sufficiently** 47:10
**suggest** 15:7 18:21 23:14
  28:7,21 61:3
**suggested** 34:18 39:14
  56:21
**suggestion** 29:3 39:18
  40:18 41:12 50:15,16
  58:13 76:9
**suggests** 13:17
**suit** 46:10
**sun** 5:2
**sunlight** 4:19
**Superior** 60:15 61:13
  75:17
**superiors** 18:5 39:20 66:6
**supervising** 41:16
**supplied** 62:16
**support** 76:14
**supposed** 10:18
**Supreme** 7:14 8:4,17,19
**sure** 16:17 21:22 49:12
  49:14 64:2 68:19 84:20
  86:3
**surprise** 31:22
**surrounding** 38:2
**suspect** 56:14
**swear** 2:13 4:2,4
**swift** 16:15
**sympathize** 59:8
**system** 3:8,11 69:20

**T**

**take** 2:13 6:9 7:3 9:19
  10:2,3,12 11:8 12:21
  14:9 15:11 16:11,14
  17:16 19:6,7,22 20:14

In Re:  Jeffrey B. Clark
October 6, 2022

22:16 24:20 31:5 47:1
55:10 64:6 65:1 70:18
73:3,4 74:18 76:8
**takeaways** 15:1
**taken** 9:21 80:9 88:9
**takes** 48:9
**talk** 3:2 13:20 21:17
22:18 32:2 33:15 37:16
53:14,21 67:19 68:3
72:9 83:3
**talked** 24:18 62:6 72:6
**talking** 13:12 15:5 16:1
38:1 46:12 58:8 60:10
68:7 69:5,6,17 70:4,12
70:13
**team** 23:8 25:14
**technology** 3:18
**tell** 22:9 25:6 73:10,16
74:5 80:21
**telling** 13:11 53:2,12
73:14
**tells** 84:9
**tend** 35:11
**tender** 77:1
**tentative** 43:10
**terms** 45:7 69:22 76:16
**testify** 25:9 28:17 29:5,7
58:3 69:8,11,16 70:1,5
70:12 72:11 77:3
**testimony** 17:1,3,5 24:22
25:10 28:10 56:7 63:9
63:10 66:1 79:19,20
88:4,5
**thank** 2:12 4:12 5:20
11:14,17 14:21 16:6
27:14,15 31:16 35:15
44:6 51:5 52:14 61:21
84:12 85:12,14,17
**then-expressed** 18:5
**theories** 36:16 45:3 47:19
51:1
**theory** 40:9 43:1
**thing** 15:17 20:11 28:8
40:21 42:9 43:14 75:7
75:11 77:7,19,22 84:14
**things** 12:16 13:16,22
21:7,13,21 22:4 25:11
26:17 29:22 31:10,11
31:17 33:17,18 34:2,4
35:22 36:11 37:18
38:15 42:20 44:9,12,18
51:7 52:12 64:11 67:15
73:2 76:8 78:3,13 80:6
80:11,18 83:12,13 85:4
**think** 4:22 8:1,9,10,12
10:4 12:22 14:6 19:17

20:7 23:18 24:10 28:8
30:7 32:6,21 35:1 36:2
36:19 38:6 40:7 41:2
42:1,5 43:10,12 44:9,14
48:4 49:12,12 51:18
52:13 53:9,19 55:12
56:5 57:19 60:17,20
61:15 62:2 63:11 68:22
69:2 70:5 73:19 74:1
80:12,15,19,22 81:5,11
83:11 84:17 85:12
86:18
**thinking** 34:19 36:12
55:5 60:9,18 81:3
**third** 46:5 71:7
**third-party** 71:11
**thorough** 14:5 16:15
**thought** 24:14 36:5,18
57:13 60:19,22 62:1
72:20 79:7
**thoughtful** 47:8
**thoughts** 32:7 37:1 81:20
**three** 15:14 16:3,11 19:8
55:7 58:14,15,20
**three-day** 22:1
**threshold** 6:20 7:7
**throw** 51:14
**Thursday** 1:6 87:7
**tied** 36:15
**time** 6:1 7:4 10:19 13:18
14:9 15:4 16:2 19:21,22
20:13 21:2,4 22:6,16
25:21,22 26:1 32:1
33:19 34:5 35:18 37:13
38:1 53:18 56:13 57:5
57:10,22 58:17 59:22
60:1 66:14 68:9 72:12
74:7 80:18,18 82:11
85:15
**timing** 27:16 30:17 34:16
74:11 81:16
**Title** 61:5,6,8
**today** 6:9 48:1 52:17
**told** 41:7 42:4 49:17 66:5
78:11 84:2
**tone** 52:16
**top** 38:8
**topic** 12:5
**topics** 18:16,19 53:22
54:4,21 55:8 65:21 72:9
**total** 20:17
**Touhy** 13:19 62:12,20
63:1,21 64:1,3 65:9
69:12 70:2 73:2,19,20
**town** 68:4
**track** 61:19 76:11,12

