# EXHIBIT B-13

UNDER SEAL
DCCA NO. 21-BS-0059
DISTRICT OF COLUMBIA
COURT OF APPEALS

In the Matter of

CONFIDENTIAL (J.B.C.), ESQ.

Respondent,

A member of the Bar of the District of
Columbia Court of Appeals

Disciplinary Docket

No. 2021-D193

### RESPONDENT'S REPLY IN SUPPORT OF
### CROSS-MOTION TO QUASH

Standing on all prior arguments without repeating them, the Cross-Motion to Quash should also be granted because:

1. **Filing a Reply in Support of a Cross-Motion Is Procedurally Proper.** The Rules of this Court support the filing of this Reply in Support of Cross-Motion to Quash. DCCA Rule 27(a)(4)(B) permits motion responses to go farther and also include motions for affirmative relief. Respondent thus filed his response on February 15, 2022 to the Motion to Compel coupled with a cross-motion to quash (collectively, the "Response")—which combined Respondent's opposition and cross-motion that Disciplinary Counsel replied to on February 18, 2022. *See also* DCCA R. 4(c)(2)(C) (recognizing the prospect of a cross-motion); DCCA R. 27(c) (same). As a result, this reply in support of the cross-motion would ordinarily be due on February 21, 2022. But that is the President's Day holiday; even so, out of an abundance of caution, we nevertheless file this Reply in Support of Cross-Motion to Quash on February 21, 2022, not on February 22, 2022.

2. **Senator Durbin Rightfully Not Copied.** ODC now advises that Senator Durbin has not been given copies of our responses for Mr. Clark filed with ODC on January 31, 2022. This is appropriate. In light of its confidentiality obligations under Board Rule 2.19, ODC has properly

1

retreated from its unqualified statement on Nov. 22, 2021 that "[a] necessary disclosure includes sending a copy of your response to the complainant [*i.e.*, Senator Durbin] for comment." *See* Fox Letter to Clark, part of Mot. to Compel, Ex. A.

**3. Disciplinary Counsel Provides No Reason to Excuse Non-Service of the Subpoena and Non-Tendering of Attendance Fees.** The subpoena (Mot. to Compel, Ex. A), is clearly **blank** at the bottom of the page, where personal certification by the server is required, **conclusively proving** on the face of the subpoena that proper service never occurred. ODC's Reply also provides no response on the failure to tender witness fees, since the Subpoena demanded Mr. Clark's appearance (in the alternative), if he opted not to provide the documents based on an assertion of privilege. *See id.* at checked box "Production & delivery of these documents will eliminate the need for a personal appearance." In other words, since ODC did not know for sure at the time whether Respondent would produce documents, it was obligated to tender attendance fees as part of proper service under Superior Court Rule 45(b)(1). Yet it did not do so. *See* Response at 6-8.

ODC notes that these days respondents often do not insist on their rights of formal service and agree to accept electronic service. Respondent takes ODC at its word. But we are nonetheless entitled to insist on proper service of Mr. Clark where no such agreement was ever made. The fact that ODC may have grown accustomed to **wrongly equating service with receipt of a document by another means** is not a reason to ignore the teaching of cases like *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, where it was undisputed that the defendant got a copy of the relevant document by fax but the Court still held that did not equal formal service and thus was defective. 526 U.S. 344 (1999). The three dissenters thought that receipt of the fax was enough, but their position obviously did not prevail; similarly, no mere Maryland district court decision, Reply at 6, can stand in the teeth of *Murphy Brothers*. Moreover, Superior Court Rule 45 cannot be rendered

superfluous. There would be no need to specify certification by an adult witness and the tendering of fees, if those requirements could easily be sidestepped simply by using email instead. And email is sometimes foiled by spam filters as this case shows. Rule 45's terms must be adhered to.

Respect for Mr. Clark's legal rights may slow down the strange and unseemly haste with which ODC wishes to proceed here. But that does not mean that standing on the rights of service is interposed merely for delay.[1] Nor do counsel's letters to Congress reflect that Mr. Clark has refused under any circumstances to cooperate with the January 6 Committee, as ODC suggests.[2] *See* Reply at 2. Instead, counsel called for the Committee to seek a judicial resolution of the executive privilege issues. Additionally, after Mr. Clark claimed his Fifth Amendment privilege in a second deposition to the January 6 Committee, held on February 2, 2022, the Committee responded by having a member go to the media to suggest ***it may offer him immunity***, Response at 10 & n.3. While the questions presented by immunity are not ripe, they obviously leave open the prospect that Mr. Clark may cooperate. So ODC is wrong once again. Note as well that there is no indication that the January 6 Committee plans to go to court by some means, direct or indirect, to seek to pierce Mr. Clark's Fifth Amendment privilege. That Committee knows that since at least

