# EXHIBIT B-20



Clerk of the Court
Received 08/15/2022 02:49 PM

# UNDER SEAL

DCCA No. 22-BS-0059

## DISTRICT OF COLUMBIA COURT OF APPEALS

|  |  |
|---|---|
| In the Matter of | : |
| JEFFREY B. CLARK, ESQUIRE | : Disciplinary Docket No. 2021-D193 |
| Respondent, | : |
| A Member of the Bar of the District of Columbia Court of Appeals. Bar Number: 455315 Date of Admission: July 7, 1997 | : |

## DISCIPLINARY COUNSEL'S OPPOSITON TO RESPONDENT'S CROSS-MOTION TO STAY PROCEEDINGS BEFORE THE BOARD ON PROFESSIONAL RESPONSIBILITY PENDING RESOLUTION IN THIS COURT

From the outset of this investigation, delay has been Respondent's consistent strategy. In October 2021, Disciplinary Counsel received a well-documented and detailed report (with accompanying documentary evidence and deposition transcripts) from the Senate Judiciary Committee majority, which set out Respondent's misconduct. Disciplinary Counsel docketed an investigation and sent the report to Respondent and asked for a response. As set forth more fully in Disciplinary Counsel's pleadings filed in connection with the Motion to Enforce Subpoena *Duces Tecum*, Respondent delayed for months filing a response, as he was

obligated to do, to the initial inquiry. D.C. Rules of Professional Conduct 8.1(b) and 8.4(d); Rule XI, § 8(a); Board Rule 2.8. After receiving a subpoena for documents, served on him electronically because of the pandemic, and without having previously objected to this service, in January 2022, Respondent demanded personal service. After that was accomplished, he again challenged whether service had been properly made because a notation of time of service, meant for the return copy, was not included on his copy of the subpoena. (It was because of this insistence on personal service that Disciplinary Counsel engaged a process server to serve the Specification of Charges rather than serving counsel.) Respondent also refused to comply with the subpoena, primarily on Fifth Amendment grounds, even though the Fifth Amendment applies to testimony, not documents. Disciplinary Counsel then filed its Motion to Enforce on February 3, 2022.

Disciplinary Counsel did not cease its investigation while the issue of enforcing the subpoena was under submission to this Court. While the subpoenaed documents would undoubtedly strengthen its case, Disciplinary Counsel concluded that there was sufficient evidence to go forward even if the documents were not produced. Disciplinary Counsel submitted a Specification of Charges for contact member approval (disclosing the pending subpoena enforcement litigation before this Court) and after having obtained that approval, filed and served it upon Respondent in July 2022. Over Disciplinary Counsel's objection, Respondent

obtained an extension of time to answer the charges from August 11 until September 1, 2022. Respondent's counsel, represented to the Hearing Committee that they had insufficient time to answer—admit or deny—a simple Specification of Charges of less than nine pages. Yet by the same date on which that answer was due, August 11, they found time to file a 12-page pleading with this Court and an eight-page pleading with the Board entitled "Sealed Response to the Board's August 8th Sealing Order Including a Call for Affirmative Relief and Incorporated Motion to Seal." This was in addition to their Motion for Extension of Time and the Reply in support thereof based on their lack of time to write an answer. The pleadings requesting an extension suggested that when the answer is due, Respondent might not file one but rather "other responsive pleadings." (In response to Disciplinary Counsel's noting this contingency, the Hearing Committee's Order explicitly directed Respondent to file an answer by September 1.)

The instant motion is part of the same strategy of delay. It is premised on a fundamental misstatement of the nature of disciplinary proceedings—sometimes referring to them as actions brought by a "local bar association" and assuming that the Board on Professional Responsibility is an independent tribunal rather than an agency of this Court. From this faulty premise, Respondent analogizes this case to cases where the same issue is simultaneously raised in a trial and an appellate court. In fact, what is pending before this Court is a motion to enforce a subpoena to

3

produce evidence for use in a proceeding before the agency of the Court, which this Court has designated to hear disciplinary matters, but which lacks the authority to enforce a subpoena. Rule XI, § 18(d); Board Rule 3.14. The merits of this case are not before this Court—indeed have not yet been litigated. The subpoena enforcement litigation is an ancillary proceeding that does not concern and will not resolve the merits. Disciplinary Counsel has made the determination that, while it would help to have all the available evidence in Respondent's possession, it has sufficient evidence to proceed even if its motion were denied. This ancillary proceeding should not be an excuse to delay this matter further.

