# EXHIBIT B-21



**DCCA NO. 22-BS-0059**
**DISTRICT OF COLUMBIA**
**COURT OF APPEALS**
**Under Seal**

Clerk of the Court
Received 08/18/2022 10:43 PM
Filed 08/18/2022 10:43 PM

In the Matter of

**CONFIDENTIAL (J.B.C.), ESQ.**                    **Disciplinary Docket**
                                                   **No. 2021-D193**
        **Respondent,**

**A Member of the Bar of the District of**
**Columbia Court of Appeals**

---

### REPLY BRIEF IN SUPPORT OF CROSS-MOTION TO STAY PROCEEDINGS BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY PENDING RESOLUTION IN THIS COURT

Respondent's Cross-Motion for Stay argued that this Court had exclusive jurisdiction over the issues already before this Court on the Motion to Enforce and Respondent's opposition thereto and Respondent's Cross-Motion to Quash. Respondent pointed out that the issues in this Court would substantially overlap with his defenses to the Specification of Charges at the Hearing Committee and Board level, and thus that it would be duplicative, inefficient, and risk inconsistent rulings for these issues to be simultaneously addressed in both forums absent a stay of proceedings below.

Disciplinary Counsel makes a number of arguments in response. Upon examination, these arguments are without merit, and the stay should be granted.

First, Disciplinary Counsel again accuses Respondent of seeking delay. However, as Respondent has previously explained in detail, the delays which so irk Disciplinary Counsel were all the direct result of his own procedural and clerical missteps and litigation choices in response to Respondent's lawful and thoroughly supported assertion of his legal rights. *See* Response to Motion to Enforce and Cross-Motion to Quash, pp. 3-5; Reply in Support of Cross-Motion to Quash, pp. 2-4. And, because Disciplinary Counsel again failed to mention it, Respondent is

obliged to point out that he did not seek an extension of time to respond in this Court to the Motion to Enforce even though Disciplinary Counsel's attempt to serve that filing on counsel for Respondent was so beset by clerical errors that the full package was not received until the day before the response was due. *See* Response to Motion to Enforce and Cross-Motion to Quash, p. 5. We need not tarry further with Disciplinary Counsel's manufactured sideshow about delay and instead turn to the grounds for a stay.

Disciplinary Counsel next offers a series of arguments that there is no exclusive jurisdiction in this Court—despite having previously insisted there was. *See* Motion to Strike "Lodged Protective Motion to Quash," p. 4. ("Not only does the Court have exclusive jurisdiction over the question of the enforceability of the subpoena, but also the Court has the matter under consideration.") First, he contends that this is not a case in which two tribunals are considering the same matter. This argument is premised on the contention that this Court and the Board of Professional Responsibility are one and the same, and that even though there may be simultaneous proceedings on the same issues in both forums, "only one court is involved." Opposition, p. 6.

Disciplinary Counsel relies on this invalid premise to distinguish *Stebbins v. Stebbins*, 673 A.2d 184, 189 (D.C. 1996) and cases cited therein. Those cases, he contends, involved a lower court and an appellate court, while in this case "only one court is involved." Whatever the merits of that distinction, the inquiry required by *Stebbins* "is whether it is judicially efficient for the trial court to take a particular action in the face of the particular matter pending before the appellate court." *Id*. Whatever the relative structure of the fact-finding and appellate tribunals, the *Stebbins* inquiry is whether it will be duplicative and wasteful for both levels to have the same issues in the same case under active consideration at the same time. Special masters appointed by a court and the court are also part of the same tribunal. But that does not mean that avoiding inefficiency and

replication disappear as concerns simply because a special master and the appointing trial court are not as separate as are a trial court from an appellate court. And we have never seen a case where a trial court and a special master simultaneously took up the same or significantly overlapping issues.

This case involves both "jurisdiction" in the "administrative efficiency" sense discussed in *Stebbins*, and in the "traditional" sense "used to refer to the types of disputes, as defined by the legislature or constitution, for which a court is created, and usually is applied at the outset of a case to determine a court's competence to hear a matter." *Stebbins,* 673 A.2d at 189.

