IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

IN RE: JEFFREY B. CLARK,

    A member of the Bar of the District
of Columbia Court of Appeals (Bar
No. 455315)

Case No.

1:22-mc-00096-RC

## MOTION TO QUASH SUBPOENAS

Charles Burnham
Burnham & Gorokhov, PLLC
DC Bar No. 1003464
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS .......................................................................................................1

    NATURE AND ORIGIN OF COMPLAINT FROM SENATOR DURBIN ..............................1

ARGUMENT .........................................................................................................................3

    I.       PROCEDURAL BACKGROUND ................................................................................3

    II.      THE SUBPOENA SHOULD BE QUASHED BECAUSE THE DISCIPLINARY
          ORGANS OF THE DISTRICT OF COLUMBIA COURT OF APPEALS LACK
          SUBJECT MATTER JURISDICTION OVER THE CHARGED CONDUCT ..............4

        1.    ODC Lacks Subject Matter Jurisdiction to Regulate or Investigate the Conduct of
            Senior DOJ Lawyers Advising the President on the Discharge of His Core Article
            II Authorities. ......................................................................................................5

        2.    28 U.S.C. § 530B(a) and its Implementing Regulation, 28 C.F.R. § 77.2(h) Do Not
            Give the D.C. Bar Jurisdiction Over the Charged Conduct. ...........................7

        3.    Under 28 U.S.C. § 530B and 28 C.F.R. § 77.2, the Bar Has No Jurisdiction Over
            Respondent Because It Does Not "Ordinarily Apply" Discipline to the Particular
            Conduct in Question. ...........................................................................................13

    III.     SUBJECT MATTER JURISDICTION CHALLENGES MUST BE DECIDED AT
          THE OUTSET. ........................................................................................................16

    IV.     THE FIFTH AMENDMENT BARS ENFORCEMENT OF THE SUBPOENA ..........18

        A.    Mr. Clark Properly Invoked the Fifth Amendment. ......................................18

        B.    Disciplinary Counsel's Subpoena Amounts to an Improper Set of Interrogatories
            and Thus It Is Not Even Necessary to Reach the Act of Production Doctrine. .............20

        1.    Even to the Extent It Is Implicated Here, Mr. Clark Has a Strong and Valid Basis
            to Claim the Act of Production Privilege. ......................................................22

    V.     THE SUBPOENAS REQUIRE DISCLOSURE OF PRIVILEGED MATERIAL. .......23

CONCLUSION ......................................................................................................................24

CERTIFICATE OF SERVICE ................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Branch v. Smith*, 538 U.S. 254 (2003) ........................................................................11

*Carter v. United States*, 684 A.2d 331 (D.C. 1996)....................................................19

*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) .........................................10

*District of Columbia v. Carter*, 409 U.S. 418 (1973) ...................................................8

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)............................15

*Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88 (1994)...........18

*Fisher v. United States*, 425 U.S. 391 (1976) ..............................................................20

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010).........15

*Hoffman v. United States*, 341 U.S. 479 (1951) ..........................................................19

*In re Abrams*, 689 A.2d 6 (D.C. 1997) (*en banc*), *cert. denied*, 521 U.S. 1121 (1997)...............17

*In re Artis*, 883 A.2d 85 (D.C. 2005) ...........................................................4, 20, 21, 22

*In re Benjamin*, 698 A.2d 434 (D.C. 1997) ...................................................................4

*In re Berger*, 927 A.2d 1032 (D.C. 2007) ...................................................................17

*In re Burton*, 472 A.2d 831 (D.C. 1984).....................................................................20

*In re Confidential*, 701 A.2d 842 (D.C. 1997)..............................................................4

*In re Dobbie and Taylor*, DCCA No. 21-BG-024 (D.C. Jan. 13, 2021)........................17

*In re Horowitz*, 482 F.2d 72 (2d. Cir. 1973) .................................................................4

*In re Howes*, 52 A.3d 1 (D.C. 2012)............................................................................17

*In re Kline*, 113 A.3d 202 (D.C. 2015) ........................................................................17

*In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078 (E.D.N.Y. 1978) .............4

*In re Sofaer*, 728 A.2d 625 (D.C. 1999) ......................................................................17

*In re Thorup*, 432 A.2d 1221 (D.C. 1981)....................................................................4

*Kastigar v. United States*, 406 U.S. 441 (1972) ...........................................................19

*Lefkowitz v. Turley*, 414 U.S. 70 (1973) ................................................................18, 20

*Lewis v. Casey*, 518 U.S. 343 (1996)...........................................................................18

*Mason v. United States*, 244 U.S. 362 (1917)..............................................................19

*Matter of Nixon*, 53 A.D.2d 178, 385 N.Y.S.2d 305 (1976).........................................17

*Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001) ............17

*Ohio v. Reiner*, 532 U.S. 17 (2001) .............................................................................22

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ..............................................16

*Steel Co. v. Citizens for Better Env't*, 523 U. S. 83(1998)......................................16, 18

*UMC Dev. LLC v. District of Columbia*, 120 A.2d. 37 (D.C. 2015)..............................16

*United States v. Hubbell*, 167 F.3d 552 (D.C. Cir. 1999), *aff'd*, 530 U.S. 27 (2000) ...............22

*United States v. John Does*, 465 U.S. 605 (1984).........................................................20

*United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S 33 (1952) ............................18

*United States v. Powe*, 591 F.2d 833 (D.C. Cir. 1978) ................................................19

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022)..............................................................15

**Statutes**

26 U.S.C. § 170 ..............................................................................................................8

28 U.S.C. § 1257 ............................................................................................................8

28 U.S.C. § 506 ..............................................................................................................5

28 U.S.C. § 509 ...................................................................................................................10
28 U.S.C. § 510 ...................................................................................................................10
28 U.S.C. § 515 ...................................................................................................................10
28 U.S.C. § 516 ...................................................................................................................10
28 U.S.C. § 517 ...................................................................................................................10
28 U.S.C. § 519 ...................................................................................................................10
28 U.S.C. § 533 ...................................................................................................................10
28 U.S.C. § 547 ...................................................................................................................10
42 U.S.C. § 1983 ...................................................................................................................8
42 U.S.C. § 8285a ..................................................................................................................8
Pub. L. 105-277, 112 Stat. 2681 (Oct. 21, 1998)................................................................10
Pub. L. 96-132, 93 Stat. 1040 (1979) .................................................................................10

## Other Authorities

OLC Opinion, *State Bar Disciplinary Rules as Applied to Federal Government Attorneys*
   (Aug. 2, 1985)...................................................................................................................6

