IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No.<br><br>1:22-mc-00096-RC |

**REPLY BRIEF IN SUPPORT OF BOTH MOTION TO QUASH AND MOTION TO STAY RESPONSE TO SUBPOENAS AND OTHER DEADLINES**

The response by the Office of Disciplinary Counsel of the District of Columbia ("ODC") to the Motion to Quash is that its Motion to Remand should be granted, and that if it were granted, then the Motion to Quash would be moot. (Dkt. # 5). ODC makes no other argument directly responsive to the Motion to Quash. This means that ODC has now forfeited or waived defenses to these arguments. *See, e.g., Anglers Conserv. Network v. Pritzker*, 139 F. Supp. 3d 102, 116 n.10 (D.D.C. 2015) ("Court need not address this because an argument not raised in an opening brief is forfeited. *Fox v. Gov't of D.C.*, 794 F.3d 25, 29–30 (D.C. Cir. 2015)."); *Walker v. Pharmaceutical Research & Mfrs. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006) (failure of plaintiff to make an argument in an opposition brief "has waived the argument.") (collecting other authorities).[1]

The Motion to Quash argued (i) lack of subject matter jurisdiction on constitutional, statutory, and administrative law grounds, (ii) that subject matter jurisdiction had to be decided at the outset, (iii) that the Fifth Amendment barred enforcement of the subpoena, and (iv) that the

---

[1] The subpoenas should also be quashed for various other reasons, such as being unduly burdensome in that the documents requested by their nature are official records of Mr. Clark and Mr. Smith's government service and they have not first been subpoenaed from the Department of Justice. Nor has there been any documented compliance with DOJ's *Touhy* regulations with respect to the document subpoenas to Mr. Clark and Mr. Smith. *See* 28 C.F.R. § 16.26. But these arguments were not presented in the original Motion to Quash and Respondent does not insist on them here. What is important is that the rule that arguments not asserted in the first relevant brief for each side are waived should be applied equally to both sides in this litigation.

subpoenas improperly required disclosure of privileged information. Having put all of its eggs in the remand basket, ODC either ignores these arguments altogether, or touches on them only tangentially in arguing for remand.

There is a fundamental problem in this case that ODC strives to ignore or minimize. The subpoenas, and this case as a whole, cross a structural constitutional barrier. For a local bar disciplinary process cannot be allowed to regulate confidential and privileged exchanges between and among the President and his senior Department of Justice legal advisors regarding the execution of his core Article II authorities without violating separation of powers, the Supremacy Clause and the Opinion Clause. That ODC is attempting to do so at the behest of a single partisan Democrat Senator compounds these problems. The subpoena should therefore be quashed on constitutional grounds—the same ones precluding ODC from taking subject matter jurisdiction over the charged conduct in the first place.

But the constitutional issues can be avoided by deciding the motion on any of the several statutory or regulatory grounds urged by Respondent. First, the statute on which ODC relies, 28 U.S.C. § 530B, grants regulatory authority only to States and conspicuously omits the District of Columbia. Under *Chevron* Step One, the regulation promulgated under Section 530B, 28 C.F.R. § 77.2, cannot be read to exceed the grant of statutory authority by purporting to extend to the District of Columbia jurisdiction over federal attorneys. But even if the statute and the regulation were to operate to subject federal attorneys to discipline by the D.C. Bar, there is no jurisdiction because the plain text of the regulation, 28 C.F.R. § 77.2(j)(2), does not apply if the local jurisdiction "would not ***ordinarily*** apply its rules of ethical conduct to particular conduct or activity by the attorney." (Emphasis added). There has ***never*** been a case applying discipline to the "particular conduct or activity" in question here—a point which is ***conceded by*** Disciplinary Counsel.

Therefore, even if the statute and regulation were to grant the District of Columbia general regulatory authority over federal attorneys, those sources of law do not grant it over the specific charged conduct and the subpoena should still be quashed.

