# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | : | |
| IN THE MATTER OF | : | |
| | : | |
| JEFFREY B. CLARK, | : | Case No. 1:22-mc-00096-RC |
| | : | |
| Respondent. | : | Judge Contreras |
| | : | |
| A Member of the Bar of the | : | On removal from the D.C. Court of |
| District of Columbia Court of Appeals | : | Appeals' Board on Professional |
| (Bar Registration No. 455315) | : | Responsibility and Committee |
| | : | Hearing Committee No. 12 |
| D.C. Board on Professional Responsibility | : | |
| Board Docket Nos. 22-BG-059; 22-BD-03 | : | |
| Disciplinary Docket No. 2021-D193 | : | |
| | : | |

## DISCIPLINARY COUNSEL'S MOTION TO REMAND

Pursuant to 28 U.S.C. § 1447(c), Disciplinary Counsel moves to remand this case to the Board on Professional Responsibility, the agency of the District of Columbia Court of Appeals to which that Court has entrusted the operation of the disciplinary system. As set forth in the Omnibus Memorandum of Points and Authorities accompanying this motion, this Court lacks subject matter jurisdiction because the Congress has determined that the States and the District of Columbia should exercise disciplinary authority over Government lawyers.

Respectfully submitted,

/s *Hamilton P. Fox, III*
Hamilton P. Fox, III
Disciplinary Counsel
Bar Number 113050

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501

## CERTIFICATE OF SERVICE

I hereby certify that on 21st day of October 2022, I caused this motion to be filed through the court's electronic filing system, which automatically sends copies to Mr. Clark's counsel and that I further caused electronic service to be made by email to Mr. Clark's counsel and to James T. Phalen, Esquire, Executive Attorney for the Board on Professional Responsibility.

/s *Hamilton P. Fox, III*
Hamilton P. Fox, III
Disciplinary Counsel
Bar Number 113050

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ | : |
| IN THE MATTER OF | : |
| | : |
| JEFFREY B. CLARK, | :     Case Nos. 1:22-mc-00096-RC |
| | : |
| Respondent. | : |
| | :     Judge Contreras |
| A Member of the Bar of the | : |
| District of Columbia Court of Appeals | : On removal from the D.C. Court of |
| (Bar Registration No. 455315) | : Appeals' Board on Professional |
| | : Responsibility and Committee |
| D.C. Board on Professional Responsibility | : Hearing Committee No. 12 |
| Board Docket Nos. 22-BG-059; 22-BD-03 | : |
| Disciplinary Docket No. 2021-D193 | : |
| _____ | : |

**OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DISCIPLINARY COUNSEL'S MOTION TO REMAND AND IN OPPOSITION TO
RESPONDENT'S MOTION TO STAY RESPONSE TO SUBPOENAS AND OTHER
DEADLINES AND MOTION TO QUASH SUBPOENAS**

Pursuant to 28 U.S.C. § 1447(c), Disciplinary Counsel moves to remand this case to the

Board on Professional Responsibility, the agency of the District of Columbia Court of Appeals to

which that Court has entrusted the operation of the disciplinary system. This Court lacks subject

matter jurisdiction because the Congress has determined that the States and the District of

Columbia should exercise disciplinary authority over Government lawyers. Because this Notice of

Removal lacks merit and is merely a tactic to delay the District of Columbia proceedings, the Court

should remand the case, deny the Motion to Stay and dismiss as moot the Motion to Quash.

**I.     CONGRESS HAS DELEGATED ENFORCEMENT OF DISCIPLINARY RULES
        TO THE STATES AND THE DISTRICT OF COLUMBIA.**

1.     The D.C. Court of Appeals is an Article I court created by Congress in 1970.

District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, 84 Stat. 473 (1970).

Its judges are appointed by the President and confirmed by the Senate. As authorized by Congress,

the Court of Appeals sets its own rules for admission to its Bar and for the conduct of its members. *Id.* at 521. The Court has done so. *See* D.C. App. R. 46 (admissions); D.C. Rules of Professional Conduct; D.C. Bar Rule XI (discipline). Those who become members of its Bar are granted the privilege to practice through a "consensual covenant" with the Court "to be bound by Bar Rules and Rules of Professional Conduct … and to be subject to [its] disciplinary authority." *In re O'Neill*, 276 A.3d 492, 499 (D.C. 2022).

