# IN THE UNITED STATES DISTRICT COURT

# THE DISTRICT OF COLUMBIA

IN RE: JEFFREY B. CLARK,

    **A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315)**

Case No.

**1:22-mc-00096-RC**

# OPPOSITION TO MOTION TO REMAND

Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald
Georgia Bar No. 463076
Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
*Admitted Pro Hac Vice*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ III

I.   **INTRODUCTION** ........................................................................... 1

II.  **ODC'S DELEGATION ARGUMENT IS NOT RELEVANT TO FEDERAL OFFICER REMOVAL** ........................................................................ 1

III. **ALL CASES AGAINST FEDERAL OFFICERS ARE REMOVABLE— THERE IS NO SUCH THING FOR SECTION 1442 PURPOSES AS A CASE THAT IS NEITHER CIVIL NOR CRIMINAL** ............................................. 3

IV.  **28 U.S.C. § 530B DOES NOT OPERATE AS AN EXCEPTION TO FEDERAL OFFICER REMOVAL.** ............................................................ 7

V.   **IT IS IRRELEVANT TO REMOVAL, BUT ODC'S ARGUMENTS THAT THIS IS AN ORDINARY D.C. BAR DISCIPLINE CASE FALL FLAT.** ............. 10

VI.  **REMOVAL WAS TIMELY.** ................................................................. 13

   A.  Seen as at Least in Part a Criminal Case, Removal Was Timely Here Pursuant to 28 U.S.C. § 1455(b)(1). ............................................................ 13

   B.  ODC Concedes That Removal of the October 6, 2022 Subpoena Was Timely, Which Carries Important Implications for Review of the Entire Case. ........................ 18

   C.  Removal on Federal Question Grounds in Light of Complete Preemption Was Proper and Timely. ....................................................................... 19

VII. **ALLEGATIONS THAT RESPONDENT HAS SOUGHT DELAY ARE NOT RELEVANT TO WHETHER THE ACTION SHOULD BE REMANDED.** ........ 23

CERTIFICATE OF SERVICE ............................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)............................................................ 19, 20, 22

*Colorado v. Symes*, 286 U.S. 510 (1932)............................................................................. 4, 15

*Ex parte Garland*, 4 Wall. 333 (1866)....................................................................................... 17

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463
    U.S. 1 (1983)........................................................................................................................ 20

*In re Artis*, 883 A.2d 85 (D.C. 2005) ........................................................................... 13, 16, 17

*In Re Berger*, 927 A.2d 1032 (D.C. 2007)................................................................................. 11

*In Re Clinesmith*, 258 A. 3d. 161 (2021) ................................................................................. 11

*In re Echeles*, 430 F.2d 347 (7th Cir. 1970) ...................................................................... 14, 17

*In re Ruffalo*, 390 U.S. 544 (1968) .................................................................................... 17, 18

*In Re Lusk*, No. SACV-16-0930 AG (JCGx), 2016 WL 4107671 (C.D. Cal. Jul. 20, 2016)......... 7

*In the Matter of Doe*, 801 F. Supp. 478 (D.N.M. 1992) ............................................... 7, 15, 17

*Kolibash v. Committee on Legal Ethics of the West Virginia Bar*, 872 F.2d 571 (4th Cir.
    1989) ................................................................................................................................... 6, 7

*Matter of Williams*, 464 A.2d 115 (D.C. 1983) ........................................................................ 17

*Mesa v. California*, 489 U.S. 121 (1989)............................................................................. *passim*

*Nationwide Investors v. Miller*, 793 F.2d 1044 (9th Cir. 1986)................................................. 6

*North Carolina v. Carr*, 386 F.2d 129 (4th Cir. 1967) ........................................................... 5, 6

*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974) ........................................... 22

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ............................................................ 8

*Russello v. United States*, 464 U.S. 16 (1983) ........................................................................... 9

*Spevack v. Klein*, 385 U.S. 511 (1967) ..................................................................................... 17

*State of Wisconsin v. Schaffer*, 565 F.2d 961 (7th Cir. 1977).................................................... 6

*Steel Co. v. Citizens for Better Env't*, 523 U. S. 83(1998)......................................................... 8

*Tennessee v. Davis*, 100 U.S. 257 (1879) ............................................................................... 4, 5

*UMC Dev. LLC v. District of Columbia*, 120 A.2d. 37 (D.C. 2015) ............................................ 8

*United States v. Ferrara*, 847 F. Supp. 964 (D.D.C. 1993) ..................................................... 15

*Willingham v. Morgan*, 395 U.S. 402 (1969) ...................................................................... *passim*

**Statutes**

28 U.S.C. § 506 ......................................................................................................................... 22

28 U.S.C. § 1331 ......................................................................................................................... 1

28 U.S.C. § 1441 ................................................................................................... 1, 13, 19, 20

28 U.S.C. § 1442 .................................................................................................................. *passim*

28 U.S.C. § 530B .................................................................................................................. *passim*

**Regulation**

28 C.F.R. § 77.2 ..................................................................................................................... 7, 10

**Rule**

D.C. Board of Professional Responsibility Rule 11.6 .................................................... 16

**Legislative History**

Floor Debate on Omnibus Consolidated and Emergency Supplemental Appropriations Act
    of 1999, 144 Cong. Rec. S12741-04, S12799, 1998 WL 734046 ............................................. 9
H.R. Conf. Rep. No. 105–825 (1998) ............................................................................ 9

**Other Authorities**

John M. Harmon, Ass't Attorney General, Office of Legal Counsel, 4B OLC Ops. 576 (Apr.
    18, 1980), *available at* https://www.justice.gov/file/24451/download (last visited Nov. 4,
    2022) ........................................................................................................... 21
Ralph W. Tarr, Acting Ass't Attorney General, Office of Legal Counsel, 9 OLC Ops. 71
    (Aug. 2, 1985), *available at* https://tinyurl.com/bddwz7b5  (last visited Nov. 4, 2022).......... 21

Jeffrey B. Clark, Respondent in the above-entitled matter, opposes the motion to remand filed by the D.C. Bar's Office of Disciplinary Counsel ("ODC") as follows:

## I.    INTRODUCTION

Respondent's Notice of Removal was based on federal officer removal principally under 28 U.S.C. § 1442—and also under 28 U.S.C. § 1441 in light of 28 U.S.C. § 1331 federal question jurisdiction based on a theory of complete preemption.

