IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:22-mc-00117-RC<br>(Related Case No. 1:22-mc-00096-RC) |
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:22-mc-00096-RC<br>(Related Case No. 1:22-mc-00117-RC) |

## OPPOSITION TO SECOND MOTION TO REMAND AND CROSS MOTION TO CONSOLIDATE

Jeffrey B. Clark, Respondent in the above-entitled matter, hereby opposes the second motion to remand filed by the D.C. Bar's Office of Disciplinary Counsel ("ODC"), and cross-moves to consolidate this case with the pending related case *In Re: Jeffrey B. Clark*, No. 1:22-mc-00096-RC (the "Related Case") as follows:

## INTRODUCTION

Mr. Clark, a former senior official of the U.S. Department of Justice, removed the D.C. Bar's disciplinary case against him to this Court in the Related Case. That removal specifically included a document subpoena served upon him by ODC on October 6, 2022. Mr. Clark served a set of objections to the subpoena. ***After removal of this subpoena in the Related Case on October 16, 2022***, and prior to any decision by this Court to remand, and notwithstanding the automatic stay imposed on the District of Columbia Court of

Appeals ("DCCA") and its adjuncts by 28 U.S.C. § 1446(d), ODC nevertheless moved in the DCCA to enforce the subpoena. Mr. Clark then filed a timely removal of the motion to enforce, which became this case. *See* 28 U.S.C. § 1455(b)(2) ("a second notice may be filed only on grounds not existing at the time of the original notice").[1] Contrary to ODC's contentions, all of the arguments presented for removal are well-taken and certainly not interposed for delay. Finally, this case should be consolidated with the Related Case because the issues, facts, and parties are all the same.

## ARGUMENT

### I.   THE MOTION TO ENFORCE THE SUBPOENA IS SUBJECT TO REMOVAL.

ODC contends that Bar disciplinary proceedings are not subject to removal under the federal officer removal statute, 28 U.S.C. § 1442, based on a pair of related contentions: (1) that Congress in 28 U.S.C. § 530B gave the DCCA and its administrative bodies disciplinary jurisdiction over federal attorneys licensed in D.C.; and (2) that the adoption of this statute impliedly repealed the federal officer removal statute. Both of these arguments are foreclosed by the plain language of 28 U.S.C. § 530B, the evolution of amendments to and legislative history of Section 1442, as well as black-letter rules of statutory construction.

---

[1] Here, there was no motion to enforce the subpoena in the DCCA pending on October 16, 2022—the time of the original notice of removal. Those grounds thus arose only after the first removal was effectuated.

1.    28 U.S.C. § 530B Cannot be Judicially Amended to Make it Applicable to the District of Columbia.

First, as we have argued in the Related Case, Section 530B grants disciplinary jurisdiction over federal attorneys to States but makes no reference to granting any such authority to the District of Columbia. Congress has demonstrated in many contexts— including in subsection (d)(5) of the federal officer removal statute itself—that when it wants to include the District of Columbia in a statute it does so explicitly, either in a definitional code section, or by use of phrases like "States, territories or the District of Columbia." In fact, in the very Omnibus legislation that adopted what is now Section 530B, Congress repeatedly uses exactly such terms, making it all the more conspicuous that there are no such terms specifying the inclusion of the District of Columbia in Section 530B itself. The *expressio unius* canon thus clearly applies.

ODC denigrates the obvious import of the omission of the District of Columbia from the statute as a "strained argument." Dkt. #4, p. 2, ¶ 2. Reading the plain language of statutes to mean what they say and say what they mean is not a "strained argument." It is embracing the most fundamental rule of statutory interpretation.

