IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:23-mc-00007-RC (Related Cases Nos. 1:22-mc-00096-RC & 1:22-mc-00117-RC) |
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:22-mc-00117-RC (Related Case Nos. 1:23-mc-00007-RC & 1:22-mc-00096-RC) |
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:22-mc-000096-RC (Related Cases No. 1:23-mc-0007-RC & 1:22-mc-00117-RC) |

## OPPOSITION TO THIRD MOTION TO REMAND AND CROSS MOTION TO CONSOLIDATE

Jeffrey B. Clark, Respondent in the above-entitled matter, hereby opposes the third

motion to remand filed by the D.C. Bar's Office of Disciplinary Counsel ("ODC"),[1] and

---

[1] ODC at first filed its Third Motion to Remand in the wrong case number—No. 22-dc-00117 (the Second Removal)—rather than in the proper case number for the Third Removal: No. 23-dc-00007. This arguably makes this brief due tomorrow and not today, but we filed today to avoid ODC's oft-repeated, yet wrong assertions that he is facing delay tactics.

cross-moves to consolidate this case with the pending related cases *In Re: Jeffrey B. Clark*, Nos. 1:22-mc-00096-RC (first removal) & 1:22-mc-00117-RC (second removal) (collectively the "Related Cases") as follows:

## INTRODUCTION

Mr. Clark, a former senior official of the U.S. Department of Justice, removed the D.C. Bar's disciplinary case against him to this Court in the first of the Related Cases (hereafter "First Removal"). That removal specifically included a document subpoena served upon him by ODC on October 6, 2022, to which Mr. Clark objected on numerous grounds.

***After removal of this subpoena in the Related Case on October 16, 2022***, and prior to any decision by this Court to remand, and notwithstanding the automatic stay imposed on the District of Columbia Court of Appeals ("DCCA") and its adjuncts by 28 U.S.C. § 1446(d), ODC nevertheless moved in the DCCA to enforce the subpoena. Mr. Clark then filed a timely removal of the motion to enforce (the second of the Related Cases, hereafter "Second Removal"). *See* 28 U.S.C. § 1455(b)(2) ("a second notice may be filed only on grounds not existing at the time of the original notice").[2]

Notwithstanding this, ODC tried to serve yet another subpoena on Mr. Clark two days after this past Christmas. In reliance on 28 U.S.C. § 1442(d)(1), Mr. Clark removed

---

[2] Here, there was no motion to enforce the subpoena in the DCCA pending on October 16, 2022—the time of the First Notice of Removal. Those grounds thus arose only after the first removal was effectuated.

the new subpoena to this Court in the present case (No. 23-mc-00007) (hereafter the "Third Removal"). ODC begins by objecting that this December 27, 2022 subpoena is not a "proceeding" because ODC had not yet moved to enforce the subpoena in the DCCA. Third Motion to Remand, Dkt. # 4 at 1. This flies in the face of Section 1442(d)(1) because that provision of federal law specifically provides that the "terms 'civil action' and 'criminal prosecution' include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, *including a subpoena for testimony or documents, is sought or issued*. (Emphasis added). Thus, contrary to ODC's claims, subpoenas are separately removable by federal officers like Mr. Clark whenever they are "issued," as here. A prior attempt at court enforcement is not required to remove a subpoena.

Additionally, while ODC strived mightily to press ahead with a factfinding hearing against Mr. Clark (effectively a trial), set for January 9, 2023[3] before the weighty jurisdictional barriers ODC faces could first be resolved, the DCCA put a stop to ODC's maneuvers in derogation of the prior two removals. Specifically, on January 17, 2023, the DCCA signaled to ODC that it should stop trying to litigate the case in DCCA-adjunct forums such as the Board of Professional Responsibility ("Board") or one of its Hearing Committees: "ORDERED that Disciplinary Counsel's motion to enforce its subpoena

---

[3] The now-mooted January 9, 2023 factual hearing before a Hearing Committee was scheduled *before* Respondent first removed this matter on October 17, 2022.

duces tecum [i.e., the October 6, 2022 subpoena] is held in abeyance until respondent's removal of this matter to the United States District Court for the District of Columbia has been resolved." Accordingly, Respondent did not act improperly under Section 1442(d)(1) or as a general matter when he removed the new December 27, 2022 subpoena to this Court.

