## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:23-mc-00007-RC<br>Case No. 1:22-mc-00096-RC<br>Case No. 1:22-mc-00117-RC |

## MOTION FOR STAY PENDING APPEAL

All three of these cases are currently on consolidated appeal. Pursuant to Federal Rule of Appellate Procedure 8(a)(1)—though only out of an abundance of caution—Respondent-Appellant Jeffrey B. Clark hereby moves for a stay pending appeal of the Court's remand order dated June 8, 2023.

Based on the Supreme Court's decision in *BP plc. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021), and 28 U.S.C. § 1446(d), seeking a stay should not be necessary. Instead, the local D.C. process must stand down and first await the outcome of all stages of appeals in this case. Additionally, a stay is not necessary because, while the D.C. Office of Disciplinary Counsel ("ODC"), along with the Chair of D.C. Bar Hearing Committee Number Twelve, are harrying Mr. Clark in the local D.C. processes adjunct to the D.C. Court of Appeals ("DCCA"), the DCCA and its adjuncts have not yet acquired power over the case pursuant to 28 U.S.C. § 1446(c).

On July 10, 2023, at a Hearing Committee Twelve-ordered meet and confer session,

ODC informed us it will argue that we engaged in laches by not filing this stay motion sooner. That wholly ignores that this Court's June 8, 2023 remand order could not possibly return any jurisdiction to the DCCA and its adjuncts any earlier than some date after today—*i.e.*, until Section 1447(c) is complied with by this Court's Clerk sending a mailed certified copy of the June 8 remand order to a relevant clerk acting for the D.C. Bar disciplinary process. And to our knowledge, that event has not yet occurred.

Nevertheless, because ODC and Hearing Committee Twelve are threatening to begin a trial against Mr. Clark at some point after Labor Day this year (and we do not anticipate that appellate proceedings will be complete before then), we are compelled to seek a stay out of an abundance of caution. We have done our best to avert the need to come to this Court for a stay under FRAP 8(a)(1) and indeed we have a pending motions before the Hearing Committee **both** to vacate its scheduling orders setting a pre-trial conference for tomorrow, July 12, 2023 **and** to reconsider its decision to plow ahead with local adjudication.

## PROCEDURAL BACKGROUND

After this Court entered its remand order, Mr. Clark filed a notice of appeal on June 11, 2023, pursuant to 28 U.S.C. § 1447(d) which provides for appeal as of right from remand orders in cases removed under the federal officer removal statute. *See* 28 U.S.C. § 1442. On June 12, 2023, Mr. Clark moved the DCCA to continue its January 17, 2023, order that was holding the proceedings before that Court (a motion to enforce a

subpoena) in abeyance and to extend the abeyance to proceedings down to the level of Hearing Committee Twelve.

This Court should also be aware that at all points from the October 17, 2022, removal of this case here, the Board of Professional Responsibility's Clerk marked any documents sent to them by either side as lodged. This did not stop ODC from peppering Mr. Clark with briefs, a new local subpoena, and other local litigation filings prior to the time the DCCA acted to issue its January 17 order. Once the DCCA issued that January 17 order, however, ODC and Hearing Committee Twelve did stand down, even though the DCCA's abeyance order, by its textual terms, only ordered an abeyance of adjudication of ODC's motion to enforce its October 6, 2022, subpoena. Nevertheless, once ODC notified the Hearing Committee that this Court's June 8 Order had issued, this quickly led to the Chair of Hearing Committee Twelve on June 16, 2023, ordering the parties to file status reports by June 23, 2023.

In his June 23, 203 status report, Mr. Clark noted the pendency of the appeal in this case and of his motion to continue abeyance and/or defer consideration of all interrelated disputes until after the appeal to the D.C. Circuit and any follow-on levels of appellate review were complete. Despite this, on July 5, 2023, the Hearing Committee Chair issued an order, attached hereto as Exh. 1, rejecting Mr. Clark's arguments that the case should not proceed before the ultimate conclusion of his appeal of the remand order, setting a hearing for July 12, 2023, directing the parties to meet and confer on scheduling an

evidentiary hearing, and otherwise pressing forward with the local disciplinary proceeding. Later that same day, as a result of the July 5, 2022, Hearing Committee Chair order, Mr. Clark moved the DCCA to expedite its consideration of the motion to continue the abeyance as well as extend the abeyance to the Board and Hearing Committee below (termed a "deferral").

No ruling from the DCCA on the motion to continue abeyance/defer the matter has issued before it became necessary for us, again out of an abundance of caution, to make this FRAP 8(a)(1) stay filing, even though we do not think it should be necessary for the reasons quickly summarized above and set out in more detail below.

