IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:23-mc-00007-RC<br>Case No. 1:22-mc-00096-RC<br>Case No. 1:22-mc-00117-RC<br>(consolidated) |

# MOTION FOR STAY ON GROUNDS NEWLY ARISING ON AUGUST 14, 2023

## INTRODUCTION

On August 14 Mr. Clark was indicted along with 18 other defendants in Fulton, County, GA state court. *See Georgia v. Donald J. Trump, et al.,* Superior Court of Fulton County, Georgia, Case No. 23SC188947. In this filing, Mr. Clark requests the Court to stay these proceedings while this criminal case is pending.  For the reasons that follow, Mr. Clark submits that such a stay would not be barred by this Court's June 8 Order and would be otherwise appropriate in light of all the relevant factors. The Office of Disciplinary Counsel ("ODC") has indicated it opposes this Motion.

## RELEVANT PROCEDURAL BACKGROUND

This Court granted ODC's Motion to remand on June 8, 2023. *See* ECF 20.[1]  On July

---

[1] Out of an abundance of caution, this filing is submitted under all three of the related

11, Mr. Clark filed a motion to stay this Court's decision pending appeal. *See* ECF 25. Mr. Clark argued in the course of briefing that the original forum (the D.C. Board of Professional Responsibility, "Board") had yet to reacquire jurisdiction because the Clerk of this Court had not mailed a certified copy of the remand order as required by 28 U.S.C. § 1447(c). He also argued further that a discretionary stay was unnecessary because 28 U.S.C. § 1446(d) automatically requires local proceedings to cease until appeals were exhausted. Finally, Mr. Clark argued, in the alternative, that a discretionary stay was appropriate under the traditional four-part test. ODC opposed the request for a stay and the Court has not yet ruled. Also, as the Court is aware, Mr. Clark has appealed the June 8 Order to the D.C. Circuit.

As made clear below, the legal basis in this request for a stay is distinct from the motions to stay currently pending before this Court and before the D.C. Circuit, respectively. (We fully maintain, however, that those motions present adequate and independent grounds to grant a stay pending appeal as well.) Because the exigency of a stay grant here has diminished as compared to the state of events on the ground at the time we initially filed, because of Hearing Committee 12's decision to self-stay the matter, we will not be filing a motion in parallel to this second stay motion on newly emergent

---

case numbers for this matter. All "ECF" citations are to the original case of 1:22-mc-96-RC. The Court may wish to enter an administrative order that would make clear that any future filings can be made in the first-filed case only and be operative as to the other two cases as well. This would promote judicial economy both for Respondent and for the Office of Disciplinary Counsel ("ODC").

grounds with the D.C. Circuit until this Motion is resolved here. Relatedly, therefore, we propose the alternative relief, if this Motion is not granted, of issuing a 10-day administrative stay to give us time to seek a stay on the same grounds from the D.C. Circuit pursuant to Federal Rule of Appellate Procedure 8(a)(2). *See* Conclusion, *infra*.

## ARGUMENT

### I. *Landis* Stays and Stays of Civil Matters Based on Parallel Criminal Proceedings

Under *Landis v. North America*, a district court has inherent power to stay proceedings in control of its docket after balancing the competing interest. 299 U.S. 248, 254-55 (1936); *see also McSurely v. McClellan*, 426 F.2d 664, 671 (D.C. Cir. 1970) ("Of course, the District Court has a broad discretion in granting or denying stays so as to coordinate the business of the court efficiently and sensibly.") (internal quotations omitted). The D.C. Circuit has recognized that such a stay is often particularly appropriate where there are parallel civil and criminal proceedings. In *SEC v. Dresser Industries, Inc.*, that Court stated:

> Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of the Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial or otherwise, prejudice the case.

3

628 F.2d 1368, 1376 (D.C. Cir. 1980).[2]

Although never adopted by the D.C. Circuit, District Judges in this Court have applied the following test from other Circuits for when a civil case should be stayed pending a related criminal matter:

> Another court in this District recently outlined the factors that are commonly weighed when a party moves to stay civil proceedings in light of parallel criminal proceedings. These are: 1) the relationship between the civil and criminal actions; 2) the burden on the court, 3) the hardships or inequalities the parties would face if a stay was granted, and 4) the duration of the requested stay.

*Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012). These factors are not exhaustive.