**transcribed** 16:22
**transcript** 83:16 85:18,21
**transcripts** 12:9,15 17:4
17:5,8 18:13,15 65:19
**treat** 51:9
**trial** 19:15 24:21 52:3
**tried** 16:19 21:7 49:18
**trigger** 63:2 64:3
**triggered** 63:21
**true** 18:12,12 33:12 37:9
50:22 88:5
**truly** 55:10
**truthful** 70:7
**try** 13:19 14:3,8 20:15
25:11,20,22 26:19 35:7
35:12 53:16 60:4 67:9
72:15 73:11 74:1,5,7,10
75:4,4 76:5
**trying** 11:19 21:1 28:11
31:9 42:20 44:9 46:5,9
48:14,15 50:22 55:15
68:9 82:16
**Tuesday** 74:9
**TV** 5:17
**tweak** 76:11
**Twelve** 1:8
**two** 8:3 13:14 15:14,22
21:10 28:5 32:3 42:11
43:10 45:15 52:15
55:20 56:5 61:7 74:15
**two-and-a-half** 20:18
21:11
**type** 53:2 83:5,9
**Typically** 86:7

_____

**U**

**U.S** 41:12
**ultimately** 45:7 75:11
**ultra** 7:21
**unclear** 45:17
**underneath** 22:11
**understand** 6:5,22 10:17
12:1,11 22:13 31:18
36:7 38:10,20 39:1 40:9
41:4 44:19 46:11 49:4
50:2 51:1 53:21 55:2
69:4 70:2 73:6 74:11
75:3 81:15 82:12,19
84:5,7,12
**understanding** 25:20
75:13
**understood** 11:4 25:4
84:10
**undoubtedly** 12:15 43:21
**undue** 71:18
**Uniform** 68:14

**United** 7:14
**universe** 65:21
**unnecessary** 44:2
**unusual** 22:7 33:15 37:22
**unwarranted** 43:17
**unwilling** 76:22
**upset** 25:9
**use** 24:21 67:16 68:14
70:19
**useful** 14:16 81:6
**usually** 38:3

_____

**V**

**vagaries** 20:19
**value** 73:3
**varies** 68:21
**various** 34:2 39:15 44:15
44:16,17
**vehicle** 67:10
**versus** 7:15
**video** 3:13
**view** 55:10
**views** 36:10 81:7
**violation** 39:17 43:14
50:11 79:21 80:3
**vires** 7:21
**virtual** 84:17
**virtually** 85:4
**vis** 3:12
**voluntarily** 69:7

_____

**W**

**W** 1:18
**wait** 82:22
**walk** 35:16
**wall** 51:14
**want** 4:4 6:15 8:8 10:10
11:8,18 13:19 14:10,12
18:19 22:5 26:19 28:4,5
31:11 32:4 33:5,21 35:4
35:5 36:3,4,11,13 37:4
38:5 40:3,4,6,15,22
41:2 44:7,10 48:1 53:1
53:11 64:4 65:5 66:9,14
70:19 73:1,22 75:3 79:4
80:11,15 81:12 82:5,6
82:12,14 83:5,14,22
84:2 86:7
**wanted** 2:7,14 9:3,9 13:1
31:20 35:6 42:22 48:3
50:20 65:8 76:18 81:18
**wanting** 59:9
**wants** 42:16 75:5,5
**warning** 81:19
**wasn't** 40:11,12
**waste** 53:18