---

[1] By way of contrast, Mr. Clark did agree, through his prior counsel, Mr. Driscoll, to accept electronic service of the January 6 Select Committee's subpoena (***not the subpoena at issue here***). This was because Mr. Clark worried that service would be attempted at his place of employment, something he feared for its harassing effect. But in between that time and when Mr. Clark secured a full copy of ***this subpoena*** by email, a coordinated social media campaign to "cancel" Mr. Clark was launched and he was driven from his job. As a result, ***as to this subpoena***, Mr. Clark opted to insist on proper service, and he is entitled to do so.

[2] We are glad to see Mr. Fox acknowledge for the first time the close interconnection of this proceeding and the House Select Committee's proceedings, Reply at 2. That is what this subpoena really seems aimed to do—*i.e.,* to improperly use Bar processes to obtain access to documents sought by the House Select Committee and the Senate Judiciary Committee. After all, Mr. Fox said in his November 22, 2021, letter that he would send "a copy of your response to the complainant [i.e., Senator Durbin] for comment." That turns the ordinary process on its head, where wrongdoing must first be established in some other forum before bar investigations begin.

3

two of its members (Chair Thompson and Representative Raskin) have asserted Mr. Clark or President Trump could be prosecuted, they cannot make the argument that Mr. Clark's invocation of the Fifth Amendment is pretextual.[3] Consider whether Congress may have wanted to misuse ODC as a convenient stalking horse because ODC comes to the matter fresh, without having made similar allegations of criminal wrongdoing.

   4. **ODC Treats Mr. Clark's Fifth Amendment Rights in a Cavalier Fashion.** ODC suggests Mr. Clark has nothing to worry about—if he can produce evidence of election fraud, then ODC will go away.[4] *See* Reply at 3-5. Beyond the fact that Mr. Clark does not have to lay out facts and then tie them to criminal code provisions (in effect fashioning his own chains)—as ODC has cited and can cite no cases to that effect in its Motion to Compel or Reply—ODC's new argument that Mr. Clark offering additional documents on election irregularities may end ODC's investigation cannot withstand even the slightest scrutiny:

   *First*, ODC has no power to bind any criminal courts, state or federal. An "oops" uttered a year from now by ODC after forcing Mr. Clark into making a document-based admission, despite his Fifth Amendment rights, would not un-ring the bell if such an admission has already been made. *Second*, the subpoena is not limited to seeking information about election fraud. *See* Att. to Subpoena (especially the 4th through 6th bullets in the Response at 12-13, reproducing subpoena text with emphasis).[5] *Third*, ODC's Reply nowhere grapples with Respondent's executive

---

[3] Senator Durbin's assertion in his complaint of criminal conduct to ODC is similar, but he faces a second barrier the January 6 Committee does not face in pursuing Mr. Clark—the Senate Judiciary Committee he chairs lacks subpoena power, given its rules and current party balance.

[4] Of course, Mr. Clark has no assurance that ODC will stand down if it can review additional documents, especially since there is ample evidence already in the record, including the draft letter itself that Mr. Clark is being pilloried for (see below, the argument labeled "Fifth"), showing colorable sworn evidence of election irregularities, and yet ODC presses ahead.

[5] The 4th bullet calls for documents relating to any efforts to persuade DOJ officials to take steps

privilege, deliberative-process privilege, and attorney-client privilege arguments.  *See id.* at 24; *see also* Exhibit 1 herein, at 33-37 (summarizing these arguments and attaching detailed letters on those matters as sent to the January 6 Committee).  **Fourth**, Mr. Clark is being denied access to all national security information necessary to his defense.  *See* Exhibit 2.