1. <u>Two Tribunals Are Not Considering the Merits of the Same Matter.</u>

Respondent relies on cases that stand for the general proposition that two courts should not be hearing the same issue at the same time. That is not what is happening here. To practice in the District of Columbia, a lawyer must be admitted to the Bar of this Court, and this Court has exclusive jurisdiction over disciplinary matters relating to members of its Bar. Appellate courts are not finders of fact, however, and so the Court has created an agency, the Board on Professional Responsibility, and a set of procedures, Rule XI, to perform the fact-finding aspect of the disciplinary process. The fact-finding proceeding, however, is not a proceeding before the "local bar association," a separate tribunal, or an independent agency. It is proceeding before this Court. Every pleading before a hearing

4

committee or the Board is filed with a caption that includes "District of Columbia Court of Appeals." But the Board has no authority to enforce a subpoena. *See* Board Rule 3.14. It can direct a respondent to comply, but only this Court can issue an enforceable order. In short, the enforcement litigation is ancillary to, and in support of, the Court's disciplinary process. An imperfect analogy might be to a court that appoints a special master to oversee the discovery process in a complicated litigation. Discovery matters might be litigated before the special master at the same time substantive motions are heard by the court. But all the matters are part of the same proceeding before the same court.

For this reason, the cases collected in *Stebbins v. Stebbins*, 673 A.2d 184 (D.C. 1996), on which Respondent relies, are not on point. Those cases, all involving the appeal of a trial court's decision, address the concern that two courts would rule on the same issue at the same time. For example, in *Carter v. Cathedral Ave. Corp.*, 532 A.2d 681 (D.C. 1987), an appellant filed a motion to amend a judgment in the Superior Court and then noted an appeal to this Court before that motion was ruled upon. This Court held the appeal was premature because all the relevant issues had not been resolved by the trial court. In *Morfessis v. Hollywood Credit Clothing Co.*, 163 A.2d 825 (D.C. 1960), the losing party in a libel action noted an appeal, and then asked the trial court to vacate the judgment and grant a new trial. This Court held that the trial court lacked jurisdiction to rule on this issue because the appeal

5

had been perfected before the trial court had acted. The obvious concern in all the cases collected in *Stebbins* is that the action of the trial court might decide an issue that would change the record on which the appellate court was relying, possibly mooting the appeal or making the result inconsistent with the record. This Court cannot rule on the legality of a judgment when the trial court is reconsidering it. An issue on appeal cannot be a moving target, but that issue does not exist here. For one thing, only one court is involved. More importantly, there is no appeal pending before this Court and no danger that a hearing committee will make a recommendation about the enforceability of the subpoena.

As Respondent concedes, the cases collected in *Stebbins* do not impose an absolute jurisdictional barrier, even in cases in which two courts are involved simultaneously with the same case, where there is no danger of confusion or waste of time and where it is expedient for both courts to rule. That is also the case here. While Disciplinary Counsel would prefer to gather all relevant evidence in Respondent's possession, it is well-prepared to move forward with its case even if the Court should decline to enforce the subpoena. Thus, there is no reason to freeze the proceedings before the Hearing Committee because of the pendency of this evidentiary issue. The proceedings will be litigated at some point regardless of how this Court rules on the subpoena enforcement. Pausing them now results not in efficiency, but only in delay—which is precisely Respondent's goal.