Rule XI § 8(a) provides that "[a]n attorney under investigation has an obligation to respond to Disciplinary Counsel's written inquiries in the conduct of an investigation, *subject to constitutional limitations*." (emphasis added). When Respondent objected to Disciplinary Counsel's requests on constitutional grounds including the Fifth Amendment and separation of powers, he contested whether Disciplinary Counsel's investigation is "the type[] of dispute[], as defined by the legislature or constitution, for which" the Board and this court are created. *Stebbins*, 673 A.2d at 189.

Disciplinary Counsel responded by moving here to enforce his subpoena. By doing so, ODC opened the door for Respondent to raise "traditional" jurisdictional issues, which rest on the Constitution itself, putting them squarely before this Court. Such questions are "usually … applied at the outset of a case to determine a court's competence to hear a matter." *Id*. *Stebbins* thus requires a stay because, once a "traditional" jurisdictional argument is joined, it would be grossly inefficient—and jeopardize the constitutional claims—to argue them simultaneously in this Court and before a Hearing Committee, and then, on appeal, before the Board and, eventually (again) in this Court.

Since duplication of issues among this Court, the Board, and Hearing Committees would support ordering the stay, Disciplinary Counsel next argues there is no duplication, contending the issue before this Court is limited to enforcement of the subpoena, while the issues before the Hearing Committee and Board would encompass every contested question of fact and law in the case except the enforceability of the subpoena. *See* Opp. p. 6 ("no danger that a hearing committee will make a recommendation about the enforceability of the subpoena."). As a general matter, this is presumptuous. It is for *this Court* to decide which issues it is necessary at this time to resolve, not for Disciplinary Counsel to proceed as if a host of defenses to subpoena enforcement are irrelevant.

Disciplinary Counsel's facile distinction fails under the plain language of Rule XI § 8(a), which makes *all* investigations, including the subpoena, "subject to constitutional limitations," and under the Due Process Clause, which incorporates those constitutional limitations and governs all disciplinary proceedings conducted under the authority of this Honorable Court. Respondent's jurisdictional and merits arguments in opposition to the Motion to Enforce and in support of his Cross-Motion to Quash are the same as would be asserted below in response to the Charges, and they must be asserted at the Hearing Committee and Board level so that they can be preserved for a final disposition pending judicial review in this Court. Both forums would be simultaneously deciding Respondent's challenge to the D.C. Bar's jurisdiction over his conduct as a matter of constitutional, statutory, and regulatory interpretation. These defenses are properly pending in this Court, and will absolutely be asserted below if no stay is ordered. After all, it is elementary that if there is no local city disciplinary jurisdiction over the deliberative policy-making process at the highest levels of the U.S. Department of Justice in direct consultation with the President, the entire case, including the subpoena, must be dismissed.

The efficiency problems identified in *Stebbins*, and so evident in this case, arise from Disciplinary Counsel's litigation strategies. He initiated proceedings first in this Court and then, improperly impatient with how this Court was proceeding, initiated charge proceedings before the Board and a Hearing Committee, obliging Respondent to assert in both forums there is no "traditional" jurisdiction. Disciplinary Counsel's impatience with the pace this Court's deliberations is unseemly.

Disciplinary Counsel's initial emphatic claim that this Court had exclusive jurisdiction has thus now morphed into an argument that this Court has exclusive jurisdiction only over enforcement of the subpoena, as if that did not also include the fundamental jurisdictional arguments asserted by Respondent. And the revised and extended version of Disciplinary Counsel's argument (so radically different as to perhaps be estopped) fails because the inquiry required by *Stebbins* "is whether it is judicially efficient for the trial court to take a particular action in the face of the particular matter pending before the appellate court." 673 A.2d at 189. Respondent's arguments against enforcement of the subpoena are fundamental to the entire case and are properly pending before this Court. If there is no jurisdiction to investigate because the Constitution, statute, and governing regulation limit the power of this Court (and hence of the Board and its hearing committees), there is not only no valid and properly issued subpoena, there is no case. Respondent is obligated by his oath of federal office to raise the constitutional issues in every setting in which they are relevant, and Rule XI § 8(a) confirms his right to do so before the Board and this Court.