## Rules

D.C. Bar Rule XI, § 18(a)......................................................................................................3
D.C. Sup.Ct. Rule 45 .............................................................................................................3
Fed.R.Civ. P. 12(b)(1)..........................................................................................................16
Fed.R.Civ.P. 45 .....................................................................................................................3
Supreme Court Rule 47 ..........................................................................................................8

## Regulations

28 C.F.R. § 77.2 .........................................................................................................7, 10, 13
64 Fed. Reg. 19,273 (Apr. 20, 1999) ..................................................................................10

## Constitutional Provisions

U.S. Const., amend V ....................................................................................................passim
U.S. Const., art. I, § 8, cl. 17 .................................................................................................8
U.S. Const., art. II, § 2, cl. 1 ..................................................................................................5
U.S. Const., art. II, § 3 ...........................................................................................................5

## Other References

DOJ Office of Inspector General Press Release, *available at* https://tinyurl.com/2p9ad5tm
   (Jan 25, 2021) .................................................................................................................12

## INTRODUCTION

The Office of Disciplinary Counsel of the District of Columbia ("ODC") filed disciplinary charges against Jeffrey B. Clark, a former senior Senate-confirmed official of the U.S. Department of Justice, alleging that his conduct in that capacity violated certain rules of professional responsibility. Mr. Clark removed this case on October 17, 2022 based on the federal officer removal statute, 28 U.S.C. § 1442, *inter alia*. As indicated in the Notice of Removal and the Motion to Stay Subpoena Response Deadline and Other Deadlines filed October 18, 2022, Mr. Clark now brings this motion to quash subpoenas served upon by ODC on him and one of his former subordinates at the Department of Justice, Douglas Smith.

The subpoenas should be quashed on three grounds: (1) the Bar lacks subject matter jurisdiction over the charged conduct, *see infra* Section II; (2) Mr. Clark properly invoked his Fifth Amendment rights, *see infra* Section IV; and (3) the Subpoenas call for production of privileged material in the absence of a court order as required by D.C. Rule of Professional Conduct 1.6(e)(2), *see infra* Section V. Oral argument is requested.

## STATEMENT OF FACTS

### NATURE AND ORIGIN OF COMPLAINT FROM SENATOR DURBIN

ODC began its investigation of Respondent one week after receiving a letter from Senator Richard Durbin, Chairman of the Senate Judiciary Committee. Senator Durbin has no personal knowledge of the matters at issue. Several other politically motivated complaints were filed by various third-party detractors but were rightly rejected by ODC for lack of personal knowledge, which should similarly have been fatal to the Durbin complaint as well.

But in this case ODC opened an investigation and attempted to serve an investigative subpoena on Mr. Clark. Mr. Clark responded to the subpoena on an agreed date, January 31, 2022, and asserted a panoply of substantive constitutional objections to the jurisdiction of ODC to

investigate the conduct in question. He also raised a series of privilege objections, his Fifth Amendment rights concerning testimony, and objected that service of the subpoena was defective. *See* Dkt.# 1-58[1].

Shortly thereafter, on February 3, 2022, ODC filed a Motion to Compel. *See* Dckt. # 1-62. Mr. Clark responded to the motion and cross-moved to quash the investigative-stage subpoena. Dckt. # 1-67, and also prophylactically lodged a copy of the motion with the D.C. Board of Professional Responsibility. Dckt. # 1-72.

The matter remained pending before the District of Columbia Court of Appeals ("DCCA") for several months. Impatient with the pace of the forum it chose for its Motion to Enforce, and apparently satisfied that it had enough evidence to proceed without the documents or testimony called for by the investigative subpoena (or the subpoenas at issue in this motion), ODC filed public charges against Mr. Clark on July 19, 2022, with Disciplinary Counsel. This act inherently represented to the Board of Professional Responsibility ("Board") that ODC had sufficient evidence to prove the charges by clear and convincing evidence. Dkt. # 1-2.

Mr. Clark asked the DCCA to stay the disciplinary case pending resolution of the jurisdictional challenge asserted in his motion to quash in the DCCA. Dckt. #1-75. At the Board level, he also requested the case be deferred pending resolution of the jurisdictional challenge in DCCA, and pending the conclusion of related civil and criminal investigations by the January 6th Committee, the U.S. Department of Justice Office of Inspector General, and a Fulton County, Georgia Special Purpose Grand Jury. Dkt. #1-16. In addition, at the Board level, Mr. Clark moved to dismiss the charges on the grounds, *inter alia*, that the disciplinary organs of the D.C. Court of

---

[1] Due to a clerical error, a second letter dated January 31, 2022 was to have been Dckt. #1-59. This will be corrected shortly.

Appeal had no subject matter jurisdiction over the charged conduct and that the Charges failed to state a violation of the Rules of Professional Conduct. *See* Dkt. 1-20; 1-42. On September 15, 2022, the DCCA dismissed all pending motions in that Court on the grounds that the filing of the charges mooted the investigative subpoena and all issues related thereto. Dkt. 1-45. The Chair of the Board denied the request for deferral on September 29, 2022. Dkt. # 1-49. Also on September 29, 2022, the Chair of Board Hearing Committee Twelve held that the Hearing Committee did not have authority to rule on the Motion to Dismiss or Mr. Clark's subject matter jurisdiction challenge, but was instead required to proceed with the evidentiary hearing and make a report and recommendation on the entire case, including the jurisdictional challenge, the merits of which would be decided later upon review at the Board level or at the DCCA level. Dkt. # 1-50, p. 2.

On October 6, 2022, ODC served a charges-stage subpoena on Mr. Clark with a return date of October 21, 2022, ***two days from now***. In addition, ODC procured service of a subpoena for the production of documents on Douglas G. Smith, a Deputy Assistant Attorney General who reported to Respondent) ("Smith Subpoena"). *See* Dkt.# 1-56 (including proposed subpoena for Mr. Smith that ODC requested be issued by the Illinois Bar. Respondent has not been provided a copy of the actual subpoena served upon Mr. Smith). By agreement between Mr. Smith's Counsel and ODC, the return date for Mr. Smith's subpoena was extended to October 31, 2022. *See id.*

In this Motion, Mr. Clark asks that the subpoena to him and the subpoena to Mr. Smith be quashed.