## I. CONSTITUTIONAL ARGUMENTS

ODC never directly engages the constitutional arguments. The separation of powers and the Opinion Clause are never mentioned. The Supremacy Clause is mentioned only in a passing parenthetical citation to *United States v. Ferrara*, 847 F. Supp. 964 (D.D.C 1993), a companion to *In the Matter of Doe*, 801 F. Supp. 478 (D.N.M. 1992). These constitutional doctrines are clearly implicated in this case and warrant more than a brush off. Doe was an Assistant U.S. Attorney licensed in New Mexico prosecuting criminal cases in Washington, D.C. The New Mexico Bar Disciplinary Counsel brought charges against Doe for communicating with a defendant he was prosecuting without the knowledge or consent of the defendant's counsel. *In the Matter of Doe* primarily related to removal of the bar discipline case and will be discussed more fully in Respondent's forthcoming response to the Motion to Remand. However, as relevant here, the court held the Supremacy Clause was not implicated by enforcement of the rule against communicating with adverse represented parties without their counsel's permission. When the case was remanded, the federal government sought to enjoin the bar discipline case in *United States v. Ferrara*. That case similarly held the Supremacy Clause was inapplicable, but only after first finding there was no long-arm personal jurisdiction over the New Mexico Bar Disciplinary Counsel, making the Supremacy Clause statement *dicta*.

In *Doe* and *Ferrara*, the attorney misconduct was committed in connection with a pending criminal prosecution and thus was within the court's inherent supervisory jurisdiction. Respondent **need not establish in this case** that misconduct by federal attorneys **of this nature** is subject to bar discipline, that it is constitutional to do so, and that it fits within the authorities granted by 28

3

U.S.C. § 520B and 28 C.F.R. §77.2 because it is of the type that is "ordinarily" disciplined. The charged conduct of the Respondent, on the other hand, was not connected in any way with a pending court proceeding. It instead occurred exclusively within the confines of confidential internal deliberations among the leadership of the Department of Justice and with the President himself concerning how to exercise the President's core Article II powers. That context lies at the apex of the protections afforded by the separation of powers and Supremacy Clause doctrines. Cases involving discipline of an AUSA interviewing an indicted and represented criminal defendant without notice or permission of his counsel are not at all instructive on the unique constitutional issues in this case. (Moreover, this case falls within the "ordinary[]" proviso limiting the authorization to non-federal authorities to press disciplinary matters against federal attorneys.)

ODC continued neglect of the constitutional arguments suggests no responsive argument is available. And, as noted above, this failure brings into play the strong and long line of waiver/forfeiture cases cited above such as *Anglers Conservation Network*, *Fox*, and *Walker*. The Chair of the Hearing Committee in the local District process either thought himself disempowered to or refused to wield waiver doctrine against D.C. Bar Counsel. There is every reason for this Court, however, to apply those doctrines now to cut off ODC's repeated refusal to say ***anything*** about the serious constitutional issues at stake in this case, entirely ignoring constitutional limits on ODC's power.

**II.   STATUTORY AND ADMINISTRATIVE LAW ARGUMENTS**

Instead of responding the constitutional arguments, ODC assumes them away and proceeds directly to the contention that Congress by statute and the Department of Justice by regulation have given the District of Columbia the necessary authority to discipline the charged conduct.

Interpretation of any statute must start with the text. The statute on point provides as follows:

> An attorney for the Government shall be subject to **State** laws and rules, and **local Federal court rules**, governing attorneys in each State where such attorney engages in that attorney's duties, **to the same extent and in the same manner as other attorneys in that State**.

28 U.S.C. § 530B(a) (emphasis added).

ODC contends that the term "State" as used in this statute includes the District of Columbia. D.C. is many things, but by purpose and design it is not a "State," *see* Seat of Government Clause, U.S. Const., art. I, § 8, cl. 17, so either a clear statement that the District is to be treated **as if it were** a "State" or at the very least some additional interpretive maneuver would be required to make it a "State" for purposes of this statute. Respondent's opening brief showed through numerous examples that when Congress intends to include both States and the District of Columbia in a statute, it does so explicitly, either by defining State to include the District of Columbia, or by referring explicitly to the States **and** the District of Columbia, neither of which was done here. *See* authorities cited at Section II(2) of the Motion to Quash, pp. 7 *et seq*.[2] The clear import of not including the District of Columbia in Section 530B is that Congress did not intend to include it in its grant of regulatory authority.