2.      By statute, 28 U.S.C. § 530B(a), Congress has determined that lawyers for the federal government are subject to the disciplinary rules of the states and local federal courts in which they practice. Pursuant to delegated rule-making authority (28 U.S.C. § 530B(b)), the Attorney General has determined that this includes the disciplinary rules of the District of Columbia. Section 530B, which was enacted long after 28 U.S.C. § 1442, is thus a determination that the states and the District of Columbia should be responsible for the discipline of government lawyers. Removal would make a nullity of Section 530B. Every time a state sought to exercise its authority to discipline a federal lawyer, the lawyer could remove the case to federal court.

3.      Respondent has completely distorted Section 530B to support a claim that rather than delegate authority to the D.C. Court of Appeals to exercise disciplinary jurisdiction over the members of its Bar who practice as government lawyers, it deprives the Court of that authority. This turns the statute upside down. Respondent has also made the false claim that the Hearing Committee to which this case is assigned and the Board on Professional Responsibility "refused to even address whether they possessed subject matter jurisdiction over this matter before insisting upon" a hearing on the merits. Notice of Removal at 9. The very documents Respondent attached to his Notice of Removal belie this claim. Doc. 1-43 (A-43 in Respondent's "Key to Exhibits") is the Report and Recommendation of Hearing Committee No. 12 on Respondent's Request for

Deferral. Ten of that Report's 19 pages explicitly address this issue and reject his contention that Section 530B deprives the disciplinary system of jurisdiction. Doc. 1-43 (A-43) at 6-16. The Board on Professional Responsibility subsequently adopted the Hearing Committee's Report and Recommendation and denied the Request for Deferral. Doc. 1-49 (A-49). Respondent's Notice of Removal does not address these determinations; it pretends they were never made.

4. The D.C. Circuit has long recognized that "[s]tate courts, including the courts of the District of Columbia, possess exclusive authority to regulate admissions to their respective state bars and bear responsibility for disciplining errant bar members." *Doe v. Bd. on Prof. Resp. of D.C. Ct. of Appeals,* 717 F.2d 1424, 1428, n.5 (D.C. Cir. 1983) (citations omitted) ("[t]he District of Columbia courts have possessed the same authority as state courts to establish and enforce standards of professional conduct since the 1970 reorganization of the courts.") Accordingly, the D.C. Court of Appeals and its agencies have exercised jurisdiction over government lawyers, and specifically over Department of Justice lawyers, for years. *See In re Howes,* 52 A.3d 1 (D.C. 2012); *In re Kline*, 113 A.3d 202 (D.C. 2015); *In re Dobbie & Taylor*, (BPR Jan. 13, 2021) (pending before DCCA). Respondent tries to distinguish these cases as mere "discovery violations." They were actually *Brady/Giglio,* due process violations for failure to disclose exculpatory information to the defense. Moreover, the principal violation in those cases was a violation of Rule 3.8(e), a rule that only applies to prosecutors, which in this jurisdiction generally means Department of Justice lawyers. In any event, these are clear instances where the D.C. Court of Appeals exercised disciplinary authority over Department of Justice lawyers.

5. Respondent argues that the statutory delegation of disciplinary jurisdiction over government lawyers to the states does not include the District of Columbia because it is not a state. But the Attorney general, in adopting implementing regulations, specifically found that it did

include the District of Columbia and adopted a regulation to that effect, 28 C.F.R. 77.2(i). Respondent offers no explanation for why the Congress would want to omit the District of Columbia, one of the largest bars in the country and the one that likely has the most government lawyers as members.  The D.C. Rules of Professional Conduct are similar to those of every other state, and like every state, but California, based on the ABA Model Rules.  They are far from unique.  The D.C. Court of Appeals, unlike state courts, is an Article I court whose judges are appointed by the President and confirmed by the Senate. Why would the Congress want to give that Court less authority than state courts?  Legislative history of Section 530B shows that Congress understood the statute applied to D.C.: "Federal attorneys investigating and prosecuting these cases . . . will be subject to the differing state and local rules of each of those states, ***plus the District of Columbia***, if they are based here."  Senator Hatch's discussion of the conference report, 144 Cong. Rec. S12741-04, S12799, 1998 WL 734046 (emphasis added). Furthermore, the Attorney General's reasonable interpretation of the statute is entitled to *Chevron* deference. *Chevron U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 843-44 (1984).  To overcome that deference, Respondent would have to show that it is clear on the face of the statute, Section 530B, that the law exempts government lawyers from adhering to the D.C. Rules of Professional Conduct if they are admitted to the D.C. Bar and practicing in this jurisdiction.