Five days after filing the Motion for Remand, and notwithstanding removal, ODC also filed a Motion to Enforce its October 6, 2022 subpoena not in this Court but *in the D.C. Court of Appeals*. Respondent brought this to the Court's attention in his Supplement to Motion to Quash. *See* Dkt. ## 11 & 11-3. Respondent's Response to the Motion to Enforce is attached hereto as Exhibit 1 (less its own Exh. 1, which is the Motion to Remand, already filed in the docket here).

ODC's Motion to Remand makes three principal arguments: that (1) Congress and DOJ gave authority for attorney discipline to the District of Columbia; (2) removal was untimely; and (3) Respondent has sought delay at every turn. None of these arguments is correct and two are entirely irrelevant to the sole issue under adjudication in the relevant motion: removal jurisdiction.

## II.    ODC's DELEGATION ARGUMENT IS NOT RELEVANT TO FEDERAL OFFICER REMOVAL.

ODC devotes eight numbered paragraphs and almost five pages to arguing that the District of Columbia Court of Appeals ("DCCA") and its subordinate adjunct bodies, the Board of Professional Responsibility and the ODC, have disciplinary jurisdiction over the charged conduct of the Respondent.

The first basis Respondent gave for removal is the federal officer removal statute, 28 U.S.C. § 1442. That statute by its express terms applies to proceedings in both States and the District of Columbia. For Section 1442(d)(5) (emphasis added) provides that "[t]he term 'State'

includes the District of Columbia, …."), and entitles any federal officer to remove any civil or criminal proceeding brought against them "for or relating to **any act** under color of such office."

The statute is to be broadly construed as we argued in the Notice of Removal without contradiction by ODC. *See* Dkt. #1 at ¶ 56. Additionally, the Supreme Court has reinforced "that the removal statute '***is broad enough to cover <u>all cases</u>*** where federal officers can raise a ***colorable defense arising out of their duty to enforce federal law***.... In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.' [*Willingham v. Morgan*,] 395 U.S. [402,] 406-07 [(1969)]." *Mesa v. California*, 489 U.S. 121, 133 (1989) (emphasis added). Respondent has raised multiple such defenses. At no point does ODC even attempt to argue that Respondent lacks a colorable basis to claim defenses arising from his federal service, including but not limited to official immunity from this unprecedented attempt to assert local disciplinary authority over deliberations at the highest levels of the U.S. Justice Department and with the President.[1]

In addition to these colorable defenses, there is no dispute that the Charges in this case relate exclusively to Respondent's service in the federal government. *See* Dkt. # 1-2. ODC concedes that Section 1442 entitles federal officials to remove civil and criminal cases against them. *See* Dkt. # 5 at ¶ 10. Therefore, Respondent is entitled to remove the case to this Court.

While Respondent and ODC disagree on whether 28 U.S.C. § 530B grants any disciplinary authority over the charged conduct to the District of Columbia, they would certainly agree that it grants some span of disciplinary authority to States (though how much is disputed). If this

---

[1] It is important to emphasize that colorable defenses permit removal. The defense does not ultimately have to prevail. In other words, the validity of the defense is to be resolved, ***post removal***, in a federal forum by a federal court. The merits of a federal officer's federal defenses and the issue of removal jurisdiction do not, generally speaking, merge because, at the removal stage, all that must be tested is whether removal is colorable.

disciplinary case were brought by a State against Respondent under authority granted by Section 530B, it would still be removable on the same basis under the plain terms of Section 1442(a)(1). Thus, ODC's extended argument that Section 530B grants the disciplinary authority to the District of Columbia is both erroneous for the textual reasons stated in other filings and irrelevant to federal officer removal.

ODC's arguments are instead responsive to Respondent's arguments that the Bar's Charges fail for lack of subject matter jurisdiction. Those arguments will be set out in detail in a forthcoming motion to dismiss.

III.   **ALL CASES AGAINST FEDERAL OFFICERS ARE REMOVABLE—THERE IS NO SUCH THING FOR SECTION 1442 PURPOSES AS A CASE THAT IS NEITHER CIVIL NOR CRIMINAL.**

In a separate section of its brief, *see* Motion to Remand at ¶ 10, ODC contends that disciplinary proceedings are neither civil nor criminal, but a *sui generis* species that, being neither fish nor fowl, is not subject to removal under the broad terms of Section 1442, which entitles federal officers to remove any "civil action or a criminal prosecution." ODC's argument is without merit.

As noted above, both *Mesa*, 489 U.S. at 133, and *Willingham*, 395 U.S. at 406-07, have held that Section 1442 is "'***is broad enough to cover <u>all cases</u>*** where federal officers can raise a colorable defense arising out of their duty to enforce federal law." (Emphasis added.) "All cases" means "all cases," and thus a third category of cases that are neither civil nor criminal but *sui generis* bar disciplinary matters immune to removal simply does not exist. Moreover, the Supreme Court has repeatedly made clear that the federal officer removal statutes "were enacted to maintain the supremacy of the laws of the United States by safeguarding officers and others acting under federal authority against peril of punishment for violation of state law or obstruction or embarrassment by reason of opposing policy on the part of those exerting or controlling state

power." *Colorado v. Symes*, 286 U.S. 510, 517 (1932). Indeed, as *Tennessee v. Davis* (cited in

*Colorado*) noted, it matters not a whit even whether the relevant State is purporting to wield state

***or federal authority*** over the federal officer in question. Indeed, eventual U.S. Supreme Court

review, occurring only after the State has held a trial and handed down a final judgment, has been

held insufficient by the Supreme Court to protect the federal interest:

> As was said in *Martin v. Hunter* (1 Wheat. 363), 'the general government must cease
> to exist whenever it loses the power of protecting itself in the exercise of its
> constitutional powers.'

> It can act only through its officers and agents, and they must act within the States. If,
> when thus acting, and within the scope of their authority, those officers can be arrested
> and brought to trial in a State court, for an alleged offence against the law of the State,
> yet warranted by the Federal authority they possess, and if the general government is
> powerless to interfere at once for their protection,-if their protection must be left to the
> action of the State court,-the operations of the general government may at any time be
> arrested at the will of one of its members.

> The legislation of a State may be unfriendly. It may affix penalties to acts done under
> the immediate direction of the national government, and in obedience to its laws. It
> may deny the authority conferred by those laws.

> ***The State court may administer not only the laws of the State, but equally Federal***
> ***law, in such a manner as to paralyze the operations of the government. And even if,***
> ***after trial and final judgment in the State court, the case can be brought into the***
> ***United States court for review, the officer is withdrawn from the discharge of his***
> ***duty during the pendency of the prosecution, and the exercise of acknowledged***
> ***Federal power arrested.***

*Tennessee v. Davis*, 100 U.S. 257, 262-63 (1879) (paragraph breaks and emphasis added)

(construing a predecessor to Section 1442, Section 643 of the Revised Statutes). Here, the District

is not a State, but even if it is deemed to wield "federal" power in its local bar forums under the

D.C. Court of Appeals (an Article I court), that is no basis for evading federal officer removal.