ODC contends the plain language of the statute does not mean what it says because Mr. Clark "advances no plausible rationale" as to why Congress would exclude D.C. from the reach of Section 530B. As a matter of statutory interpretation, this is completely backwards. It is **ODC's burden** to show why the plain language should not be given its natural and obvious meaning, and thus why the Court should take the

extraordinary step of editing the statute to insert an omitted term: "the District of Columbia." Apart from this erroneous suggestion, ODC makes no other effort to carry its burden. Moreover, any attempt to do so would be foreclosed by recent and controlling decisions of the U.S. Supreme Court:

> We decline the Government's invitation to add an extra clause to the text of § 16913(a). As we long ago remarked in another context, "[w]hat the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, ***presumably by inadvertence***, may be included within its scope. ***To supply omissions transcends the judicial function.***" *Iselin v. United States,* 270 U.S. 245, 251 (1926). Just so here.

*Nichols v. United States*, 578 U.S. 104, 110 (2016) (emphasis added). *Nichols* and *Iselin* make even a mistake by Congress irrelevant.[2] The same rule was applied in *Rotkiske v. Klemm,* a 2019 decision of the Supreme Court:

> It is a fundamental principle of statutory interpretation that "absent provision[s] cannot be supplied by the courts." A. Scalia & B. Garner, READING

---

[2] This further invalidates ODC's attempt to shift a burden to us to show a particular "plausible rationale" why Congress excluded the District from its delegation of disciplinary authority. *Iselin* teaches that even if Congress left the District out of Section 530B by accident, Judges cannot supply what Congress overlooked. The remedy for ODC is to lobby Congress to insert the District into Section 530B, which has not occurred.

In any event, self-evident rationales for Congress to treat the District differently abound. Consider just these three: (1) the District is the seat of the federal government and subjecting national Executive Branch activities to local bar second-guessing because of the happenstance of geography would make little constitutional sense and runs contrary to placing the Nation's capital in a non-State; (2) District government is inherently controlled by Congress and so denying the relevant disciplinary authority to the District avoids a serious and unique separation of powers issue; and (3) Section 530B was adopted largely with state-by-state U.S. Attorneys and their assistants in mind, not with the regulation of Main Justice lawyers in Washington, D.C. making national legal decisions.

LAW: THE INTERPRETATION OF LEGAL TEXTS 94 (2012). To do so "'is not a construction of a statute, but, in effect, an enlargement of it by the court.'" *Nichols v. United States*, 578 U.S. ——, ——, 136 S.Ct. 1113, 1118 (2016) (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)).

> Atextual judicial supplementation is ***particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision***.

*Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (emphasis added). The rule was applied again in 2020 in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020). Three U.S. Supreme Court cases from just the last six years ought to be sufficient to establish the point.

The statutory interpretation question in this case is at least as clear as that in *Rotkiske*. Here, the omitted language that would include the District of Columbia in Section 530B was found in several other provisions ***in the very same piece of legislation***. *Compare* H.R. Conf. Rep. No. 105–825 (Oct. 19, 1998), Title VIII, p. 123 (which does not include the District of Columbia) *with id*. at pp. 8, 9, 752, 865, 890, and 902 which do.[3] When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S.

---

[3] In the finally adopted version of this legislation, Public Law 105-277, 112 Stat. 2681 (Oct. 21, 1998), the parallel page references are 112 Stat. 2681-118 which does not refer to the District of Columbia, vs. pp. 6, 7, 726, 836, 860 and 871, which do. In all contexts, the term "District of Columbia" appears 456 times in the conference report and 391 times in the Public Law. The bill included annual appropriations for D.C. for 1999. 112 Stat. 2681-121. This was not a bill in which Congress forgot about the District of Columbia.

16, 23 (1983) (cleaned up).

Instead of mentioning this controlling adverse authority, ODC argues that "the Attorney General, pursuant to his delegated rulemaking authority, 28 U.S.C. § 530B(b) has determined that the District of Columbia is included within the meaning of 'State.'" Dkt. 4, p. 3, ¶ 2. Here, ODC once more ignores settled rules of administrative law and statutory interpretation, and runs headlong into the contrary black-letter rule of *Chevron* step one. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction, and must reject administrative constructions which are contrary to clear congressional intent. … If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law, and must be given effect." (cleaned up). The Attorney General, no matter how devoutly that officer may wish it, cannot by regulation grant the District of Columbia disciplinary authority falling clearly beyond the plain-language metes and bounds of the statute.