Finally, contrary to ODC's contentions, all of the arguments presented for removal are well-taken and certainly not interposed for delay. As we have previously argued concerning our requested fusion of Case Numbers 22-mc-00096 and 22-mc-00117, this case should also be consolidated with the First and Second Removals because the issues, facts, and parties are all the same.

## BACKGROUND

The Second Removal, let alone the Third Removal, should never have been necessary. Respondent was forced to undertake these steps only because ODC kept trying to litigate the case in the local forum where the case originated. Respondent could simply not allow himself to fall victim to a potential ODC argument that was perhaps underway to be unveiled only at a later date that all traces of this case were not removed from the local forum to this Court. Hence, Respondent has been sure to remove every iteration of a covered local proceeding to this Court.

1.    The need for Respondent to remove another aspect of this case, *for a third time*, begins with an email Disciplinary Counsel Fox sent to undersigned counsel on

4

December 19, 2022, indicating that he was going to issue and then try to serve another subpoena for documents on Mr. Clark with a return date of January 9, 2023 (the day of a locally scheduled hearing that had already been mooted by both the First and the Second Removals). *See* Third Removal, Dkt. # 1-1 (Jan. 26, 2023).

2.      Four days later, on December 23, 2022, undersigned counsel refused to accept service of this forthcoming new subpoena, given the legal arguments made in the First and Second Removals, the fact of those removals, and their impact in stripping the local forum of any ability to proceed in derogation of the removals. *See id.* Dkt. # 1-2 (Jan. 26, 2023).

3.      Despite this, Mr. Fox insisted on issuing a subpoena on December 27, 2022 and then tried to serve it on Mr. Clark on this second evening after Christmas. Mr. Clark's son answered the door and relayed Mr. Clark's refusal to accept this new subpoena (consistent with the position already taken by his lawyers in prior correspondence with ODC) because it was not issued under this Court's authority but instead under the displaced authority of the local forum. *See id.* Dkt. # 1-3 (Jan. 26, 2023).

4.      Emails between opposing counsel continued later in the day on December 27, 2022. *See id.* Dkt. ## 1-4 & 1-5. Details appear in paragraphs 7 and 8 of the Third Removal. *See* Dkt. #1 at ¶¶ 7-8.

5.       On December 28, 2022, Disciplinary Counsel took the position that service was effective even though it was not in fact completed and no copy of the subpoena was

left at Respondent's residence. The email then for the first time attached a copy of the subpoena. The email was attached to the Third Notice of Removal. *See* Dkt. # 1-6. The unserved subpoena is attached thereto as well. *See id.* Dkt. # 1-7. This unserved subpoena will be referred to as the Third Subpoena. Mr. Fox's December 28, 2022 email indicated that despite the two prior removals, he was going to proceed with a hearing against Mr. Clark on January 9, 2023. *See* Dkt. # 1-6. Details on why Mr. Fox believes that the new subpoena issued December 27, 2022 was properly served are given in paragraph 10 of the Third Removal and the accompanying Exhibits. *See* Dkt. ## 1, 1-3, and 1-6. Needless to say, we do not agree with either his version of the facts or their legal sufficiency in establishing service.

6.      Six days before the January 9, 2023 local hearing date that had clearly been mooted by the prior removals, Mr. Fox contacted undersigned counsel in a strange attempt to get us to consent to a continuance of that date established in the local process. The grounds for the requested continuance rested on the illness of a witness Mr. Fox intended to deploy against Mr. Clark. *See* Dkt. # 1-8. Seeing this for what it was—an attempt, if we had agreed to a continuance in the local forum, to argue that Mr. Clark had acquiesced in continuing jurisdiction before the local body from which we had removed this case, we refused to consent on those terms. However, consent was not refused out of an unwillingness to accommodate illness, but instead only to avoid the gambit ODC was trying to run of triggering a consent to local jurisdiction. We instead indicated that Mr.

Fox should inform **this Court** that one of his witnesses would still be ill as of January 9, 2023 and our willingness to accommodate that unfortunate event. *See* Dkt. # 1-9.