Accordingly, the current status in the local process is that the Chair of the Hearing Committee may be intending to go forward with his ordered July 12, 2023, pre-hearing conference despite the fact that he lacks power over this case—something this Court should remedy by issuing a stay to confirm, by binding ODC, that the local process should proceed no further until the appeal is complete. As of the time we are filing this stay motion, we do not know whether the July 12, 2023 at 1 pm conference will go forward, but as of now it is on the Board's calendar. See https://www.dcbar.org/attorney-discipline/board-on-professional-responsibility/hearing-and-oral-argument-schedule (last visited July 11, 2023). Therefore, having exhausted his only means of resolving this issue in the DCCA and its adjunct processes, so as to avoid troubling this Court, Mr. Clark now brings this FRAP 8(a)(1) motion for stay pending appeal.

## ARGUMENT AND CITATION OF AUTHORITY

We first argue below that the Supreme Court's 2021 *BP* decision, combined with Section 1446(d), which the *BP* decision invokes, makes seeking a discretionary stay unnecessary. This is because the appeal is effectively a continuation of Section 1446(d)'s command to the state/D.C. courts from which the case was removed to cease adjudication of such cases from the point when they are removed until the propriety of removal has been fully and finally tested (which in many cases does not include an appeal, but which does here in this federal officer removal situation). Additionally, Section 1447(c) has not yet been complied with because no certified copy of this Court's June 8 Order has yet been mailed by this Court's Clerk or received by a local D.C. Clerk.

In the alternative, this Motion argues that Mr. Clark can satisfy the traditional four-factor test for obtaining a discretionary stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009).

The Court is to exercise its discretion on whether to grant a stay according to the individual circumstances of the case. Granting an equitable stay under the four-factor test is

> "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." [*Virginia R. Co.*

> *v. United States*, 272 U.S. 658], 672–73 [(1926)]; *see Hilton* [*v. Braunskill*, 481 U.S. 770], 777 [(1987)], ("[T]he traditional stay factors contemplate individualized judgments in each case"). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.

*Id*. at 433-34. As the Court noted in *Nken*,

> There is substantial overlap between these and the factors governing preliminary injunctions, *see Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008); not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined."

*Id*. at 434.[1] "The first two factors of the traditional standard are the most critical." *Id*.

All four elements for a stay pending appeal are present in this case.

## I.   UNDER SUPREME COURT PRECEDENT, SECTION 1446(D), AND TEMPORARILY UNDER SECTION 1447(C), A MANDATORY STAY SHOULD BE GRANTED.

In its *BP v. Mayor and City Council of Baltimore* decision, the Supreme Court considered federal officer removals like this one and it plainly instructed that State and

---

[1] There is a circuit split over whether the decision in *Winter* overrules the sliding scale for evaluating the four-factor test for granting a preliminary injunction. *See Sherley v. Sebellius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (noting split). And some judges on the D.C. Circuit favor that view. *See Davis v. PBGC*, 571 F.3d 1288 (2009) (Kavanaugh, J., concurring). The D.C. Circuit has thus far not definitively resolved this issue for preliminary injunctions. In any event, the test for preliminary injunctions is merely similar, not identical to the test for stay pending appeal. The latter test is set forth with sufficient clarity in *Nken* and is satisfied in this case. *Compare Shapiro v. U.S. Department of Justice*, Case No. 13-555 (RDM), 2016 WL 3023980 (D.D.C. May 25, 2016) (discussing foregoing issues in granting motion for stay of a FOIA production order pending final judgment).

District of Columbia courts (for under 28 U.S.C. § 1451, the District is a "State" for removal purposes) lack the power to adjudicate cases pending the resolution of appealed remand orders because the state/D.C. adjudication is interrupted by the removal and the appeal. *See* Section I.A., *infra*.

Additionally, at least a temporary stay is required under Section 1446(c), which provides that state/D.C. courts cannot resume adjudication pending at least the mailing (and likely the reception as well) of a certified copy of this Court's remand order. *See* Section I.B., *infra*.

A.    ***The BP Case Contemplates That Appealed Federal Officer Removals Are Continuations of the Automatic District Court Stay in Section 1446(d).***

In the *BP* decision, the City of Baltimore brought common law nuisance and tort claims against the oil company BP, arguing that it had concealed the connection between fossil fuels and climate change and thus was responsible for damaging the City. *See* 141 S. Ct. at 1535; *id.* at 1546 (Sotomayor, J., dissenting). BP thereupon removed that case from state court to federal court on a variety of removal theories, one of which was that BP was acting at the government's request as to "some of their challenged exploration, drilling, and production operations," and so was entitled to make use of federal officer removal under 28 U.S.C. § 1442.  *Id.* at 1535.

The District of Maryland ordered a remand and BP appealed with the Fourth Circuit affirming. The Supreme Court took the case because of a split in the Circuits on the issue of whether in a case involving a federal officer removal, Section 1447(d) permits

all removal grounds to go up on appeal or only the federal-officer removal ground because remand orders are typically not reviewable on appeal. *See id.* at 1537. The Supreme Court vacated the Fourth Circuit's decision and remanded after holding that ***all grounds*** for removing go up on appeal when one of the grounds is federal officer removal. *See id.* at 1543.