In *Dellinger v. Mitchell*, the D.C. Circuit emphasized the suitability of civil stays for particularly high-profile, parallel criminal proceedings. 442 F.2d 782, 783-84 (D.C. Cir. 1971). The plaintiffs in that civil case included several defendants in the "Chicago Seven"[3]

---

[2] This argument is not to the contrary of our longstanding position, of which the Court is well aware, that D.C. Bar proceedings are quasi-criminal, meaning that they are **hybrids** of criminal and civil proceedings. Indeed, they also have administrative elements because D.C. Court of Appeals ("DCCA") adjuncts the Board and its Hearing Committees act somewhat like administrative agencies, albeit as administrative agencies firmly made arms of the DCCA (a court) and not administrative bodies situated within the D.C. Mayor's Office (an executive arm of D.C. home rule). Our point here is that because D.C. Bar ar disciplinary cases are in part civil and administrative in nature, they should still be governed by the *Dresser Industries* approach. Only if D.C. Bar proceedings were **exclusively** criminal would a different analysis have to be applied. But since the Fulton County indictment qua indictment (*i.e.*, as issued by an ordinary grand jury)—a criminal action where imprisonment could result—it should take priority over a D.C. Bar hybrid criminal-civil-administrative process where imprisonment is not at stake.

[3] The Chicago Seven defendants were charged with various federal offenses based on their actions during the 1968 Democratic Convention.

trial who sued in federal court alleging government violation of their constitutional rights. The defendants obtained a stay based on the related criminal trial and the plaintiffs appealed. The D.C. Circuit observed that:

> The supporting affidavit also pointed out the difficulties involved in duplication of witnesses. It was further alleged: "If the civil case is stayed, these conflicts can be avoided, and it is possible that upon completion of the criminal trial, many of the related issues in the civil case can be stipulated between the parties …." These considerations, it may be assumed, justified an order staying the civil case until completion of the trial of the criminal case.

*Id*. at 795.

The Court observed further that "[t]he Government's initial request for a stay was to avoid interference with another case—*a case of public importance*—and this presented a strong consideration for stay." *Id* (italics added).

The *Mitchell* court, relying on *Landis*, reversed the District Court's stay because it applied to plaintiffs who were not defendants in the criminal case and also because it extended through the conclusion of all criminal appeals. Notably, however, neither of those considerations apply here. *See* Proposed Order (granting stay, appended herein).

    II.    **The Facts Favor a Stay While *Georgia v. Donald J. Trump et al*. Is Pending.**

        **a. The June 8 Remand Order Is Not an Obstacle to Granting a Stay.**

Although this Court entered an order on June 8 stating that it believed Mr. Clark's case should be remanded back to the DCCA process, this is not an obstacle to considering and ultimately granting this stay request. *First*, as stated above, such remand orders do

5

not become effective until the Clerk of the issuing court sends a certified mail copy of the order to the originating jurisdiction. To our knowledge this has not happened, so this Court still has administrative power over Mr. Clark's case and may, if appropriate, grant a stay.

*Second*, this Court has yet to perfect its June 8 disposition of this case under Federal Rule of Civil Procedure 58(a) (assuming the Court is not in the midst of *sua sponte* reconsidering that order in light of various arguments made in the course of briefing on the first stay request). That rule states that "[e]very judgment and amended judgment must be set out in a separate document" (subject to inapplicable exceptions). Additionally, Rule 58 cross-references Federal Rule of Civil Procedure 79(a), which specifically contrasts "orders" with "judgments." Since this Court has not yet taken this step to finalize its decision, it retains the ability to enter a stay.[4] The same power is also obvious from the requirement that any stays pending appeal must first be sought from this Court. *See* Fed. R. App. P. 8(a)(1).

*Finally*, Mr. Clark's case remains on appeal to the D.C. Circuit. Although we will not prejudge the outcome of the appeal, there is certainly a reasonable prospect that it could result in a remand to this Court with instructions to begin adjudicating the Charges in this Court. It would therefore not be imprudent for this Court to stay proceedings in

---

[4] To be sure, Mr. Clark has filed a notice of appeal notwithstanding the Rule 58 omission. He did so out of an abundance of caution to foreclose any argument that he had missed an appeal deadline.

anticipation of a possible remand. And, of course, if ODC believes proceedings should recommence in light of the substance of any remand to this Court, it would be free to make a motion to lift the stay at that time.