In Re:  Jeffrey B. Clark
October 6, 2022

**way** 14:12 22:9 28:11,18 34:5 41:3 42:2 43:3 51:16 64:8,20 72:16 76:4 78:17 85:6
**ways** 33:22 43:10 71:10
**we'll** 26:21 29:8 37:17 56:17,21 72:14 77:10 77:13,17 78:22 80:21 86:14
**we're** 13:11 15:5,8 16:1 25:5,20 26:22 27:3 47:17 49:2 57:12 62:22 72:8,20 75:21 76:13 78:18 84:8 85:2 87:5
**we've** 5:3 11:21,21 28:11 62:5 63:22 80:12
**we--** 32:22
**week** 5:3 16:2 23:10,13 23:21,21,22 24:1,3,6,6 24:7,8 25:12,14,19 26:6 26:10,14,16,19,21 27:1 27:7 32:4,6 58:21 59:13
**weekend** 30:9
**weeks** 56:5 58:14,15,20
**weigh** 82:14
**weight** 14:14 69:21
**Welcome** 5:4
**welcomed** 32:16
**went** 49:18
**whatsoever** 17:14
**White** 43:12
**win** 81:11
**wind** 64:8
**window** 4:20
**wish** 35:12
**witness** 3:3 27:19 29:10 29:19 30:6,11 57:10 69:15,17 74:18,20 88:5
**witnesses** 13:3,20 15:22 16:20,21 24:5,7,12,17 25:3 28:15,16 29:5,7 55:17 63:7,19 68:4,15 70:12
**wondering** 5:21 42:7,9
**word** 67:16 71:6
**words** 26:5
**work** 23:21 24:1,1,6,7,11 24:22 30:4,10 33:21 37:17 45:3 59:3 61:6,8 66:19 67:6 81:4 85:22
**worked** 49:14
**works** 15:9 26:19
**worse** 83:8
**worth** 34:5 35:17
**worthwhile** 36:8
**wouldn't** 31:21

**writing** 47:14 48:2
**written** 16:22
**wrong** 18:8 42:7 71:6
**wrote** 49:15

**X**

**X** 42:4
**X-prime** 42:4

**Y**

**ya'll** 72:16
**yeah** 6:3,17 26:8 29:17 34:17 35:1 54:10 58:1 58:18 62:15
**year** 15:4 17:2 23:9 62:16
**Year's** 34:22 58:21
**years** 5:22 61:7
**yes,'** 68:20
**yesterday** 31:14
**YouTube** 3:14

**Z**

**Zoom** 1:5 24:22 28:18

**0**

**1**

**10** 86:7
**100** 19:18
**11** 2:17
**11.11** 79:19
**11:14** 87:7
**11th** 30:7
**12** 2:21 54:5 79:3
**12/20** 54:8
**12/21** 54:8
**12th** 30:5,9,9,12 32:5 57:13,15,17,20 58:10 58:20 59:21
**13th** 25:20
**14** 54:13
**16** 60:8 61:1,15
**16th** 23:11,12,17 24:2,8
**17th** 23:19
**19th** 32:4 57:12
**1st** 40:13

**2**

**2020** 40:1
**2021-D193** 1:4
**2022** 1:6 87:8
**21** 28:9,19 29:13 32:11
**21st** 32:13 54:5,18
**22-BD-039** 1:3 2:15
**23rd** 59:21
**25** 75:14

**25th** 23:22 24:11 25:16 26:4,7,13 27:7,11
**26** 60:17,19,21,22 61:22 62:2
**28** 60:20
**29** 30:8

**3**

**3.1** 67:3,21 71:9
**3.2** 71:12,12,20 74:2
**3.5** 74:22
**30** 4:18 27:17 29:10 30:8 57:9
**30th** 25:16 59:2,22
**31st** 58:22 59:1
**37** 5:22

**4**

**45** 75:18 76:10
**47** 53:16
**4A** 47:3

**5**

**5** 47:3
**54** 44:14
**5th** 59:20

**6**

**6** 1:6 87:8
**6th** 12:7,22 13:6 17:3 30:17 42:4

**7**

**7** 54:12 61:6,8

**8**

**8** 61:5
**8.4** 38:20 39:10
**8.4A** 38:13
**8.4C** 38:14
**8.4D** 38:15 43:3,14 44:5

**9**

**9:30** 1:6
**9:32** 2:2
**9th** 24:1,4,6,8 25:12,19 25:19 26:6,10,16,19,20 26:21 27:1