    **Fifth**, we filed an extensive letter with ODC on January 31, 2022 (excerpts thereof included as Exhibit 1).  Pages 49-57 therein cited publicly available pre-1/3/21 information supporting the view that the election was or at least could have been irregular and so deserved Georgia's investigation.  Take just two examples: (i) Mr. Clark attended the 2019 D.C. Circuit Judicial Conference where Professor Halderman spoke **to acclaim from the D.C. judges in attendance** about how electronic voting machines could be hacked, *see id.* at 57; and (ii) more importantly, the draft letter to Georgia officials attributed to Mr. Clark *itself cited Georgia evidence*:

> No doubt, many of Georgia's state legislators are aware of ***irregularities***, ***sworn to by a variety of witnesses, and we have taken notice of their complaints***.  *See, e.g.*, the Chairman's Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee Summary of Testimony from December 3, 2020 Hearing, http://www.senatorligon.com/THE_FINAL%20REPORT.PDF (Dec. 17, 2020) (last visited Dec. 28, 2020); Debra[] Heine, Georgia State Senate Report: Election Results Are 'Untrustworthy;' Certification Should Be Rescinded, THE TENNESSEE STAR (Dec. 22, 2020), *available at* https://tennesseestar.com/2020/12/22/georgia-state-senate-report-electionresults-are-untrustworthy-certification-should-be-rescinded/ (last visited Dec. 28, 2020).

Key Document H (emphasis added), which is, in turn, an exhibit to Senator Durbin's *Subverting Justice* report (attached to Mot. to Compel) and is cited right at the start of ODC's 11/22/21 letter.

    ODC nowhere addresses why this evidence was not ***alone*** enough to negate both Senator Durbin's claims of misconduct and ODC's suggestion that the draft letter made misrepresentations.

---

regarding the 2020 election; the 5th calls for legal research relating to the powers of Assistant Attorneys General; and the 6th calls for DOJ policy documents concerning contacts with the White House (in turn raising separation of powers issues of restricting degrees of presidential freedom).

And we pointed this Court to the Georgia Senate Report, *see* Response at 22 & n.7. ODC's refusal to engage with this evidence in its Reply is troubling. This record reflects that ODC is not really interested in evidence of election irregularities, but in **trying to secure document-based admissions from Mr. Clark about that evidence**. That would clearly violate the executive, law-enforcement, deliberative-process, and attorney-client privileges—all of which protect discretionary decisionmaking at the highest levels of the Executive Branch—and would be used by Mr. Clark's political foes to assert misconduct occurred and urge his prosecution. Of course, we maintain that Mr. Clark is innocent but **risk of prosecution** remains due to the political bonfire into which Mr. Clark has been pulled. ODC argues there's no risk because producing additional evidence of election irregularities would not lead to prosecution for a list of crimes ("Respondent is in no danger of criminal prosecution," Reply at 4), but that ignores that the subpoena effectively poses interrogatories to secure document-based admissions, violating *Artis*.

Policy disagreements within the Department of Justice about the wisdom of any recommendation Mr. Clark made are not the stuff of Bar discipline. Nevertheless, Mr. Clark's foes have repeatedly urged and may still seek his prosecution for one or more of the list of crimes they have drawn up against him, *compare* Reply at 3-4 *to* Response at 11. Mr. Fox is an estimable lawyer (and we are gratified that, based on what he has seen, he does not think Mr. Clark committed a crime[6]) **but his views do not control and there are clearly many lawyers who disagree with him and advocate for prosecution**. *See* Exhibit 1 (Nov. 30, 2021 letter) at 12-13 (collecting criminal claims of Profs. Tribe and McQuade (herself a former U.S. Attorney), Joyce Vance (former U.S. Attorney), Dennis Aftergut (former AUSA), and Glenn Kirschner (same)).[7] ODC's scornful

---

[6] We agree there is no evidence of criminal wrongdoing, as the draft Georgia letter and Senator Ligon's report alone provide a colorable basis for recommending more investigation to Georgia.

[7] Even Republican lawyer-legislators see **risk** for Mr. Clark. *See* House Rules Committee Hrg.

disregard of the risks faced by Mr. Clark is unjust. Mr. Fox does not represent Mr. Clark and has no responsibility to protect his interests in the singular and difficult circumstances confronting him. It is up to Mr. Clark and his counsel to decide how to protect his interests, not Mr. Fox.

**5. ODC's Argument That a Motion to Quash Should Have Been Filed to the Board Is Illogical.** ODC argues that Respondent should have gone to the Board below to quash. This makes no sense. It was ODC that bypassed the Board to come directly here, ***without engaging in a prior meet and confer, a mere three days after*** the agreed-on January 31, 2022 written-inquiry response date *as to an unserved subpoena*, making good on Mr. Fox's improper threats on January 28, 2021. ODC could have requested information pursuant to Board Rule 2.9 and, if we had objected on Mr. Clark's behalf, the dispute would have been resolved at the Board Chair level. *See* Board Rule 2.9(a). Instead, ODC immediately sought relief in this Court. Having done so, it cannot be herd to complain that Mr. Clark also seeks counter-relief in this Court. Thus it is plain that this Court must decide whether to quash ODC's subpoena or simply declare the subpoena unenforceable for non-service. Consistent with ordinary principles of judicial review, the Board is divested of jurisdiction over this matter while the Motion to Compel is pending here.