Finally, Respondent's argument that Disciplinary Counsel's position has evolved on the exclusive jurisdiction of this Court is a distortion of that position. There are two potential procedural routes to resolve a contested subpoena in disciplinary matters. Disciplinary Counsel may seek to have the subpoena enforced by this Court pursuant to Rule XI, § 18(d). Alternatively, a respondent may apply to the Board for a motion to quash pursuant to Rule XI, § 18(c). Disciplinary Counsel elected to follow the first course and filed its Motion to Enforce. After that occurred, Respondent filed a "Lodged Protective Motion to Quash" with the Board. Disciplinary Counsel then filed a Motion to Strike, in which it argued, *inter alia*, that the Board (or any hearing committee to which the Board might refer the issue) had no jurisdiction since enforcement of the subpoena was before the Court. This is precisely the rationale that this Court follows in the cases collected in the *Stebbins* opinion and on which Respondent relies in this motion. Respondent now concedes that Disciplinary Counsel was correct in moving to strike his motion to quash. But at the time the enforcement pleadings were filed, there was no Specification of Charges, and Disciplinary Counsel was not addressing the question of whether those charges could proceed to be litigated while an ancillary evidentiary issue was under submission before the Court.

2. <u>Respondent Should Not be Permitted to Litigate His Case Initially Before this Court.</u>

Respondent's primary argument in opposition to the Motion to Enforce is a Fifth Amendment claim over the production of documents. He fails to even mention this argument in his Motion to Stay; the argument that the act of producing these documents would incriminate him—even if accepted—would present no obstacle to conducting a hearing on the Specification of Charges without the missing evidence. Instead, he asserts the secondary, far-fetched—in fact, frivolous—arguments as to why no case should be brought against him.

For example, Respondent wants this Court to rule that "Rule 8.4 is not violated (or even implicated) when a senior Justice Department attorney proposes a policy position in a draft letter and circulates it for discussion . . . [and when] that policy proposal is rejected after those discussions and the draft letter never goes out." Cross-Motion to Stay at 9. But the Specification of Charges is not based on an inchoate proposal. What Respondent omits from the argument is that he had no personal involvement in the investigation of election fraud when he drafted his letter, and the Justice Department lawyer who supervised nationally all those investigations told him that his factual statements about the existence of such fraud in Georgia were untrue. The Acting Attorney General then arranged for Respondent to speak to the United States Attorney who had conducted the election fraud investigations in Georgia—even providing Respondent with the U.S. Attorney's personal cell phone

number—but Respondent did not do so. Nevertheless, Respondent persisted in his efforts to send a letter that he knew contained false statements of fact, and when the Acting Attorney General and his deputy declined again to do so, threatened to have them fired by the President if they would not send the letter. When they still refused, Respondent attempted to have the President remove the Acting Attorney General and appoint him based upon his promise to send the letter containing falsehoods. In short, Respondent persisted in his efforts to send the letter, with all its potential consequences for the integrity of a Presidential election and the stability of the nation to whose Constitution he had sworn an oath, after he knew it was based on false statements of fact. He also used coercive methods in an attempt to bring about this result. These are the allegations Disciplinary Counsel intends to prove. Of course, they require an evidentiary hearing and the presentation of evidence, and they cannot be resolved on a motion filed with this Court and without any fact-finding.

An opposition to a motion to enforce a subpoena is not the procedural vehicle for a motion to dismiss. Nor should this Court entertain such motions at the outset of disciplinary proceedings. Were the Court to do that, then proceedings that are already too protracted would inevitably begin with some sort of motion to dismiss, filed before this Court along with an application to stay the proceedings until the motion was resolved. Instead, the procedure is to raise such issues in a motion to the hearing committee, which makes a recommendation on them to the Board, after

9

it has heard the evidence, made findings of fact, and issued a report and recommendation. Rule XI, § 5(c); Board Rule 7.16(a).

As to Respondent's arguments that this Court lacks jurisdiction over the members of its Bar who work for the Department of Justice, he cites not a single supportive case and ignores the fact that this Court has exercised disciplinary authority over lawyers so employed before. *See In re Howes*, 52 A.3d 1 (D.C. 2012); *In re Kline*, 113 A.3d 202 (D.C. 2015); *In re Dobbie & Taylor* (BPR Jan. 13, 2021) (pending before DCCA). *See also In re Abrams*, 689 A.2d 6 (D.C. 1997) (Assistant Secretary of State for Inter–American Affairs); *In re Berger*, 927 A.2d 1032 (D.C. 2007) (National Security Advisor); *In re Sofaer*, 728 A.2d 625 (D.C. 1999) (Legal Advisor to U.S. State Department). But these issues should be litigated in the normal fashion following the normal procedure, not as an interlocutory matter.