Disciplinary Counsel nevertheless contends that Respondent's opposition to the subpoena is not an appropriate vehicle for a motion to dismiss. But Respondent is without question entitled to assert lack of subject matter jurisdiction in response to a subpoena, and indeed a court is bound

to consider whether it has subject matter jurisdiction even if not raised by the parties. *Stebbins*, 673 A.2d at 189 ("traditional" jurisdictional test "usually is applied at the outset of a case to determine a court's competence to hear a matter"); *Chase v. Pub. Def. Serv.*, 956 A.2d 67, 75 (D.C. 2008) ("Parties cannot waive subject matter jurisdiction by their conduct or confer it ... by consent, and the absence of such jurisdiction can be raised at any time", *citing Customers Parking, Inc. v. District of Columbia*, 562 A.2d 651, 654 (D.C.1989).

Disciplinary Counsel next attempts to bolster his jurisdictional argument with a somewhat heated recitation of his version of the facts. Suffice to say at this stage that political disagreement, however passionate, does not suffice to bestow jurisdiction where it is otherwise lacking. The Charges allege "attempted dishonesty" in a pre-decisional discussion draft of a document that proposed taking different positions on contested issues of fact, law, and policy than those previously taken by former Attorney General Barr, Acting Attorney General Rosen, and Principal Associate Deputy Attorney General Donoghue (performing the duties of the Deputy Attorney General). These are disputed factual and merits issues, however, and if it is ever necessary to resolve them, that must be done in the first instance by the finders of fact below.

Disciplinary Counsel next contends that Respondent's jurisdictional arguments are without merit because the D.C. Bar has in the past disciplined federal government attorneys, citing six example cases. In five of the six cases, there was no jurisdictional challenge whatsoever, much less any consideration of the specific and momentous constitutional arguments made here by Respondent. The issue in the sixth, *In re Abrams*, 689 A.2d 6 (D.C. 1997), was whether a presidential pardon deprived the D.C. Bar of jurisdiction to discipline a former Deputy Secretary of State convicted of lying to congressional committees. Following the unanimous authorities on

the subject, the Court held that a pardon did not preclude discipline because a pardon does not restore the lack of moral fitness demonstrated by Abrams' perjury.

*Abrams* is inapposite for at least two reasons. *First*, the D.C. Bar did not, and could not under the Constitution, reach into the internal deliberations among senior officials in the Department of State (let alone those in the State Department with the then-President) and demand an explanation of their views on the content or emphasis of Abrams' testimony before Congress. *Second*, the Bar's inquiry into Mr. Abrams character and "moral fitness" did not, and constitutionally could not, rest on the content of pre-decisional drafts of his congressional testimony that he did not actually deliver in his official capacity as Deputy Secretary of State. Just as the Constitution protects the *deliberative process* of courts (and Rule XI § 19(a) immunizes the deliberative processes of the ODC), the *deliberative process* of Congress, U.S. Const. art. I § 6, cl.3 (Speech and Debate Clause), so too it immunizes the *deliberative process* of senior officers in the Executive Branch, *United States v. Nixon*, 418 U.S. 683, 708 (1974). *Abrams* has nothing to do with deliberative process and does not mention or discuss any of Respondent's jurisdictional arguments; it is thus irrelevant here. Accordingly, none of the authorities cited by Disciplinary Counsel is in the least bit responsive to Respondent's jurisdictional arguments in this case.

Disciplinary Counsel also contends that Respondent has not cited any supportive authority. This is simply not correct. The constitutional, statutory interpretation, and *Chevron* step one administrative law arguments are amply supported with citations to statutes, regulations, and case law. *See* Response to Motion to Unseal and Cross-Motion to Stay, p. 4; Response to Motion to Enforce and Cross-Motion for Stay, pp. 15-20. But in one particular respect, a lack of a prior disciplinary case on all fours, in its narrowest sense, *supports* rather than weakens Respondent's jurisdictional arguments.