## ARGUMENT

### I. PROCEDURAL BACKGROUND

Disciplinary Counsel may propound subpoenas at the charging stage pursuant D.C. Bar Rule XI, § 18(a), subject to D.C. Sup.Ct. Rule 45, analogous to Fed. R. Civ. P. 45. But under D.C. law, no ODC subpoena may include inquiries crossing over into the impermissible territory of

litigation-like interrogatories. *See In re Artis*, 883 A.2d 85 (D.C. 2005). The DCCA frames disciplinary proceedings as "adversary, adjudicatory proceedings" related to property rights and which therefore are attended by due process protections. *See In re Benjamin*, 698 A.2d 434, 439 (D.C. 1997) (citing *In re Thorup*, 432 A.2d 1221, 1225 (D.C. 1981)).

Upon removal to this Court, the Federal Rules of Civil Procedure govern proceedings relating to subpoenas.

Pursuant to Fed. R. Civ. P. 45(d)(3)(A), subpoenas may be quashed on timely motion if they require disclosure of privileged or protected matter not subject to exception or waiver, is unduly burdensome or fails to provide a reasonable time to comply; and under sub-rule (d)(3)(B)(i) if the subpoena requests "confidential research." Parties may also describe their objections, if substantiated, to a subpoena as "overbroad" or amounting to a "fishing expedition." *In re Confidential*, 701 A.2d 842, 842 (D.C. 1997). Under Rule 45(e)(2), if privilege is asserted then the claim must be expressly made.

## II. THE SUBPOENA SHOULD BE QUASHED BECAUSE THE DISCIPLINARY ORGANS OF THE DISTRICT OF COLUMBIA COURT OF APPEALS LACK SUBJECT MATTER JURISDICTION OVER THE CHARGED CONDUCT

A subpoena must have a "legitimate purpose." *In re Horowitz*, 482 F.2d 72, 80 (2d. Cir. 1973) (documents that have "no conceivable relevance" to legitimate object of grand jury investigation need not be produced); *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1084 (E.D.N.Y. 1978) ("The documents requested must be shown to have some general relevance to the subject matter of a legitimate grand jury investigation."). *Cf.*, *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946) (subpoena must "be for a lawfully authorized purpose, within the power of Congress to command.")

The same rationale of these grand jury cases applies in the bar discipline context. As explained below, ODC's subpoenas should be quashed because they have no reasonable relation

to a legitimate area of bar discipline enforcement.

1.  ODC LACKS SUBJECT MATTER JURISDICTION TO REGULATE OR
    INVESTIGATE THE CONDUCT OF SENIOR DOJ LAWYERS ADVISING
    THE PRESIDENT ON THE DISCHARGE OF HIS CORE ARTICLE II
    AUTHORITIES.

Under the U.S. Constitution, the President of the United States, not the Attorney General, is the chief law enforcement officer. *See* U.S. Const., art. II, § 3 (the President "shall take Care that the Laws be faithfully executed …."). The President's constitutional responsibility for seeing that the laws be faithfully executed, carry with it, as a matter of settled law, "illimitable" discretion to remove principal officers carrying out his executive functions. *See Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 493 (2010). The Constitution vests all Federal law enforcement power, and hence prosecutorial discretion, in the President. The President's discretion in these areas has long been considered "absolute," and his decisions exercising this discretion are presumed to be regular and are generally deemed non-reviewable. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *see generally* S. Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521 (2005). The Attorney General and other DOJ lawyers such as Mr. Clark exercised discretion delegated to them by the President subject to his supervision. They are "the hand" of the President for the discharge of these authorities. *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922).

To assist the President in the discharge of these authorities and responsibilities, he has the right to receive full and frank advice and information from his advisors. The Opinion Clause imposes on senior federal officers like Respondent a reciprocal duty to provide such advice upon request. *See* U.S. Const., art. II, § 2, cl. 1 (Opinion Clause); 28 U.S.C. § 506 (Assistant Attorney Generals, like Mr. Clark, to be appointed by President with advice and consent of Senate. It was upon such considerations that the OLC Opinion, *State Bar Disciplinary Rules as Applied to*

*Federal Government Attorneys* (Aug. 2, 1985), concluded that "Rules promulgated by state courts or bar associations that are inconsistent with the requirements or exigencies of federal service may violate the Supremacy Clause."), *available at* https://tinyurl.com/56bft7sb, *last visited* (Oct. 19, 2022) (hereafter "OLC Opinion").

This is not a situation in which Respondent appeared before a Court (inherently subjecting himself to its supervisory jurisdiction) in the District of Columbia and misrepresented some fact to the Court. This case is an attempt by an organ of the D.C. government to peel back the curtain of the Executive Branch and second guess its confidential internal deliberations at the highest level—among the senior-most officials of DOJ and directly with the President himself in the Oval Office regarding how to carry out the President's core authorities under Article II. For a State to try to do that would be a constitutionally unthinkable violation of federalism and the Supremacy Clause and, if the State were purportedly acting pursuant to congressional statute, to the separation of powers too. For a ***city government*** to try to do so (even one that Congress ***sometimes*** treats as if it were a State, like D.C.—though Congress ***did not*** do so here) is even more unthinkable and a patent violation of the separation of powers because the authority of the DCCA and hence the Board descends from Congress's Article I lawmaking power. Either way (*i.e.*, the District acting as an analogue to a "State" and thereby violating the Supremacy Clause or the District acting as a creature of Congress and therefore violating the separation of powers), the Charges, and the Subpoenas are an unconstitutional invasion of core Article II authorities of the President.

Certain categories of state action are directly prohibited and thus preempted by the Constitution. *See, e.g.*, U.S. Const. art. I, Section 9, cl. 5 ("No Tax or Duty shall be laid on Articles exported from any State."); *id*. at cl. 6 ("No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another: nor shall Vessels bound to,

or from, one State, be obliged to enter, clear, or pay Duties in another.").[2] The separation of powers is one of the key structural bulwarks protecting liberty. Accordingly, even beyond the enumerated classes of areas prohibited by express constitutional text, enactments by state or local bars or attempts to impose discipline that violate the separation of powers can thus be held to be ***conflict preempted*** in light of their flat incompatibility with the constitutional structure.

2.      28 U.S.C. § 530B(a) AND ITS IMPLEMENTING REGULATION, 28 C.F.R. § 77.2 DO NOT GIVE THE D.C. BAR JURISDICTION OVER THE CHARGED CONDUCT.

ODC appears to have given no thought whatsoever to how the Charges unconstitutionally invade the President's core Article II authorities. ODC has been content so far to rest its assertion of jurisdiction over the charged conduct on 28 U.S.C. § 530B(a) and its implementing regulations at 28 C.F.R. § 77.2. A mere statute and regulation, however, cannot override a core constitutional limitation on the authority of the government of the District of Columbia. But even if no constitutional limitation were exceeded, under elementary principles of statutory construction, neither this code section nor the regulation grant the necessary authority over the charged conduct.