The legislation by which Section 530B became law further illustrates the point. It was part of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999. The conference report for the bill through which Section 530B became law, H.R. Conf. Rep. No. 105–

---

[2] Additional examples include the federal officer removal statute, 28 U.S.C. 1442(d)(5) ("The term 'State' includes the District of Colombia …") and LCvR 1.1 and LCrR 1.1 of this Court, which both provide that "Any reference to State within these Rules shall include the District of Columbia." Similarly, Fed. R. Crim. P. 1(b)(9) specifically includes the District as a "State" within the meaning of the Federal Criminal Rules of Procedure. Indeed, proving the point that Congress knows how to calibrate *vel non* the situations in which the District is treated as a "State," the Federal Rules of Civil Procedure are more particular: "The term 'state' includes, **where appropriate**, the District of Columbia and any United States commonwealth or territory." Fed. R. Civ. P. 81(d)(2) (emphasis added). Section 530B includes **nothing** like LCvR 1.1, LCrR 1.1, Fed. R. Crim. P. 1(b)(9), or even Fed. R. Civ. P. 81(d)(2).

825 (1998) runs to 1,599 pages.[3] In other Titles, the Conference Report for the Omnibus bill defines "State" to include "any of the several States, the District of Columbia …." *See id*., at pp. 752, 865, and elsewhere employs the usage "States, the District of Columbia, …." at p. 8. It is thus all the more conspicuous that Congress **did not** do so in the title of the very same bill that contains 28 U.S.C. § 530B. *See id*. at p. 123 (*i.e.*, Title VIII).

The legislative history also clearly demonstrates that the evil sought to be remedied was prosecutorial misconduct. *See also id.* § 801(entitled "ETHICAL STANDARDS FOR FEDERAL PROSECUTORS"). When originally introduced by Representative McDade, his floor remarks included as an appendix a report of "Specific Instances of Prosecutorial Misconduct Prepared by the Congressional Research Service" in 20 separate categories, **all** of which were in connection with criminal prosecutions and **none** of which involved purely internal deliberative conduct and debates remotely resembling that charged in this case.

The analysis of the statute and the regulation should end at *Chevron* Step One because the statute is clear in the context of the well-established modern pattern of how Congress chooses to include the District in legislation only when it wants to. ODC attempts to conjure up an ambiguity in the meaning of the word "State" in the statute in order to give DOJ's regulation explicitly including the District of Columbia the shelter of *Chevron* deference under Step Two. ODC attempts to establish the "ambiguity" it needs for this argument with the policy-argument supposition indulged by the Hearing Committee Chair that there is no apparent reason for omitting the District of Columbia from the statute. But the separation of powers doctrine that ODC ignores supplies an ample rationale for the omission. The District of Columbia and the D.C. Court of

---

[3] Available at https://www.congress.gov/105/crpt/hrpt825/CRPT-105hrpt825.pdf (last visited Oct. 25, 2022)

Appeals are **creatures of Congress** and therefore are undeniably Article I institutions. *See* U.S. Const., Art. I, Sec. 8, cl. 17. Having an Article I institution in a politically monolithic entity like the District,[4] purporting to discipline Article II federal attorneys who from time to time work under Republican Presidents, immediately implicates significant separation of powers and Supremacy Clause concerns at the core of the federal officer removal statute, 28 U.S.C. § 1442.

A notable Fourth Circuit opinion from Judge J. Harvie Wilkinson recognized the mischief that could ensue if the bar disciplinary process were to be hijacked as a tool of political reprisal in terms that are instructive here:

> Regulation of the legal profession admittedly implicates significant state interests, ***but the federal interest in protecting federal officials in the performance of their federal duties is paramount***. Many federal officials may be subject to potentially abusive state process. *See Mesa*, 489 U.S. at ----, 109 S. Ct. at 970 (Brennan, J., concurring) (state and local resistance to acts of Congress and decisions of the Supreme Court in the areas of school desegregation and voting rights is "not so distant that we should be oblivious to the possibility of harassment" of federal officers by state and local officials). Although we intimate no view as to the underlying merits of the present action, ***state professional disciplinary proceedings could be used to interfere with the duties of federal officials, including the President of the United States, the Secretary of State, and the Attorney General of the United States, all of whom may be lawyers***. Federal prosecutors too may be targets of retaliatory state proceedings and the existence of the various forms of immunity available to federal officials raises at least a colorable issue as to whether they also are immune from state professional disciplinary actions. [Cites omitted].

*Kolibash v. Committee on Legal Ethics of W. Va. Bar*, 872 F.2d 571, 575 (1989) (Wilkinson, J.) (emphasis added) (approving federal officer removal of a bar discipline case).[5]

---

[4] The average vote percentage of the District for Democratic Presidential candidates from 1964-2020 is 85.33%. In the last four Presidential elections the average rises to a remarkable 91.6%. *See* https://tinyurl.com/bd23rp38 (last visited Oct. 25, 2022). The information is not reported, but we would also not be surprised if every single D.C. Board of Professional Responsibility member belongs to the Democratic party or are Republican party members opposed to President Trump, for whom Respondent worked.