6.      Rather than showing "clear authority," Respondent argues that because there is nothing in Section 530B that says explicitly, "'State' includes the District of Columbia," there is not even an ambiguity as to whether it does.  This is despite the fact that the D.C. Court of Appeals is an Article I court, and Section 530B subjects government lawyers not only to state law and rules, but also to "local Federal court rules."  Respondent argues that the Attorney General's interpretation is to be afforded no deference in interpreting the statute as including the District of

Columbia because there is no ambiguity that the District of Columbia is excluded.  But as the Hearing Committee wrote in rejecting Respondent's argument, "Where a provision is directed to a function performed by the District of Columbia in the same way that it is performed by States, with no apparent reason for distinction, it is especially reasonable to think that the statute intends 'State' to include the District of Columbia."  Doc. 1-43 (A-43) at 12, citing *Kerpen v. Metro. Washington Airports Auth.*, 260 F. Supp 3d. 567, 578 (E.D. Va. 2017) (D.C. is a "State" for purposes of the Compact Clause of the Constitution), *aff'd*, 907 F.3d 152, 159 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 132 (2019).

7.     Respondent's secondary argument is that even if Section 530B delegated to the District of Columbia the authority to enforce disciplinary rule violations against federal lawyers, it gave that authority only "to the same extent and in the same manner as other attorneys in that State."  Because this is a unique factual situation, Respondent says that he is therefore exempt from enforcement actions. The Rule violations at issue, Rule 8.4(c) (conduct involving dishonesty) and Rule 8.4(d) (seriously interfering with the administration of justice) have been applied to tens, if not hundreds of members of the D.C. Bar, including Department of Justice lawyers. *See, e.g., In re Dobbie & Taylor, supra.*  Respondent is being treated no differently from any D.C. Bar member who violates these Rules.  Factual situations differ in every case, but the absence of a case that is factually similar to this one, does not mean Respondent is being treated differently from other D.C. Bar members who engage in dishonest conduct or who interfere with the administration of justice.

8.     Finally, the Notice of Removal is permeated by suggestions that it is improper to apply the Rules of Professional Conduct to high government officials engaged in Executive Branch operations.  Yet in two instances, presidents of the United States have been disciplined by state disciplinary authorities for misconduct while in office.  *Matter of Nixon,* 53 A.D.2d 178, 385

N.Y.S.2d 305 (1976) (disbarment); *Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct., Jan. 19, 2001) (five-year suspension).  Respondent's high office and presidential appointment does not exempt him from complying with the ethical rules to which all lawyers are subject.

## II. ASSUMING ARGUENDO THAT THIS MATTER IS SUBJECT TO REMOVAL, THE NOTICE OF REMOVAL IS TIME-BARRED.

9.     The only possible statutory basis for removal is 28 U.S.C. § 1442—a civil action or criminal prosecution in a state court against an officer of the United States.  Respondent has cited the statutes relating to federal question, 28 U.S.C. §§ 1331 and 1441, but the Supreme Court has held that merely asserting a defense that injects a federal question into a case does not transform what is plainly a state law claim into an action arising under federal law for purposes of removal jurisdiction. *Caterpillar v. Williams*, 482 U.S. 386, 399 (1987).  Thus, assuming arguendo that Section 1442 applies, Respondent's Notice of Removal was filed out of time, pursuant to 28 U.S.C. § 1446.

10.     Section 1442 contemplates removal in civil and in criminal cases where the defendant is a federal official. Depending upon the nature of the case, different procedures apply. As a threshold matter, disciplinary proceedings appear to be neither civil nor criminal and thus not within the ambit of Section 1442.  In a civil case, the complaint is generally initiated by a private party and the relief sought is an injunction or damages.  These proceedings were initiated by an affiliate of the D.C. Court of Appeals and seek neither damages nor injunctive relief.  Nor are these proceedings criminal, with the trappings of a criminal trial—jury, proof beyond a reasonable doubt, right of confrontation, right of defendant not to testify, etc.  *See, e.g., Matter of Doe,* 801 F. Supp. 478, 483 (D.N.M. 1992) ("Disbarment and suspension proceedings are neither civil nor criminal in nature . . . ." citing *In re Echeles*, 430 F.2d 347, 349 (7th Cir.1970)); *cf. United States*

*v. Ferrara*, 847 F. Supp. 964, 970 (D.D.C. 1993) (dismissing government's action to enjoin state disciplinary authority from continuing inquiry into conduct of AUSA, concluding supremacy clause does not bar disciplinary proceeding against government lawyer).