In light of these constitutionally animated policies, "[i]t scarcely need be said that such

measures [the federal officer removal statute] are to be liberally construed to give full effect to the

purposes for which they were enacted." *Colorado,* 286 U.S. at 517. "The federal officer removal

statute is not 'narrow' or 'limited.'" *Willingham*, 395 US. at 206 (citing *Colorado*). "In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham*, 395 U.S. at 407.

ODC's argument that bar discipline cases are a hybrid falling into some imagined gap in the sweep of the federal officer removal statute between civil actions and criminal prosecutions is just the sort of narrow, cramped reading explicitly rejected by the Supreme Court in multiple decisions. It is thus unsurprising that such arguments have been rejected by federal circuit courts in closely analogous circumstances.

In *North Carolina v. Carr*, 386 F.2d 129 (4th Cir. 1967), the issue was whether contempt proceedings were subject to removal, which the parties contended turned on whether they were classified as civil or criminal and thus removable in either case, or *sui generis* and not removable:

> The State urges that it was neither [civil nor criminal], but rather '*sui generis*.' Accordingly, the State says, it was not either a 'civil action' or 'criminal prosecution' within the meaning of the removal statute. We think it unfruitful to quibble over the label affixed to this contempt action. Regardless of whether it is called civil, criminal, or *sui generis*, it clearly falls within the language and intent of the statute.

> The purpose of the statute is to take from the State courts the indefeasible power to hold an officer or agent of the United States criminally or civilly liable for an act allegedly performed in the execution of any of the powers or responsibilities of the Federal sovereign.

> Neither immunity nor impunity is guaranteed the alleged offender; the statute merely transfers his trial to the Federal courts. Insistence upon the right of removal has been declared essential to the integrity and preeminence of the Federal government within its realm of authority. The reasons for the statute are so apparent, and were so clearly expounded, with its history carefully treated, in *State of Tennessee v. Davis*, 100 U.S. 257, 262 (1879), that we have no occasion to reiterate here the necessity for its rigid enforcement.

> ***To repeat, the central and grave concern of the statute is that a Federal officer or agent shall not be forced to answer for conduct assertedly within his duties in any but a Federal forum.*** Thus the statute looks to the substance rather than the form of the state proceeding; this is the reason for the breadth of its language. Accordingly, the

5

applicability of the statute to the present case is perfectly apparent.

386 F.2d at 131 (emphasis and one paragraph break added). *Carr* was followed by the Seventh

Circuit in another subpoena contempt case in *State of Wisconsin v. Schaffer*, 565 F.2d 961 (7th Cir.

1977).

A strikingly analogous case is *Kolibash v. Committee on Legal Ethics of the West Virginia*

*Bar*, 872 F.2d 571 (4th Cir. 1989), in which a state bar discipline case against a federal prosecutor

was removed under the federal officer removal statute. There, as here, bar counsel argued that bar

disciplinary proceedings were neither civil nor criminal and therefore fell into a gap in the

protection afforded by the federal officer removal statute. This argument was rejected in an opinion

for the court written by Judge J. Harvie Wilkinson:

> The central concern of the removal statute is that a federal officer or agent shall not be
> forced to answer for acts performed under color of his office in anything but a federal
> forum. ***Regardless of what label is attached to the proceeding, § 1442(a)(1) should
> be construed in light of this purpose***. *North Carolina [v. Carr]*, 386 F.2d at 131;
> *Wisconsin v. Schaffer*, 565 F.2d 961, 963 (7th Cir. 1977). The form that the state action
> takes is therefore not controlling; "it is the state's power to subject federal officers to
> the state's process that § 1442(a)(1) curbs." *Nationwide Investors [v. Miller]*, 793 F.2d
> [1044] at 1047 [(9th Cir. 1986)].

872 F.2d at 576 (emphasis added).

The protection of federal supremacy against hostile bar discipline proceedings has special

salience given that so many senior federal officials are lawyers:

> Regulation of the legal profession admittedly implicates significant state interests, but
> ***the federal interest*** in protecting federal officials in the performance of their federal
> duties ***is paramount***. Many federal officials may be subject to potentially abusive state
> process. *See Mes*a, 489 U.S. at ----, 109 S. Ct. at 970 (Brennan, J., concurring) (state
> and local resistance to acts of Congress and decisions of the Supreme Court in the
> areas of school desegregation and voting rights is "not so distant that we should be
> oblivious to the possibility of harassment" of federal officers by state and local
> officials).

> Although we intimate no view as to the underlying merits of the present action, ***state
> professional disciplinary proceedings could be used to interfere with the duties of
> federal officials, including the President of the United States, the Secretary of State,***

*and the Attorney General of the United States, all of whom may be lawyers.*

Federal prosecutors too may be targets of retaliatory state proceedings and the existence of the various forms of immunity available to federal officials raises at least a colorable issue as to whether they also are immune from state professional disciplinary actions. *See e.g.*, *Butz v. Economou*, 438 U.S. 478, 508-11 (1978) (absolute immunity for federal and state prosecutors acting in their prosecutorial capacity); *Harlow*, 457 U.S. at 818 (qualified immunity generally for government officials performing discretionary functions); *Westfall v. Erwin*, 484 U.S. 292 (1988) (absolute immunity from state tort actions for conduct of federal officials which is within the scope of their official duties and which is discretionary in nature). *See also General Elec. Co. v. United States*, 843 F.2d 168, 169 (4th Cir.1988).

*Kolibash*, 872 F.2d at 575 (paragraph breaks and emphasis added).

The Court in *Kolibash* then reviewed the nature of bar disciplinary proceedings, arriving at a conclusion opposite the one urged by ODC: "To hold this proceeding outside the operation of the removal statute would be to elevate form over substance. If a state investigative body operates in an adjudicatory manner, and if a federal officer or his agent is subject to its process, the statutory requirements of § 1442(a)(1) are satisfied." *Id*.[2]

## IV.  28 U.S.C. § 530B DOES NOT OPERATE AS AN EXCEPTION TO FEDERAL OFFICER REMOVAL.

Turning to the merits of ODC's arguments that 28 U.S.C. § 530B and 28 C.F.R. § 77.2(h) and (j) give the District of Columbia disciplinary authority over confidential internal policy deliberations between and among the senior-most officials of the Justice Department and the President himself, Respondent has argued these points at some length in other filings (Dkt. #1, 4, & 10), and will therefore be brief here in this Opposition.