ODC's argument that Section 530B should be judicially amended by inserting "the District of Columbia" where Congress omitted it is utterly devoid of merit.

2.     28 U.S.C. § 530B Does Not Impliedly Repeal the Federal Officer Removal Statute, 28 U.S.C. § 1442.

ODC also suggests in haphazard fashion that Section 530B, having been adopted *after* the removal statutes, "clarif[ied] that disciplinary matters are an exception to removal." Dkt. # 4, p. 5, ¶ 6. In other words, ODC argues that Section 530B impliedly

repealed the federal officer removal statute that the Supreme Court has repeatedly and expressly held applies to "all cases" against federal officers for or because of their conduct in federal service. *See Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). ("The federal officer removal statute is not 'narrow' or 'limited.' *Colorado v. Symes*, 286 U.S. 510, 517 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law.")

For this argument, ODC again relies solely upon its own *ex cathedra* pronouncements, and cites no supporting legal authority whatsoever. Additionally, there are several fundamental errors in this argument.

***First***, Section 530B was adopted in 1998, in Pub. L. 105-277, 112 Stat. 2681-118 (Oct. 21, 1998). But the federal officer removal statute in Section 1442 was not static as of that date. Indeed, since 1998, Congress has passed the Removal Clarification Act of 2011, making multiple changes to the statute, none of which carve out state or local bar disciplinary authority as a non-removable topic. *See* Pub. L. 112-51, 136 Stat. 2114 (Nov. 9, 2011). The Committee Report for this law reiterates the constitutional necessity of allowing federal officers to remove "all cases," including subpoenas, against them:

> The purpose of the law is to take from State courts the indefeasible power to hold a Federal officer or agent criminally or civilly liable for an act allegedly performed in the execution of their Federal duties. This does not mean Federal officers can break the law; it just means that these cases are transferred to U.S. district court for consideration. Congress wrote the statute because it deems the right to remove under these conditions essential to the integrity and preeminence of the Federal Government within its realm of authority. Federal officers or agents, including Members of Congress, should not be forced to

answer for conduct asserted within their Federal duties in a state forum that invites ''local interests or prejudice'' to color outcomes. In the absence of this constitutionally based statutory protection, Federal officers, including Members of Congress, could be subject to political harassment, and Federal operations generally would be needlessly hampered.

House Report: No. 112–17, pt. 1, p. 3.

The Removal Clarification Act of 2011 overruled certain cases holding that pre-suit discovery was not subject to removal under Section 1442 because it was not a "cause of action." The declared intent for this legislative gap-filling negates by implication ODC's analogous argument that Bar disciplinary cases exist in a netherworld between civil and criminal actions that is beyond the reach of Section 1442. The Removal Clarification Act of 2011 was adopted to overcome this sort of casuistical argument for avoiding federal officer removal.

The 2013 amendment to Section 1442 replaced subsection (c) and moved its language to a new subsection (d) with several other new provisions. *See* Pub. L. 112-239, 126 Stat. 1969, § 1087 (Jan. 2, 2013). This amendment is notable as to the issues presented by both motions to remand in that it added the language now found in Section 1442(d)(5) defining "State" for purposes of the code section to include the District of Columbia. It is indisputable from this amendment that Congress specifically intended to make Section 1442 removal available to federal officers with respect to actions commenced in the courts of the District of Columbia or its adjuncts such as the Board of Professional Responsibility ("Board") and its Hearing Committees.