7.     Mr. Fox responded by filing his motion for a continuance **to the Hearing Committee** (not to this Court) on January 4, 2023. We believe he significantly misstated the position we had relayed to him when he told the Hearing Committee we would not consent to the continuance, full stop, omitting our reasoning and our counterproposal that he make a notice filing to this Court instead. *See* Dkt. #1-10. This was sharp practice that should be beneath a lawyer charged with enforcing D.C.'s disciplinary rules.[4] Nevertheless, despite our request that he withdraw his continuance motion and correct how he had misrepresented our position, Mr. Fox refused. *See* Dkt. ## 1-11, 1-12, and 1-13.

8.     Thankfully, the Hearing Committee was spared having to rule on Mr. Fox's continuance motion (which the Board once again only "lodged" in its docket and did not file) when the DCCA issued its abeyance order on January 17, 2023. *See* Dkt. #1-14.

---

[4] For this reason, Respondent reserves the right at a later time to seek sanctions concerning how ODC has proceeded in this matter, whether in order to require the reimbursement of expenses and fees concerning preparation of the multiple rounds of removal notices, ancillary lodgings in the DCCA and its adjuncts—as ODC attempted to hang on in that forum—and/or basic administrative costs. Respondent also reserves his ability to seek other forms of sanctions relief.

# ARGUMENT

## I.   THE THIRD SUBPOENA IS SUBJECT TO REMOVAL.

Respondent incorporates by reference the First and Second Notices of Removal and the briefing Respondent has previously filed in support thereof. Additional arguments for denying the Third Motion to Remand are given below.

### A.   ODC's Strained Arguments That It Was Free to Litigate in the DCCA After the Removals Were Effectuated Collapse, as Do Its *Non Sequiturs* About the Supposed Untimeliness of the Civil Side of the First Removal.

ODC begins by arguing that "There is no statute or case that says that when a respondent seeks to remove a disciplinary proceeding from 'state' to federal court, the state court loses jurisdiction to proceed on the disciplinary matter." Dkt. # 4-1 at 2. This is a deceptive truism. It is only true because there are no federal statutes that address, *in haec verba*, the removal of disciplinary actions generally or the removal of disciplinary actions against federal officers specifically. But that does not establish that federal officer removal does not apply. Our prior briefing has amply explained how and why federal officer removal applies to all types of cases. Hence, ODC's opening assertion sheds as much light on the removal issues at stake here as an argument that there is no statute or case banning local adjudication of disciplinary matters against administrative lawyers working at the obscure Office for Human Research Protections (*see* https://www.hhs.gov/ohrp/index.html). True but irrelevant.

More importantly, Respondent has repeatedly pointed ODC to 28 U.S.C. § 1446(d),

which provides that in civil matters which have been removed, "the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." Respondent coupled this with the point that disciplinary matters are hybrid civil and criminal matters and that in harmonizing the criminal and civil removal procedures, Section 1446(d) should govern to bar state or deemed-state courts like the DCCA or its adjuncts from proceeding further with a removed matter unless and until a remand occurs.

ODC anticipates those points and retorts that civil removals must occur within 30 days under 28 U.S.C. § 1446(b)(1). *See* Dkt. # 4-1 at 2. The First Removal, in paragraphs 16-17, set out why the removal on October 17, 2022 was timely in light of the absence of jurisdiction before the Board and Hearing Committee until September 15, 2022, when the DCCA issued an order mooting a motion to enforce the First Subpoena that ODC had filed. For while that motion to enforce was pending, ODC lacked the power to issue the Charges against Mr. Clark because exclusive jurisdiction over the matter resided only in the DCCA. *See* No. 22-mc-00096, Dkt. #1 at ¶¶ 16-17. ODC simply ignores this point. Moreover, regardless of whether the First Removal was timely as a civil action removal, it was clearly timely as a criminal action removal since the First Removal occurred "before trial." 28 U.S.C. § 1455(1). And more importantly, regardless of the timeliness of the civil-side ***First Removal***, that could not possibly make the ***Third Removal*** untimely. ODC

attempted to serve the Third Subpoena on December 27, 2022. And the Third Removal was completed on January 26, 2023, which was the 30th day after December 27, 2022. Finally, the DCCA's January 17, 2023 abeyance order is strong evidence that the DCCA agrees with our position (or believes we have a substantial chance of prevailing on it) that this case is firmly planted in this Court until the removal disputes are resolved. At the very least, it seems clear that the DCCA thinks it appropriate to show this Court comity. We have pointed out repeatedly that ODC, by contrast, has refused to show this Court comity and instead, with the exception of filing remand motions, has proceeded in the DCCA adjunct processes as if this case had never been removed.