In the course of reaching its holding, the Supreme Court had to reject several arguments by the City that if all removal grounds go up on appeal from a remand order, the merits of litigation would be slowed down in state courts (or, in accord with Section 1451, in the District of Columbia's courts). Many of these points of majority analysis are relevant to require a stay here, but the clearest is this statement: "***Here, too, Congress has deemed it appropriate to allow appellate review <u>before</u> a district court may remand a case to state court.***" *BP*, 141 S. Ct. at 1536 (emphasis added). That directive cannot be complied with if the DCCA and adjuncts can continue with merits litigation on a separate track.

The Court next explained that removal and its consequences for appeals as of right of federal-officer-based removals rests in the hands of removing defendants, not in the hands of district courts or even intermediate appellate courts:

> All of which leaves the City to offer a different argument from a new direction. Now, the City contends, the defendants never really removed this case pursuant to § 1442. On this account, a case is not "removed pursuant to section 1442 or 1443" until a federal court (district or appellate) holds that one of these statutes authorizes removal. Because that never happened here, the City reasons, the defendants were not entitled to any appellate

review. But this argument isn't only novel—the City didn't pursue it below and no court of appeals has adopted it. It is also mistaken.

> **As we've seen, it is generally a <u>defendant's actions</u> under § 1446 that "effect the removal." Once a defendant complies with § 1446, a state court may not proceed "further unless and until the case is remanded." 28 U.S.C. § 1446(d).** That's why normally it's the plaintiff who must seek judicial intervention if it wishes to have the matter remanded to state court—just as the City did here.

*Id.* at 1539 (emphasis and one paragraph break added). And this teaching makes clear the statutory underpinning for the Court's conclusion that "appellate review" must occur "before a district court may remand a case to state court." *Id.* at 1536. Namely, it is Section 1446(d), which provides that "a state court may not proceed 'further unless and until the case is remanded.'" *BP*, 141 S. Ct. at 1539 (quoting Section 1446(d)).

This caused the City to respond with policy arguments that allowing appeals would simply delay litigation back in state court—with the Court again making quite clear that appeals ***stop proceedings on remand*** (more precisely, they simply continue the stay posture created by Section 1446(d) as soon as removal occurs), otherwise there would be nothing for the City to have complained about if the Supreme Court were contemplating federal officer removal-jurisdiction appeals occurring on one track but remanded state/D.C. merits litigation occurring a parallel track.

Specifically, the City argued as follows: "Barring appellate review of remand orders, the City says, serves the worthy goal of allowing the parties to get on with litigating the merits of their cases in state court. Meanwhile, the City submits, allowing

exceptions to this rule promises only to impair that efficiency interest." *Id.* at 1542. The

Supreme Court rejected that argument cannot occur : "For that subset of cases [*i.e.*, when

Congress has provided an exception to the non-appealability of remand orders, such as

under Section 1442 federal officer removals and under 28 U.S.C. § 1443 civil rights case

appeals], Congress has expressed a heightened concern for accuracy, authorized

appellate review, ***and accepted the delay it can entail***." *BP*, 141 S. Ct. at 1542 (emphasis

added).

Finally, the majority, in the opinion written by Justice Gorsuch, reasoned that the

delay-based policy argument was wrong on its own terms:

> In fact, allowing a fuller form of appellate review may actually help
> expedite some appeals. Suppose a court of appeals finds the § 1442 or § 1443
> issue a difficult and close one, but believes removal is clearly and easily
> warranted on another basis. ***Allowing the court to address that easier
> question and avoid harder ones may facilitate a prompter resolution of the
> proceeding for all involved.*** At the least, a rational Congress could have
> thought that considerations like these warranted allowing a court of
> appeals the power to review the whole of a district court's remand order
> rather than just certain select aspects of it.

*Id.*

This argument by the Supreme Court would be incoherent if it contemplated

appeals of removal jurisdiction disputes would take place on one track but also remanded

so that unstayed merits litigation could simultaneously take place in a state/D.C.-court

track on another. If that were the case, the Court would have said that the policy

arguments based on the delay of state/D.C. court litigation were a red herring because

the district courts possess the power to deny stays pending appeal in cases the district courts have ordered remanded. But that's not what the Supreme Court said at all. It plainly contemplated that the Section 1446(d)-based delay would continue on until appellate proceedings on the removal jurisdiction questions (all of them even, not even just questions of Section 1442-based federal officer-based removals) were concluded.

Indeed, while the lone dissenter, Justice Sotomayor disagreed with the majority as to whether all removal grounds should go up on appeal where Section 1447(d)-based federal officer removals are among the full range of grounds invoked or only federal officer removal ground alone, she agreed that such appeals (of any scope) create delay. Again, this would make no sense if she had the ready response of—'never fear, denied stays of remand orders pending appeal can eliminate or at least significantly reduce delay.'