### b. All Applicable Factors Favor Granting a Stay of These Proceedings.

#### i. Relationship between civil and criminal actions

The relationship between these civil and criminal actions favors a stay because they involve substantially the same allegations. The ODC specification of charges alleges that Mr. Clark and another lawyer drafted a letter addressing potential irregularities in the 2020 Georgia Presidential primary. *See* Ex. 1 ¶ 12. It alleges that the letter contained false and misleading statements. *See id*. at ¶ 17-19.[5] It alleges that Mr. Clark discussed this letter with various high-ranking U.S. Department of Justice colleagues and the President, arguing for his views as against other DOJ lawyers. Although Mr. Clark never sent the letter to anyone and never leaked it to the press, ODC alleges in the specification that Mr. Clark violated bar rules prohibiting conduct involving dishonesty and interfering with the administration of justice. *See id*. at ¶ 31.

The Georgia indictment charges Mr. Clark with two offenses, one of which is violation of the Georgia RICO Act, O.C.G.A. § 16-14-14-(c). Ex. 2. It also includes Mr. Clark in 4 of the 144 alleged RICO overt acts (98-99, 110-111). *See id*. at 45. These acts all

---

[5] Strangely, however, ODC conceded at a prior point in litigation that it was not arguing that Mr. Clark had lied. But that merits issue is not before this Court at this time in light of the pending appeal.

revolve around the same letter that is the focus of ODC's specification of charges.

The one substantive offense against Mr. Clark is Count 22 which charges Criminal Attempt to Commit False Statements and Writings, O.C.G.A. §§ 16-4-1 & 16-10-20. It largely repeats the allegations against Mr. Clark from the overt acts in the lead RICO count. The Fulton County District Attorney essentially framed the indictment in the alternative. Count 1 concerning Georgia RICO argues that the conduct involved by each defendant in the state case violates Georgia RICO. But Counts 2 through 41 effectively argue that if the state RICO count fails, each of the defendants still violated one or more particular Georgia criminal statutes that the District Attorney would seek to prove if her lead RICO allegations fail on one or more legal or factual grounds.

The facts at issue in this disciplinary proceeding are therefore substantially identical to the facts at issue in Mr. Clark's criminal case—both as to the RICO count and non-RICO count (totaling two counts against Mr. Clark). This factor strongly favors a stay.

### ii. There is no hardship to ODC if a stay is granted.

ODC will suffer no hardship if this Motion is granted because the stay will be in favor of a prosecutorial authority pursuing punishment for the exact same facts as ODC and with the power to impose more severe punishment. An attorney who has been disbarred in the District as a consequence of criminal conviction may not practice law for a minimum of five years before applying for reinstatement. If Mr. Clark is convicted in

Fulton County, GA (something we will resist on numerous grounds in Georgia), he would also face a minimum of five years imprisonment, which, if imposed, would obviously prevent him from practicing law during that period of time. *See* O.C.G.A. § 16-14-5. ODC thus clearly cannot claim hardship by having its case stayed in favor of a party pursuing the same allegations and wielding a greater ability to sanction. This factor therefore favors a stay.

### iii. Without a stay, prejudice to Mr. Clark's fifth amendment rights would occur.

Mr. Clark has a right to refuse to testify in the Georgia case and the court will instruct the jury that it may not hold this decision against him. Although the Fifth Amendment applies in D.C. Bar proceedings, ODC has announced an intention to argue in favor of an adverse inference if Mr. Clark invokes his Fifth Amendment right at a Hearing Committee 12 trial. If Mr. Clark is forced by ODC and/or adverse rulings from the Hearing Committee to testify at his trial, his testimony will be admissible in the Georgia criminal case. Forcing Mr. Clark to submit to a bar disciplinary process while his criminal case is pending will therefore effectively deny him of one of the most important constitutional rights he possesses in his criminal trial.

### iv. Refusing a stay will "expose the basis of the defense to the prosecution in advance of criminal trial."

Forcing Mr. Clark to submit to disciplinary proceedings while his criminal case is pending will compel him to expose his defense to the Georgia district attorney. *See*,

9

*Dresser*, 1628 F.2d at 1376.  As described above, Mr. Clark's disciplinary case involves the same allegations as the criminal case. The witnesses in ODC's case in chief will likely be the same witnesses the Fulton County, Georgia District Attorney will attempt to use to convict him. Mr. Clark's legal arguments, cross-examination strategies, defense exhibits, defense witnesses, and (if applicable) defendant testimony will be largely the same in both cases. This preview would then act as a windfall for the District Attorney and prejudice Mr. Clark's ability to put on a defense against the more serious set of charges where the Fifth Amendment unambiguously applies. Imposing a stay would be appropriate to avoid this severe prejudice to Mr. Clark.