**6. ODC's *Artis* Response Fails.** ODC argues that *In Re Artis* does not bar the interrogatories in its subpoena because D.C. Bar Rule XI, § 8 authorizes "written inquires [*sic*]." Reply at 7 (citing *In re Artis*, 883 A.2d 85, 93 (D.C. 2005)). This ignores that *Artis* held that a general denial was a sufficient response to such "written inquiries." Indeed, the relevant section of this Court's opinion

---

Video (Dec. 2, 2021), https://www.youtube.com/watch?v=jvZ2kmeFuDI, at 1:35.10 to 1:37.40 (colloquy between Rep. Armstrong as witness and Rep. Reschenthaler as Committee Member ("[P]eople have been openly calling for his prosecution"; He's not "invoking his Fifth Amendment right just to invoke it.")). ODC's claim that crediting Mr. Clark with a rational fear of prosecution would leave ODC in a place where *any lawyer* could make vague claims and avoid a subpoena, Reply at 4, is farcical. Mr. Clark is uniquely beset by a political mob braying for his prosecution.

7

in *Artis* starting on page 93 is entitled "Respondent's General Denial." Here, we submitted a general denial ***and*** filed two letters totaling 190 pages of points, authorities and exhibits. Therefore, D.C. Bar Rule XI, Section 8 was more than complied with. That leaves ODC arguing the point that in *Artis* the interrogatories were **labeled** "interrogatories," Reply at 7, *i.e.*, the wolf came as a wolf. But a wolf in sheep's clothing is still a wolf. Moreover, ODC ignores that Section 8's text requires a response to written inquiries "subject to constitutional limitations." Mr. Clark asserted, in thorough and comprehensive fashion, a suite of substantial constitutional limitations, including but not limited to the separation of powers (especially in the form of the executive privilege that defends that constitutional doctrine) and Mr. Clark's Fifth Amendment privilege.

**7. ODC Has No Response to the *Chevron* Step One Defect in 28 C.F.R. § 77.2(h).** Our Response argued, as a jurisdictional matter, that (a) 28 U.S.C. § 530B was wrongly extended as a general matter by DOJ in 28 C.F.R. § 77.2(h) to the District of Columbia, since D.C. is not a "State" and (b) DOJ's citations of authority in the preamble did not support such an extension and, in fact, showed that, at best, Congress had allowed such application ***only for two particular fiscal years*** (none of which are current fiscal year 2022). *See* Response at 16-19 & nn.5-6. In reality and to be more precise, 93 Stat. 1040, 1044 simply provided that DOJ lawyers must be licensed under state, D.C., or territorial law during fiscal year 1980 and 112 Stat. 2681, 2681-66 readopted that provision for fiscal year 1999. Neither provision went as far as or equaled Section 530B's authorization to make "attorney[s] for the government subject to State laws and rules." Indeed, Section 77.2(h)(3) differentiates between the requirement to be a bar member and ethics rules.

ODC ignores both the *Chevron* challenge and the defects in the preamble and simply cites cases where discipline was applied to federal lawyers in D.C. or territories or that power was not

questioned.[8] That is not an actual jurisdictional ruling that grapples with the *Chevron* step one and DOJ rule preamble defects. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("drive-by jurisdictional rulings" are not precedential). The *Chevron* and preamble arguments were not made, as far as can be seen from the cases that ODC relies upon. Hence, they are not precedent for rejecting those arguments.  Seeing discipline applied to federal lawyers barred in D.C. (or territories for that matter) is not the same as a precedential ruling somehow overriding or excusing the *Chevron* one/preamble defects. Therefore, the Court cannot simply brush the objection aside.