3. <u>These Proceedings are Public and the Sealing Order Should be Lifted.</u>

Finally, all these pleadings should be unsealed now that the charges are public, and all proceedings going forward must be a matter of public record. Since 1995, it has been the rule in this jurisdiction that "[a]ll proceedings before the Hearing Committee and the Board shall be open to the public, and the petition, together with any exhibits introduced into evidence, any pleadings filed by the parties, and the transcript of the proceeding, shall be available for public inspection." Rule XI, § 17(a). The Court adopted this rule following the ABA's 1992 *Lawyer Regulation*

10

*for a New Century: Report of the Commission on Evaluation of Disciplinary Enforcement,* sometimes referred to as the "McKay Report." The McKay Report recommended that disciplinary proceedings be public because "secrecy in discipline proceedings continues to be the greatest single source of public distrust of lawyer disciplinary systems." *Id.,* Recommendation 7. The D.C. Bar appointed a Disciplinary System Review Committee, which came to the same conclusion in order "to foster more confidence that [the] system is operating fairly and that lawyers who commit ethical violations are indeed dealt with appropriately." *Report to the Board of Governors of the D.C. Bar on Changes in the Disciplinary System*, 63 (Feb. 1993). The Court adopted this recommendation and made all matters public once a specification of charges was filed. *Order*, 94-M-190 (Nov. 10, 1994). This change to the Rules "reflects a judgment by the court in favor of general openness of disciplinary proceedings." In re Dunietz, 687 A.2d 206, 211 (D.C. 1996).

Respondent suggests that § 17(a) provides that the Court has discretion to order all proceedings to remain sealed even after charges have been filed. Cross-Motion to Stay at 12. He justifies doing so in this case because of the possibility of trying this case in the press or of coordinating filings with the January 6 Committee. However, Respondent cannot show a single instance of any conduct by Disciplinary Counsel that would constitute trying his case in the press. Disciplinary Counsel has a standing arrangement with several news organizations that cover the legal

11

profession to provide them copies of *all* public specifications of charges once they have been filed and served, which occurred here.  As to the January 6 Committee, there has been no coordination between the Committee and Disciplinary Counsel.  Respondent points to the fact that one of the Committee's hearings occurred the day after a process server sought unsuccessfully to serve Respondent.  The serving of a specification of charges is controlled by when a contact member approves the charges, after which they are given to a process server, who generally attempts to serve them within a few days.  The Committee was given no advance notice that the Specification of Charges in this matter had been approved or had been sent out for service on Respondent.  (Nor was the Senate Judiciary Committee, whose report initiated this investigation.)  Disciplinary Counsel has communicated with the January 6 Committee to ascertain when the Committee intends to make public its evidence and depositions (not included in the transcripts of the public hearings) and has been told that this will occur sometime in the Fall.  There has been no coordination, and Respondent has no factual basis for contending to the contrary.

This would be a terrible case for the Court, for the first time, to order that a disciplinary matter be tried under seal.  Respondent was a senior official in the Department of Justice—a presidential appointee—as his motion points out.  There is substantial public interest in his case.  To try this case in a Star Chamber proceeding would substantially undermine public confidence in the fairness of the

disciplinary process. There cannot be special treatment of the powerful and the privileged. The Court should not only summarily reject such a suggestion but should also immediately lift the sealing order and make proceedings in this matter public. Respectfully submitted,

*Hamilton P. Fox, III*

_____
Hamilton P. Fox, III
Disciplinary Counsel
Bar Registration No. 113050

/s/ Jason R. Horrell
Jason R. Horrell
Assistant Disciplinary Counsel
Bar Registration No. 1033885

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C.  20001
(202) 638-1501

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August 2022, I caused a copy of the foregoing *Disciplinary Counsel's Opposition to Respondent's Motion to Stay Proceedings* to be served on the Board of Professional Responsibility c/o Case Managers to casemanagers@dcbpr.org and to Respondent's counsels via email to Harry W. MacDougald, Esquire, to hmacdougald@CCEDlaw.com, to Charles Burnham, Esquire, to charles@burnhamgorokhov.com, and Robert A. Destro, Esquire, to Robert.destro@protonmail.com.

*Hamilton P. Fox, III*

_____

Hamilton P. Fox, III