If it is constitutional for a local bar disciplinary authority to demand information and access to documents generated at the highest echelon of confidential Department of Justice policy-making and legal deliberations with the President of the United States, and if 28 U.S.C. § 530B actually grants disciplinary authority to the District of Columbia in such circumstances (two dubious assumptions), then the implementing regulation, 28 C.F.R. § 77.2(j)(2) by its terms does not apply if the local jurisdiction "would not *ordinarily apply* its rules of ethical conduct to particular conduct or activity by the attorney." (emphasis added).[1] The D.C. Bar does not merely "not ordinarily" apply its rules of ethical conduct to the particular conduct of the Respondent, *it has never done so.* If the regulation means what it says, there is no jurisdiction and this case should be over.

Respondent emphasizes that his oath of office, the Supremacy Clause, and the separation of powers require that he make these jurisdictional arguments, which are by no means frivolous or an affront to the regulatory jurisdiction of this Court. The question posed here is where jurisdiction lies to regulate the professional conduct of senior DOJ lawyers purely inside the halls of the federal Executive Branch. This is not a situation in which Respondent entered an appearance before this Court and misrepresented some fact at oral argument. This is a case that attempts to peel back the curtain of the Executive Branch and second guess its confidential internal deliberations at the highest level. For a State to try to do that would be a constitutionally unthinkable violation of federalism. For a *city government* to try to do so (even one that Congress *sometimes* treats as if it were a State, like the District—though Congress *did not* do so here) is even more unthinkable and a patent violation of the separation of powers because this Court's authority descends from Congress's Article I lawmaking sphere.

---

[1] The statute, 28 U.S.C. 530B, similarly grants states disciplinary authority over federal attorneys only "to the same extent and in the same manner as other attorneys in that State." *See, e.g.*, *Sandoval v. United States*, No. 04-CV-4056, 2007 WL 2937124, at *6 (C.D. Ill. Sept. 26, 2007), *aff'd*, 574 F.3d 847 (7th Cir. 2009) (no ethical violation by federal attorney where there was no state rule prohibiting his conduct).

Respondent respectfully submits that enforcement is an Executive Branch authority in the first instance, particularly in view of the Justice Department's nationwide responsibilities and the sometimes contentious relationship between particular States and the federal government. Thus, DOJ has an Office of Professional Responsibility and an Office of Inspector General with authority to regulate the professional conduct of its lawyers. *See* Response to Motion to Enforce and Cross-Motion for Stay, p. 18. As previously noted and publicly reported, a vigorous OIG investigation of Respondent is in fact underway. These jurisdictional arguments have been asserted out of reluctant necessity because Disciplinary Counsel repeatedly refused a request to stay his investigation pending completion of the OIG's investigation.

Finally, Disciplinary Counsel contends all proceedings should be unsealed. But if there is no jurisdiction, there is no case, and nothing should be unsealed. And if we are correct that there was no jurisdiction below pending resolution of the dispute here, then there was no basis for Disciplinary Counsel to violate the sealed nature of this proceeding for its own litigation purposes including relieving his impatience. Disciplinary Counsel's attempt to bootstrap around the governing rules and jurisdictional limits and present this Court with an improperly conjured and illusory *fait accompli* should be rejected.

Jurisdiction—and the other arguments asserted in the Response to the Motion to Enforce and Cross-Motion to Quash—ought to be decided before any of these proceedings are unsealed. Disciplinary Counsel should not be allowed to usurp the Court's decision on jurisdiction with hastily filed charges after insisting exclusive jurisdiction was in this Court and then turn around 180 degrees, abandon that position, and then say that his own rule-violating actions now justify unsealing all proceedings in this Court and below.

Respectfully submitted this 18 day of August, 2022.

9

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

*Motion for pro hac vice admission in progress

Harry W. MacDougald*
Georgia Bar No. 453076
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

* Motion for pro hac vice admission in progress

10

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy

of this ***Reply Brief in Support of Cross-Motion to Stay Proceedings Before the Board of***

***Professional Responsibility Pending Resolution In This Court*** by email addressed to:

Hamilton P. Fox
foxp@dcodc.org
Jason R. Horrell
horrellj@dcodc.org
D.C. Bar
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

This 18 day of August, 2022.

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com