The statute Congress passed purporting to subject Justice Department lawyers to state bar rules, 28 U.S.C. § 530B(a), provides that "[a]n attorney for the Government shall be subject to ***State*** laws and rules, and local Federal court rules, governing attorneys in each ***State*** where such attorney engages in that attorney's duties, to the same extent and in the same manner as other

---

[2] *See also* U.S. Const.. art. I, Section 10, cl. 1 ("No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."); *id*. at cl. 2 ("No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Controul of the Congress.").

attorneys in that **State**." (emphasis added). The District of Columbia is **not** a "State." All law in the District is federal law and Congress alone defines the nature, scope, and means of enforcement of all federal powers exercised here, including that of the D.C. Bar. U.S. Const., art. I, § 8, cl. 17 ("Seat of the Government"). Specific language is ordinarily required to treat the District as if it were a State. For example, the Twenty-Third Amendment, by specific text, treats the District as a State for the limited purpose of electoral college votes and the Twelfth Amendment. In no other respect does the Constitution treat the District as a State. *See also, e.g., District of Columbia v. Carter*, 409 U.S. 418, 432-33 (1973) (D.C. not a State for purposes of 42 U.S.C. § 1983—with the current version of Section 1983 being amended to apply not just to "States" but to the District). The United States Code is replete with examples where Congress has **specifically defined** D.C. to fall within the meaning of the term "State," but only for purposes of that particular statute.[3] Indeed, by contrast, Chapter 31 of part II of title 28 of the United States Code (where 28 U.S.C. § 530B is found) lacks any specialized definition section. Congress surely knows how to confer power on District authorities when it wants to and yet it expressly withheld it here.

   28 U.S.C. § §530B, known as the McDade-Murtha Amendment, was adopted to curb perceived abuses by requiring "Justice Department litigators to observe the ethical standards established by the state and local federal court rules wherever they perform their duties. See *McDade-Murtha Amendment: Legislation in the 107th Congress Concerning Ethical Standards for Justice Department Litigators* CONGRESSIONAL RESEARCH SERVICE (Dec. 18, 2001), p. 1

---

[3] *See, e.g.*, 28 U.S.C. § 1257(b) ("For the purposes of this section, the term 'highest court of a State' includes the District of Columbia Court of Appeals."); 42 U.S.C. § 8285a(2) ("the term 'State' means any of the several States, the District of Columbia …"); *see also, e.g.*, 26 U.S.C. § 170(c)(1) (applying term "charitable contribution" for tax purposes to include gifts for the use of "States, a possession of the United States … or the United States or the District of Columbia");. And Supreme Court Rule 47 states that "[t]he term "state court," when used in these Rules, includes the District of Columbia Court of Appeals."

available at https://crsreports.congress.gov/product/pdf/RL/RL31221/3 (last visited Oct. 19, 2022). Prior to enactment, the Department of Justice took the position that nothing in state and local federal court standards of ethical conduct should be construed as an impediment to federal law enforcement efforts. In *Stern v. U.S. Dist. Ct. for Dist. of Mass*., 214 F.3d 4, 19 (1st Cir. 2000) a U.S. Attorney brought a declaratory judgment action brought to challenge the validity of a local disciplinary rule that constrained issuance of grand jury subpoenas seeking client-related information from lawyers in criminal cases. The court considered whether the recent adoption of Section 530B cured any conflict between the local bar rule in question and other federal law governing the use of grand jury subpoenas. The First Circuit held that Section 530B did not give the local bar rule supremacy over federal law as follows.

> Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and ***to the extent there is a clear congressional mandate, specific congressional action that makes this authorization of state regulation clear and unambiguous***." *Hancock v. Train,* 426 U.S. 167, 179 (1976) (footnotes and internal quotation marks omitted) [(emphasis added)]. We believe it is reasonable to require comparable specificity before inferring congressional intent to abandon the goal of national consistency anent rules of federal practice. Moreover, that benchmark is not attainable here: it simply cannot be said that Congress, by enacting section 530B, meant to empower states (or federal district courts, for that matter) to regulate government attorneys in a manner inconsistent with federal law.

*Stern v. U.S. Dist. Ct. for Dist. of Mass*., 214 F.3d 4, 19 (1st Cir. 2000). The Court in *Stern* then examined the regulations adopted under Section 530B and held they "dispel the notion that section 530B grants states and lower federal courts the power, in the guise of regulating ethics, to impose strictures that are inconsistent with federal law. *See* 28 C.F.R. § 77.1(b) (directing that section 530B 'should not be construed in any way to alter federal substantive, procedural or evidentiary law.')." Absent a clear statement like what the court in *Stern* required, or as would be required under the major questions doctrine, Section 530B cannot be construed to overcome the Supremacy

Clause or the separation of powers to regulate or constrain confidential deliberations at the top of the Executive Branch concerning the discharge of the President's core Article II authorities.

In 1999, as a matter of administrative law, DOJ issued a regulation under Section 530B(b) that improperly purported ***to extend*** the reach of Section 530B(a) to the District of Columbia. *See* 28 C.F.R. § 77.2(h).

But this regulation is *ultra vires* because a federal agency cannot extend to the District in a regulation a power not given to it by the enabling statute. The preamble of the regulation cites to 28 U.S.C. §§ 509, 510, 515(a), 516, 517, 519, 533, and 547. *See* 64 Fed. Reg. 19,273, 19,274 (Apr. 20, 1999). Simply put, none of these statutes even reference the District of Columbia specifically. And these provisions say nothing about the power of D.C. Bar authorities to sit in oversight of the discretionary actions let alone internal deliberations of U.S. Justice Department lawyers.[4] The 1999 rule is thus invalid under step one of the *Chevron* test, which voids regulatory interpretations of any statute that conflict with the statute's plain text, interpreted using "traditional tools of statutory construction." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984). And the canon of interpreting statutes as part of the *corpus juris* (the whole body of the law) is no doubt such a traditional tool of statutory interpretation. *See, e.g., Branch v. Smith*, 538 U.S. 254, 282 (2003) ("courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which

---

[4] The preamble of the regulation also mentions (1) Pub. L. 96-132, 93 Stat. 1040, 1044 (1979); and (2) Pub. L. 105-277 (1998), section 102 of the Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act. But both of these provisions are appropriations law limited to one-off fiscal years; they lack general effect. Moreover, the former provision predates Section 530B(a) and the latter provision is silent on 530B(a) and thus cannot be read to amend it. Finally, the fact that the statutes DOJ cited to extend Section 530B(a) to District of Columbia Bar rules point to two specific appropriations statutes mentioning the District shows that not even the DOJ of 1999 thought that it would be plausible to argue that D.C. Bar's rules were "local Federal court rules" within the meaning of Section 530B(a) or the preamble would have made that argument.

they are a part, including later-enacted statutes."). The plain text is violated here because D.C. is not a "State." "Under this Court's precedents, if the intent of Congress is clear and unambiguously expressed by the statutory language at issue, that would be the end of our analysis. *See Chevron*, 467 U.S., at 842–843, 104 S.Ct. 2778." *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93. (2007). And the *corpus juris* clearly includes the doctrines of federalism and the separation of powers.