[5] *Kolibash* was discussed in detail and distinguished in *In the Matter of Doe,* a case on which ODC relies, but ODC's brief never mentions *Kolibash,* which is persuasive and contrary to ODC's

ODC also notably offers no rebuttal to *Stern v. United States District Court for the District of Massachusetts*, 214 F.3d 4 (1st Cir. 2000), cited at p. 9 of the Motion to Quash. *Stern* was a declaratory judgment action brought by a U.S. Attorney regarding enforcement of a local state bar disciplinary rule. The State Bar argued that the then-recently adopted Section 530B gave it the requisite authority. The Court rejected this argument on principles of federal supremacy:

> "Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent there is a clear congressional mandate, specific congressional action that makes this authorization of state regulation clear and unambiguous." *Hancock v. Train,* 426 U.S. 167, 179 (1976) (footnotes and internal quotation marks omitted). We believe it is reasonable to require comparable specificity before inferring congressional intent to abandon the goal of national consistency anent rules of federal practice. Moreover, that benchmark is not attainable here: it simply cannot be said that Congress, by enacting section 530B, meant to empower states (or federal district courts, for that matter) to regulate government attorneys in a manner inconsistent with federal law.

*Stern*, 214 F.3d at 19. Moreover, *Stern* involved a **State** bar and States are explicitly mentioned in Section 530B. Yet even so, the court in *Stern* held the grant of regulatory authority was not sufficiently clear and specific to support state regulation of federal activity. For the District of Columbia in this case, the lack of a clear statement is even more dispositive, since it is not even mentioned in Section 530B.

The *Stern* court's requirement of a clear and specific statement was prescient in light of the "major questions doctrine," tracing back decades, but first officially anointed with that title just this past Supreme Court term in *West Virginia v. EPA*, 142 S. Ct. 2587 (2022). *West Virginia* is a landmark administrative law decision holding that a clear statement to delegate power is required in a statute when the entity claims regulatory authority over a "major question." *Id.* at 2607-08.

---

position. One court rejected *Doe's* analysis of *Kolibash* as unconvincing: "Further, the non-binding Land of Enchantment cases are not as enchanting as the Fourth Circuit's holding in *Kolibash v. Committee on Legal Ethics of West Virginia Bar*, 872 F.2d 571, 576 (1989)." *In re Lusk*, No. SACV 16-0930 AG (JCGx), 2016 WL 4107671 at *4 (C.D. Cal. Jul 30, 2016).

State and local regulation of internal confidential Executive Branch deliberations at the highest levels over the President's core Article II authorities is surely such a "major question" of great political and constitutional significance, given its clear transgression of separation of powers (if applied to the District) and the Supremacy Clause (if applied to the States). *Id.* A central purpose of the major questions doctrine, which is the most salient here given that the legal powers ODC seeks to wield trace back to the Article I Congress, is to maintain the separation of powers:

> Thus, in certain extraordinary cases, both separation of powers principles and a practical understanding of legislative intent make us "reluctant to read into ambiguous statutory text" the delegation claimed to be lurking there. *Utility Air*, 573 U.S. at 324, 134 S.Ct. 2427. To convince us otherwise, something more than a merely plausible textual basis for the agency action is necessary. The agency instead must point to "clear congressional authorization" for the power it claims.

142 S.Ct. at 2609.

The notion that the D.C. Bar can insert itself—at the behest of a single partisan opponent hailing from a rival branch of government—into confidential Justice Department deliberations at the highest level flunks the major questions doctrine test and its precursors in the specific context of federal attorney bar-discipline in *Kolibash* and *Stern*, since there is no clear statement that the local D.C. Bar's disciplinary authorities (adjuncts of the local D.C. Court of Appeals) possesses such extraordinary power over the highest councils of the Executive Branch. *See also id.* at 2617, 2621 (Gorsuch, J., concurring) (noting that the major questions doctrine protects both separation of powers *and* federalism).

ODC has no response for these arguments other than to deride them in passing. *See* Dkt. # 5, 12, ¶ 23. ODC's scorn for the major questions doctrine reflects the core problem in this case—ODC's disregard for the fundamental constitutional constraints on its authority.