11.    Respondent argues that the proceedings are quasi-criminal, relying on language in *In re Artis*, 883 A.2d 85 (D.C. 2005). But the very use of the term "quasi-criminal" means that the proceedings are not criminal. *Artis* concerned, in part, the discovery procedures available in disciplinary proceedings in the District of Columbia. The Court found that the extensive discovery procedures available in civil litigation, specifically interrogatories, did not apply in disciplinary cases where the discovery procedures were more akin to criminal discovery. *Id*. 99-101. But the Court also recognized some disciplinary discovery procedures, specifically the obligation of a respondent to respond to Disciplinary Counsel's inquiries, that did not exist in criminal cases. *Id*. 101-102. A criminal defendant has no such parallel obligation. Nor does a criminal defendant have the obligation to file an answer, in contrast to a respondent in a disciplinary procedure. D.C. Bar Rule XI, § 8(e). Clearly, disciplinary cases are not criminal; in addition to the absence of the trappings of criminal cases discussed above, respondents do not go to jail or get fined.

12.    So, if they must be classified as civil or criminal, disciplinary proceedings, like any licensing proceeding, would fall on the civil side. Under 28 U.S.C. § 1446(b)(1), notice of removal of a civil action must be filed within 30 days of when the "defendant" is served. Respondent admits to having been served on July 27, 2022. Notice of Removal at para. 9. The Notice of Removal was filed on October 17, 2022—well outside the 30-day period.

13.    Respondent has concocted an argument that the case did not actually begin until September 15, 2022, because on that date, the D.C. Court of Appeals dismissed as moot a pending action to enforce an investigative subpoena. With no supporting authority, Respondent argues that

this ancillary discovery proceeding deprived the Board on Professional Responsibility and the Hearing Committee of jurisdiction until it was dismissed. Although he does not acknowledge doing so in his pleading, Respondent made this same argument in his Request for Deferral. He also neglects to mention the ruling: the Hearing Committee found that, "A proceeding to enforce a subpoena is not an appeal of *this* proceeding. It is a collateral proceeding and the fact that it happens to be filed in the District of Columbia Court of Appeals is not a reason to deprive the Board of jurisdiction." Doc. 1-43 (A-43) at 6-7. The Board adopted the Hearing Committee's Report and Recommendation. Doc. 1-49 (A-49).

14. Thus, by filing his notice of removal on October 17, after having been served on July 22, Respondent missed his 30-day deadline. He also made no attempt to remove the proceeding when the motion to enforce the subpoena during the investigation was filed in February 2022. Doc. 1-62 (B-6). Instead, he sat on his "right" to remove until after his efforts to defer the proceedings had failed and the Hearing Committee, by order dated October 12, 2022, had set a hearing date on the merits and an accompanying schedule. Doc. 1-55 (A-55). Five days later, he sought to remove.

15. Finally, Respondent argues that even if he missed the deadline to remove the entire matter, he can remove the subpoena served on October 6, 2022, for documents. It is not clear what Respondent means by this. It is true that a subpoena was served on October 6 (Doc. 1-54 (A-54)), and the return date is October 21, 2022. Assuming arguendo that this subpoena does generate an enforcement proceeding, and assuming arguendo that there is Section 1442 grounds for removal, only the ancillary proceeding would be removable under Section 1442(d)(1). The other proceedings would remain before the Hearing Committee.

16.     Disciplinary Counsel emphasizes that this entire discussion is hypothetical, based on the assumption that this matter is subject to Section 1442 removal.  In reality, by express act of Congress, disciplinary matters relating to federal lawyers fall within the jurisdiction of the state courts where those lawyers are admitted and practice, including the D.C. Court of Appeals.

## III.   RESPONDENT'S   ATTEMPT   TO   REMOVE   THESE   DISCIPLINARY PROCEEDINGS IS PART OF HIS CONTINUING EFFORT TO DELAY THEM.

17.     From the outset of Disciplinary Counsel's investigation of this matter, beginning in the Fall of 2021, Respondent has engaged in a strategy of delay.  This attempt to remove is the culmination of this strategy, to date.