ODC suggests at ¶ 2 of its Motion to Remand that Section 530B operates as an exception

---

[2] As noted in the Reply in Support of the Motion to Quash, ODC was on notice of *Kolibash* but did not cite it in their brief. A case they cite for the opposite conclusion, *In the Matter of Doe*, 801 F. Supp. 478 (D.N.M. 1992), purports to distinguish *Kolibash* at some length. And one other District Court found the analysis in *Kolibash* more persuasive than that of Doe. *See In Re Lusk*, No. SACV-16-0930 AG (JCGx), 2016 WL 4107671 (C.D. Cal. Jul. 20, 2016).

to federal officer removal, and that were it otherwise, Section 530B would be nullified. This is a fundamental misunderstanding of removal. "Neither immunity nor impunity is guaranteed the alleged offender; the statute merely transfers his trial to the Federal courts." *Carr*, 386 F.2d at 131.

ODC argues at ¶ 3 of the Motion to Remand that in recommending against deferral, the Chairman of the Hearing Committee rejected Respondent's subject matter jurisdiction arguments. *See* Dkt. # 1-43. However, the Report and Recommendation, and the ensuing order of the Board Chair denying the request for deferral, are not appealable to the DCCA before the hearing on the merits. The Chair of the Hearing Committee in another order expressly held that he did not have authority to rule on the merits of Respondents' motion to dismiss and that instead the trial would be held first, and perhaps later the Board or the DCCA would take up the question. *See* Dkt. # 1-50.

The refusal to consider the subject matter jurisdiction defense before trial, even if required by the Board's rules, is flatly inconsistent with clear Supreme Court and DCCA authority, which require that subject matter jurisdiction be decided first, before the merits. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) (threshold jurisdictional questions must be resolved before the merits); *Steel Co. v. Citizens for Better Env't*, 523 U. S. 83, 94-95 (1998) (requirement to establish subject matter jurisdiction as a threshold matter is "inflexible and without exception" and, for that reason, the Supreme Court rejected the doctrine of "hypothetical jurisdiction"). This is also the rule in ordinary judicial proceedings even in the courts of the District. *See UMC Dev. LLC v. District of Columbia*, 120 A.2d. 37, 42 (D.C. 2015) (standing is a matter posing "a threshold jurisdictional question which must be addressed prior to and independently of the merits of a party's claim.").

Respondent has previously addressed the "drive-by jurisdiction" cases on which ODC

relies to establish subject matter jurisdiction, as well as the *Nixon* and *Clinton* bar discipline cases, both of which were uncontested on both jurisdiction and the facts. *See* Dkt. # 4, pp. 16-18; Dkt. # 10, pp. 11-12.

To bolster its contention that Section 530B includes the District of Columbia, ODC cites a floor statement of Senator Orrin Hatch in debate over the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, at 144 Cong. Rec. S12741-04, S12799, 1998 WL 734046. The legislative history of a statute whose text is unambiguous is irrelevant. *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93 (2007) (*citing Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842–843 (1984). In any event, Senator Hatch was arguing ***against*** what is now 28 U.S.C. § 530B.

Senator Hatch noted that the McDade Act had not previously passed the Senate and was opposed by an overwhelming bipartisan majority of the Senate Judiciary Committee. *See* 1998 WL 734046 at S12798-9. Senator Hatch's characterization of the McDade act as including the District cannot be squared with the text which applies to States but does not mention the District. As previously noted, the lack of any reference to the District of Columbia in the text that is now Section 530B has particular significance since the very same legislation in multiple other titles includes both States and the District of Columbia by express provision or express definition. *Compare* H.R. Conf. Rep. No. 105–825 (1998), Title VIII, p. 123 *with id*. at pp. 8, 752, 865. When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up).

Senator Hatch's remarks, though, do reinforce the point that the remedial purpose of the Act was to rein in federal prosecutorial misconduct. There was no discussion whatsoever of

purporting to subject confidential policy deliberations between senior DOJ officials and the President to discipline by any bar, much less that of the District of Columbia. Additionally, as we have previously explained, there would need to be a clear statement to that effect in order to read the statute that way in light of the major questions doctrine (and other case law). And any such plain statement is plainly lacking from the text of Section 530B.

**V.     IT IS IRRELEVANT TO REMOVAL, BUT ODC'S ARGUMENTS THAT THIS IS AN ORDINARY D.C. BAR DISCIPLINE CASE FALL FLAT.**

In the Motion to Remand, ODC has, at last, addressed the point that there is no authority under either the statute, 28 U.S.C. § 530B, or the regulation, 28 C.F.R. § 77.2(j)(2), to discipline particular conduct that has never previously been subject to discipline, like the conduct under examination here. ODC's response is to first frame the conduct at the highest possible level of generality and then claim that many cases have been brought against federal attorneys within this expediently broad category. This ignores, however, the textual requirement of 28 C.F.R. § 77.2(j)(2) that it simply does not apply to "any jurisdiction that would not ordinarily apply its rules of ethical conduct to *particular conduct or activity* by the attorney." ODC's maximum-generality ploy is precluded by the regulation's textual requirement of specificity as spelled out by the words "particular conduct or activity." ODC simply ignores this phrase.

ODC contends in ¶ 7 of the Motion to Remand that Respondent "is being treated no differently from any D.C. Bar member who violates these Rules." In fact, Respondent is being treated much differently than others.

*First*, no senior Democrat Department of Justice official has ever been charged over the contents of a confidential draft letter that was not approved to leave the office. In fact, insofar as we are aware, no lawyer anywhere has ever been charged with "attempted dishonesty" over a confidential discussion draft that was not ordered by the President to be sent out and never left the

office. In that respect, Respondent is being unfairly relegated to a disfavored class of one.

**Second**, the bar discipline cases of prominent Democrat lawyers are routinely deferred until their parallel criminal proceedings have been completed. *See*, *e.g.*, *In re Berger*, 927 A.2d 1032 (D.C. 2007); *In Re Clinesmith*, 258 A.3d. 161 (2021) (interim suspension upon conviction in DCCA Case No. 20-BD-0502 (2021)), *available at* https://tinyurl.com/43rds69b (last visited Nov. 4, 2022). Moreover, Michael Sussman did not have a disciplinary case opened against him even after he was indicted for a felony (for which he was later acquitted).[3] *See* https://tinyurl.com/592sh88b (last visited Nov. 4, 2022).