In short, the amendments of Section 1442 in 2011 and 2013 to expand and reiterate the right of federal officer removal conclusively refute ODC's unsupported conjecture that 28 U.S.C. § 530B's adoption in 1998 impliedly repealed previously adopted versions of Section 1442 or somehow placed Bar disciplinary actions beyond the reach of the federal officer removal statute. ODC never mentions either of these amendments.

ODC also, and again, makes no mention whatsoever of a robust and clearly applicable canon of statutory construction that forecloses its implied-repeal argument:

> We have repeatedly stated, however, that absent "a clearly expressed congressional intention," *Morton v. Mancari,* 417 U.S. 535, 551 (1974), **"repeals by implication are not favored,"** *Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Comm'n,* 393 U.S. 186, 193 (1968). ***An implied repeal will only be found where provisions in two statutes are in "irreconcilable conflict," or where the latter Act covers the whole subject of the earlier one and "is clearly intended as a substitute."*** *Posadas v. National City Bank,* 296 U.S. 497, 503 (1936). So while there is a strong argument that § 2c was a substitute for § 2a(c), we think the better answer is that § 2a(c)—where what it prescribes is constitutional (as it is with regard to paragraph (5))—continues to apply.

*Branch v. Smith*, 538 U.S. 254, 273 (2003) (emphasis added).

ODC does not attempt to satisfy either of the requirements of repeal by implication (irreconcilable conflict or a whole-subject substitution) and has therefore forfeited any such argument. Moreover, there is no conflict, much less an irreconcilable one, between Section 1442 and Section 530B. Removal is not an adjudication on the merits. It simply causes the case to be heard in federal court rather than in the forum from which it was removed. Illustrating the point, state disciplinary proceedings against a U.S. Attorney

were removed to federal court in *Kolibash v. Committee on Legal Ethics of the West Virginia Bar*, 872 F.2d 571 (4th Cir. 1989), under the federal officer removal statute.

Nor is there any basis for contending that Section 530B completely covers the whole subject matter of Section 1442. The federal officer removal statute shields the supremacy of the federal government against encroachment and incursions by state and local governments, and Section 530B does not and could not purport to overturn such a constitutionally driven policy. "It scarcely need be said that such measures [*i.e.,* the federal officer removal statute] are to be liberally construed to give full effect to the purposes for which they were enacted." *Colorado* , 286 U.S. at 517. "To repeat, the central and grave concern of the statute is that a Federal officer or agent shall not be forced to answer for conduct assertedly within his duties in any but a Federal forum." *North Carolina v. Carr*, 386 F.2d 129, 131 (4th Cir. 1967); "The federal officer removal statute is not 'narrow' or 'limited.'" *Willingham*, 395 U.S. at 406 (citing *Colorado*). "In cases like this one, Congress has decided that federal officers, and indeed the federal government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* at 407. *See also Tennessee v. Davis*, 100 U.S. 257, 262-63 (1879).

## II.   THE FEDERAL OFFICER REMOVAL STATUTE APPLIES.

ODC also asserts, with equally dubious logic, that the Charges and its new motion to enforce the subpoena against Mr. Clark fall outside the scope of the federal officer

removal statute because Bar discipline is a matter of state law (though again the District is not a "State"), as if that settled the question. Dkt. # 4, pp. 3-4, ¶ 4. It is both absurd and false for ODC to suggest that the Charges do not relate to Mr. Clark's conduct under the color of his federal office merely because the Charges were framed to sound only in local law. The whole point of federal officer removal is to provide a federal forum for adjudication of civil and criminal claims against federal officers arising from or related to conduct under the color of their office that are asserted in a ***State*** court, with "State" specifically defined by 28 U.S.C. § 1442(d)(5)—added in the 2011 amendments—to include the District of Columbia. ODC's argument cannot survive any degree of contact with the rationales for federal officer removal expressed in such cases as *Colorado*, *Willingham*, and *Tennessee*—among others. Mr. Clark is charged with misconduct in executing core federal responsibilities as a double Assistant Attorney General. The applicability of the federal officer removal statute to such a situation is plain.