**B.    ODC's Criminal-Side Removal Arguments Similarly Fail.**

When ODC turns to arguing against the propriety of the Third Removal as a criminal case, it complains that we have asserted that this case is a civil-criminal hybrid using only our own say-so to support that claim. *See* Dkt. # 4-1 at 2. But this is not true. Relevant precedent of the District of Columbia's highest court, the DCCA, provides that disciplinary matters are "quasi-criminal," but are not entirely criminal. *See In re Artis,* 883 A.2d 85 (D.C. 2005). As a result, there is no way to describe such a process as anything other than a hybrid of both the criminal and the civil. The DCCA did not design the D.C. rules defining its disciplinary process to fall neatly into the schema for removal in 28 U.S.C. §§ 1331, 1441, 1442, 1446, and 1455. But what is clear is that all cases against federal officers are removable. *See Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). ("The federal

officer removal statute is not 'narrow' or 'limited.' *Colorado v. Symes*, 286 U.S. 510, 517 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law."). Hence, this Court must first characterize the nature of D.C. disciplinary actions and then decide how to map the removal provisions in title 28 United States Code onto such actions.

Next, ODC turns to arguing that civil-style discovery such as depositions are not generally available in disciplinary actions. *See* Dkt. # 4-1 at 2. This is true in the DCCA and its adjuncts (i.e., under the local process) but this is a procedural matter that in this court would ***not*** be covered by District procedures, but instead by a necessary harmonization of the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. In any event, that question has not been shown to be ripe by ODC because this Court has not yet ruled on the removal dispute. For now the issue of discovery is irrelevant to removal and certainly provides no reason to grant remand.[5]

After its detour into discovery processes, ODC argues that D.C. disciplinary hearings against lawyers are not "trials." *See* Dkt. # 4-1 at 3. This is just another way for

---

[5] ODC goes even farther afield and argues that it is somehow relevant that we expressed concern that the Third Removal (as well as the First and Second Removals) were given an "-mc-" case number. *See* Dkt. #4-1 at 2. Our concern is that this administrative designation must never be allowed to carry substantive significance. Nothing about our cautionary note on this point concedes that D.C. disciplinary procedures are neither civil nor criminal and thus fall outside of the federal officer removal statute. That would be contrary to the *Willingham* line of authority, which ODC studiously avoids.

ODC to maintain that this case is neither a criminal nor a civil matter. The variant of its argument presented here is that this case involves a "hearing" and thus is not a removable trial. This is a game of mere nomenclature—as Shakespeare described, a rose by any other name smells just as sweet. *Black's Law Dictionary* (11th edition) defines a "trial" merely as "A formal judicial examination of evidence and determination of legal claims in an adversary proceeding." D.C. disciplinary hearings surely fit within this definition. As Mr. Fox is fond of saying, he operates as an arm of the DCCA, which is a court.

Any other construction of the word "trial" in Section 1455 concerning criminal removals would allow a State or Deemed-State (like the District) to avoid removal simply by avoiding use of the term "trial" when standing up various adjudicatory processes and instead substituting a word like "hearing" or "adjudication." Then the States or Deemed States could proclaim: "Voila, the word 'trial' is absent and hence we can conduct a criminal proceeding that cannot be removed to federal court." This is not the law. It does not remotely comport with the *Willingham* line of cases.

Next, ODC turns to 28 U.S.C. § 1455(b)(5). *See* Dkt. # 4-1 at 3. But Respondent has never run from Section 1455(b) or tried to hide it. It is cited and dealt with in the very First Removal. *See* No. 22-mc-00096, at Dkt. #1 at ¶¶ 75-79. As Respondent has explained, Section 1446(d) orders the court removed from to stop adjudicating a removed civil matter but Section 1455(b) provides (a) the court removed from, in a criminal case, can continue adjudicating the case short of a judgment of conviction, *see* 28 U.S.C. § 1455(b)(3);

unless (b) the federal court permits removal, at which point the same bar present in Section 1446(d) drops to prevent continued adjudication by the court removed from, *see* 28 U.S.C. § 1455(b)(3).