Instead, Justice Sotomayor said:

For more than a century, the rule has been that such remand orders are generally not subject to appellate review. *See In re Pennsylvania Co.*, 137 U.S. 451, 453–454 (1890). This rule, codified at 28 U.S.C. § 1447(d), "reflects *Congress's longstanding policy of not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed.*" *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 238 (2007) (internal quotation marks omitted).

*BP*, 141 S. Ct. at 1544 (Sotomayor, J., dissenting); *see also id.* at 1544-45 (Sotomayor, J., dissenting). She thus fully ancticipated that interruption of state/D.C. proceedings would occur when federal-officer removal appeals occur.

Why was Justice Sotomayor saying this? Because she recognized that "litigation of the merits of a removed case" would be "interrupt[ed]." The majority was willing to accept that policy consequence because it was clearly chosen by Congress in the statute. She was not. Therefore, **all Justices in the BP case** fully recognized that delay of merits litigation resumption in state/D.C. courts would be delayed pending unusual situations where remand orders are appealable, as here.

A stay of the disciplinary process of the DCCA and its adjuncts is plainly warranted based on Section 1446(d) and in light of the plain import of the *BP* case. Beginning with the original notice of removal (and continuing into the second and third removals that ODC's vexatious attempts to continue litigating in the DCCA adjunct processes triggered) Mr. Clark prominently urged that Section 1446(d), which was pivotal to the outcome and reasoning of the *BP* decision, would automatically apply. *See* Notice of Removal, Dkt. # 1 at ¶ 77 ("But Section 1446(d) provides that once notice of removal is filed as to a civil action with the clerk of the 'State court' and notice is given to adverse parties 'the State court shall proceed no further unless and until the case is remanded.' 42 U.S.C. § 1446(d)."); *see also id.* at ¶¶ 78-79. All of these paragraphs of the removal notice will not be repeated here but should be deemed incorporated by reference. This is a hybrid civil-criminal matter, and it should be deemed subject to the Section 1446(d) ban on post-removal state/D.C. court proceedings, which pursuant to the *BP* decision, continue through the appeal's completion.

And this outcome makes perfect sense. If an appeal track of the removal jurisdiction questions goes forward while merits litigation resumes in the DCCA's superintended process and Mr. Clark prevails in the appeal, all such post-remand merits litigation would need to be reversed as a nullity. State/D.C. court orders issued in between the time of removal and remand are void. *See Roman Catholic Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S. Ct. 696, 700 (2020).[2] Here, Mr. Clark is entitled to a federal Article III forum under Section 1442 and an appeal as of right on that issue to the D.C. Circuit under Section 1447(d). He should not be put to the diversion, the time, and the expense of litigating in two forums until the D.C. Circuit decides this appeal or potentially until the Supreme Court does after taking *certiorari*.

**B.** **At the Very Least, a Temporary Mandatory Stay of the Remand Should Be Granted Given Section 1447(c)'s Plain Text.**

In relevant part, Section 1447(c) provides as follows: "A certified copy of the order

---

[2] "Once a notice of removal is filed, 'the State court shall proceed no further unless and until the case is remanded.' 28 U. S. C. § 1446(d). The state court 'los[es] all jurisdiction over the case, and, *being without jurisdiction, its subsequent proceedings and judgment [are] not … simply erroneous, but absolutely void*.' *Kern v. Huidekoper*, 103 U.S. 485, 493 (1881). 'Every order thereafter made in that court [is] *coram non judice*," meaning 'not before a judge.' *Steamship Co. v. Tugman*, 106 U.S. 118, 122 (1882) …." *Roman Catholic Archdiocese of San Juan*, 140 S. Ct. at 700 (footnote omitted).

Here, since June 16, 2023, Mr. Clark is being subjected to Hearing Committee Chair orders that are void because they were issued, at the very least, prior to compliance with Section 1447(c). They were also issued in violation of the *BP* case's teachings and the continuance of Section 1446(d)'s automatic stay. Any orders that build upon orders issued during the void phase would themselves be the fruit of such a tree of voidness and would risk later invalidation, which would not serve the purposes of judicial efficiency.

of remand shall be mailed by the clerk to the clerk of the State court. The State court may

thereupon proceed with such case." (Emphasis added.) Even putting aside the

commands and logic of the *BP* decision covered above, the plain text of this statute makes

clear that remand orders are not immediately effective. Instead, the U.S. District Court

Clerk must first mail a certified copy of the remand order to the Hearing Committee

(presumably via the Board of Professional Responsibility or the District of Columbia

Court of Appeals ("DCCA")). The statute also appears to contemplate receipt of the

certified copy mailed by the U.S. District Court clerk by the state/D.C. clerk.