> **v. A stay would prevent the hardship of Mr. Clark having to defend two cases as well as promote respect for the legal system and avoid jury pool poisoning effects.**

Mr. Clark is one of several lawyer/defendants in *Georgia v. Trump, et al.* to have been pursued by bar authorities prior to indictment. Others in the same predicament are John Eastman, Rudy Giuliani, Jenna Ellis, Sidney Powel, and Ken Chesebro.[6] Although ODC and the other state bar authorities would certainly deny it, the public perception is that the state bars are functioning as *de facto* "advance men" for state and federal

---

[6]   *See* https://news.bloomberglaw.com/us-law-week/john-eastman-ethics-trial-must-proceed-california-bar-argues; https://www.politico.com/news/2023/07/07/disciplinary-panel-calls-for-rudy-giulianis-disbarment-00105220; https://www.coloradosupremecourt.us/Public/PublicStatementEllis.asp; https://www.cnn.com/2023/02/23/politics/sidney-powell-disciplinary-action-tossed/index.html; https://ldad.org/wp-content/uploads/2022/10/Ethics-Complaint-against-Kenneth-Chesebro.pdf.

prosecutors pursuing Trump-aligned attorneys. Also, ODC has repeatedly refused to answer us clearly when we inquire whether it has, at any point and to any extent, coordinated with the House Select Committee on January 6, the Senate Judiciary Committee, the Office of Special Counsel Jack Smith, or any state prosecutors. We would welcome ODC going on record in response to this Motion to make clear statements about these points (or avoid the topic and allow this Court to take adverse inferences accordingly). As the removal statutes make clear, and despite the criminal aspects of this removal, Federal Rule of Civil Procedure 11 governs. *See* 28 U.S.C. § 1446(a).

Local bar quasi-prosecutions like the one against Mr. Clark also are apt to drain the finances of their targets (and this has certainly been true in Mr. Clark's case in particular). Such quasi-prosecutions are also designed to demoralize their targets and damage their public reputations (and, worse yet, poison jury pools). ODC, for example, has a practice of contemporaneously notifying certain journalists of its main filings[7]— many of which contain inflammatory language that prejudges the outcome of the case and ignores the presumption of innocence. *See, e.g. In re Clark*, 22-BG-891, ODC Response to Motion to Continue Abeyance at 9 (June 20, 2023) ("[Clark] attempted to undermine the basic premise of a democracy."). Imposing a reasonable stay of these hybrid civil-criminal proceedings would avoid imposing the undue hardship on Mr. Clark of having

---

[7] In connection with the filing of the Charges here against Mr. Clark back in July 2022, it came to light that Disciplinary Counsel Mr. Clark had immediately dispatched copies of the Charges to several national media outlets.

11

to defend two cases at once, and prevent the legal system from falling into disrepute in the public's eyes or otherwise seriously prejudicing Mr. Clark's constitutional rights.

## CONCLUSION

For the foregoing reasons, Mr. Clark respectfully requests this Court to stay this matter until his criminal case is concluded, or in the alternative in any denial order applicable to one or both of the currently pending stay motions in this court, grant a 10-day administrative stay to allow Mr. Clark to seek a stay under Federal Rule of Appellate Procedure 8(a)(2) from the D.C. Circuit.

Respectfully submitted this 17th day of August 2023.

| | |
|---|---|
| */s/ Charles Burnham* | */s/ Harry W. MacDougald* |
| Charles Burnham | Harry W. MacDougald |
| DC Bar No. 1003464 | Georgia Bar No. 463076 |
| Burnham and Gorokhov, PLLC | Caldwell, Carlson, Elliott & DeLoach LLP |
| 1750 K Street, NW | Two Ravinia Drive, Suite 1600 |
| Suite 300 | Atlanta, Georgia 30346 |
| Washington DC 20006 | (404) 843-1956 |
| (202) 386-6920 | hmacdougald@ccedlaw.com |
| charles@burnhamgorokhov.com | *Admitted Pro Hac Vice in Case No. 1:22-mc-00096-RC* |

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Motion for Stay on Grounds Newly Arising on August 14, 2023* by filing with the Court's electronic filing system and by email addressed to:

Hamilton P. Fox, Esq.
Jason P. Horrell, Esq.
Office of Disciplinary Counsel
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org
horrellj@dcodc.org

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1750 K Street, NW
Suite 300
Washington DC 20006
(202) 386-6920
charles@burnhamgorokhov.com