**8. ODC's Cart-Before-the-Horse Arguments Ignore the Inherent Authority of the Court.**  We noted that the separation-of-powers problems here are acute because the Senate Judiciary Committee and the House January 6 Committee are both seeking Mr. Clark's testimony about conversations with the President or memorializations thereof.  As necessary, we will develop

---

[8] All of ODC's cases are unavailing.  None of them even cite *Chevron* or Section 77.2(h).  *See* Reply at 8-9 (citing *Leis v. Flynt*, 439 U.S. 438 (1979); *Mendoza Toro v. Gil*, 110 F. Supp. 2d 28 (D.P.R. 2000); *In re Kline*, 113 A.3d 202 (D.C. 2015); *In re Howes*, 52 A.3d 1 (D.C. 2012); *In re Allen*, 27 A.3d 1178 (D.C. Cir. 2011); *In re Abrams*, 689 A.2d 6 (D.C. 1997) (en banc), *cert. denied*, 521 U.S. 1121 (1997); *In re Kent*, 467 A.2d 982 (D.C. 1983).  *Leis*'s holding is that pornographer Larry Flynt's out-of-state lawyers had no property right to practice in a State where they were not licensed.  The Supreme Court's statement that "[s]ince the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions." is both classic dicta and a *non sequitur* as to the argument we present to oppose the subpoena.  If *Leis* held what ODC claims, Section 530B and Section 77.2(h) would not have been necessary for Congress and DOJ, respectively, to put in place.

Additionally, *Leis*, *In re Abrams*, and *In re Kent* are all pre-Section 530B/pre-Section 77.2(h). *Mendoza Toro*, *In re Howes*, and *In re Kline* all involved AUSAs practicing before D.C. or Puerto Rico courts, which we conceded subjects them to local discipline.  Mr. Clark here appeared in no D.C. court. *Mendoza Toro* also involved an attorney affirmatively arguing that she was bound by Puerto Rico ethics laws. *In re Kent* involved an AUSA who pleaded guilty to taking property without right and presented no reported jurisdictional defenses; neither did the White House assistant in *In re Allen* which was also similar to *In re Kent* in that it involved shoplifting.  *In re Howes* involved an AUSA who admitted to six ethics rule violations before the Bar. Finally, while we do not have access to the briefing in *In re Dobbie and Taylor*, DCCA No. 21-BG-024, it would not be surprising if DOJ, consistent with the Section 77.2(h) regulation we argue is *ultra vires*, conceded D.C. Bar jurisdiction. Of course, that cannot preclude us from arguing DOJ is wrong.

9

that argument in greater detail below with ODC. But ODC insists that an investigation is required now to see if Rules 8.4(a), (c), (d) have been violated. Reply at 9. Respectfully, this ignores that the draft letter *itself* cited evidence (*see supra* Point 4) and thus the notion that the Senate Report facially shows that a "false claim," Reply at 9, was made by Mr. Clark fails at the outset. This Court clearly has the inherent power to instruct ODC to withdraw from this campaign of political "lawfare" against Mr. Clark. That would spare him tens of thousands of dollars in legal expenses and avoid chilling political appointees of both parties considering future public service.

**9. It Is Entirely Proper to Consider the Policy Implications of Proceeding Further.** The fact that a political witch hunt is being conducted against Mr. Clark, and that ODC still identifies no case (*see* Response at 19-20) where discipline has ever been imposed for a never-sent confidential draft letter rejected by the principal, is clearly relevant. ODC does not even indicate whether it reviewed or analyzed the sworn testimony given to the Georgia Senate, though the letter cites that very testimony, and decided that all of it was somehow unreliable (as would seem necessary to meet its "clear and convincing" evidentiary burden, *see* Board Rule 11.6, to show a violation of D.C.'s Rules of Professional Conduct by Mr. Clark). This Court, by contrast, can and should look at that evidence and conclude it was enough and hence this ill-conceived investigation should be terminated. Anything else will incentivize third-party lawfare strategies, where "the process is the punishment," making even a future Respondent victory on the merits below pyrrhic.

## CONCLUSION

Oral argument should be granted and it is telling that ODC opposes oral argument across the board, *see* Reply at 5, even on the bedrock constitutional issues surrounding the Fifth Amendment. The Cross-Motion to Quash should be granted on one or more of the grounds given above or in the Response.

Respectfully submitted this 21st day of February 2022.

<u>/s/ Charles Burnham</u>
Charles Burnham
DC Bar No. 1003464
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Robert Destro*
Ohio Bar #0024315
4532 Langston Blvd., #520
Arlington, VA 22207
(202) 319-5303

robertdestro@protonmail.com

* *Motion for pro hac vice admission in progress*

Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

* *Motion for pro hac vice admission in progress*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing parties and others with a copy of this *Reply in Support of Cross-Motion to Quash* by U.S. First Class Mail with sufficient postage thereon to insure delivery, and by email addressed to:

Hamilton P. Fox
DC Bar
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

This 21st day of February 2022.

/s/ Charles Burnham

Charles Burnham
DC Bar No. 1003464

1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com