Additionally, the Supreme Court has decided *West Virginia v. EPA*, since this matter got underway. 142 S. Ct. 2587 (2022). *West Virginia* is a landmark administrative law decision holding that a clear statement to delegate power is required in a statute when the entity wielding delegated power seeks to resolve a "major question." *Id.* at 2607-08. State and local regulation of Executive Branch law enforcement discretion in connection with the 2020 presidential election controversies is surely such a "major question" of great political and constitutional significance. *Id.* And even if the "question" at issue is conceived in more generic terms as a city bar's regulation of internal Executive Branch deliberations at the highest level, a "major question" is still undoubtedly involved here. The major questions doctrine operates as a kind of *Chevron* step zero and here, the notion that the D.C. Bar can penetrate into and indeed take over Justice Department deliberations flunks at that zero step, since there is no clear statement the local D.C. Bar possesses such extraordinary power over the highest councils of the Executive Branch. *See also id.* at 2617, 2621 (Gorsuch, J., concurring) (doctrine protects both separation of powers ***and*** federalism).

In short, the statute by its plain terms does not grant disciplinary authority to the District of Columbia, and under *Chevron* step one (and the new *Chevron* step zero established by the *West Virginia* decision, which clear statement rule the *Stern* case anticipates) such authority cannot be conjured out of nothingness by the expedient of a regulation. This would be unlawful bootstrapping

in violation of *Chevron*. Hence, ODC lacks disciplinary authority over the charged conduct of the Respondent and the subpoenas issued in an attempt to wield such authority should be quashed.

The argument here should not be misunderstood. Respondent makes no claim to be free of all ethical obligations, nor any claim that all government attorneys in the District of Columbia operate in an ethical vacuum free of any professional regulation. To the contrary, Respondent agrees that any conduct ***before a court*** is inherently subject to regulation by that court, which by rule can properly incorporate the ethical governance of the D.C. Bar. The point is that that reach of disciplinary authority does not reach the conduct charged in this case. Nothing in this case was before a court, or connected to a court proceeding. Section 530B was intended to regulate prosecutorial misconduct, not the confidential internal deliberations of the President with his top legal advisors.

Any claim of that these arguments would give rise to a regulatory vacuum is further invalidated by the Executive Branch's own mechanisms for enforcing compliance with professional responsibilities that do not offend the Supremacy Clause or the separation of powers. DOJ houses both an Office of Professional Responsibility and an Office of Inspector General ("OIG"). Without conceding that such authority is being exercised properly, Respondent notes that the OIG is currently investigating the conduct in question in ODC's charges. *See* DOJ Office of Inspector General, *available at* https://tinyurl.com/2p9ad5tm (Jan 25, 2021) (last visited Oct. 19, 2022). The OIG's office executed a search warrant at Mr. Clark's home on June 22, 2022. *See* https://www.cnn.com/2022/06/23/politics/jeffrey-clark/index.html (last visited Oct. 19, 2022). The issue is not whether there is accountability, but whether ODC has jurisdiction under the Constitution or the statute and the regulation on which ODC relies, which it does not.

3.    UNDER 28 U.S.C. § 530B AND 28 C.F.R. § 77.2, THE BAR HAS NO
JURISDICTION OVER RESPONDENT BECAUSE IT DOES NOT
"ORDINARILY APPLY" DISCIPLINE TO THE PARTICULAR CONDUCT IN
QUESTION.

Even if the foregoing jurisdictional hurdles were overcome, 28 U.S.C. § 530B extends state

bar disciplinary jurisdiction over federal government lawyers only "to the **same extent** and in the

**same manner** as other attorneys in that State." (Emphasis added). Similarly, the regulation

subjecting lawyers working for the federal government to local bar disciplinary processes, 28

C.F.R. § 77.2(j)(2), does not apply if the local jurisdiction "would not **ordinarily** apply its rules of

ethical conduct to particular conduct or activity by the attorney." (Emphasis added).

As we have argued to both Disciplinary Counsel in response to the subpoena, and to the

DCCA, we are not aware of any case where Rule 8.4 has been applied to any pre-decisional

discussion among a team of lawyers concerning a proposed draft statement of position in a letter

that, for policy reasons, was never sent. Much less, there is no precedent to apply Rule 8.4 to a

senior Senate-confirmed DOJ official engaged in law enforcement and policy deliberations falling

within the President's core Article II powers at the highest levels of the DOJ, including with the

President himself. ODC has been repeatedly challenged to identify any such case, and has failed

to do so. In short, as far as the undersigned can tell, discipline has **never** been applied to conduct

like that charged, much less **ordinarily** so applied such discipline. In other words, the Bar has no

jurisdiction under 28 U.S.C. § 530B or 28 C.F.R. § 77.2 to impose discipline on a theory so

aggressively novel it has never previously been applied to any lawyer under similar circumstances.

Indeed, Disciplinary Counsel has conceded in an email exchange with undersigned counsel

initiated to try to ascertain the proposed sanction he is seeking against Respondent, that "I don't

think there is any comparable conduct, which means this is something that I will need to dwell

on." Dkt. #1-80. If there is no comparable conduct, then perforce 28 C.F.R. § 77.2(j)(2)'s limitation

13

kicks in because the local jurisdiction does "not ***ordinarily*** apply its rules of ethical conduct to particular conduct or activity by the attorney." (Emphasis added). Similarly, and even more importantly, the lack of comparable cases means that this disciplinary matter cannot meet the requirement of 28 U.S.C. § 530B(a) that ODC be proceeding "to the same extent and in the same manner as [it pursues discipline concerning] other attorneys in that State" (even assuming, incorrectly but *arguendo*, that the District can function as a "State" under the statute). 28 U.S.C. § 530B(a) (emphasis added).