In short, the statute by its plain terms does not grant disciplinary authority to the District of Columbia, and under *Chevron* step one (and the new *Chevron* step zero established by the *West*

*Virginia* decision) such authority cannot be conjured out of nothingness by the expedient of a regulation. This would be unlawful bootstrapping in violation of *Chevron*. Hence, ODC lacks disciplinary authority over the charged conduct of the Respondent and any subpoenas issued in an attempt to wield such authority should be quashed.

ODC next attempts to argue that Section 530B gives it jurisdiction over the charged conduct on the theory that the D.C. Court of Appeals' Rules of Professional Responsibility are embraced by the language of Section 530B subjecting federal attorneys to "**local Federal court rules**." Once again, the argument flounders for lack of a clear statement granting disciplinary authority to the District of Columbia discussed above, especially in light of the original bill and Title VIII of the Conference Report's focus on prosecutorial misconduct, which nicely situates what Congress was referring to by referencing "local Federal court rules" in Section 530B. The "local Federal Court rules" as used in Section 530B clearly refer to the local rules of courts like the United States District Courts (and thus would include this Court's local civil and criminal rules). *See, e.g.,* Fed. R. Civ. P. 5(d)(1)(B)(i) (allowing a "local rule" to demand the filing of certificates of service); Fed. R. Crim. P. 32(e)(3) (allowing a "local rule" that prohibits probation officers from disclosing sentencing recommendations "to anyone other than the court"); Fed. R. Crim. P. 45(a)(4) (allowing a "local rule" to redefine the last day as set for any time period applicable under the Federal Rules of Criminal Procedure); Fed. R. Crim. P. 49(a)(3)(A) (allowing a local rule to allow an unrepresented party to use the district court's electronic filing system).

It is also relevant that the local rules of this Court establish its own separate, independent, and parallel admission and disciplinary processes. *See* LCvR 83.13 *et seq*. And the power conferred by Local Rule 83.13 is applicable to Respondent, Mr. Clark. *See id.* at LCvR 83.13(a) ("The Disciplinary Panel shall have jurisdiction over all judicial proceedings involving the

disbarment, suspension, censure or other discipline of attorneys subject to these Rules."). Mr. Clark is a member of the Bar of this Court. While local rules on that topic may vary from one federal court to another, the other federal judicial districts operate in States or Commonwealths, not the *sui generis* District of Columbia.

### III. PRIOR DISCIPLINE OF FEDERAL ATTORNEYS DOES NOT SUPPORT JURISDICTION IN THIS CASE.

ODC briefly renews its argument that prior cases of discipline against federal attorneys establish that it has jurisdiction over the charged conduct. Previously, it provided a string cite to a series of disciplinary cases against attorneys employed by the federal government, collected in n.5 on p. 17 of the Motion to Quash. Dkt. # 4. ODC cites one new case in support of this argument, *Doe v. Board of Prof. Resp. of D.C. Ct. Appeals*, 717 F.2d 1424 (D.C. Cir. 1983). That case did not involve a federal attorney, much less a senior DOJ official involved in confidential deliberations with other senior DOJ officials and the President and so has very little relevance here.

ODC then returns to the cases involving former Presidents Nixon and Clinton to argue that the Bar rules apply to high officials "engaged in Executive Branch operations." Dkt. #5, p. 5. *Matter of Nixon*, 53 A.D.2d 178, 385 N.Y.S.2d 305 (1976); *Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001). These cases do not support ODC's argument.

*First*, both were brought by State Bar associations, and do not support the claim of jurisdiction by the District of Columbia here. *Second*, President Clinton did not contest his bar discipline case, and President Nixon failed to respond in a timely manner and the allegations were thus deemed admitted and proven. *Third*, President Clinton's case arose from his perjury and obstruction of justice as a defendant in a civil sexual harassment case arising from his conduct while he was Governor of Arkansas, not "Executive Branch operations." His perjury occurred in a deposition supervised by a federal judge. As noted above, Respondent is not contesting in this

11

case that conduct in Court or before percipient Judges is subject to Bar discipline, no matter how high the official. Indeed, this Court's own local rule recognizes the importance of the distinction:

> Nothing contained in these Rules shall be construed to deny to this Court or to any individual judge or United States Magistrate Judge thereof or to the United States bankruptcy judge such powers as are necessary for the Court to maintain control over *proceedings conducted before it*, such proceedings for contempt under Title 18 of the United States Code or under Rule 42 of the Federal Rules of Criminal Procedure, or to deprive any judge or magistrate judge of *his/her inherent power of discipline for conduct committed in the presence of the Court*.