18.     This matter began with the receipt of a Majority Staff Report of the Senate Committee on the Judiciary, accompanied by lengthy witness interviews.  DX 1 (interviews are not included because of length). ("DX" refers to the numbered exhibits attached as an appendix to this Memorandum.)  Respondent is correct that it is generally the practice not to docket a complaint from a third-party with no personal knowledge of the facts.  This complaint was different, however, because it included a detailed report and actual evidence.   Having read and analyzed it, Disciplinary Counsel determined that a complaint should be docketed, not in the name of the Senator who forwarded the report, but as a Disciplinary Counsel matter.  The rules of the D.C. Court of Appeals provide that investigations "shall" be conducted "whether upon complaint or otherwise," D.C. Bar Rule XI, § 8(a), and it is not uncommon for investigations to be based on information that does not originate with a complainant, such as a judicial opinion.  On October 18, 2021, Disciplinary Counsel sent Respondent a letter of inquiry and a subpoena for documents. DX 2.  Although Respondent criticizes the failure to seek documents from the Department of Justice, the goal was to learn what documents Respondent was aware of, not what documents the Department might have.  Of most concern was an allegation that Respondent attempted to have

the Department send a letter asserting "facts" that it had no basis to assert were true and that Respondent had been told were untrue. The subpoena sought documents that might refute those allegations. (Disciplinary Counsel obtained *Touhy* letters from the Department of Justice authorizing Respondent and other Justice witnesses to provide relevant information.)

19. This investigation arose in the midst of a pandemic when personal contact was discouraged and when almost all communications were being conducted electronically. After ascertaining that Respondent was represented (not by current counsel), the letter and subpoena were emailed to his lawyer. Uniquely, when almost all such communications were being conducted electronically, this Respondent claimed not to have received it. Upon inquiry several weeks later, it emerged that Respondent's lawyer had withdrawn and he was no longer represented. In November, a second version of the letter and subpoena were sent electronically to Respondent personally. DX 3. Still, there was no response. Respondent offered a number of excuses, including that he had not received the materials sent electronically. This was a virtually unique occurrence in contrast to the hundreds of respondents with whom Disciplinary Counsel dealt during the pandemic. For the first time in his Notice of Removal, Respondent discloses that he did not visit the website service quickly enough before access expired. Disciplinary Counsel ultimately insisted upon a response by the end of January 2022. DX 4. On the very last day of that month, Respondent, now represented by his current counsel, asserted his right against self-incrimination and refused to respond to the allegations. DX 5 (Respondent apparently meant to attach this document as Doc. 1-59 (B-3), but instead attached a copy of the same document he attached as Doc. 1-60 (B-4).) Obviously, notice that Respondent was asserting the privilege could have been done much earlier.

20.     Respondent also did not respond to the subpoena.  He had never complained about electronic service for almost four months, and he was clearly in possession of the subpoena.  But he insisted upon being personally served with another version, including insisting on a check for a witness fee even though the subpoena did not called only for the production of documents, not testimony., pursuant to D.C. Rule Civ. P. 45.  *See* D.C. Bar Rule XI, § 18(a).  He also asserted that production of the documents violated his right against self-incrimination, even though the documents called for were documents that supported his position that there was sufficient evidence of election fraud in Georgia in the 2020 presidential election to affect its outcome—*i.e.*, exculpatory, not incriminating, documents.  Doc. 1-58 (B-2).

21.     Disciplinary Counsel then moved to enforce the subpoena before the D.C. Court of Appeals.  Doc. 1-62 (B-6).  Respondent made no effort to remove the case at that point.  While that issue was pending, Disciplinary Counsel determined that it had sufficient evidence to proceed without the subpoenaed documents, and filed its Petition and Specification of Charges. Doc. 1-2 (A-2).  Respondent persistently mischaracterizes these charges, and when Disciplinary Counsel responds to those mischaracterizations, accuses it of having changed the theory.  Disciplinary Counsel has never accused Respondent of lying to his superiors.  Nor has it sought to supervise or second-guess the deliberative processes of the Department of Justice or the Executive Branch.

22.     Respondent, the acting head of the Civil Division, played no role in the Department's criminal investigation of alleged election fraud in the 2020 election. Those investigations were supervised nationally by Richard Donoghue, the Principal Associate Deputy Attorney General, who reported to Jeffrey Rosen, the Deputy Attorney General and, at the relevant time after Attorney General Barr resigned, the Acting Attorney General.  Respondent drafted a letter for Mr. Donoghue's and Mr. Rosen's signatures, which contained factual inaccuracies,

including a statement that the Department had "identified significant concerns that may have impacted the election in multiple States, including the State of Georgia." Mr. Rosen and Mr. Donoghue knew this statement was false, told Respondent so, and refused to sign the letter. Had that ended the matter, this disciplinary case would never have been brought. But Respondent continued with his efforts to pressure Mr. Rosen and Mr. Donoghue to sign and send the letter, including credible threats to have the President remove Mr. Rosen as Acting Attorney General if he did not comply. Respondent expected that he would replace Mr. Rosen and promised that he would sign and send the letter if the President appointed him Acting Attorney General. It was these persistent and coercive attempts to ensure that a false letter was sent by the Department of Justice, with its concomitant effect on the administration of justice, that gave rise to these charges.