**Third**, ODC's characterization of the charges against Respondent is constantly evolving. As pleaded, the charges allege that Respondent committed "attempted dishonesty" in the preparation of a draft letter subject to his superiors' approval that proposed that DOJ take certain positions different than those that had been taken up to that point regarding the election. The alleged attempted dishonesty lay in the difference between the ***proposed*** position and the ***then-existing actual*** position of superiors at the Department, which would have governed in the absence of being overruled by the President. *See* Charges, ¶¶ 15-19 (Dkt # 1-2) and discussion thereof at Dkt. # 1-20 at 6-8. Respondent argued that the proposed positions of the draft letter could not be considered false as a matter of law because they were non-operative and always contingent on the approval of superiors, which was never given. In response, ODC backpedaled and argued that it was not the mere suggestions of the draft that were at issue, but that Respondent ***persisted*** in advocating the letter be sent. Respondent then argued that this purported distinction between a

---

[3] In this vein, we will also file a motion calling for a *Landis* stay coupled with periodic status reports until, at the very least, (1) the proceedings of the House January 6 Select Committee are complete and all of its deposition transcripts are released to the public or at least to the Respondent and (2) a Fulton County, Georgia Special Grand Jury terminates, on or before April 30, but expected before the end of this year. *See* https://tinyurl.com/kckzvh6h (last visited Nov. 4, 2022).

lawful suggestion and unlawful persistence had never previously existed, could not be applied retroactively, was not in the text of the Rules of Professional Responsibility, and thus could not be discerned or administered consistent with due process fair notice. *See* Dkt. # 1-42 at 18-22.

Now, in the Motion to Remand, Dkt. #5, at 11 (emphasis added), ODC has evolved its theory even further, saying "Disciplinary Counsel **has never accused Respondent of lying to his superiors**." Yet in the very next paragraph, on pages 11-12, ODC says that:

> Respondent drafted a letter for Mr. Donoghue's and Mr. Rosen's signatures, which **contained factual inaccuracies** including a statement that the Department had "identified significant concerns that may have impacted the election in multiple States, including the State of Georgia." Mr. Rosen and Mr. Donoghue knew **this statement was false**, told Respondent so, and refused to sign the letter.

Well, which is it? If there is no accusation of dishonesty, then why is Respondent being subjected to this process? If there was no lying to superiors, how could there be any such thing as "attempted dishonest persisting," or whatever it is ODC claims this case is about on any given day? ODC's Javert-like pursuit of Respondent on evolving theories it cannot articulate with any coherence or stability also puts the Respondent in a class by himself.

While more could be said, these points should suffice to show that Respondent is being treated **much** differently than other lawyers.[4] There charges here are anything but ordinary or usual. It is instead arbitrary and capricious, abusive, and a violation of Respondent's rights to Due Process and Equal Protection, as well as his First Amendment rights to come to and to espouse different conclusions than his former colleagues at the Justice Department in connection with perhaps the most contentious presidential election in U.S. history.

---

[4] Even the *Washington Post* recognized that this case "is an unusual, even aggressive, use of the bar's disciplinary power." Ruth Marcus, *The Curious Case of The Strange Man Who Was Nearly Attorney General,* WASHINGTON POST, https://tinyurl.com/46nfjpur (last visited Nov. 4, 2022).

## VI.    REMOVAL WAS TIMELY.

The Notice of Removal carefully explained why this removal was timely. *See* Dkt. #1 at ¶¶ 11-17 & nn. 2-5. The arguments for timeliness fall into three buckets: (1) because the Charges are quasi-criminal, in the sense that they are in part criminal in nature under the precedent of the highest court in the District, the removal is timely because no trial has yet been held (and there is no analogue to an arraignment procedure under the D.C. bar processes); (2) because the Notice of Removal was filed on October 17, 2022—a mere 11 days after a subpoena was issued by ODC—the removal is plainly timely at least as to removing review of that subpoena to this Court, which will inevitably bring Respondent's subject matter jurisdiction defenses up for resolution here as grounds to quash or refuse to enforce the October 6, 2022 subpoena; and (3) even if the case were construed as ***entirely civil in nature***, the removal was still timely because the case was removed within 30 days (as defined by the Federal Rules) of the D.C. Court of Appeals September 15, 2022 decision first activating the Charges by returning jurisdiction to the D.C. Board of Professional Responsibility and Hearing Committee Twelve. We take each of these arguments in turn.

### A.    SEEN AS AT LEAST IN PART A CRIMINAL CASE, REMOVAL WAS TIMELY HERE PURSUANT TO 28 U.S.C. § 1455(B)(1).[5]

Section 1455(b)(1) (emphasis added) provides as follows:

> A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, ***or at any time before trial***, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

Under *In re Artis*, 883 A.2d 85, 101 (D.C. 2005), ODC disciplinary charges are quasi-

---

[5] There are several typographical errors in the Notice of Removal. *See, e.g., id.* at ¶ 12. We are invoking 28 U.S.C. § 1455(b)(1), not 42 U.S.C. § 1455(b)(1). The same is true as to other 28 U.S.C. § 1440s provisions such as 42 U.S.C. §§ 1441, 1442, and 1446. We apologize for that error and can file a *nunc pro tunc* corrected notice of removal on request. Based on the Motion to Remand, we do not believe the typos prejudiced opposing counsel, as the first line of the Notice of Removal correctly cited to the governing provisions in title 28 of the United States Code.

criminal in nature. Hence, this in-part criminal case is timely removed if it is removed "at any time before trial." Or, if it is removed within 30 days "after the arraignment in the State Court." Here, of course, there is no arraignment in the Board of Professional Responsibility process in the District, fixing the end of the period allowed to remove as at any time prior to trial.

ODC fails to respond to all of the relevant arguments here. It never cites Section 1455 at all. Nor does it argue that there was anything like an "arraignment" triggering a 30-day clock on the criminal side. Hence, the removal of a case that is in any part criminal in nature is timely if it occurs prior to trial. And here it is undisputed that no trial had yet occurred before Hearing Committee Twelve (and was not scheduled to begin until January 9, 2023).[6]

The only response that ODC mounts to the argument that the removal is timely on the criminal side is that (1) "disciplinary proceedings appear to be neither civil nor criminal and thus not within the ambit of Section 1442," Motion to Remand at ¶ 10; (2) "the very use of the term 'quasi-criminal; means that the proceedings are not criminal," *id.* at ¶ 11.