III.   **DCCA AND ITS DISCIPLINARY ADJUNCTS ARE COMPLETELY PREEMPTED FROM REGULATING THE CONFIDENTIAL INTERNAL DELIBERATIONS OF JUSTICE DEPARTMENT ATTORNEYS.**

The foregoing statutory analysis shows that Congress has not granted any disciplinary authority to the DCCA over the confidential internal deliberations of DOJ attorneys. Instead, the field is completely preempted from regulation by the DCCA, providing an additional basis for removal pursuant to 28 U.S.C. § 1441. *See* Dkt. # 1, pp. 22-27.

ODC's lack of jurisdiction over the charged conduct is demonstrated by the many authorities marshalled by Mr. Clark in his Notice of Removal in this case, and in the Related Case, and in his response to the motion to remand in the Related Case. A part of that preemption argument is that both 28 U.S.C. § 530B, and the implementing regulations in 28 C.F.R. § 77 *et seq.* (even if they granted authority to DCCA in this case) erect a requirement that the discipline imposed be similar to that ordinarily applied to the particular conduct when committed by other attorneys in the jurisdiction. It is a problem for ODC, therefore, that this case has no remotely similar precedent, which ODC concedes. ODC attempts to solve this problem by retreating to a highly abstract level of generality to argue that other federal attorneys have been disciplined by the D.C. Bar for conduct involving dishonesty. But as presented in detail in briefing in the Related Case, *see* Related Case Dkt. # 4, pp. 16-18 and Dkt. # 10, pp. 11-12, these were all cases of "drive by jurisdiction" in which jurisdiction was neither contested nor decided, and which therefore have no precedential value. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (Scalia, J.) ("We have often said that drive-by jurisdictional rulings of this sort … have no precedential effect.").[4]

---

[4] Parenthetically, we note that the Hearing Committee assigned to resolve ODC's 2020 election-related charges against Rudolph Giuliani were heard last week before a different Hearing Committee. *See In re Rudolph Giuliani,* No. 22-BD-027 (Board Hrg. Comm.) (pending). These proceedings were live streamed on YouTube but the videos were marked "private" after the hearings had concluded or else we would provide here video pinpoint citations. During the testimony by ODC's own expert, Daniel Ortiz of the

Moreover, the cases of this nature on which ODC relies were for dishonesty before a court (*Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001)), or in testimony to Congress (*In re Abrams*, 689 A.2d 6 (D.C. 1997) (en banc), *cert. denied*, 521 U.S. 1121 (1997)), or where the lawyer admitted the underlying criminal misconduct (*In re Berger*, 927 A.2d 1032 (D.C. 2007)). The cases against Presidents Nixon and Clinton were brought by state bars, not the District of Columbia Bar. In the case of President Clinton, the misconduct included perjury in a deposition with a U.S. District Court judge at his elbow. In the case of President Nixon, he failed to timely contest the Bar's allegations that he had engaged in obstruction of justice in a federal criminal investigation and other dishonest conduct. Mr. Clark does not need to establish in this case that bar discipline in such cases was jurisdictionally improper. What is clear, and necessary to see in this context, is that the distinctions between the fact patterns of these cases and the facts of the case at bar cannot be blurred by zooming out to a uselessly high level of generality.

ODC's argument would erase the specific textual requirement of Section 530B that disciplinary authority is conferred (on States) over federal attorneys only "to the same

---

University of Virginia Law School (https://www.law.virginia.edu/faculty/profile/dro/1196477), Professor Ortiz specifically emphasized Justice Scalia's holding against "drive-by jurisdictional rulings" to argue that certain jurisdictional arguments by Mr. Giuliani were not supported by adequate legal authority. We point this out because, of course, ODC cannot be permitted to blow hot and cold on the validity or vitality of the *Steel Company* rule.

extent and in the same manner as other attorneys in that State," and of 28 C.F.R. §

77.2(j)(2), that it simply does not apply to "any jurisdiction that would not ***ordinarily***

***apply*** its rules of ethical conduct to ***particular conduct or activity*** by the attorney."

(Emphasis added). The requirement in these provisions that there be comparable

precedents is apparently designed to prevent local bodies from using disciplinary

authority to single out federal attorneys—the same policy animating federal officer

removal in the first place. These provisions thus must be given their intended effect.