In a case that has both civil and criminal aspects (i.e., in a hybrid action like this one), there thus appears a rather obvious need to harmonize Sections 1446(d) and 1455(b). Respondent has explained what we believe is the best harmonization. ODC offers no competing harmonization. It simply sticks to its position that the tension between the two provisions shows that disciplinary actions are neither fish nor fowl and thus that a remand should occur. Again, however, it has no answer for the point that such an approach is contrary to the *Willingham* line of cases. All ODC can do is try to mock our attempted harmonization, calling it "cherry-picking."

Worse for ODC, the DCCA has not adopted ODC's position and ruled that it can order or allow the Hearing Committee or Board to continue its local process of adjudication with Disciplinary Counsel acting as quasi-prosecutor. Instead, on January 17, 2023, the DCCA ruled that one of ODC's attempts to continue adjudicating in the local process should be held in abeyance in favor of waiting for a decision by this Court. Thus, that January 17, 2023 order moots ODC's arguments that Section 1455(b) lets it keep adjudicating locally. ODC is bound by the abeyance order and may proceed no further in the local jurisdiction from which this case was removed.

ODC's predicament leads it to divert into the merits of why it issued the Third

Subpoena, which are irrelevant because that subpoena was *ultra vires* because it was issued ***after removal*** but only under the auspices of the local DCCA-adjunct processes, as undersigned counsel explained in emails to ODC prior to the time ODC tried to effectuate service. *See* Dkt. # 4-1 at 4. ODC also tries to pull in the fact that the Hearing Committee's Chair had issued pre-trial deadlines for an exchange of witness lists, etc., prior to the time that removal occurred, as if that were somehow relevant to removal. *See id.* No, it was just part of ODC's strategy to continue litigating in the local forum even after removal. That's why ODC abided by those mooted deadlines.

In the pre-January 17, 2023 state of the world (before the DCCA entered its abeyance order), Respondent could not be assured that if it failed to lodge documents complying with these deadlines, ODC would not later take the position that some kind of procedural default had occurred in the local forum in a fashion preclusion principles would require this Court to respect. Respondent thus made its lodgings ***only under protest and out of an abundance of caution***, making clear that it was not conceding that the Hearing Committee had any power to continue adjudicating the case once the First Removal occurred back on October 17, 2022.

Remarkably, even after the January 17, 2023 abeyance order, ODC proclaims there has been no stay or abeyance: "Thus, Respondent's efforts to delay the disciplinary process has succeeded without anyone—not the hearing committee, the D.C. Court of Appeals, or this Court—ever ruling that the proceedings are stayed. The only authority

for the proposition that the proceedings are stayed is Respondent's argument that these are hybrid proceedings that allow him to choose which procedures apply—criminal procedures for time limitations but civil procedures for the mandatory stay." Dkt. # 4-1 at 4-5.

This argument is problematic on so many levels, it is hard to know where to begin.

*First*, the abeyance order is exactly what ODC claims has never been issued—an abeyance of proceedings in the DCCA and its adjuncts.

*Second*, while the DCCA did not express agreement with Respondent's harmonization of Sections 1446(d) and 1455(b), the DCCA did not reject that harmonization either. Instead, the DCCA stood down in favor of this Court—something ODC has consistently refused to do as a matter of basic comity.

*Third*, ODC repeatedly and wrongly ascribes motives of pure delay to Respondent. This is unfair but now familiar. Respondent believes in good faith that the Article I local government of the District has **no power** to penetrate into the Article II Executive Branch to police law enforcement decisions and debates inside that branch. Respondent also believes in good faith, under binding Supreme Court authority such as *Willingham*, that the First through Third Removals here were entirely proper on all grounds and that Respondent possesses federal officer removal rights under both Section 1442 and the Supreme Court case law interpreting such removals. The purely statutory arguments are also meritorious and asserted in good faith. ODC has no valid answer for any of these

arguments and so belittles them as interposed for delay.

*Fourth*, ODC, in essence, tries to dodge these significant legal disputes by complaining that it does not like Respondent's harmonization argument. In *United States v. Fausto*, 484 U.S. 439, 453 (1988) (cleaned up), the Supreme Court declared that "we must engage in the classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination"). Given the inherent tension here between Sections 1446(d) and 1455(b), ODC's complaint lies with *Fausto*, not with Respondent.