 We are aware of no indication such a mailing has occurred from this Court's

Clerk. (The Court can consult the docket sheets for the three cases in this Court, now

consolidated on appeal to confirm this.) That docket sheet shows the remand order's

entry on June 8, 2023, and five later entries: (1) 6/11/23 notice of appeal; (2) 6/12/23

transmission of notice of appeal to the D.C. Circuit; (3) 6/14/23 case number entered for

the D.C. Circuit appeal; (4) 7/7/23 payment for notice of appeal; and (5) 7/11/23 entry of

appearance by Mr. Metzler for ODC. None of those five entries indicate that the Section

1447(c) mailing has occurred. Similarly, to our knowledge there are no events reflected

on the Board of Professional Responsibility's docket sheet showing that the Board's clerk

has received a certified mailing from the U.S. District Court clerk compliant with Section

1447(c).

 Judicial precedent supports our argument, which two Circuits (the Second and the

Third) have adopted:

> According to our precedent, the mailing of a certified copy of the remand order to state court is the event that formally transfers jurisdiction from a district court within this Circuit to a state court. *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225 (3d Cir. 1995) ("The general rule is that a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to state court.") ….
>
> **In our view, the text of 28 U.S.C. § 1447(c) establishes that jurisdiction remains with the district court until the jurisdiction-transferring event has occurred: "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case."** 28 U.S.C. § 1447(c).[2]
>
> FN2. This accords with the rule recognized by the Court of Appeals for the Second Circuit as well.  *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 312 (2d Cir. 2005) ("***Section 1447(c) ... is not self-executing****.*... This provision creates legal significance in the mailing of a certified copy of the remand order in terms of determining the time at which the district court is divested of jurisdiction....").

*Agostini v. Piper Aircraft Corp.*, 729 F.3d 350, 355-56 & n.2 (3d Cir. 2013) (paragraph breaks added) (emphasis added).

Only one potential reading of Section 1447(c) could allow the Hearing Committee adjunct to the DCCA able to proceed prior to the mailing of a certified copy of the June 8 remand order from this Court's Clerk, but as we explain below, that reading runs afoul of the plain text of Section 1447(c). Courts have reacted differently to the import of Section 1447(c):

> In brief, federal courts have ruled that state courts are reinvested with jurisdiction after remand at three different times:
>
> (1) immediately upon the oral order of the federal court to remand the

case to the state court;

(2) upon the federal court clerk's mailing of the federal remand order to the state court; and

(3) upon the state court's receipt of the federal remand order.

David A. Furlow & Charles W. Kelly, *Removal and Remand: When Does a Federal District Court Lose Jurisdiction Over a Case Remanded to State Court?* 41 Sw. L.J. 999, 1002 (1987) (footnotes omitted).

The first approach must be rejected here. The key language of Section 1447(c) speaks, in relevant part, in mandatory terms. It directs that the federal court clerk "shall" "mail[]" a "certified copy of the order of remand" to the clerk of the state/D.C. court. And, even more importantly, Section 1447(c)'s last sentence states that only once that mailing occurs "may" the state/D.C. court "thereupon proceed with such case." (Emphasis added.) The word "thereupon" becomes surplusage if the mailing (or impliedly, the receipt of the mailing by the state/D.C. court clerk) is not the operative date for when jurisdiction is returned to the state/D.C. court. And it violates the cardinal rule of statutory construction to interpret the word "thereupon" as if it were surplusage, which is what possibility (1) necessarily entails. *See Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality) (explaining and applying this cardinal rule); *Amoco Production Co. v. Watson*, 410 F.3d 722, 733 (D.C. 2005) ("It is a familiar canon of statutory construction that, if possible, we are to construe a statute so as to give effect to every clause and word.") (quotation marks omitted).

The only extent to which any ambiguity exists in Section 1447(c) is whether the "thereupon" refers to the act of mailing alone (the equivalent of contract law's "mailbox rule") or to the completion of the federal clerk mailing and the receipt of the certified order by the state/D.C. clerk. And as to that choice, we urge the third reading of Section 1447(c) on this Court (*i.e.,* a remand order can be effective no earlier than the receipt of a certified copy mailed to the state/D.C. clerk by the Clerk of this Court). But at the very least, the second reading of the statute should be adopted. Even under that reading, the Hearing Committee across town does not yet have the power to proceed to resume litigation of this case under its Article I processes.

## II.   A STAY SHOULD ALSO BE GRANTED UNDER THE TRADITIONAL FOUR-PART TEST OF A PROPER EXERCISE OF EQUITABLE DISCRETION.

All four elements of the traditional equitable test tracing back to the English Chancellor for granting a stay pending appeal are met here. *See Nken, supra*. We treat each of those four factors in turn below.