Disciplinary Counsel also contended in response to the subject matter jurisdiction challenge before the Board that Mr. Clark violated the Bar Rules by seeking appointment as Acting Attorney General in order to send the letter with the allegedly false statements. This argument (even if true and not lacking other critical factual context), as well as ODC's whole case, cannot be reconciled with the President's constitutional authority under Article II, the separation of powers, or the Supremacy Clause. The final decision on the letter, and on any possible removal or appointment in connection therewith, belonged exclusively and unreviewably to the President as part of his core Article II authorities. The Charges and the Subpoenas thus inevitably intrude on the President's unreviewable power to choose to remove one official and appoint a different Senate-confirmed official in an "acting" capacity to run the Department. Policy is not made by "the Department" as some disembodied abstraction; it is made by Senate-confirmed officers who confer with the President and others engaged with the President during the consultative process. The President has unreviewable and exclusive authority to dismiss and replace any Senate-confirmed officer, and to similarly replace non-Senate-confirmed officials like Mr. Donoghue and lawyers from the White House Counsel's Office, and Presidents have always wielded this power in the course of making and implementing their own decisions. *See Free Enterprise Fund v. Public*

*Co. Accounting Oversight Bd.*, 561 U.S. 477, 492 (2010) ("The view that 'prevailed, as most consonant to the text of the Constitution' and 'to the requisite responsibility and harmony in the Executive Department,' was that the executive power included a power to oversee executive officers through removal; because that traditional executive power was not 'expressly taken away, it remained with the President.'"(citations omitted)). Like the appointment power of which it is a part, the power to remove or replace is ***complete in itself***. There is simply no constitutional basis for Disciplinary Counsel, a quasi-judicial official/prosecutor appointed by an Article I court, to intrude on either the supervisory powers of the President, or the advisory responsibilities of his Senate-confirmed subordinates.

All of this attempted intrusion and constraint is unconstitutional because these core executive powers are—and by constitutional design must remain—unreviewable by other branches of government, unreviewable under the separation of powers by an Article I, quasi-municipal bar disciplinary authority, and under the Supremacy Clause, unreviewable by even the disciplinary authority of any State in the Union. The President's discretion in the removal and appointment of senior DOJ officials cannot be held hostage to the officious intermeddling of another branch, or, in this case, by the bar disciplinary machinery of the District of Columbia, an area granted home rule as a locality. For the Board and ODC are creatures of Article I, lacking a clear statutory delegation over matters like this one, especially in light of the major questions doctrine—a key interpretive principle ODC tries to duck only by saying it is "specious" (without offering any support or logic) or "newly minted." Whether newly-minted or tracing back two decades to *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000), ***as the Supreme Court itself held*** in *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022), it is still binding Supreme Court law and must be followed here. *Stern* is also two decades old at this point.

### III.   Subject matter Jurisdiction Challenges Must be Decided at the Outset.

Mr. Clark recognizes that a subject matter jurisdiction challenge is ordinarily presented in a motion to dismiss under Fed. R. Civ. P. 12(b)(1) in civil cases (but in this peculiar civil-criminal hybrid case we also commend to the Court that the Rule is fitting to consult). We intend to file such a motion as soon as we can. However, with due date for the response to the subpoena being *a mere two days from the filing of this motion*, we are also required to assert the lack of subject matter jurisdiction in this motion to quash. We will renew and expand more fully upon these arguments in a forthcoming motion to dismiss.

The Supreme Court has made it pellucid that jurisdictional challenges should be addressed at the outset of any case. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) (threshold jurisdictional questions must be resolved before the merits); *Steel Co. v. Citizens for Better Env't*, 523 U. S. 83, 94-95 (1998) (requirement to establish subject matter jurisdiction as a threshold matter is "inflexible and without exception" and, for that reason, the Supreme Court rejected the doctrine of "hypothetical jurisdiction"). This is also the rule in ordinary judicial proceedings in District of Columbia Courts. *See UMC Dev. LLC v. District of Columbia*, 120 A.2d. 37, 42 (D.C. 2015) (standing is a matter posing "a threshold jurisdictional question which must be addressed prior to and independently of the merits of a party's claim."). However, in Bar discipline cases, the Rules of the Board of Professional Responsibility have been interpreted to require the very thing forbidden by the Supreme Court: the assumption of hypothetical subject matter jurisdiction to first hear the merits of the controversy based on an adversary factual hearing. Dkt. # 1-50, p. 2.

In briefing on the Motion to Dismiss filed at the Board level, ODC offered only a very brief argument against Mr. Clark's challenge to subject matter jurisdiction. That argument consisted of a string cite to a series of disciplinary cases against attorneys employed by the federal government,

all collected in the margin below.[5] *See* Dkt. # 1-30, p. 6.

**None** of these cases even discuss subject matter jurisdiction, much less establish that it is present in this case. Indeed, none of them analyze any of the arguments made by Respondent. Thus, for example, none of them even cite *Chevron,* let alone 28 C.F.R. § 77.2(h), § 77.2(j)(2), § 77.2(k), or § 77.3.

*In re Abrams* was decided **pre**-28 U.S.C. § 530B and **pre**-28 C.F.R. § 77.2(h), etc. and thus sheds no light on their interpretation. *In re Abrams* also involved a pardoned conviction of perjury before Congress. Next, *In re Howes*, *In re Kline*, and *In re Dobbie-Taylor* involved AUSAs **practicing before D.C. or Puerto Rico courts**, which we concede subjects them to local discipline under the inherent authority of the relevant courts at the very least. Nothing in the Charges in this case was before a D.C. court or within the scope of the supervisory jurisdiction of any D.C. Court. *In re Howes* involved an AUSA who **admitted to** six ethics rule violations before the Bar. *In re Berger* involved a former National Security Advisor who pleaded guilty to theft and destruction of federal records and **voluntarily surrendered his license**. In *Matter of Nixon*, there was overwhelming documentary and testimonial evidence gathered through lengthy congressional and criminal investigations of whether President Nixon had obstructed justice in the various Watergate investigations. More importantly, **President Nixon did not respond to the charges, and they were taken as proven.** Finally, in *Neal v. Clinton*, President Clinton was found by a U.S. District Judge to have committed perjury, **in the very presence of that same Judge**, in a deposition in a civil case

---

[5] *See* Response at 5, *citing In re Dobbie and Taylor*, DCCA No. 21-BG-024 (D.C. Jan. 13, 2021); *In re Kline*, 113 A.3d 202 (D.C. 2015); *In re Howes*, 52 A.3d 1 (D.C. 2012); *In re Berger*, 927 A.2d 1032 (D.C. 2007); *In re Sofaer*, 728 A.2d 625 (D.C. 1999); *In re Abrams*, 689 A.2d 6 (D.C. 1997) (*en banc*), *cert. denied*, 521 U.S. 1121 (1997); *see also Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001); *Matter of Nixon*, 53 A.D.2d 178, 385 N.Y.S.2d 305 (1976).

against him in his personal capacity, and he **voluntarily accepted a five-year suspension**. Additionally, the cases involving Presidents Nixon and Clinton were **brought by their respective state bars**, not by the D.C. Bar, which is not an arm of a State within the meaning of Section 530B.