LCvR 83.13(b) (emphasis added). **Finally**, the cases on which ODC relies are paradigmatic examples of "drive-by jurisdictional rulings" that have no weight because none of them considered and expressly ruled on the jurisdictional issues in this case. As the Supreme Court has explained:

> The short of the matter is that the jurisdictional character of the elements of the cause of action in *Gwaltney* . . . *had been assumed by the parties, and was assumed without discussion by the Court*. We have often said that *drive-by jurisdictional rulings of this sort* (if *Gwaltney* can even be called a ruling on the point rather than a dictum) have no precedential effect. *See Lewis v. Casey*, 518 U.S. 343, 352, n.2 (1996) ["we have repeatedly held that *the existence of unaddressed jurisdictional defects has no precedential effect*."]; *Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 97 (1994); *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S 33, 38 (1952).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (emphasis added). Jurisdiction was assumed without discussion in those cases. Critically, however, jurisdiction *is contested here* and so must be demonstrated by ODC as an essential element of its case. For a host of reasons ODC either ignores or barely troubles itself to address, jurisdiction is lacking here and therefore the Motion to Quash should be granted.

**IV.    REPLY AS TO MOTION TO STAY RESPONSE TO SUBPOENAS AND OTHER DEADLINES**

ODC similarly says virtually nothing about the Motion to Stay Response to Subpoenas and Other Deadlines, such that the Court could grant that motion on grounds of waiver or forfeiture. If the issues presented by the Motion to Quash involve issues that the Court wishes to defer

addressing, Respondent respectfully asks that it stay the subpoenas pending resolution of such issues in the alternative.

Since the Motion to Quash was filed, the return date for the Clark subpoena to Respondent passed on October 21, 2022. In order to update the Court on the latest interchanges between undersigned and opposing counsel as to that subpoena, Respondent is today also filing a Supplement to the Motion to Quash. Bringing these points to the Court's attention through the Supplement will give opposing counsel the opportunity to respond to the material presented there.

In addition, the Supplement informs the Court that on October 26, 2022, ODC filed a Motion to Enforce the October 6, 2022 subpoena to Respondent in the D.C. Court of Appeals. This motion seeks an order from that court compelling Respondent to comply with the subpoena within one week of the order. This motion was filed notwithstanding 28 U.S.C. § 1446(d), which provides that once notice of removal is filed as to a civil action with the clerk of the "State court" and notice is given to adverse parties "the State court shall proceed no further unless and until the case is remanded." We are at a loss to understand why ODC is in such a hurry to press its subpoena before this Court is able to rule on the constitutional, subject matter jurisdiction, or at least removal jurisdiction issues in this case. The case has not yet been remanded. Clearly, the motion to quash and motion to stay the subpoena deadline remain ripe for decision by this Court. For instance, Respondent now has a deadline for responding to the motion to enforce of November 4, 2022.

## CONCLUSION

For the foregoing reasons, the subpoenas to Mr. Clark and Mr. Smith should be quashed.

Respectfully submitted this 28th day of October 2022.

| | |
|---|---|
| /s/ Charles Burnham | /s/ Harry W. MacDougald |
| Charles Burnham | Harry W. MacDougald |
| DC Bar No. 1003464 | Georgia Bar No. 463076 |
| Burnham and Gorokhov, PLLC | Caldwell, Carlson, Elliott & DeLoach LLP |
| 1424 K Street, NW | Two Ravinia Drive, Suite 1600 |
| Suite 500 | Atlanta, Georgia 30346 |
| Washington DC 20005 | (404) 843-1956 |
| (202) 386-6920 | hmacdougald@ccedlaw.com |
| charles@burnhamgorokhov.com | *Admitted Pro Hac Vice* |

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Reply Brief in Support of Both Motion to Quash and Motion to Stay Response to Subpoenas and Other Deadlines* by filing with the Court's electronic filing system and by email addressed to:

Hamilton P. Fox, Esq.
Jason P. Horrell, Esq.
Office of Disciplinary Counsel
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org
horrellj@dcodc.org

David A. O'Neil
Debevoise & Plimpton LLP
801 Pennsylvania Avenue N.W.
Washington, D.C.  20004
daoneil@debevoise.com

*Counsel for David G. Smith*

This 28th day of October 2022.

                                          */s/ Charles Burnham*
                                          Charles Burnham
                                          DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com