23. After the charges were filed, Respondent obtained an extension until September 1, 2022, to file his Answer. Doc. 1-10 (A-10). When he did, he asserted more than 50 affirmative defenses, some of which defy description. Doc. 1-21 (A-21) at 11-12 ("D.C. Bar Jurisdiction Would Violate the Major Questions Doctrine"); at 23 ("If ODC Has Been Colluding with Congress, the Charges Constitute a Bill of Attainder Designed to Target Respondent') at 28 ("The Charges Violate the D.C. Human Rights Act Because They Discriminate Against Respondent's Political Affiliation and Beliefs"). He did not, however, answer the factual allegations in the Specification of Charges, asserting his right against self-incrimination. Within a few days of the Answer, he also filed a Request to Defer (Doc. 1-16 (A-16)) and then a Motion to Dismiss. Doc. 1-20 (A-20). Under the rules of the disciplinary system, a hearing committee, acting through its chair, makes a recommendation to the Board on Professional Responsibility on a request to defer. This occurs before the hearing on the merits. Board Rule 4.2. The same procedure exists for a motion to dismiss, except that the recommendation is not made until after the hearing on the merits

and is to accompany the Hearing Committee's report and recommendation to the Board. Board Rule 7.16(a). Respondent makes much of the fact that his motion to dismiss was in part based upon his argument that the D.C. Court of Appeals lacks jurisdiction to discipline him and that it is unfair for this issue not to be reached until after the hearing on the merits. But he raised the same issue in the Motion to Defer, and the Hearing Committee reached and rejected that argument. Doc. 1-43 (A-43) at 7-15. In pertinent part, the Hearing Committee based its recommendation on the uncontested fact that Respondent is a member of the D.C. Bar, and therefore subject to the D.C. Court of Appeals' disciplinary jurisdiction under the plain language of D.C. Bar R. XI, § 1(a) ("All members of the District of Columbia Bar … are subject to the disciplinary jurisdiction of this Court and its Board on Professional Responsibility …"). *Id.* at 8. The Board adopted the Committee's recommendation. Doc. 1-49 (A-49).

24.     The Motion to Defer having been denied by the Board, the case came on for a scheduling conference on October 6, 2022. The hearing was set to begin on January 9, 2023. Doc. 1-55 (A-55). After the charges were filed, the D.C. Court of Appeals determined on September 15, 2022, that the motion to enforce the investigative subpoena was moot but noted Disciplinary Counsel's authority to file a subpoena for documents to be used at the hearing on the merits. Doc. 1-45 (A-45). Respondent's lawyer agreed to accept service by electronic mail, and a subpoena, similar to, although pared down from the one served during the investigation, was served on October 6, 2022. Doc. 1-54 (A-54). On October 17, 2022, Respondent filed his Notice of Removal.

25.     Late in the evening of October 19, 2022, Respondent served Disciplinary Counsel with a Motion to Stay Response to Subpoenas and Other Deadlines and a Motion to Quash Subpoenas. This is further indication of Respondent's strategy of delay, using a meritless Notice of Removal as a tool to disrupt the Hearing Committee's schedule. The Motion to Stay should be

summarily denied because it is based entirely on the assumption that the disciplinary case was properly removed. The Motion to Quash should be denied as moot once the Court remands the case to the District of Columbia.

## CONCLUSION

Disciplinary Counsel requests that the Court remand this case to the D.C. Court of Appeals' Board on Professional Responsibility, deny Respondent's Motion to Stay, and deny Respondent's Motion to Quash.

Respectfully submitted,

/s *Hamilton P. Fox, III*
Hamilton P. Fox, III
Disciplinary Counsel
Bar Number 113050

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501

## CERTIFICATE OF SERVICE

I hereby certify that on 21st day of October 2022, I caused this motion to be filed through the court's electronic filing system, which automatically sends copies to Mr. Clark's counsel and that I further caused electronic service to be made by email to Mr. Clark's counsel and to James T. Phalen, Esquire, Executive Attorney for the Board on Professional Responsibility.

/s *Hamilton P. Fox, III*
Hamilton P. Fox, III
Disciplinary Counsel
Bar Number 113050