The first of these arguments is rebutted above. *See supra* Section III. Specifically, the argument that there is a category of cases that is "neither civil nor criminal" and thus unremovable under the federal officer removal statute contradicts the Supreme Court's rulings in *Mesa* and *Willingham* that "all cases" against federal officers are removable. Again, "all cases" means all cases. The fact that the Seventh Circuit failed to apprehend this in *In re Echeles*, 430 F.2d 347, 349 (7th Cir. 1970), is of no moment. Perhaps the Seventh Circuit can be excused for missing

---

[6] Additionally, we argued that good cause would exist for this Court to rule the removal timely, especially in light of Respondent's extensive efforts to convince the Board of Professional Responsibility and Hearing Committee Twelve's Chair to rule on the issue of the Board's subject matter jurisdiction **before** holding a factual hearing. All to no avail. We thus continue to stand here on that discretionary basis for the removal's timeliness under Section 1442 as well as on our mandatory grounds for deeming the removal timely under the text of the statute.

*Willingham*, which was decided only one year before *In re Echeles*. But regardless, *Mesa* was decided by the Supreme Court 19 years after *In re Echeles*, and the Supreme Court **reaffirmed** *Willingham* on the point that **all** categories of cases are removable, and it plainly controls here.

Additionally, the two District Court cases that ODC cites (*Doe*, 801 F. Supp. at 483 and *United States v. Ferrara*, 847 F. Supp. 964, 970 (D.D.C. 1993)) are unavailing. *Doe* is not precedent in this Court and, in any event, *Mesa* and *Willingham* control over such a decision. *Doe* cites *Willingham* but apparently did not notice that the case held that Section 1442 permits the removal of "all cases" against federal officers. *See Willingham*, 395 U.S. at 406-07 ("The federal officer removal statute is not 'narrow' or 'limited.' *Colorado v. Symes*, 286 U.S. 510, 517 (1932). At the very least, **it is broad enough to cover all cases** where federal officers can raise a colorable defense arising out of their duty to enforce federal law.") (emphasis added).

And here, Respondent has raised numerous federal defenses tied to his duty to enforce federal law, as this case arises from debates conducted inside the Executive Branch about whether and how to enforce federal law. Moreover, at no point in its Motion to Remand does ODC even try to argue that there are no colorable federal defenses and so has now waived any ability to contest that element of *Willingham*. Since this is no ordinary case, Respondent has raised a literal plethora of federal defenses, including immunity, and all are colorable. *See* Answer, Dkt. # 1-21, asserting federal law defenses, including, *inter alia*, separation of powers (Eighth, Ninth and Twentieth defenses), Take Care Clause, Opinion Clause (Third, Fifth, and Seventh Defenses), First Amendment (Twenty-first defense), and official immunity (Twenty-fourth defense).

Lastly, *Ferrara* is not relevant because it is not even a removal case. It is a case denying substantive preemption relief to the United States after the District of New Mexico remanded a removal attempt back to bar authorities in the *Doe* case. *Ferrara* did not sit in judgment of the *Doe*

order and thus did not reaffirm or adopt it; it simply reported the result in *Doe* in its procedural history section. *See Ferrara*, 847 F. Supp. at 966. As such, it constitutes no authority to support ODC's position on timeliness under Section 1455 and certainly cannot override *Mesa* and *Willingham*.

ODC then turns to arguing that the D.C. Court of Appeals, by referring in *In re Artis* to disciplinary proceedings as "quasi-criminal," actually meant that such proceedings are "not criminal." Motion to Remand at ¶ 11. With all due respect to ODC, this argument makes no sense. Review of *In re Artis* makes clear that the D.C. Court of Appeals means that disciplinary proceedings are criminal and civil hybrids. *See* Notice of Removal, Dkt. #1 at ¶¶ 11, 14 n.11, 16 n.6, 49, 71, 75, and 80. They are sufficiently criminal for *In re Artis* to apply the Fifth Amendment. And it is why the standard of proof is "clear and convincing evidence." *See* D.C. Board of Professional Responsibility Rule 11.6 ("Disciplinary Counsel shall have the burden of proving violations of disciplinary rules by clear and convincing evidence."). *See also In re Artis*, 883 A.2d at 101 n.19 ("The two members of the Board who filed a concurring/dissenting statement took the same position, stating, in part, 'the ***quasi-penal nature*** of lawyer discipline proceedings, and the fact that Bar Counsel is obligated to prove its case for discipline by clear and convincing evidence, cast doubt on the notion that Bar Counsel may compel an attorney to provide what would be, in effect, a testimonial response in the nature of an answer to an interrogatory.'") (emphasis added).

If ODC were correct in its fallback argument that if disciplinary proceedings "must be classified as civil or criminal … like any licensing proceeding, they would fall on the civil side," Motion to Remand at ¶ 12, then the heightened burden of proof beyond the preponderance standard would not have been imposed by the D.C. Court of Appeals. ODC also makes various admissions that prove the point that disciplinary proceedings are a civil-criminal hybrid (1) "The Court found

that the extensive discovery procedures available in civil litigation, specifically interrogatories, did not apply in disciplinary cases where the discovery procedures were more akin to criminal discovery." Motion to Remand at ¶ 11; (2) "But the Court also recognized some disciplinary discovery procedures, specifically the obligation of a respondent to respond to Disciplinary Counsel's inquiries, that did not exist in criminal cases …. A criminal defendant has no such parallel obligations." *id.*; and (3) "Nor does a criminal defendant have the obligation to file an answer, in contrast to a respondent in a disciplinary procedure." *Id.*

ODC wraps up its attempt to argue that there is no sense in which a disciplinary case like this one is criminal in nature by arguing that "respondents do not go to jail or get fined." *Id.* This ignores *In re Artis*'s recognition that bar disciplinary proceedings are "quasi-penal." Paying a small levy denominated as a fine, moreover, would pale in comparison to potentially losing one's license and the income-generating potential that the license provides. Indeed, *In re Artis*'s rule that disciplinary proceedings are quasi-criminal traces back to *Matter of Williams*, 464 A.2d 115, 118-19 (D.C. 1983) ("It is well settled that disciplinary proceedings are quasi-criminal in nature and that an attorney who is the subject of such proceedings is entitled to procedural due process safeguards."). *Matter of Williams* in turn relies on a U.S. Supreme Court ruling to the same effect. *See In re Ruffalo*, 390 U.S. 544, 550 (1968). And *In re Ruffalo* in turn states (emphasis added): "***Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer.*** *Ex parte Garland*, 4 Wall. 333, 380; *Spevack v. Klein*, 385 U.S. 511, 515 [(1967)]." 390 U.S. at 550. Hence, ODC's argument that disciplinary matters are not penal or punitive in nature is plainly contrary to binding Supreme Court law. Their inconsistency with *In re Ruffalo* is another reason that ODC's reliance on *Doe* and *In re Echeles* is misplaced. Namely, *Doe* holds:

> Disbarment and suspension proceedings are neither civil nor criminal in nature, but are special proceedings, *sui generis*, and result from the inherent power of courts over

their officers …. **They are not for the purpose of punishment**, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice.