In light of these requirements, it is of pivotal significance that it is ***totally unheard***

***of*** to discipline a lawyer for "attempted dishonesty" in a confidential draft letter that was

discussed, decided against by the ultimate client authority, and never sent. This is true

not just for a senior legal advisor to the President of the United States with respect to his

core unreviewable Article II law enforcement authorities—deliberations that are shielded

from bar regulation by the Supremacy Clause and the separation of powers—but also for

any lawyer anywhere ***in any context***, even ones lacking such constitutional protections.

Insofar as anyone can tell, no lawyer anywhere in the U.S. has ever been disciplined over

a confidential draft that never left the office, whether they were a double Assistant

Attorney General in the Justice Department, or a divorce, personal injury, workers

compensation, insurance defense, or employment lawyer. Neither the confidential filing

cabinets housing shelved legal options nor the waste baskets of America's lawyers serve

as evidence rooms for an infinity of potential bar violations.

Another disqualifying dissimilarity between this case and any prior pattern of cases is that ODC is breaking entirely new ground by charging an attempted violation of Rule 8.4(d), which prohibits substantial interference with the administration of justice, where the essential elements of such a charge are lacking as a matter of law. Among other things, the charged conduct does not "bear[] *directly* on the judicial process with respect to an ***identifiable case or tribunal***," an essential element of a Rule 8.4(d) violation according to *In re Yelverton*, 105 A.3d 413, 426 (D.C. 2014) (emphasis added). Here there was no identifiable case or tribunal, and a draft letter that was not sent—a literal non-event—cannot "bear directly" on an unidentified and non-existent case or tribunal. This ODC charge therefore rests on a compound nullity. In other words, the DC Bar does not normally discipline attorneys for particular conduct or activity that as a matter of law does not violate a Bar rule and so cannot do so here, where ODC must, at best, labor under special restrictions imposed by Section 530B and its regulations designed to protect federal attorneys in the Executive Branch from seeing their federal constitutional policy discretion subjected to political lawfare in the guise of local bar regulation.

ODC claims that "[t]he charges in this matter do not question or challenge the internal deliberations of the Executive Branch. They challenge only Respondent's insistence that the Department of Justice issue a letter containing false statements, after he had been told the statements were false, and his attempt to use coercion to bring about that result." Dkt. # 4, p. 4, ¶ 3.

We will respond to the allegations of falsity on the merits when/if it is the appropriate and necessary procedural time to do so. For present purposes, we point out here that even under this formulation of what the Charges seek to do (since other filings in the Related Case and in this case have explained that ODC's theories have been a moving target), it is inherently true that adjudicating this action will require plunging into "internal deliberations of the Executive Branch." This is true for several reasons:

- *First*, the internal deliberations that led to the Senate Judiciary Committee inquiry (in turn leading to Senator Durbin's complaint initiating the Charges against Mr. Clark) are public only because of leaks to the *New York Times*. The description in those leaks of the relevant January 3, 2021 Oval Office meeting **could only have come from lawyers who were present**. The genesis of how ODC knows about this meeting and lead-up meetings inside Main Justice in Washington, D.C. is unethical leaks **from lawyers** other than Mr. Clark.[5]

- *Second*, ODC intends to call two DOJ witnesses (Messrs. Rosen and Donoghue), the then-number one and then-number two DOJ officials who (a) have testified to the Senate Judiciary Committee and House Select Committee on January 6 precisely about internal DOJ and Oval Office deliberations.