### C.   ODC's Merits Arguments of What It Aims to Accomplish Through Its Enforcement Action Are Irrelevant to Removal.

ODC next tries to justify a remand and to defeat the removal to this Court by turning to merits arguments, namely its claim that the January 6 House Select Committee believes the legal advice Respondent purportedly gave to the President was a "lie." Dkt. # 4-1 at 5.[6] This is entirely irrelevant to the removal issues. ODC never even tries to explain how its contentions line up with any provision of any removal statute on which Respondent has relied.

Moreover, ODC has been entirely confused about the nature of its own merits

---

[6] ODC also cites the report of the House Select Committee on January 6 as if it were admissible evidence. That is a premature question.  Moreover, particularly given the extremely biased, partisan composition of the Committee (with even its ostensible Republicans hand-picked by former Speaker Pelosi and with Minority Leader-picked Republicans ejected from the Committee), no opportunity for properly designated minority members to question witnesses, and with most witnesses being questioned in unreleased depositions, ODC should expect that, if it ever becomes necessary, Respondent will contest any conclusion of the Committee that ODC seeks to deploy.

contentions. ODC now returns to alleging that Respondent lied. *See id.* But just a few months ago, ODC told this Court the exact opposite: "Respondent consistently mischaracterizes these charges, and when Disciplinary Counsel responds to those mischaracterizations, accuses it of having changed the theory. ***Disciplinary Counsel has never accused Respondent of lying to his superiors.***" No. 22-mc-00096, Dkt. # 5 at 11 (emphasis added). A more stark example of a litigant talking out of both sides of his mouth is difficult to find and brings to mind this bit of Circuit precedent:

> TWA correctly points out that in administrative proceedings the Board "cannot blow hot and cold" and take inconsistent positions at the same time, any more than a party may. *Callanan Road Improvement Co. v. United States*, 345 U.S. 507, 513 (1953). *See West Ohio Gas Co. v. Public Util. Comm. of Ohio (No. 1)*, 294 U.S. 63, 71 (1935), where Justice Cardozo said that even though a commission has a choice of methods of ascertaining expenses it cannot simultaneously operate on inconsistent premises, even in separate proceedings, without being subject to the charge of exercise of arbitrary power, at variance with the "rudiments of fair play."

*Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 385 F.2d 648 (D.C. Cir. 1967).[7]

ODC's protests that it "does not challenge policy advice that Respondent gave to his Department of Justice superiors or to the [P]resident. Nor is it an attempt to supervise the internal operations and deliberations of the Executive Branch," Dkt. # 4-1 at 5. But

---

[7] The D.C. Board of Professional Responsibility essentially serves as a quasi-adjudicatory agency of the DCCA. And Disciplinary Counsel and other lawyers in his Office act in a fashion similar to the General Counsel of the National Labor Relations Board, prosecuting unfair labor practices cases to that body. *See* https://www.nlrb.gov/bio/general-counsel#:~:text=The%20General%20Counsel%2C%20appointed%20by,22%2C%202021%2C%20Jennifer%20A.

what ODC says is wholly contrary to what ODC is clearly trying to do in its Charges. For ODC is challenging a letter it says Respondent advocated to send (set up in draft discussion form for *multiple signatories*, including his two DOJ superiors), which is a policy decision to be made by his superiors at DOJ and by the President as the chief law enforcement officer of the nation. Similarly, the deliberations concerning whether to send the letter were wholly internal to the Executive Branch of the United States government. Hence, both of the elements ODC abjures (i.e., (a) policy advice that was (b) rendered internally) are unavoidably present in the conduct ODC seeks to punish, compounding the internal contradictions of ODC's various ploys for dodging the serious constitutional barriers its Charges face.