### A.   *Respondent Has a Strong Likelihood of Prevailing in His Federal Appeal.*

The language and purpose of the federal officer removal statute, 28 U.S.C. § 1442, as well as the clear weight of authority, support removal and demonstrate that Mr. Clark has a strong likelihood of prevailing on the merits. The plain language of the federal officer removal statute covers "all" "civil actions" and "criminal prosecutions." The statute was amended by Pub. L. 112-239, 126 Stat. 1969, § 1087 (Jan. 2, 2013) (emphasis added) to add subsection (d) to broaden the definition of "civil actions" and "criminal

prosecutions" to include not just subpoenas, but "*any proceeding … to the extent that in such proceeding a judicial order … is sought or issued*." This bar discipline case is unquestionably such a proceeding in that ODC seeks an ultimate judicial order from the DCCA imposing discipline on Mr. Clark.

Additionally, Congress knows how to specify which cases are unremovable. The U.S. Code contains a dedicated provision setting out the categories of unremovable actions:

**28 U.S. Code § 1445 - Nonremovable actions**

(a) A civil action in any State court against a railroad or its receivers or trustees, arising under sections 1–4 and 5–10 of the Act of April 22, 1908 (45 U.S.C. 51–54, 55–60), may not be removed to any district court of the United States.

(b) A civil action in any State court against a carrier or its receivers or trustees to recover damages for delay, loss, or injury of shipments, arising under section 11706 or 14706 of title 49, may not be removed to any district court of the United States unless the matter in controversy exceeds $10,000, exclusive of interest and costs.

(c) A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.

(d) A civil action in any State court arising under section 40302 of the Violence Against Women Act of 1994 may not be removed to any district court of the United States.

State/D.C. bar disciplinary cases fit into none of these specifically enumerated categories. Ergo the plain language of Section 1442 controls and this case can be removed

pursuant to the special forum protections afforded to federal officers.[3]

The Court's ruling, however, holds that bar disciplinary proceedings are neither civil nor criminal and therefore fall into a gap between the two that is not subject to removal. The amendment to Section 1442 cited above precludes this reading. There is no such gap in "*__any proceeding__ … to the extent that in such proceeding a judicial order … is sought or issued*." And that lack of a gap is reinforced by the existence of Section 1445, which sets up explicitly which kinds of cases are not removable.

The Supreme Court has made plain in several cases that "[t]he federal officer removal statute is *not* 'narrow' or 'limited.' *Colorado v. Symes*, 286 U.S. 510, 517 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). The statute and the oft-repeated policy of broad interpretation are to protect the supremacy of the federal government. They find expression in the decisions of most federal circuits holding that hybrid matters against federal officers are in fact removable.

Most directly on point is the Fourth Circuit decision in *Kolibash v. Committee on Legal*

---

[3] We also removed on a Section 1331-related complete preemption ground under 28 U.S.C. § 1441. *See* Dkt. # 1 ¶¶ at 60-74. And under the *BP* decision, we are entitled to take that issue up to the D.C. Circuit as well, even though ordinarily, Section 1441 case remand orders are not appealable. But, they are only not appealable standing on their own. With Section 1442 as part of this case, the Section 1441 ground of removal does not stand alone and is part of the appealable June 8 order remanding this case.

*Ethics of the West Virginia Bar*, 872 F.2d 571, 576 (4th Cir. 1989), holding a bar discipline matter removable and that "[t]he form that the state action takes is therefore not controlling; 'it is the state's power to subject federal officers to the state's process that § 1442(a)(1) curbs.'" While the Court distinguished *Kolibash* here, *Kolibash* remains the most closely analogous reported federal appellate decision. The only cases to the contrary are a smattering of district court decisions, which are not precedential even within the confines of the individual districts that issued them.[4]

The clear weight of authority with respect to other types of hybrid proceedings favors removal. Contempt proceedings, though hybrid in nature, were held removable in the Fourth, Fifth, Seventh, and Eleventh Circuits. *See North Carolina v. Carr*, 386 F.2d 129, 131 (4th Cir. 1967) ("the statute looks to the substance rather than the form of the state proceeding; this is the reason for the breadth of its language"); *see also* ; *Louisiana v. Sparks*, 978 F.2d 226, 231 (5th Cir.1992); *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir.1989); *Boron Oil Co. v. Downie*, 873 F.2d 67, 68 (4th Cir. 1989); *Wisconsin v. Schaffer*, 565 F.2d 961, 963–64 (7th Cir.1977) ("We think it unfruitful to quibble over the label affixed to this contempt action. Regardless of whether it is called civil, criminal, or *sui generis*, it clearly falls within the language and intent of the statute.").

---

[4] The Seventh Circuit did issue a ruling ODC tried to draw on. *See In re: Echeles*, 430 F.2d 347 (7th Cir. 1970) (holding attorney discipline proceedings before an executive committee of the U.S. District Court were neither civil nor criminal). However, that case did not involve removal under Section 1442 and is readily distinguishable.