In short, while the cases did involve lawyers working for the federal government, none of them have any precedential value for the jurisdictional issues in this case because they simply did not discuss any of them. The U.S. Supreme Court has referred to these kinds of cases as "drive-by jurisdictional rulings" that have no precedential jurisdictional effect whatsoever:

> The short of the matter is that the jurisdictional character of the elements of the cause of action in *Gwaltney* . . . **had been assumed by the parties, and was assumed without discussion by the Court**. We have often said that **drive-by jurisdictional rulings of this sort** (if *Gwaltney* can even be called a ruling on the point rather than a dictum) have no precedential effect. *See Lewis v. Casey*, 518 U.S. 343, 352, n.2 (1996) ["we have repeatedly held that **the existence of unaddressed jurisdictional defects has no precedential effect**."]; *Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 97 (1994); *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S 33, 38 (1952).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (emphasis added).

ODC's string cite does nothing to cure the jurisdictional defects in this case.

## IV.    THE FIFTH AMENDMENT BARS ENFORCEMENT OF THE SUBPOENA.

The Fifth Amendment privilege:

> not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but **also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal**, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (emphasis added).

### A.    MR. CLARK PROPERLY INVOKED THE FIFTH AMENDMENT.

A witness may claim the Fifth Amendment when the answer to a question may furnish a link the chain of evidence to prosecute and the risk of prosecution is not merely "fanciful." *In re Corrugated Container Antitrust Litig.*, 662 F.2d 875, 881-83 (D.C. Cir. 1981); *see also*, *Carter v.*

*United States*, 684 A.2d 331, 334-35, 338 (D.C. 1996) (en banc) (holding that a court evaluating a Fifth Amendment claim should not speculate about whether criminal prosecution is "likely" but should instead limit its inquiry to whether criminal prosecution is "possible.").[6]

Moreover, the Fifth Amendment is to be "liberally construed," *United States v. Pardo*, 636 F.2d 535, 542 (D.C. Cir. 1980), and thus is not limited to situations where the compelled disclosures themselves would be incriminating. It is sufficient if the disclosure could possibly supply a "link in the chain" leading to prosecution. In a foundational case, the United States Supreme Court described this concept as follows: "A question which might appear at first sight a very innocent one might, by affording a link in a chain of evidence, become the means of bringing home an offense to the party answering." *Mason v. United States*, 244 U.S. 362, 364-66 (1917) (citing 1861 English decision).

> The threat is sufficiently realistic where the information "would furnish a link in the chain of evidence needed to prosecute the claimant (of the privilege) for a . . . crime," *Hoffman v. United States*, 341 U.S. 479, 486 (1951), or if the information would supply "an 'investigatory lead', (or produce) . . . evidence . . . by focusing investigation on a witness as a result of his compelled disclosures." *Kastigar v. United States*, 406 U.S. 441, 460 (1972).

*United States v. Powe*, 591 F.2d 833, 845 (D.C. Cir. 1978).

Although the Fifth Amendment must normally be asserted on a question-by-question basis, the combination of the "possible prosecution" standard and the "link in the chain" doctrine can easily render entire areas of testimony privileged. *Hoffman v. United States*, 341 U.S. 479, 488 (1951) ("All of them [several questions] could easily have required answers that would forge links in a chain of facts imperiling petitioner with conviction of a federal crime").

---

[6] In *Chang v. United States*, this Court considered whether the DCCA's holding in *Carter* might apply in federal court as well. 2011 WL 13262594, *3. However, it did not formally adopt the *Carter* formulation. Under either the traditional "fanciful" formulation or the *Carter* "possible" formulation, Mr. Clark clearly has made a valid Fifth Amendment invocation.

ODC's disciplinary case against Mr. Clark, and the subpoena issued therein, present an obvious situation where the Fifth Amendment can properly be invoked.  The prospect that Mr. Clark's answers could be used in a prosecution against him is not merely "fanciful." There is an active federal criminal investigation underway. Federal criminal search warrants have been executed to seize Mr. Clark's electronic devices and look into his email accounts. The risk of prosecution is not merely hypothetical. The Supreme Court has long held that the Fifth Amendment applies outside of the strictly criminal context, if the disclosures "might incriminate in [] future criminal proceedings." *Lefkowitz*, 414 U.S. at 77. And importantly, the DCCA has held repeatedly that Fifth Amendment protection applies in Disciplinary Counsel cases. *See, e.g., In re Artis*, 883 A.2d 85, 103 (D.C. 2005); *In re Burton*, 472 A.2d 831, 845-46 (D.C. 1984). Against all of this, ODC has repeatedly pooh-poohed the risk of prosecution, which is not becoming of a serious office that treats Mr. Clark's constitutional rights with appropriate respect. Dkt. # 1-68, p. 4.

### B. DISCIPLINARY COUNSEL'S SUBPOENA AMOUNTS TO AN IMPROPER SET OF INTERROGATORIES AND THUS IT IS NOT EVEN NECESSARY TO REACH THE ACT OF PRODUCTION DOCTRINE.

Disciplinary Counsel also disputes Mr. Clark's invocation of the Fifth Amendment "act of production" privilege. But Disciplinary Counsel's arguments in that vein fail because ODC's subpoena is plainly more than a simple demand for documents.

To be sure, the Fifth Amendment privilege does not ordinarily apply to "pre-existing, voluntarily prepared documents." *Fisher v. United States*, 425 U.S. 391, 408-09 (1976). However, when a given request goes in any way beyond mere production of pre-existing documents, the Fifth Amendment bar arises. *See*, *e.g., United States v. John Does*, 465 U.S. 605, 610-15 (1984) (compelled oral or written testimony that restates the contents of documents would be privileged).