801 F. Supp. at 483 (emphasis added). This reasoning is flatly inconsistent with *In re Ruffalo*,

which teaches that attorney discipline cases are for purposes of punishment.

> B.   ODC CONCEDES THAT REMOVAL OF THE OCTOBER 6, 2022 SUBPOENA WAS TIMELY, WHICH CARRIES IMPORTANT IMPLICATIONS FOR REVIEW OF THE ENTIRE CASE.

As the Court is aware, ODC issued a subpoena to Respondent on October 6, 2022. *See*

Notice of Removal at ¶ 9 n.2. Removal occurred on October 17, 2022, only 11 days later. Thus,

even if this case were conceived of as exclusively civil in nature, the subpoena in this action could

still be removed pursuant to Section 1442(d)(1) (defining "The term[] 'civil action' [to] include

any proceeding (whether or not ancillary to another proceeding) to the extent that in such

proceeding a judicial order, including a subpoena for testimony or documents, is sought or

issued.") and Section 1446(b)(1) (as to civil cases, requiring removal within 30 days).

For the most part, ODC does not put up a fight on this point, stating: "Assuming arguendo

that this subpoena does generate an enforcement proceeding, and assuming arguendo that there is

[*sic*] Section 1442 grounds for removal, only the ancillary proceeding would be removable under

Section 1442(d)(1). The other proceedings would remain before the Hearing Committee." Motion

to Remand at ¶ 15. This concedes that, at the very least, removal of the October 6 subpoena *qua*

subpoena is proper.[7] Moreover, the analysis does not turn on whether the October 6 subpoena

---

[7] And from there, note that because the October 6 subpoena was plainly removable and removed on a timely basis, this means that this Court would have to address Respondent's arguments that the D.C. Court of Appeals and its adjuncts have no subject jurisdiction to issue the subpoena in light of objections such as the separation of powers and the inapplicability of Section 530B and its implementing regulations, among other legal defenses, including but not limited to immunity. Any such ruling on the District's power to issue the October 6 subpoena would inherently bind ODC

"generate[s] an enforcement proceeding." Instead, the October 6 subpoena has been "issued," an event Section 1442(d)(1) defines as a removable "civil action" when read with Section 1446(b)(1). Such removals are timely if done within 30 days, which was done here since it was removed 11 days after service of the subpoena.

Critically, however, ODC entirely ignores the last sentence of Section 1442(d)(1), which states: "If removal is sought for a proceeding described in the previous sentence [which allows removal of subpoena "sought or issued"], and there is no other basis for removal, only that proceeding may be removed to the district court." ODC argues that removal of the subpoena itself is all that would be proper. But that is not what the second sentence of Section 1442(d)(1) says occurs in all instances. It instead says that a subpoena (and nothing else, *i.e.*, no other part of the case) can be removed "***if there is no other basis for removal***." But there is another basis for removal here: Section 1441(a) due to the existence of a federal question as a result of the complete preemption doctrine. Hence, in order to avoid removal ***of the entire action*** in light of Section 1441(d)(1) (not just the subpoena standing alone, which ODC essentially concedes is proper), ODC must also win the argument that the removal on the grounds of the complete preemption doctrine was improper. *See* Notice of Removal at ¶¶ 57-60. Thus, it is to the propriety of the Section 1441(a) removal governed by the timeliness provision in Section 1446(b)(1) that we now turn.

C.    REMOVAL ON FEDERAL QUESTION GROUNDS IN LIGHT OF COMPLETE PREEMPTION WAS PROPER AND TIMELY.

Respondent is well aware of the well-pleaded complaint rule. *See, e.g., Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987), *cited in* Motion to Remand at ¶ 9. Under this rule, if a plaintiff,

---

and, if jurisdiction is found ***not*** to exist, the authority to conduct other proceedings in the local District process would be nullified.

for instance, brings a state tort action that a defendant argues is preempted in ordinary terms by supreme federal law, and that is the only possible ground for removal, then removal fails under Section 1441 because there is no federal question presented on the face of the relevant complaint initiating the civil action.

This ignores that Respondent did not argue that he benefitted here merely from an ordinary preemption defense. Rather, Respondent argued that when "complete preemption" applies, removal on federal-question grounds using Section 1441 is still proper. *See* Dkt. #1 at ¶¶ 60-66, 70-73. The Supreme Court explained that rule in *Caterpillar* as follows:

> There does exist, however, an "independent corollary" to the well-pleaded complaint rule, *id.*, at 22 [*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983)], known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co.* [*v. Taylor*, 481 U.S. 58,] 65 [(1987)].

*Caterpillar*, 482 U.S. at 393.

Note first that ODC is entirely silent on the doctrine of complete preemption. Its only response is implicit, to cite page 399 of *Caterpillar*, where the Supreme Court held that federal labor law does not completely preempt a state law breach of individual employment contracts claim. *See also Caterpillar*, 482 U.S. at 394-98. But this holding avails ODC not at all because its disciplinary charges are obviously not individual breach of contract claims premised on state law. Rather, the Charges are an attempt to use Section 530B to regulate federal lawyers.

The regulation of lawyers employed by the U.S. Justice Department was not historically within the States' sphere of power (even assuming that the District is to be treated as a State under Section 530B, which we have argued is not the case). And this is especially true as to Senate-confirmed Justice Department lawyers like Respondent who were not wielding authority granted to them by a District license to practice law while in federal service but by Presidential appointment

and commission pursuant to the powers of the Executive Branch and the advice and consent of the Senate.

As the Justice Department's Office of Legal Counsel has noted:

The activities of the federal government are presumptively free from state regulation, unless Congress has clearly authorized state regulation in a specific area. *See Hancock v. Train*, 426 U.S. 167, 178-79 (1976). State laws or court rules regulating the conduct of employees of the United States in the performance of their official duties constitute regulation of the activities of the federal government itself and are therefore also presumptively invalid under this rule.