- *Third*, to defend himself on the facts (though not as a matter of law), including on whether he relied on legal and factual arguments rather than on any purported "coercion," Mr. Clark would inherently be forced to divulge his attorney thought processes while inside the Executive Branch, what materials and research he conducted with subordinates, his conversations with the former President and White House Counsel lawyers, and what positions he took contrary to Messrs. Rosen and Donoghue, among others.

In light of just these three points, it would be impossible for this case to do anything **other than** intrude deeply into the sanctums of Oval Office and Main Justice deliberations.

---

[5] And yet note, to our knowledge, ODC has made no effort to investigate these unethical leaks by lawyers.

**IV.    THE HYBRID NATURE OF BAR DISCIPLINARY PROCEEDINGS REQUIRES HARMONIZING THE PROCEDURAL PROVISIONS OF THE REMOVAL STATUTES AS APPLIED TO FEDERAL OFFICER REMOVALS.**

ODC previously argued that Section 1442 applied only to civil and criminal cases, and that Bar disciplinary proceedings were neither civil nor criminal, but being "quasi criminal" instead were therefore not subject to federal officer removal at all. This argument founders on the rocks of the fundamental purpose of Section 1442. The Supreme Court has made crystal clear "that the removal statute 'is *broad enough to cover all cases* where federal officers can raise a colorable defense arising out of their duty to enforce federal law.... In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.' [*Willingham v. Morgan,*] 395 U.S. [402,] 406-07 [(1969)]." *Mesa v. California*, 489 U.S. 121, 133 (1989) (emphasis added).

Noting the hybrid nature of Bar disciplinary proceedings as quasi-criminal, we have urged that the Court harmonize the removal statutes' treatment of civil and criminal cases. *See* Dkt. # 1, ¶¶ 39-49, 60, 64-60. ODC offers a cursory response to this argument by contending, contrary to the controlling authority on the question, *Artis*, 883 A.2d 85, 101 (D.C. 2005), that the case is either *all civil*, in which case removal was untimely, or *all criminal*, in which case this matter can proceed in the DCCA's adjunct bodies short of the point of conviction (in the absence of a ruling by this Court overruling ODC's remand motion). *See* Dkt. # 4, p. 4, ¶ 5. ODC's flip and simplistic argument should be rejected

because (a) its either-or argument is new and contrary to its original argument, which was that bar discipline is *neither* criminal nor civil; and (b) its either-or argument is not a response to our argument that D.C. bar discipline proceedings are *both* criminal *and* civil.

ODC makes no argument that this second removal is untimely as to the post-first removal motion to enforce the subpoena that ODC filed in the DCCA.

Mr. Clark has from inception of the first removal pointed out that the hybrid nature of Bar disciplinary proceedings requires harmonization of the procedural removal statute for criminal actions (Section 1455) with the procedural removal statute for civil actions (Section 1446). The only way to harmonize those two statutes, both of which apply to this removal due to its hybrid nature, is for the State Court—here the Deemed-State Court (*i.e.*, the DCCA and its adjuncts) to be precluded from proceeding further with the matter "unless and until the case is remanded." *See, e.g., United States v. Fausto*, 484 U.S. 439, 453 (1988) ("we must engage in the classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination") (cleaned up). Contrary to ODC's allegations that we are picking and choosing only favorable provisions from amongst the civil and criminal procedural removal statutes, respectively, we are well aware this is not how harmonization works. *See, e.g., Garey v. Langley*, No.: 2:17-cv-00117-LPR, 2021 WL 4150602, *19 (E.D. Ark. Sept. 13, 2021) ("The harmonious construction canon is not license to artificially and unnaturally narrow or expand the scope of either provision.").

The interpretation we offer as the best harmonization—applying Section 1446(d)'s automatic stay—would cause the least disturbance to the respective statutes, taken together. Not staying the matter in "state' court (here the Deemed-State Court, the DCCA and its adjuncts) would ignore the partly civil nature of this case and thus utterly abrogate the protections of the automatic stay of Section 1446(d). There is no other way to interpret Section 1446(d) that leaves any, even small portion of it, still operative.