### D.   ODC's Argument That the Third Removal Is Untimely Is Unsupported and Contrary to the Facts.

ODC asserts that the Third Removal is untimely or at least that "[t]here is a substantial issue as to whether this third removal is timely." Dkt. # 4-1 at 5. This is based on an unexplained assertion, devoid of any citation or other proof, that Respondent did not actually file the Third Removal until February 3, 2023. We are mystified by this argument. On its face, the file-stamped copy of the Third Removal reflects a filing date of January 26, 2022 (as does this Court's ECF system), which ODC concedes would be timely as it was the date that Respondent "attempted to file it":

CM/ECF

U.S. District Court
District of Columbia (Washington, DC)
CIVIL DOCKET FOR CASE #: 1:22-mc-00097-RC

Case 1:23-mc-00007   Document 1   Filed 01/26/23   Page 1 of 34

IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK, | Case No. _____ |
| A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | (Related to:) |
| D.C. Board of Professional Responsibility Docket Nos. 22-BG-059 & 22-BD-039 Disciplinary Docket No. 2021-D193 | Case No. 1:22-mc-00096-RC & Case No. 1:22-mc-0117-RC) |
| | Judge _____ |
| | On removal from the D.C. Court of Appeals Board of Professional Responsibility |

RESPONDENT JEFFREY B. CLARK'S THIRD NOTICE OF REMOVAL TO
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA

Further, we observe that the Third Removal is timely as a criminal-case removal pursuant to 28 U.S.C. 1455(b)(1), since no trial has been held in the local DCCA adjunct forum this case was removed from. Indeed, if ODC had any faith in its argument that the Third Removal was actually filed on February 3, 2023 and that this fact barred the removal based on timeliness grounds, ODC would have made that its first argument in

19

support of remand and not its last.

In its reply brief ODC should not unfairly spring some new point not mentioned in its Third Remand Motion. New arguments cannot be introduced on reply. If ODC has some magical evidence we are unaware of as to why this Third Removal actually occurred on February 3, 2023 rather than January 26, as the record reflects, it was incumbent on ODC to come forward with that evidence on February 8, 2023 when it filed its Third Motion to Remand. It did not do so.

## CROSS-MOTION TO CONSOLIDATE

Pursuant to Federal Rule of Civil Procedure 42(a)(2), Respondent Mr. Clark also asks the Court to consolidate this case and the two prior Related Cases: Nos. 22-mc-00096 and 22-mc-00117. In light of the removal in the Related Cases as part and parcel of the same overall action, continuing efforts by ODC to litigate this case in the local forum removed from were improper. Hence, it should never have been necessary to file the Second Removal, let alone this Third Removal. *See* 28 U.S.C. § 1455(b)(2) (allowing additional removals in the same overall matter where new grounds arise—here, the attempted service of the new subpoena on December 27, 2022). This Third Removal involves the same case with the same parties, on the same facts and triggering the same legal issues as the First and Second Removals.

The criteria for consolidation under Rule 42(a) are thus clearly satisfied. ("If actions before the court involve a common question of law or fact, the court may … (2)

consolidate the actions"). Respondent further submits that there is no just or prudential reason for the Court to exercise its discretion not to consolidate all three of the pending cases.

### CONCLUSION

ODC attempted to serve a third subpoena on December 27, 2022 to disturb a family celebrating the Christmas holidays together. There was no reason for it and a formidable array of legal arguments against it, including *two* prior removals. From there, ODC either rehashes arguments already refuted, or makes irrelevant attempts to confuse the merits with removal, or an inexplicable and unsupported claim that this Third Removal was untimely that conflicts with this Court's own time stamp on that removal.

Remand should be denied and this Third Removal case should be consolidated with the cases established in connection with the First and Second Removals.

Respectfully submitted this 22nd day of February 2023.

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

/s/ *Harry W. MacDougald*
Harry W. MacDougald
Georgia Bar No. 463076
Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
Admitted Pro Hac Vice  in Case No. 1:22-mc-00096-RC

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this day served counsel for the opposing party with

a copy of this ***Opposition to Third Motion to Remand and Cross Motion to Consolidate***

by filing with the Court's electronic filing system and by email addressed to:

> Hamilton P. Fox, Esq.
> Jason P. Horrell, Esq.
> Office of Disciplinary Counsel
> Building A, Room 117
> 515 5th Street NW
> Washington DC 20001
> foxp@dcodc.org
> horrellj@dcodc.org


This 22nd day of February 2022.

*/s/ Charles Burnham*
*Charles Burnham*
*DC Bar No. 1003464*

*Burnham and Gorokhov, PLLC*
*1424 K Street, NW*
*Suite 500*
*Washington DC 20005*
*(202) 386-6920*
*charles@burnhamgorokhov.com*