Garnishments against federal officers, which are also hybrid in nature, are removable in the Ninth Circuit, *see Nationwide Investors v. Miller*, 793 F.2d 1044, 1046 (9th Cir. 1986), but not removable in the Fifth, *see Hexamer v. Foreness*, 981 F.2d 821, 823 (5th Cir. 1993). The existence of a Circuit split here in any area that could be analogized in some way to the hybrid nature of bar discipline cases only reinforces why a stay should be granted, since the issues are, at best, debatable and until the D.C. Circuit comes down one way or the other, Mr. Clark should be shielded from irreparable harm that would result from having to litigate in two courts systems at once (one under Article I and the other under Article III) and face wasteful proceedings in the local D.C. process that could be entirely nullified later.

Even before the broadening amendment to Section 1442(d) in Pub. L. 112-239, 126 Stat. 1969, § 1087 (Jan. 2, 2013) explicitly added subpoenas to the list of "actions" that could be removed, the D.C. Circuit had interpreted the statute broadly to include subpoenas, rejecting the analogously formalistic argument that subpoenas were neither a criminal prosecution nor a civil action. *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995) ("We do not believe Congress used the terms "civil action," "against," or "act" in the limited fashion that appellant urges, but rather meant to refer to ***any proceeding*** in which state judicial civil power was invoked against a federal official."). This holding neatly anticipated the amendment to Section 1442(d)(1).

The D.C. Circuit is likely to apply the same reasoning to this case, particularly since

§ 1442(d) by its plain terms applies to "*any proceeding … to the extent that in such proceeding a judicial order … is sought or issued*" is unquestionably broad enough to include D.C. bar discipline cases in which serious discipline can only be imposed by order of the D.C. Court of Appeals. *See* D.C. Rule XI, § 9 (any Board recommendation for discipline greater than an informal admonition or reprimand is decided by the D.C. Court of Appeals). ODC informed us for the first time on July 10, 2023, that it seeks disbarment.

The Board of Professional Responsibility is a creature of the DCCA since the Board was formulated via the DCCA adopting D.C. Bar Rule XI, § 4. The Board and its Hearing Committees perform a quintessentially judicial function in adjudicating bar discipline cases. The manifest congressional intent that the federal officer removal statute be broadly construed—applied over and over again—precludes the sort of interpretive gymnastics that would be required to say that this case is not removable.

Thus, Mr. Clark has shown a sufficient likelihood of prevailing on his appeal.[5]

**B.**   ***Subjecting Mr. Clark to an Administrative Trial Before the Removal Jurisdiction Dispute Is Fully Adjudicated Would Cause Irreparable Harm by Defeating the Congressional Directive to Hold Merits Proceedings Only in an Article III Forum.***

It is plain that permitting the D.C. Bar to move forward with disciplinary

---

[5] In *Shapiro v. U.S. Department of Justice*, Case No. 13-555 (RDM) (D.D.C. May 25, 2016) 2016 WL 3023980 at 8, while discussing this factor, observed that even if the sliding scale for preliminary injunctions is no longer applicable after *Winter v. Natural Resources Defense Council, supra*, "it makes little sense to make the issuance of a stay contingent on the Court's determination that its own ruling was likely wrong."

proceedings during the pendency of Mr. Clark's appeal of the remand decision would irreparably deprive him of his right to have this case adjudicated in a federal forum. The purpose of the federal officer removal statute would be defeated and if the D.C. Circuit reverses, all the time, trouble and expense of such proceedings would have been wasted.

The federal officer removal statute is intended to protect federal supremacy against encroachment by hostile state or local governments and courts. Such hostility has historically often been largely based on bitter policy disagreements over taxes, tariffs, prohibition and the like. *See Laible v. Lanter*, No. 21-102-DLB-CJS, 2022 WL 1913420, at 3-4 (E.D. Ky. Jun. 6, 2022) (recounting history), and authorities cited therein. Often in our history these disputes have fallen along partisan lines. Now, in this era, there are deeply held biases against President Trump and those who supported him in jurisdictions around the country, and especially in the District of Columbia. The District is as close as this Nation comes to a political monolith, with President Biden winning 92.1% of the vote in 2020 election, 26.06 percentage points higher than the next highest state in the Union. The D.C. government's antipathy toward the Trump Administration reflects the views of its populace and is immoderate to say the least. The federal officer removal statute was tailor made for such circumstances.

On the merits, but plainly of some relevance to the jurisdictional analysis and any discretionary stay choices here, clear separation of powers and federal supremacy principles prohibit such a municipal government from intruding into the most private

counsels the President of the United States took with his senior legal advisors as to how to exercise his core Article II law enforcement powers. *See* U.S. Const., art. II, § 3 ("[H]e [the President] shall take Care that the Laws be faithfully executed").

If the merits litigation processes of the DCCA and its adjuncts are not stayed (on a mandatory or discretionary basis), then Mr. Clark will be put through local litigation that will irreparably harm his reputation as printed news stories, blog entries, TV spots, and other forms of media are constantly attacking Mr. Clark. This is especially true because the D.C. Bar broadcasts its hearings (trials) on YouTube. None of that will be a bell that can be unrung. A stay is warranted to avoid that irreparable harm.