In *In re Artis*, the DCCA considered a case where Disciplinary Counsel had issued "interrogatory-like questions" to respondent. 888 A.2d 85 (D.C. 2005). The DC Court of Appeals

affirmed the respondent's right to assert his Fifth Amendment privilege and did not order the respondent to answer Disciplinary Counsel's "interrogatory-like questions." *Id*. at 99, 101 & n.13.

Here, the subpoena is in fact directly analogous to the "interrogatory-like questions" (*i.e.*, those inherently forcing respondent admissions) at issue in *In re Artis.* The emphasized portions of the following subpoena requests make clear that more than simple production of documents is demanded:

- Produce all documents and records … ***of which <u>you were aware</u>*** before January 4, 2021, ***that contain evidence of irregularities in the 2020 presidential election and that may have affected the outcome in Georgia or any other state***;

- Produce all documents and records containing information of election fraud or election irregularities ***that came to your attention*** following the announcement of Attorney General Barr on December 1, 2020, that the Department had found no evidence of fraud on a scale that could have affected the results of the presidential election.

- Produce any file or collection of materials or correspondence, written or electronic, relating to ***<u>any efforts that you made</u> between the November 3, 2020, presidential election and January 4, 2021, that relate in any way to <u>any efforts you made</u> to persuade*** officials of the United States Department of Justice to intervene in the certification by any state, specifically including Georgia, of the results of that election

- ***<u>Produce any documents showing the results</u>*** of any legal research ***that <u>you conducted, had conducted, or received before January 4, 2021</u>*** … [t]his information should include any research that addresses the responsibility of the Assistant Attorney General of the Civil Division or the Assistant Attorney General of the Environmental [*sic*] and Natural Resources Division to investigate allegations of election fraud;

- Produce all written policies and guidelines of the Department of Justice, ***of which <u>you were aware</u>*** and that were in effect between November 3, 2020 and January 4, 2021, relating to the circumstances in which lawyers at the Department of Justice were permitted to be in direct contact with officials of the White House or the Executive Office of the President;

The emphasized portions of the foregoing list of demands make clear that the subpoena does not simply request "categories of documents." It requires Mr. Clark to make substantive assertions or concessions about such things as: (1) when he became aware of certain documents; (2) how and by whom the documents came to his attention; (3) the relationship between the

documents and his "efforts"; (4) the "results" of his legal research and when he conducted it; and (5) which policies he was "aware [of] that were in effect" at certain times. These requests go far beyond the type of "preexisting documents" that fall outside the scope of the Fifth Amendment. The requests demand substantive admissions from Mr. Clark about facts relating to his *mens rea* and that could obviously be used as a "link in the chain" of some future criminal case. And even if there are **no** responsive documents to a given request or sub-part thereof, this answer itself could be used as an admission to incriminate Mr. Clark. It is therefore not necessary even to engage in an "act of production" analysis to sustain Mr. Clark's Fifth Amendment invocation.

1.   EVEN TO THE EXTENT IT IS IMPLICATED HERE, MR. CLARK HAS A STRONG AND VALID BASIS TO CLAIM THE ACT OF PRODUCTION PRIVILEGE.

However, to the extent this Court decides the Fifth Amendment act of production doctrine is implicated here, District law clearly supports Mr. Clark's ability to assert this privilege in response to the subpoena. In *United States v. Hubbell*, 167 F.3d 552, 567 (D.C. Cir. 1999), *aff'd*, 530 U.S. 27 (2000), the D.C. Circuit held "the Court has acknowledged that there are testimonial and potentially incriminating communications inherent in the act of responding to a subpoena which may themselves be protected by the Fifth Amendment. *See Fisher [v. United States,]* 425 U.S. [391] at 410, 96 S.Ct. 1569 [(1976)]" ("The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced.").

Disciplinary Counsel argued to the DCCA that Mr. Clark had not shown that responding to the subpoena would conclusively prove him guilty of a crime. However, there is no requirement that Mr. Clark demonstrate that responding to the subpoena will conclusively prove him guilty of a criminal act. *See Ohio v. Reiner*, 532 U.S. 17, 18 (2001) (Fifth Amendment "protects the innocent as well as the guilty"); *see also In re Artis*, 883 A.2d at 99 (noting Board's conclusion, which was

affirmed in relevant part, that respondents "should not be obligated to respond to vague and overly broad questions that require him or her to make Bar Counsel's case"). It is sufficient if the subpoena response could furnish a "link in the chain" of possible prosecution, even if meritless. Mr. Clark has met that standard.

## V.   THE SUBPOENAS REQUIRE DISCLOSURE OF PRIVILEGED MATERIAL.

While the arguments presented in this motion to quash should be sufficient for the motion to be granted, Mr. Clark contends that multiple privileges apply that preclude him from producing the information sought by ODC in its subpoena.[7] Rule of Professional Responsibility 1.6(e)(2)(A) prohibits disclosure of privileged material unless permitted by the Rules or a court order. As of yet, there is no such court order. Mr. Clark should not be put in the position of being damned if he does respond and damned if he does not.

In any event, it would be premature in the present circumstances to order compliance with the subpoenas before resolution of ODC's anticipated motion to remand, or Mr. Clark's forthcoming motion to dismiss, which will assert the lack of subject matter jurisdiction or a forthcoming motion for failure to state a violation of the Rules of Professional Responsibility. If all of those hurdles are surmounted, then the Court and the parties can proceed in an orderly manner with respect to the Subpoenas or other discovery disputes under a discovery plan. The jurisdictional horse should precede the discovery cart. If the motion to stay the subpoena and other deadlines is granted, then at a status conference the Court and the parties can set an appropriate timetable for resolving privilege and other objections to discovery.

---

[7] At a minimum, the information sought by ODC in its subpoena is protected from discovery by executive privilege, presidential communications privilege, law enforcement privilege, attorney-client privilege, work product privilege, and deliberative process privilege.

## CONCLUSION

For the foregoing reasons, ODC has jurisdiction to intrude in the matters within the scope of the subpoenas. Therefore, the subpoenas to Mr. Clark and Mr. Smith should be quashed.

Respectfully submitted this 19th day of October 2022.

*/s/ Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington, DC 20005
charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Motion to Quash* by filing with the Court's electronic filing system and by email addressed to:

Hamilton P. Fox, Esq.
Jason P. Horrell, Esq.
Office of Disciplinary Counsel
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org
horrellj@dcodc.org


David A. O'Neil
Debevoise & Plimpton LLP
801 Pennsylvania Avenue N.W.
Washington, D.C.  20004
daoneil@debevoise.com

*Counsel for David G. Smith*

This 19th day of October 2022.

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
charles@burnhamgorokhov.com