Ralph W. Tarr, Acting Ass't Attorney General, Office of Legal Counsel, 9 OLC Ops. 71, 72 (Aug. 2, 1985), *available at* https://tinyurl.com/bddwz7b5  (last visited Nov. 4, 2022).[8]

In other words, the regulation of Justice Department lawyers starts out as a sphere in federal hands only, not in the hands of state or local governments. To alter that allocation of power, there must be a clear statement delegating the authority to regulate Justice Department lawyers to States and localities. That is the exact opposite of preemption analysis, which presumes the validity of state regulation and requires sufficient evidence of congressional or federal regulatory intent to override such state regulation. *See, e.g., Davis v. World Savings Bank, FSB*, 806 F. Supp. 2d 159 (D.D.C. 2011) ("While ordinarily there is a presumption against preemption over state police powers, this presumption does not apply when there has been a history of significant federal presence, such as in the area of national banking.").

There has always been a significant federal presence in regulating federal attorneys because to even allow any state regulation of federal attorneys would run afoul of the rule of *Hancock* that

---

[8] *See also* John M. Harmon, Ass't Attorney General, Office of Legal Counsel, 4B OLC Ops. 576, 577 (Apr. 18, 1980), *available at* https://www.justice.gov/file/24451/download (last visited Nov. 4, 2022) ("We conclude that federal law enforcement activities are limited only by relevant constitutional and statutory provisions ….") ("A strong, and we believe persuasive, argument may be lodged against any attempt by a state bar association to impose sanctions on a government attorney who is acting lawfully and in pursuance of his federal law enforcement responsibilities.").

a clear statement is required to authorize such regulation in the first place. Here, ODC is trying to regulate how legal advice is given to the President, the Acting Attorney General, and the Principal Associate Deputy Attorney General about the execution of core Article II Executive Branch power. This is not a matter over which any state courts could even plausibly assert inherent power. Thus, some topics that on the surface seem within the sphere of state law regulation, are, depending on context, inherently controlled by federal law alone. *See, e.g.,* "*Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 675 (1974) (state-law complaint that alleges a present right to possession of Indian tribal lands necessarily 'asserts a present right to possession under federal law,' and is thus completely pre-empted and arises under federal law."), *quoted in Caterpillar*, 482 U.S. at 393 n.8.

In order to protect the significant interests embodied in the Take Care Clause, Opinion Clause, and separation of powers here (*i.e.,* recognizing that the District is a creature of Article I attempting to insert itself here into Article II Executive Branch deliberations that occurred during the Trump Administration at the insistence of Senator Durbin), this Court should recognize that the removal is proper under the complete-preemption doctrine. For it would compound the affront to the exclusivity of the federal sphere at issue if a high-ranking federal officer had to answer in local District tribunals for authorized conduct under federal statute (28 U.S.C. § 506 (establishing Assistant Attorney Generals)) and the U.S. Constitution.[9]

This leaves the issue of whether the civil removal on federal question grounds in light of the complete-preemption "corollary," as the Supreme Court calls it in *Caterpillar*, was timely or

---

[9] Respondent notes that ODC's response on the issue of complete preemption was almost entirely absent, when the response on that issue should have been fully developed in the opening Motion to Remand. Hence, if ODC tries to further develop a response in its reply brief, Respondent reserves the right to seek leave to file a sur-reply on this subject.

not. Respondent submits that it was. The issue of the timeliness of the civil removal of the whole case is dealt with in the Notice of Removal at ¶¶ 16-19. Additionally, our arguments in the D.C. Court of Appeals and its adjuncts explain that the Board and Hearing Committee Twelve had no plausible jurisdiction over the Charges until September 15, 2022, when the D.C. Court of Appeals dismissed as moot ODC's pending motion to enforce the first subpoena and divestiture of jurisdiction in the lower bodies ended. *See* Dkt. # 1-20 pp. 9-14; # 1-42 pp. 6-7; # 1-75 pp. 2-5; and # 1-77 pp. 6-10. We incorporate those arguments by reference.

ODC's response is anemic, arguing that the September 15, 2022 date is "concocted." Yet ODC entirely ignores the text of Section 1446(c) (emphasis added), on which we stood and continue to stand: "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper from which it may first be ascertained that the case is one which is or has become removable*." The end of appellate jurisdiction with its inherent divestiture of lower D.C. Court of Appeals adjunct panel jurisdiction is the new event from which it "may first be ascertained that the case is one which is or has become removable."

## VII.   ALLEGATIONS THAT RESPONDENT HAS SOUGHT DELAY ARE NOT RELEVANT TO WHETHER THE ACTION SHOULD BE REMANDED.

In section III of its Motion to Remand, ODC devotes five pages to inveighing against what it characterizes as Respondent's delay tactics. While virtually everything ODC complains about is the result of its own lengthy list of procedural missteps and mistakes, the point for this Opposition to the Motion to Remand is that none of it has any relevance to removal or ODC's call for a remand as to everything other than the October 6 subpoena. We are puzzled that Disciplinary Counsel takes such umbrage that Respondent has insisted on proper service of subpoenas and has stoutly asserted the many fundamental constitutional, statutory, and administrative law deficiencies of the

subpoenas and the Charges in this case, many of which appear to be unfamiliar to ODC, though they are clearly relevant to try to rebut a species of bar discipline that has never been seen or heard of before.

But we are even more puzzled that the case was docketed in the first place and that charges were filed in the second place. ODC has no business sticking its nose into the Acting Attorney General's conference room or email inbox to review draft documents, let alone interjecting itself into Oval Office deliberations between a group of seven lawyers and the President. ODC simply cannot intrude into confidential deliberations about core unreviewable Article II authorities regarding proposals that the President did not authorize to leave the confines of the Executive Branch. If anything should result in an ODC inquiry, it should be how word of a January 3, 2021 Oval Office meeting became the subject of anonymous leaks to the *New York Times*. Confidential internal debates about a letter never sent is not the stuff of a bar discipline case, whether it occurs at the top of the Executive Branch or in a small-town divorce practice.

For all of these reasons, this case is a perfect example of why the protections of the federal officer removal statute are required to ensure that a significant, Senate-confirmed federal officer obtains review and resolution of the disputes at issue by an Article III court beginning with this one.

Respectfully submitted this 4th day of November 2022.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

/s/ Harry W. MacDougald
Harry W. MacDougald
Georgia Bar No. 463076
Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this Opposition to Motion to Remand by filing with the Court's electronic filing system and by email addressed to:

> Hamilton P. Fox, Esq.
> Jason P. Horrell, Esq.
> Office of Disciplinary Counsel
> Building A, Room 117
> 515 5th Street NW
> Washington DC 20001
> foxp@dcodc.org
> horrellj@dcodc.org

This 4th day of November 2022.

/s/ Harry W. MacDougald
Charles Burnham
Georgia Bar No. 463076

Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
*Admitted Pro Hac Vice*