By contrast, our harmonization simply accelerates Section 1455(b)(5)'s application. For, make no mistake, the rules of what a State or Deemed-State Court can do in a civil case and a criminal case eventually self-harmonize or—better yet—converge. *See* Section 1455(b)(5) ("If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, ***which shall proceed no further***.") (emphasis added). Section 1446(b)'s civil-side rule simply reaches that same outcome faster—right from the point at which removal is effectuated.

If the rule for criminal cases is applied to the exclusion of the rule for civil cases, the rule for civil cases is destroyed, despite the partly civil nature of this case. By contrast, if the civil rule is observed, the criminal rule is not entirely overthrown, only held in limbo pending the decision on remand. If removal is permitted, then both the civil and criminal rules prohibit further proceeding in the "State" court and both will have been respected. *Compare* Section 1455(b)(5) *with* Section 1446(d).

ODC may respond: well, but ***your harmonization*** renders Section 1455(b)(3)

wholly superfluous. Note that that provision states that "[t]he filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded." ODC's argument fails to see that the duration of the period during which Section 1455(b)(3) applies is inherently variable and controlled by this Court. *See* 28 U.S.C. § 1455(b)(5) ("If the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and, after such hearing, shall make such disposition of the prosecution as justice shall require."). Thus, Section 1455(b)(3) does not inflexibly provide a defined period in which removed-from courts must be allowed to continue to exercise jurisdiction over a criminal case. This marks out the Section 1455(b)(3) rule as the one that can be relaxed while doing the least damage to the statutory structure concerning criminal case removals as compared to the damage done by ODC's proposed harmonization with Section 1446(d), which would amount to its absolute evisceration.

Accordingly, if a court fully respects the hybrid nature of this action, the path causing least violence to the two competing procedural removal provisions should lead to the holding that, if this case has been properly removed, it can proceed no further in the DCCA and its adjuncts (*i.e.,* the Deemed-State Court) unless and until it is remanded.

## CROSS-MOTION TO CONSOLIDATE

Pursuant to Federal Rule of Civil Procedure 42(a)(2), Mr. Clark asks the Court to

consolidate this case and the Related Case. In light of the removal in the Related Case of the overall action, including the subpoena, the motion to enforce that subpoena in the DCCA should never have been filed by ODC. But it was, necessitating this second removal. *See* 28 U.S.C. § 1455(b)(2) (allowing second removals). This second removal involves the same case with the same parties, on the same facts and triggering the same legal issues. The criteria for consolidation under Rule 42(a) are thus clearly satisfied. ("If actions before the court involve a common question of law or fact, the court may … (2) consolidate the actions"). Respondent further submits that there is no just or prudential reason for the Court to exercise its discretion not to consolidate the two pending cases.

## CONCLUSION

ODC asserts a series of half-baked arguments not supported by authority. These arguments are precluded by statutory plain language, legislative history, and the applicable canons of interpretation—all of which ODC ignores. The motion to remand is without merit and should be denied; consolidation should be granted.

Respectfully submitted this 12th day of December 2022.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

/s/ Harry W. MacDougald
Harry W. MacDougald
Georgia Bar No. 463076
Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
Admitted Pro Hac Vice in Case No. 1:22-mc-00096-RC

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this day served counsel for the opposing party with

a copy of this *Response to Second Motion to Remand and Cross Motion to Consolidate*

by filing with the Court's electronic filing system and by email addressed to:

> Hamilton P. Fox, Esq.
> Jason P. Horrell, Esq.
> Office of Disciplinary Counsel
> Building A, Room 117
> 515 5th Street NW
> Washington DC 20001
> foxp@dcodc.org
> horrellj@dcodc.org

This 12th day of December 2022.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com