C.      *There Would Be No Prejudice to the DCCA, the D.C. Bar, or to Others.*

The D.C. Bar would not be prejudiced by continuing the abeyance posture, just as it was not prejudiced by the case being held in abeyance since January 2023. Indeed, ODC contended before the DCCA that because it is an arm of the DCCA, the factor of harm to others from a stay drops out of the analysis. This ignores that regardless of whether this matter is characterized as civil, criminal or hybrid, the opposing party is ODC. The case is styled *In re: Jeffrey Bossert Clark*, but the charges that commenced the case were filed by ODC, and it is a determined adversary in this case. Additionally, there is no harm to another party relevant to this case. Mr. Clark gave confidential advice inside the Executive Branch. The President, who was the ultimate client for the advice, has not filed complaints about it to the D.C. Bar. Nor did any of Mr. Clark's former colleagues at the

Justice Department, even though they may have disagreed with it, even vehemently.

Any claim of prejudice to ODC is undermined by this case being docketed contrary to its long-standing policy of not docketing complaints lodged by persons who lack first-hand knowledge. Instead, it was docketed in response to a complaint from a partisan political actor, Senator Dick Durbin.[6]

Moreover, should ODC complain of prejudice due to delay, it is responsible for much of the delay of which it complains. It repeatedly attempted to prosecute this case after the first removal, which necessitated Mr. Clark having to file two additional removals. ODC then filed redundant motions for remand as to the second and third removals, increasing the burden on this Court in ruling on remand, in addition to the trouble and fee expense this needless multiplication of proceedings imposed on the Respondent. And, in any case, as the Supreme Court held in the *BP* case recognized, by authorizing appeals as of right, Congress in 28 U.S.C. § 1447(d) has resolved the competing interests in favor of an interlocutory appellate resolution of removal. Notably, this provision for appeal as of right is a relatively recent addition to the long history of federal officer removal statutes. *See* Pub. L. 112-239, 126 Stat. 1969, § 1087.

---

[6] We were also informed yesterday at a local process-based meet and confer, that ODC had no contact from Senator Durbin inquiring of the status of action on the letter he sent commencing this matter (though ODC tried to claim, implausibly in our view, that the Senator Durbin letter in 2021, out of which emerged ODC's investigation, was not the basis for the investigation). Hence, Senator Durbin obviously thinks his political objective of sending a complaint letter about Mr. Clark has already been achieved, which means there is no harm to him or those he represents from entering a stay.

**D.**     *The Public Interest Suffers If the Stay Is Not Granted.*

As noted above, the public interest is served by preserving the structure of the relationship between the state or local governments, on the one hand, versus the federal government, on the other, embodied in the Supremacy Clause as to the 50 States and in the separation of powers here as to D.C. Congress has explicitly commanded the proper approach. A stay pending appeal also vindicates constitutional policy by preventing a hostile and inferior level of local government from penetrating into and/or second-guessing the federal government's actions or deliberations at the highest level.

## CONCLUSION

A stay of this Court's June 8 remand order and opinion should be granted, preferably on the grounds that such a stay is mandatory (*see* Section I, *supra*), but alternatively on the grounds that such a stay meets the four-factor test for granting discretionary stays as a matter of equity (*see* Section II, *supra*).

We have done our best to avert the need to seek a stay from this Court, sparing its resources. But ODC and the Hearing Committee assigned below have left us no choice but to seek this relief. Additionally, given ODC's constant pressure applied to Hearing Committee Twelve and the various orders issued by its Chair as a result, *we will deem inaction on this stay motion to be a denial unless it occurs <u>before 5 p.m. EDT on July 13, 2023</u>*. We will then seek a FRAP 8(a)(2) stay from the D.C. Circuit before that Court's procedural motion deadline of July 14, 2023.

Respectfully submitted this 11th day of July 2023.

/s/ *Charles Burnham*     
Charles Burnham  
DC Bar No. 1003464  
Burnham and Gorokhov, PLLC  
1424 K Street, NW  
Suite 500  
Washington DC 20005  
(202) 386-6920  
charles@burnhamgorokhov.com

/s/ *Harry W. MacDougald*  
Harry W. MacDougald  
Georgia Bar No. 463076  
Caldwell, Carlson, Elliott & DeLoach LLP  
Two Ravinia Drive, Suite 1600  
Atlanta, Georgia 30346  
(404) 843-1956  
hmacdougald@ccedlaw.com  
*Admitted Pro Hac Vice in Case No. 1:22-mc-00096-RC*

CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with

a copy of this ***Motion for Stay Pending Appeal*** by filing with the Court's electronic filing

system and by email addressed to:

Hamilton P. Fox, Esq.
Jason P. Horrell, Esq.
Office of Disciplinary Counsel
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org
horrellj@dcodc.org


This 11th day of July 2022.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com